Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, and SPENCER NEUMANN,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff Gary Cheng ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by

Defendants, public filings, wire and press releases published by and regarding Activision Blizzard, Inc. ("Activision Blizzard" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Activision Blizzard securities between August 4, 2016 and July 27, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Activision Blizzard securities during the Class Period and was economically damaged thereby.

7.     Defendant Activision Blizzard purports to be one of the world's largest video game publishers. Activision Blizzard is incorporated in Delaware with its principal office located in Santa Monica, California. Activision Blizzard's common stock trades on the NASDAQ under the ticker symbol "ATVI."

8.     Defendant Robert A. Kotick ("Kotick") has served as the Company's Chief Executive Officer ("CEO") at all relevant times.

9.     Defendant Dennis Durkin ("Durkin") served as the Company's Chief Financial Officer ("CFO") from the start of the Class Period to May 2017 and from January 2019 and at all relevant times thereafter.

10.     Defendant Spencer Neumann ("Neumann") served as the Company's CFO from May 2017 to January 2019.

11.     Defendants Kotick, Durkin, and Neumann are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

      (a)     directly participated in the management of the Company;

      (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

      (c)     was privy to confidential proprietary information concerning the Company and its business and operations;

      (d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

      (e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

2

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     Activision Blizzard is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Activision Blizzard under *respondeat superior* and agency principles.

15.     Defendant Activision Blizzard and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

16.     On August 4, 2016, Activision Blizzard filed a form 10-Q for the quarterly period ended June 30, 2016 ("2Q 2016 10-Q"). Attached to the 2Q 2016 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Kotick and Durkin.

17.     The 2Q 2016 10-Q stated, in pertinent part:

"*We are party to routine claims, suits, investigations, audits, and other proceedings arising from the ordinary course of business*, including with respect to intellectual property rights, contractual claims, *labor and employment matters*, regulatory matters, tax matters, unclaimed property matters, *compliance matters*, and collection matters. In the opinion of management, after consultation with legal counsel, *such routine claims and lawsuits are not significant and we do not expect them to have a material adverse*

3

*effect on our business, financial condition, results of operations, or liquidity.*"

(Emphasis added.)

18.     On November 3, 2016, Activision Blizzard filed a form 10-Q for the quarterly period ended September 30, 2016 ("3Q 2016 10-Q"). Attached to the 3Q 2016 10-Q were SOX Certifications signed by Defendants Kotick and Durkin.

19.     The 3Q 2016 10-Q stated, in relevant part:

"*We are party to routine claims, suits, investigations, audits, and other proceedings arising from the ordinary course of business*, including with respect to intellectual property rights, contractual claims, *labor and employment matters*, regulatory matters, tax matters, unclaimed property matters, *compliance matters*, and collection matters. In the opinion of management, after consultation with legal counsel, *such routine claims and lawsuits are not significant and we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.*"

(Emphasis added.)

20.     On February 28, 2017, Activision Blizzard filed a form 10-K for the fiscal year ended December 31, 2016 ("2016 10-K"). Attached to the 2016 10-K were SOX Certifications signed by Defendants Kotick and Durkin.

21.     The 2016 10-K, in pertinent part, stated:

"*We may be involved in legal proceedings that have a negative impact on our business.*

*From time to time, we are involved in claims, suits, government investigations, audits and proceedings arising in the ordinary course of our business, including actions with respect to* intellectual property, competition and antitrust matters, privacy matters, tax matters, *labor and employment matters*, unclaimed property matters, *compliance* and commercial claims. In addition, negative consumer

4

sentiment about our business practices may result in inquiries or investigations from regulatory agencies and consumer groups, as well as litigation, which, regardless of their outcome, may be damaging to our reputation.

***Claims, suits, government investigations, audits and proceedings are inherently uncertain and their results are subject to significant uncertainties, many of which are outside of our control.*** Regardless of the outcome, such legal proceedings can have a materially adverse impact on us due to legal costs, diversion of management resources and other factors. In addition, it is possible that a resolution of one or more such proceedings could result in reputational harm, substantial settlements, judgments, fines or penalties, criminal sanctions, consent decrees or orders preventing us from offering certain features, functionalities, products or services, requiring us to change our development process or other business practices.

\*    \*    \*

***We are party to routine claims, suits, investigations, audits, and other proceedings arising from the ordinary course of business, including with respect to*** intellectual property rights, contractual claims, ***labor and employment matters***, regulatory matters, tax matters, unclaimed property matters, ***compliance matters***, and collection matters. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and ***we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.***"

(Emphasis added.)

22.    On February 27, 2018, Activision Blizzard filed a form 10-K for the fiscal year ended December 31, 2017 ("2017 10-K"). Attached to the 2017 10-K were SOX Certifications signed by Defendants Kotick and Neumann.

23.    The 2017 10-K, in relevant part, stated:

"***We may be involved in legal proceedings that have a negative impact on our business.***

5

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*From time to time, we are involved in claims, suits, government investigations, audits and proceedings arising in the ordinary course of our business, including actions with respect to* intellectual property, competition and antitrust matters, privacy matters, tax matters, *labor and employment matters*, unclaimed property matters, compliance and commercial claims. In addition, negative consumer sentiment about our business practices may result in inquiries or investigations from regulatory agencies and consumer groups, as well as litigation, which, regardless of their outcome, may be damaging to our reputation.

*Claims, suits, government investigations, audits and proceedings are inherently difficult to predict and their results are subject to significant uncertainties, many of which are outside of our control.* Regardless of the outcome, such legal proceedings can have a materially adverse impact on us due to legal costs, diversion of management resources and other factors. In addition, it is possible that a resolution of one or more such proceedings could result in reputational harm, substantial settlements, judgments, fines or penalties, criminal sanctions, consent decrees or orders preventing us from offering certain features, functionalities, products or services, requiring us to change our development process or other business practices.

\*     \*     \*

*[W]e are party to routine claims, suits, investigations, audits, and other proceedings arising from the ordinary course of business, including with respect to* intellectual property rights, contractual claims, *labor and employment matters*, regulatory matters, tax matters, unclaimed property matters, *compliance matters*, and collection matters. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and *we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.*"

(Emphasis added.)

6

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

24.     On February 28, 2019, Activision Blizzard filed a form 10-K for the fiscal year ended December 31, 2018 ("2018 10-K"). Attached to the 2018 10-K were SOX Certifications signed by Defendants Kotick and Durkin.

25.     The 2018 10-K stated, in pertinent part:

"***We may be involved in legal proceedings that have a negative impact on our business***.

***From time to time, we are involved in claims, suits, investigations, audits and proceedings arising in the ordinary course of our business, including with respect to*** intellectual property, competition and antitrust matters, regulatory matters, tax matters, privacy matters, ***labor and employment matters, compliance matters***, unclaimed property matters, liability and personal injury claims, product damage claims, collection matters, and/or commercial claims. In addition, negative consumer sentiment about our business practices may result in inquiries or investigations from regulatory agencies and consumer groups, as well as litigation, which, regardless of their outcome, may be damaging to our reputation.

***Claims, suits, investigations, audits, and proceedings are inherently difficult to predict and their results are subject to significant uncertainties, many of which are outside of our control.*** Regardless of the outcome, such legal proceedings can have a negative impact on us due to legal costs, diversion of management resources and other factors. In addition, it is possible that a resolution of one or more such proceedings could result in reputational harm, substantial settlements, judgments, fines or penalties, criminal sanctions, consent decrees, or orders preventing us from offering certain features, functionalities, products or services, requiring us to change our development process or other business practices.

\*          \*          \*

***[W]e are party to routine claims, suits, investigations, audits, and other proceedings arising in the ordinary course of business, including with respect to*** intellectual property, competition and antitrust matters, regulatory matters, tax matters, privacy matters,

7

*labor and employment matters, compliance matters*, unclaimed property matters, liability and personal injury claims, product damage claims, collection matters, and/or commercial claims. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and *we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.*"

(Emphasis added.)

26.    On February 27, 2020, Activision Blizzard filed a form 10-K for the fiscal year ended December 31, 2019 ("2019 10-K"). Attached to the 2019 10-K were SOX Certifications signed by Defendants Kotick and Durkin.

27.    The 2019 10-K, in relevant part, stated:

"*We may be involved in legal proceedings that have a negative impact on our business.*

*From time to time, we are involved in claims, suits, investigations, audits and proceedings arising in the ordinary course of our business, including with respect to* intellectual property, competition and antitrust matters, regulatory matters, tax matters, privacy matters, *labor and employment matters, compliance matters*, unclaimed property matters, liability and personal injury claims, product damage claims, collection matters, and/or commercial claims. In addition, negative consumer sentiment about our business practices may result in inquiries or investigations from regulatory agencies and consumer groups, as well as litigation, which, regardless of outcome, may be damaging to our reputation.

*Claims, suits, investigations, audits, and proceedings are inherently difficult to predict, and their results are subject to significant uncertainties, many of which are outside of our control.* Regardless of the outcome, such legal proceedings can have a negative impact on us due to legal costs, diversion of management resources and other factors. In addition, it is possible that a resolution of one or more such proceedings could result in reputational harm, substantial settlements, judgments, fines or penalties, criminal sanctions, consent decrees, or

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

orders preventing us from offering certain features, functionalities, products or services, requiring us to change our development process or other business practices.

\*     \*     \*

*[W]e are party to routine claims, suits, investigations, audits, and other proceedings arising in the ordinary course of business, including with respect to* intellectual property, competition and antitrust matters, regulatory matters, tax matters, privacy matters, *labor and employment matters, compliance matters*, unclaimed property matters, liability and personal injury claims, product damage claims, collection matters, and/or commercial claims. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and *we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.*"

(Emphasis added.)

28.     On February 23, 2021, Activision Blizzard filed a form 10-K for the fiscal year ended December 31, 2020 ("2020 10-K"). Attached to the 2020 10-K were SOX Certifications signed by Defendants Kotick and Durkin.

29.     The 2020 10-K stated, in relevant part:

"*We may be involved in legal proceedings that have a negative impact on our business.*

*From time to time, we are involved in claims, suits, investigations, audits, and proceedings arising in the ordinary course of our business, including with respect to* intellectual property, competition and antitrust, regulatory, tax, privacy, *labor and employment, compliance*, unclaimed property, liability and personal injury, product damage, collection, and/or commercial matters. In addition, negative consumer sentiment about our business practices may result in inquiries or investigations from regulatory agencies and consumer groups, as well as litigation.

9

***Claims, suits, investigations, audits, and proceedings are inherently difficult to predict, and their results are subject to significant uncertainties, many of which are outside of our control.*** Regardless of the outcome, such legal proceedings can have a negative impact on us due to reputational harm, legal costs, diversion of management resources, and other factors. It is also possible that a resolution of one or more such proceedings could result in substantial settlements, judgments, fines or penalties, injunctions, criminal sanctions, consent decrees, or orders preventing us from offering certain features, functionalities, products, or services, requiring us to change our development process or other business practices.

*   *   *

***We are party to routine claims, suits, investigations, audits, and other proceedings arising in the ordinary course of business, including with respect to*** intellectual property, competition and antitrust matters, regulatory matters, tax matters, privacy matters, ***labor and employment matters, compliance matters***, unclaimed property matters, liability and personal injury claims, product damage claims, collection matters, and/or commercial claims. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and ***we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.***"

(Emphasis added.)

30.     Each of the aforementioned 10-Ks incorporate by reference Activision Blizzard's Code of Conduct. Activision Blizzard's Code of Conduct, as publicly available at the time of the filing of this complaint, states, in relevant part:

"**We all play by the same rules**

It doesn't matter if you are a studio head or an art intern on your first day – ***the rules described in this Code apply to all employees.*** We all work together, and ***we're all expected to follow our Code*** – doing the right thing and even admitting when we're wrong.

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

\*      \*      \*

Managers: be a role model

We're all expected to be role models in living our Code, standing up for what's right and acting proactively to stay on the right track. ***If you are a manager, it's also an important part of your job to:***

**Make our Code a priority.** Emphasize its importance and make sure your team gets the training they need to get to know our Code and policies.

**Be accessible.** Let your team know that they can come to you whenever they have questions, concerns, or something to report.

**Just ask!** Even though you are one of the go-to people for questions about the Code, you're not expected to have all the answers. Just turn to the ASK list (you'll find it under the main menu or under the ASK list button in bottom right corner) whenever you're unsure about something.

**Escalate.** An important part of your job is how you handle questions and concerns that are brought to you. ***If a report or question raises any concern at all, you should escalate it right away.***

**And of course, walk the talk!** ***It's crucial that you lead by example in living our Code.***

### The law: don't mess with it

Our company, and we as employees, must comply with all of the laws, rules and regulations that apply to our business wherever we do business – in every city, state and country. And no, you don't need to know the details of every law related to your area of responsibility by heart. But yes, you do need to know enough to do your job with integrity and to recognize when it's time to get in touch with one of our friends in the Legal Department. If you're ever unsure whether or not to act or what action to take – or whether or not that action is legal and respectful in any location – it's always better to just ask!

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

\*　　\*　　\*

## HARASSMENT: DON'T DO IT

What it all comes down to is one simple, yet so important word: Respect. We all want to go to work feeling safe and comfortable when we step through the doors and interact with each other. It's an absolute necessity in order to work well together and achieve our goals. Each of us is expected to do our part to create a respectful workplace culture – one that is free of unlawful bias, harassment, intimidation, and discrimination of any kind.

***We do not tolerate these actions in any form*** – physical, verbal or non-verbal – including:

- Remarks, gestures or behavior relating to a legally protected characteristic that offends someone

- Offensive comments, jokes or pictures related to personal characteristics

- ***Sexual harassment***, like unwanted advances, inappropriate sexual jokes, sexually suggestive comments, inappropriate touching, requests for sexual favors and inappropriate comments about another's appearance

\*　　\*　　\*

## DIVERSITY AND NON-DISCRIMINATION: RESPECT DIFFERENCES

Diversity is one of our greatest strengths as a company. With all of our unique talents and our great mix of people, we spark innovation, create stronger teams and stay ahead of our competition. And it's up to each and every one of us to help our company build and maintain an inclusive work environment that fosters respect and reflects the diversity of the communities where we operate. ***Our company doesn't tolerate discrimination or make employment-related decisions on the***

12

*basis of a protected characteristic or any other basis protected by applicable law.*

\* \* \*

Drugs and alcohol: stay sharp

We trust each other to keep our heads straight and minds clear at work. That's why *it's never okay to possess, use or be under the influence of illegal drugs while on the job. Abusing drugs or alcohol at work, or before work, can lead to safety issues, damage your business relationships, or hurt your productivity and innovation.* Simply put, it all comes down to using good judgment and common sense.

\* \* \*

*Workplace laws: we follow them*

*We comply with all applicable wage and labor laws.* This can be a complex area, so always feel free to reach out to someone on the ASK list if you have any questions. Of course, *we don't tolerate retaliation against employees for asking questions or attempting to invoke their rights under applicable laws.*"

(Emphasis added.)

31.    The statements contained in ¶¶16-30 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Activision Blizzard discriminated against women and minority employees; (2) Activision Blizzard fostered a pervasive "frat boy" workplace culture that continues to thrive; (3) numerous complaints about unlawful harassment, discrimination, and retaliation were made to human resources ("HR") personnel

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

and executives which went unaddressed; (4) the pervasive culture of harassment, discrimination, and retaliation would result in serious impairments to Activision Blizzard's operations; (5) as a result as a result of the foregoing, the Company was at greater risk of regulatory and legal scrutiny and enforcement, including that which would have a material adverse effect; (6) Activision Blizzard failed to inform shareholders that the California Department of Fair Employment and Housing ("DFEH") had been investigating Activision Blizzard for harassment and discrimination; and (7) as a result, Defendants' statements about Activision Blizzard's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH EMERGES**

32.     On July 21, 2021, *Bloomberg Law* reported that the DFEH filed a lawsuit against Activision Blizzard. The article states, in relevant part:

> "***A two-year investigation by the state agency found that the company discriminated against female employees in terms and conditions of employment, including compensation, assignment, promotion, and termination. Company leadership consistently failed to take steps to prevent discrimination, harassment, and retaliation***, the agency said.

> According to the complaint, filed Tuesday in the Los Angeles Superior Court, ***female employees make up around 20% of the Activision workforce, and are subjected to a 'pervasive frat boy workplace culture,' including 'cube crawls,' in which male employees 'drink copious amounts of alcohol as they crawl their way through various cubicles in the office and often engage in inappropriate behavior toward female employees.'***

> The agency alleges male employees play video games during the workday while delegating responsibilities to female employees, engage in sexual banter, and joke openly about rape, among other things.

*Female employees allege being held back from promotions because of the possibility they might become pregnant, being criticized for leaving to pick their children up from daycare, and being kicked out of lactation rooms so male colleagues could use the room for meetings, the complaint says.*

\* \* \*

The suit also points to *a female Activision employee who took her own life while on a company trip with her male supervisor. The employee had been subjected to intense sexual harassment prior to her death*, including having nude photos passed around at a company holiday party, the complaint says.

\* \* \*

'We value diversity and strive to foster a workplace that offers inclusivity for everyone. There is no place in our company or industry, or any industry, for sexual misconduct or harassment of any kind,' a spokesperson for Activision Blizzard said in a statement. '*We take every allegation seriously and investigate all claims.* In cases related to misconduct, action was taken to address the issue.'

'*The DFEH includes distorted, and in many cases false, descriptions of Blizzard's past.* We have been extremely cooperative with the DFEH throughout their investigation, including providing them with extensive data and ample documentation, but they refused to inform us what issues they perceived,' the statement continued.

'*The picture the DFEH paints is not the Blizzard workplace of today*,' the company said."

(Emphasis added.)

33.     On July 26, 2021, more than two thousand former and current Activision Blizzard employees signed a petition condemning Activision Blizzard's response to the lawsuit as "abhorrent and insulting." The petition reads, in relevant part:

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

"We believe these statements have damaged our ongoing quest for equality inside and outside of our industry. Categorizing the claims that have been made as 'distorted, and in many cases false' creates a company atmosphere that disbelieves victims. It also casts doubt on our organizations' ability to hold abusers accountable for their actions and foster a safe environment for victims to come forward in the future. ***These statements make it clear that our leadership is not putting our values first. Immediate corrections are needed from the highest level of our organization.***

***Our company executives have claimed that actions will be taken to protect us, but in the face of legal action — and the troubling official responses that followed — we no longer trust that our leaders will place employee safety above their own interests.*** To claim this is a 'truly meritless and irresponsible lawsuit,' while seeing ***so many current and former employees speak out about their own experiences regarding harassment and abuse***, is simply unacceptable."

(Emphasis added.)

34.     On July 27, 2021, Activision Blizzard employees planned a walkout and work stoppage to support the petition against the Company, to be held the following day.

35.     Also on July 27, 2021, Defendant Kotick sent an internal email apologizing for the Company's "tone deaf" response to the DFEH lawsuit and promising "swift action to be [. . .] compassionate[,] caring [and] to ensure a safe environment."

36.     On this news, the price of Activision Blizzard shares traded at unusually high volumes and fell $5.89, or over 6%, to close at $84.05 on July 27, 2021, damaging investors.

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

37.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Activision Blizzard securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of Activision Blizzard, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Activision Blizzard securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

40.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

17

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Activision Blizzard;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Activision Blizzard to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Activision Blizzard securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

44.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Activision Blizzard's shares met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

18

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- As a public issuer, Activision Blizzard filed periodic public reports;

- Activision Blizzard regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Activision Blizzard's securities were liquid and traded with sufficient volume during the Class Period; and

- Activision Blizzard was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

45.   Based on the foregoing, the market for Activision Blizzard securities promptly digested current information regarding Activision Blizzard from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

<u>COUNT I</u>
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder <u>Against All Defendants</u>**

47.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

19

48.     This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

•       employed devices, schemes and artifices to defraud;

•       made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

•       engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Activision Blizzard securities during the Class Period.

51.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Activision Blizzard were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Activision Blizzard, their control over, and/or receipt and/or modification of Activision Blizzard's allegedly materially misleading statements, and/or their associations with the Company which made them privy to

20

confidential proprietary information concerning Activision Blizzard, participated in the fraudulent scheme alleged herein.

52.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Activision Blizzard personnel to members of the investing public, including Plaintiff and the Class.

53.     As a result of the foregoing, the market price of Activision Blizzard securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Activision Blizzard securities during the Class Period in purchasing Activision Blizzard securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

54.     Had Plaintiff and the other members of the Class been aware that the market price of Activision Blizzard securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Activision Blizzard securities at the artificially inflated prices that they did, or at all.

55.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they

21

suffered in connection with their purchase of Activision Blizzard securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

57.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of Activision Blizzard, and conducted and participated, directly and indirectly, in the conduct of Activision Blizzard's business affairs. Because of their senior positions, they knew the adverse non-public information about Activision Blizzard's misstatement of revenue and profit and false financial statements.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Activision Blizzard's financial condition and results of operations, and to correct promptly any public statements issued by Activision Blizzard which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Activision Blizzard disseminated in the marketplace during the Class Period concerning Activision Blizzard's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Activision Blizzard to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Activision Blizzard within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the

unlawful conduct alleged which artificially inflated the market price of Activision Blizzard securities.

61.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Activision Blizzard.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)    awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 3, 2021

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS