1

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
2  Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
3  2121 Avenue of the Stars
Los Angeles, CA 90067
4  Telephone: (310) 819-3470

5  Gerald H. Silk (*pro hac vice forthcoming*)
jerry@blbglaw.com
6  Avi Josefson (*pro hac vice forthcoming*)
avi@blbglaw.com
7  Scott R. Foglietta (*pro hac vice forthcoming*)
scott.foglietta@blbglaw.com
8  1251 Avenue of the Americas
New York, NY 10020
9  Telephone: (212) 554-1400

10  *Counsel for Proposed Intervenor Union
Investment Privatfonds GmbH*
11

12

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

13

14

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA, and BRIAN KELLY, <br><br> Defendants. | Case No. 2:21-cv-06240-PA-JEM <br><br> **NOTICE OF MOTION AND MOTION OF UNION INVESTMENT PRIVATFONDS GMBH TO INTERVENE, VACATE THE ORDER APPOINTING JEFF ROSS AS LEAD PLAINTIFF, AND REOPEN LEAD PLAINTIFF PROCESS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:      Hon. Percy Anderson <br> Courtroom: 9A, 9th Floor <br> Date:       January 31, 2022 <br> Time:      1:30 p.m. |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES ........................................................................ ii

NOTICE OF MOTION AND MOTION .........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................3

I.    PRELIMINARY STATEMENT ...............................................................3

II.    PROCEDURAL HISTORY .......................................................10

III.    EVENTS AFTER THE FILING OF THE INITIAL COMPLAINT.........................................................................11

IV.    ARGUMENT ...........................................................................12

    A.    Union Is Entitled To Intervene ................................12

    B.    The PSLRA Lead Plaintiff Process .........................14

    C.    Mr. Ross's Counsel Manipulated the Lead Plaintiff Process ......................................................15

    D.    Class Members Did Not Receive The Required Notice ..........18

V.    CONCLUSION ........................................................................22

1

## <u>TABLE OF AUTHORITIES</u>

2

C<small>ASES</small>                                                                                          P<small>AGE(S)</small>

3

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
4
   966 F.2d 470 (9th Cir. 1992) ...............................................................................14

5
*In re Cavanagh*,
6
   306 F.3d 726 (9th Cir. 2002) ...............................................................................14

7
*In re Cloudera, Inc. Sec. Litig.*,
8
   2020 WL 1288362 (N.D. Cal. Mar. 18, 2020) ...................................................1, 8

9
*Dube v. Signet Jewelers Ltd.*,
   2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) ..............................................20, 22
10

11
*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..............................................................................................5
12

13
*Hachem v. Gen. Elec. Inc.*,
   2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018) ...................................8, 13, 21, 22
14

15
*Johnson v. Aljian*,
   2008 WL 11338773 (C.D. Cal. Nov. 14, 2008) ...................................................2
16

17
*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
   947 F. Supp. 2d 366 (S.D.N.Y. 2013) ...............................................................22
18

19
*In re Leapfrog Enters., Inc. Sec. Litig.*,
   2005 WL 5327775 (N.D. Cal. July 5, 2005) ...........................................*passim*
20

21
*Magnus Pacific Corp. v. Advanced Explosives Demolition, Inc.*,
   2013 WL 6095427 (D. Idaho Nov. 20, 2013) ...................................................14
22

23
*In re Nutanix, Inc. Sec. Litig.*,
   2021 WL 783579 (N.D. Cal. Mar. 1, 2021) .......................................................10
24

*In re Pfizer Inc. Sec. Litig.*,
25
   233 F.R.D. 334 (S.D.N.Y. 2005) ........................................................................15

26
*Richardson v. TVIA, Inc.*,
   2007 WL 1129344 (N.D. Cal. Apr. 16, 2007).....................................................17
27

28
*Shenwick v. Twitter*,
   2016 WL 10672428 (N.D. Cal. Dec. 22, 2016)...............................................4, 14

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   2005 WL 1322721 (S.D.N.Y. June 1, 2005) .................................................21, 22

*U.S. Equal Emp. Opportunity Comm'n v. Activision Blizzard, Inc.*,
   No. 2:21-cv-07682-DSF-JEM (C.D. Cal.) .........................................................11

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
   2013 WL 2247394 (C.D. Cal. May 9, 2013).........................................19, 20, 21

STATUTES

15 U.S.C. § 74u-4 *et seq.* ...................................................................................*passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 24(a)............................................................................................13

Fed. R. Civ. P. 24(a)(2)........................................................................................12

Fed. R. Civ. P. 24(b)(1)........................................................................................13

Fed. R. Civ. P. 24(b)(3)........................................................................................13

Fed. R. Civ. P. 24(c)............................................................................................13

H.R. Conf. Rep. No. 104-369 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) .......................................3, 4, 14, 15

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 31, 2022, at 1:30 p.m., or on a date and at a time designated by the Court, before the Honorable Percy Anderson, at the United States District Court for the Central District of California, located at the Los Angeles Courthouse, 350 W. 1st Street, Courtroom 9A, 9th Floor, Los Angeles, California, Union Investment Privatfonds GmbH ("Union") will respectfully move this Court for an entry of an Order, pursuant to Rule 24 of the Federal Rules of Civil Procedure ("Rule 24") and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A), allowing Union to intervene in this case for purposes of vacating the November 1, 2021 Order appointing Jeff Ross ("Mr. Ross") as Lead Plaintiff and approving his selection of Lead Counsel (ECF No. 34), republishing the PSLRA Lead Plaintiff notice, and establishing a new deadline for investors to seek to serve as Lead Plaintiff, and for any such further relief as the Court may deem just and proper.

The PSLRA requires members of a putative class to receive a published notice "[a]dvising members of the purported plaintiff class [] of the pendency of the action, the claims asserted therein, and the purported class period; and that . . . any member of the purported class may move the court to serve as lead plaintiff" within 60 days of the publication of notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, Mr. Ross should be required to republish such a notice because he filed a complaint (the "Amended Complaint") changing the class period and asserting a materially different case than that which he was appointed to lead, which impacted the substantive rights and claims of a material portion of the class, including the vast majority of institutional investors. *See* ECF No. 39. This is contrary to the PSLRA, as well as established law in this District and elsewhere: a Lead Plaintiff in a securities class action must publish notice when it is "likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice." *In re Cloudera, Inc. Sec. Litig.*, 2020 WL 1288362, at *2 (N.D. Cal. Mar. 18, 2020) (vacating lead

plaintiff order and reopening lead plaintiff appointment process) (citation omitted). This Motion is also made on the grounds that Union satisfies the requirements to intervene as of right as well as permissively under Rule 24.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Jonathan D. Uslaner filed herewith (the "Uslaner Decl."), the pleadings and other filing herein, and such other written or oral argument as maybe permitted by the Court.

Local Rule 7-3 requires a conference of counsel prior to filing motions. This Motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on December 22, 2021. Specifically, on December 22, 2021, Avi Josefson and Scott Foglietta conferred with Brian Alexander, at the Rosen Law Firm, P.A. ("Rosen"). Later on December 22, at Rosen's request, Avi Josefson and Scott Foglietta provided legal authority in support of this Motion by email. On December 27, 2021, at the request of Rosen, Avi Josefson and Scott Foglietta had a second call with Rosen attorneys Brian Alexander, Laurence Rosen, and Philip Kim. Rosen does not consent to any of the relief requested in this Motion.

Additionally, while Defendants do not have standing to contest the appointment of the lead plaintiff, as a courtesy, during the week prior to the filing of this Motion, Scott Foglietta informed defense counsel Wilmer Cutler Pickering Halle and Dorr LLP and Gibson Dunn and Crutcher LLP of Union's intent to file this motion. *See, e.g.*, *Johnson v. Aljian*, 2008 WL 11338773, at *5 (C.D. Cal. Nov. 14, 2008) (refusing to address defendants' arguments challenging lead plaintiff appointment because "the statute is clear that only potential plaintiffs may be heard regarding appointment of a Lead Plaintiff") (citation omitted); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)  ("The  presumption  described  in  [15  U.S.C.  §  78u-4(a)(3)(B)(iii)(I)] may be rebutted only upon proof by a member of the purported plaintiff class. . . .").

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

A primary purpose of the PSLRA was to end "lawyer-driven litigation" by establishing a clear statutory procedure for the appointment of a Lead Plaintiff, preferably an institutional investor like Union. *See* H.R. Conf. Rep. No. 104-369, at *31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 370 (1995) (PSLRA enacted to prevent "the manipulation by class action lawyers of the clients whom they purportedly represent").  In this case, such lawyer-driven litigation resulted in the manipulation of the statutory lead plaintiff process.  Rosen, which is counsel to the Lead Plaintiff, Mr. Ross, and also counsel to Gary Cheng ("Mr. Cheng"), who filed the initial complaint in this action, started this case by asserting a frivolously overbroad class period.  *See* ECF No. 1.  Class members relied on the class period Rosen asserted, which included at least seven months during which ***no actionable claims could arise***, to assess their financial interest in this action and determine whether to seek appointment as Lead Plaintiff, knowing that the Court would use that same class period to determine the financial interest of Lead Plaintiff movants.

More specifically, the overbroad class period forced institutional investors like Union—the paradigmatic investor that Congress wanted to lead cases like this one—to include in their financial interest calculation irrelevant purchases of Activision Blizzard, Inc. ("Activision") stock which did not give rise to claims for securities fraud.  According to the Declaration of Michael L. Hartzmark, Ph.D. ("Hartzmark Decl."), such purchases could only result in gains, which offset the losses suffered due to Activision's alleged fraud.[1]  Once Rosen and Mr. Ross secured control of this litigation, they abandoned that frivolous class period and, in their Amended Complaint, alleged a far different case than the one they were appointed to lead.

---

[1] The Hartzmark Decl. is provided as Exhibit A to the Uslaner Decl.

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

The PSLRA's lead plaintiff process is premised upon class members receiving notice of the pending action, including the nature and scope of the litigation. *See* 15 U.S.C. § 78u-4(a)(3)(A). Such notice enables class members to evaluate the claims and their financial interest in the litigation to determine whether to seek Lead Plaintiff appointment. Congress specifically intended to encourage institutional investors to serve as lead plaintiff by providing a 60-day period between the publication of notice and the deadline to seek to serve as lead plaintiff that would facilitate deliberation by institutional investors. *See* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Shenwick v. Twitter*, 2016 WL 10672428, at *2 (N.D. Cal. Dec. 22, 2016) ("Congress intended that the lead plaintiff provision would encourage institutional investors to take a more active role in securities class action lawsuits[.]") (citation omitted).

The PSLRA's lead plaintiff process is driven by the filing of the initial complaint in a securities class action: the plaintiff filing that initial complaint is required to file a Certification that details his trading in the subject securities, and issue a notice describing the claims and time period at issue in the complaint. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, Rosen filed the initial complaint on behalf of an individual investor, Mr. Cheng. The complaint Rosen filed for Mr. Cheng asserted a class period of August 4, 2016 to July 27, 2021 (the "*Cheng* Class Period"), alleging that investors who purchased Activision stock during that period had viable claims for relief under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). In practical terms, at the lead plaintiff stage, all of an investor's class period transactions in the securities at issue are used to calculate that investor's "financial interest." However, purchases of Activision shares during the first seven months of the *Cheng* Class Period (from August 4, 2016 to February 27,

2017) could not result in any compensable damages.  That is because the price of Activision stock during that seven-month period was lower than the price of Activision stock after the disclosure of the alleged fraud, as demonstrated in the chart below.  *See* Hartzmark Decl. ¶¶10-14.

With no potential claim for damages, stock purchases during that seven-month period ***could not give rise to any claim*** under Section 10(b) of the Exchange Act, and should not have been included in the alleged class period.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  The inclusion of that seven-month period in the *Cheng* Class Period was therefore frivolous because no purchases made during those seven months could give rise to a claim for relief.  *See* Hartzmark Decl. ¶¶10-14.



Incredibly, Rosen and Mr. Cheng filed the initial complaint without providing the PSLRA-mandated Certification for Mr. Cheng, setting forth his transactions in Activision stock.[2]  *See* 15 U.S.C. § 78u-4(a)(2)(A).  It was only after Union's counsel

---

[2] While not the primary basis for reopening the Lead Plaintiff process, it bears noting that absent the filing of a PSLRA certification, the *Cheng* Complaint was facially deficient, and the Lead Plaintiff process predicated thereon was invalid.  Because Union had no financial

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

raised this with Rosen during the pre-motion conference that Rosen filed Mr. Cheng's Certification, which demonstrates that Mr. Cheng did not purchase any Activision shares during that seven-month period, and therefore had no interest in asserting such a patently overbroad class period.  *See* ECF No. 46-1.

Stock purchases during the first seven months of the *Cheng* Class Period would not result in recoverable damages.  *See* Hartzmark Decl. ¶¶10-14.  The result, as a specialized firm such as Rosen knows, is that institutional investors, which are more likely to build and hold positions over time in the companies in which they invest, would have economic gains from purchases at the start of the *Cheng* Class Period, which function to net out any losses from subsequent purchases—losses that were the direct result of the alleged fraud.  The filing of the frivolously overbroad *Cheng* Class Period therefore precluded institutional investors, including Union, from serving as Lead Plaintiff.[3]  Rosen and Messrs. Ross and Cheng—who did not purchase a single Activision share during the seven-month period—effectively conceded that those allegations in *Cheng* were baseless by abandoning that extraneous time period in the Amended Complaint they filed just 32 days after being appointed to lead this case.

Union is a German institutional investor that manages $145 billion in assets and benefits from personnel experienced in prosecuting securities fraud claims under U.S. law.  *See* Fischer and Kratzenberger Decl. ¶2.  Union seeks to intervene in this action because Rosen improperly manipulated the *Cheng* Class Period to preempt the lead plaintiff process, and then failed to provide notice upon the filing of an Amended Complaint that materially altered the contours of the case.  In the class

interest in the *Cheng* Class Period as filed and noticed, Union did not raise the issue at the time.

[3] *See* Declaration of Carsten Fischer and Tanja Kratzenberger in Support of the Motion of Union Investment Privatfonds GmbH to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff, and Reopen Lead Plaintiff Process ("Fischer and Kratzenberger Decl."), which is attached as Exhibit B to the Uslaner Decl.

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

period asserted in the Amended Complaint, Union incurred a loss of over $10.9 million as calculated on either a first-in, first-out ("FIFO") basis or a last-in, first-out ("LIFO") basis.[4]  *See* Uslaner Decl., Ex. C.  In contrast, Mr. Ross lost approximately $12,000 in that period.  *See* ECF No. 23-3.  During the *Cheng* Class Period, which was identified in the PSLRA notices published prior to the Lead Plaintiff deadline, Union had a net gain of approximately $1.8 million as calculated on a FIFO basis, and a net gain of approximately $1.7 million as calculated on a LIFO basis.  *See* Uslaner Decl., Ex. C.

When Mr. Ross was appointed as Lead Plaintiff in this action in November 2021, his motion was unopposed: as a result of Rosen's machinations, not a single institutional investor came forward claiming a loss under the *Cheng* Class Period. The absence of institutional investor movants is all the more remarkable considering that approximately 85% of Activision stock is held by institutions, and disclosures of Activision's misconduct erased nearly $20 billion in shareholder value.  *See* Uslaner Decl., Ex. D.  The manipulation of the Lead Plaintiff process here is an affront to the orderly process created by the PSLRA to ensure that every securities class action is led by the "most adequate plaintiff," which the statute defines as the qualified investor that has the "largest financial interest" in the relief sought by a particular action.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(i).

Mr. Ross and his counsel laid bare their ploy to circumvent the fair process

---

[4] Union purchased Activision stock through several investment funds established under German law.  While the investment funds are considered separate estates, they are not independent legal entities and do not have legal capacity to sue in, or be brought before, courts of law.  Instead, Union manages those investment funds and is vested with authority to sue in its own name for damages suffered by those funds.  *See* Fischer and Kratzenberger Decl. ¶2.  Charts setting forth calculations of Union's losses in both the *Cheng* Class Period and the Amended Class Period are provided as Exhibit C to the Uslaner Decl.  In addition to Union, other related entities also incurred losses on investments in Activision during the class period asserted in the Amended Complaint and would likely join Union in seeking appointment as Lead Plaintiff if Union's motion is granted and republication is required.

contemplated by the PSLRA by immediately changing the *Cheng* Class Period.  Mr. Ross's Amended Complaint is dramatically different from the scope of the action the Court appointed Mr. Ross to prosecute, and dramatically different from the action of which investors received notice.  Rosen and Mr. Ross failed to publish a notice to investors explaining the differences between the two complaints.  This is contrary to the PSLRA as well as established law in this District and elsewhere: a lead plaintiff in a securities class action must publish notice and reopen the lead plaintiff process when it is "likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice."  *Cloudera*, 2020 WL 1288362, at *2 (vacating lead plaintiff order and reopening lead plaintiff appointment process) (citation omitted); *see also In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) (reopening lead plaintiff process when amended complaint "dramatically alter[ed] the contours of the lawsuit"); *Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *1 (S.D.N.Y. Apr. 12, 2018) (ordering republication of notice where, after a qualitative inquiry, republication was warranted "in light of changes in either or both the class period or the nature of the claims asserted, it is likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice") (citation and internal quotations omitted).

This is not the first time Rosen has filed an overly broad initial complaint to manipulate a lead plaintiff process, and then changed the alleged class period as soon as it secured a role as lead counsel.  In 2017, Rosen filed a securities class action against Tesla, Inc. asserting a class period of May 4, 2016, through October 6, 2017.  *See* Compl. ¶1, *Wochos v. Tesla, Inc.*, No. 17-cv-05828 (N.D. Cal. Oct. 10, 2017), ECF No. 1 (Uslaner Decl., Ex. E); *see also* Uslaner Decl., Ex. F at 1.  During the first year of that period, purchases of Tesla stock could not have resulted in compensable damages.  Rosen's retail investor client was ultimately appointed lead plaintiff, securing for Rosen the lucrative position of lead counsel.  When Rosen

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

filed the amended complaint, it proceeded to cut the first year off the class period, leaving an operative class period of just six months. *See* Am. Compl. ¶1, *Wochos v. Tesla, Inc.*, No. 17-cv-05828 (N.D. Cal. Mar. 23, 2018), ECF No. 24 (Uslaner Decl., Ex. G). Rosen also attempted to manipulate the lead plaintiff process in a pending case against Facebook, Inc., in which Rosen filed a five-year class period, despite the fact that investors that purchased Facebook stock during the first four years of that period have no compensable damages from those investments. *See* Compl. ¶1, *Ngian v. Facebook, Inc.*, No. 21-cv-05976 (E.D.N.Y. Oct. 27, 2021), ECF No. 1 (Uslaner Decl., Ex. H); *see also* Uslaner Decl., Ex. F at 2.

In addition, less than two weeks ago, Rosen filed a securities class action against DocuSign, Inc. ("DocuSign") in the Eastern District of New York, asserting a class period of March 27, 2020 to December 2, 2021, an overbroad period during the first months of which purchases of DocuSign shares not result in any compensable damages. *See Collins v. DocuSign, Inc.*, No. 21-cv-07071 (E.D.N.Y. filed Dec. 22, 2021), ECF No. 1 (Uslaner Decl., Ex. I); *see also* Uslaner Decl., Ex. F at 3.

Accordingly, Rosen's apparent manipulation of the Lead Plaintiff process coupled with the failure of Mr. Ross and Rosen to publish notice when they filed the Amended Complaint warrants vacating the November 1, 2021 Order appointing Mr. Ross as Lead Plaintiff. A new PSLRA notice should be published, giving all Activision investors with a financial interest in the operative class period an opportunity to seek appointment as Lead Plaintiff.

Granting this motion advances judicial efficiency. This case is still in the preliminary pleading stage, as Defendants have not yet responded to the Amended Complaint and discovery has not commenced. In addition, Union filed this motion promptly, 11 days after Rosen's failure to publish notice of the Amended

Complaint.[5]  As such, Union respectfully requests that the Court grant its motion and enter an order allowing Union to publish notice of the class period in the Amended Complaint and give investors 30 days to seek appointment as Lead Plaintiff in this case.[6]  A draft notice is provided as Exhibit J to the Uslaner Decl.

## II.   PROCEDURAL HISTORY

On August 3, 2021, Mr. Cheng filed a securities class action in this District against Activision and certain of its senior executives on behalf of all those that purchased or otherwise acquired publicly traded Activision securities between August 4, 2016 and July 27, 2021 (the "*Cheng* Complaint").  *See* ECF No. 1 ¶1.  The *Cheng* Complaint alleged that during the *Cheng* Class Period, Activision misled investors by concealing a rampant "frat boy" culture that accommodated widespread sexual harassment and discrimination while falsely touting Activision's purported commitment to equality.  *Id.* ¶31.  The *Cheng* Complaint spanned just 24 pages and asserted that Activision's fraud was first and fully revealed on July 27, 2021.  *See id.* ¶1.

On August 3, 2021, the same day the *Cheng* Complaint was filed, Rosen published notice of the pendency of this action via *Business Wire.  See* ECF No. 23-1.  Consistent with the *Cheng* Complaint, the notice informed investors who purchased securities of Activision between August 4, 2016 and July 27, 2021, that they had 60 days from the date of the notice to seek appointment as Lead Plaintiff. *See id.*  The notice further apprised investors that the case was limited to the claims

---

[5] The PSLRA requires that notice be published within 20 days of the filing of the subject complaint.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  The 20-day deadline from the filing of Mr. Ross's Amended Complaint expired on December 23, 2021.  On December 22, 2021, counsel for Union contacted Rosen to confer about the instant Motion, at which time Rosen requested further discussion on December 27, 2021, and then asked that, as a courtesy, Union not file its Motion until after the holidays.

[6] When reopening the lead plaintiff appointment process, courts have discretion on setting the deadline.  *See In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at *1 (N.D. Cal. Mar. 1, 2021) (providing 21 days for investors to seek lead plaintiff appointment).

and time period described therein.  *See id.*

On October 4, 2021, Mr. Ross, also represented by Rosen, filed a motion to be appointed Lead Plaintiff and for approval of his selection of Rosen as proposed Lead Counsel.  *See* ECF No. 21.  In his motion, Mr. Ross stated that he sought to prosecute the case arising from the allegations set forth in the *Cheng* Complaint.  *See* ECF No. 22 at 1-3.  No other party moved to be appointed Lead Plaintiff or filed an opposition to Mr. Ross's motion.  On November 1, 2021, the Court appointed Mr. Ross as Lead Plaintiff and approved his selection of Rosen as Lead Counsel.  *See* ECF No. 34.

## III.    EVENTS AFTER THE FILING OF THE INITIAL COMPLAINT

Just before the Lead Plaintiff motion deadline, on September 20, 2021, the *Wall Street Journal* reported that the U.S. Securities and Exchange Commission (the "SEC") had opened an investigation of Activision's disclosures concerning workplace misconduct and discrimination.  On this news, the price of Activision stock declined more than 8% over September 20 and 21, 2021.  The next week, on September 27, 2021, the U.S. Equal Employment Opportunity Commission (the "EEOC") filed a complaint against Activision, reporting that the EEOC found that Activision employees were subject to sexual harassment and discrimination, and that Activision knew about it but, rather than addressing or preventing such misconduct, retaliated against employees who complained.  *See U.S. Equal Emp. Opportunity Comm'n v. Activision Blizzard, Inc.*, No. 2:21-cv-07682-DSF-JEM (C.D. Cal.). Simultaneously, the EEOC announced that Activision had also entered into a three-year Consent Decree that included an $18 million settlement to be paid to injured employees.

Then, on November 2, 2021, Activision admitted that the launch dates for its much-anticipated new titles Diablo IV and Overwatch 2 would be delayed because the Company "in recent months, [took] actions that resulted in the departure of a number of individuals across the [C]ompany."  On this news, the price of Activision

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

stock declined more than 14%.

Finally, on November 16, 2021—nearly four months after the publication of notice—the *Wall Street Journal* published its article revealing that Defendant Kotick had known about the sexual misconduct at Activision for years.   Specifically, Activision had received more than 500 reports from current and former employees alleging harassment, sexual assault, bullying, pay disparities, and other issues following the filing of a lawsuit by the Department of Fair Employment & Housing. On this news, the price of Activision stock declined 6.1%.

On December 3, 2021, just a month after being appointed Lead Plaintiff, Mr. Ross filed a 104-page Amended Complaint that dramatically changed the contours of the *Cheng* Complaint.  *See* ECF No. 39.  Specifically, the Amended Complaint substantially altered the class period by eleven months, most egregiously starting the class period seven months later than the *Cheng* Class Period described in the original notice and *Cheng* Complaint.   The Amended Complaint also included significant factual allegations not present in the *Cheng* Complaint.   Lastly, the Amended Complaint included three additional disclosures not included in the *Cheng* Complaint, which materially altered the financial interest of class members in the action.

## IV.   ARGUMENT

### A.   Union Is Entitled To Intervene

Union is entitled to intervene in this case because Union has met its burden with respect to all elements of intervention as of right, as well as permissive intervention under Rule 24.  Rule 24 provides that, upon timely motion, a party may intervene as of right if that party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Permitting Mr. Ross to serve as Lead Plaintiff without complying with the

PSLRA's notice requirements, particularly after his counsel manipulated the Lead Plaintiff process, would "impair or impede" Union's "ability to protect its interest" in its claims against Activision, which arise from its ownership of Activision stock—the securities that form the "subject of the action." Fed. R. Civ. P. 24(a). Thus, Union may intervene as of right. *See* Hr'g Tr. at 3, *Dube v. Signet Jewelers Ltd.*, No. 16-cv-6728 (S.D.N.Y. Apr. 7, 2017), ECF No. 49 (granting investor's motion to intervene as of right, or in the alternative, for permissive intervention, for purposes of requiring lead plaintiff to republish notice) (Uslaner Decl., Ex. K).

Moreover, Union satisfies the requirements for permissive intervention. Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Here, Union's claims are precisely those asserted in the Amended Complaint, as Union is a member of the putative class described therein; its claims therefore are identical to those asserted by Mr. Ross.

In addition, the "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Allowing Union to intervene to seek the limited relief discussed herein will not unduly delay or prejudice other parties in light of the stage of the litigation. This case is still in the preliminary pleading stage, Defendants have not yet responded to the Amended Complaint, and discovery has not yet commenced. Union filed this motion promptly, 11 days after the deadline for Mr. Ross to publish notice of his Amended Complaint expired. As such, Union's motion is timely. *See Gen. Elec.*, 2018 WL 1779345, at *3 (granting investor's motion to intervene to reopen lead plaintiff process as "it plainly has a 'claim . . . that shares with the [original] action a common question of law or fact,' and the Court does not find that intervention will unduly delay or prejudice the adjudication of the original parties'

rights") (citation omitted).[7]

## B.     The PSLRA Lead Plaintiff Process

The purpose of the PSLRA's lead plaintiff provisions is to "encourage the most capable representatives of the plaintiff class to participate in [the] class action[,] parties with significant holdings in issuers, whose interest are more strongly aligned with the class."  H.R. Conf. Rep. No. 104-369, at *32, *reprinted in* 1995 U.S.C.C.A.N. at 731.  To accomplish that end, the PSLRA requires the publication of notice to apprise all investors of the filing of a complaint, the nature of the claims, the applicable time period, and the deadline to seek appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Knowing the nature of the claims and the relevant time period at issue is necessary for investors to determine whether they purchased shares during the relevant time period and to assess their financial interest in the claims asserted.  *See* Fischer and Kratzenberger Decl. ¶13.

This analysis is central to the PSLRA's lead plaintiff process because the statute establishes a presumption that the Court should appoint as lead plaintiff the investor with the "largest financial interest" that makes a *prima facie* showing of adequacy and typicality.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  These provisions ensure that investors with a real financial stake in the claims are entrusted to prosecute them, fulfilling Congress' goal of ensuring improved leadership of securities class actions. *See, e.g.*, *In re Cavanagh*, 306 F.3d 726, 738 (9th Cir. 2002).  The financial interest test was also intended to advance Congress' stated goal of ensuring that institutional

---

[7] Rule 24 requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  The Ninth Circuit "ha[s] approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) (affirming intervention motion not accompanied by pleading).  For the avoidance of any doubt, however, Union adopts as its pleading for purposes of its motion the Amended Complaint.  *See Magnus Pacific Corp. v. Advanced Explosives Demolition, Inc.*, 2013 WL 6095427, at *7 (D. Idaho Nov. 20, 2013) (allowing intervenor to adopt allegations in filed complaint for purposes of motion to intervene).

investors, like Union, lead securities class actions.  *See Twitter*, 2016 WL 10672428, at *2 (noting that the intent of the lead plaintiff provision was to "encourage institutional investors to take a more active role"); *see also* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

The class period asserted in an initial securities fraud complaint is critical to the lead plaintiff process.  Class members look to their transactions during that period to calculate their financial interest in the litigation, and Courts typically rely on the filed class period to define the transactions they consider when assessing the financial interest of lead plaintiff movants.  *See* Fischer and Kratzenberger Decl. ¶13; *see also In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337-38 (S.D.N.Y. 2005) (holding that a lead plaintiff movant's financial interest must be calculated using the noticed class period asserted in the filed complaint).  Accordingly, by asserting a frivolously overbroad class period in the *Cheng* Complaint, Rosen dictated the period the Court and class members would apply when calculating financial interest.

## C.    Mr. Ross's Counsel Manipulated the Lead Plaintiff Process

The notice published in connection with the *Cheng* Complaint informed Activision investors who purchased stock between August 4, 2016 and July 27, 2021, that they had a right to seek appointment as lead plaintiff.  Accordingly, prior to the October 4, 2021 lead plaintiff deadline, Union analyzed its trading during the *Cheng* Class Period to calculate its financial interest in the case Rosen filed on behalf of Mr. Cheng, as would other Activision investors.  *See* Fischer and Kratzenberger Decl. ¶¶6-8.  Union and other class members also understood that the Court would look to their transactions during the *Cheng* Class Period to assess their financial interest in selecting as Lead Plaintiff the class member with the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); Fischer and Kratzenberger Decl. ¶13.

Knowing this, Rosen asserted a Class Period in the *Cheng* Complaint that included a seven-month period during which no investors could have viable claims under the Exchange Act, but which impacted the financial interest calculus for institutional investors.  Because no viable claims arise from investments made during that period, the only impact of the *Cheng* Class Period was to require Activision investors to include in their financial interest analysis any gains realized on purchases made during that seven-month period.  As noted above, Rosen and Mr. Cheng filed the initial complaint without providing the PSLRA-mandated Certification for Mr. Cheng, setting forth his transactions in Activision stock.  *See* 15 U.S.C. § 78u-4(a)(2)(A).  After Union's counsel raised this with Rosen during the pre-motion conference, Rosen filed Mr. Cheng's Certification, which demonstrates that Mr. Cheng did not purchase any Activision shares during that seven-month period.  *See* ECF No. 46-1.

Union's situation exemplifies why Rosen and Mr. Ross's conduct is harmful to investors and contrary to the PSLRA.  Union lost more than $10.9 million on purchases of Activision stock during the class period asserted in the Amended Complaint, dwarfing the financial interest of Mr. Ross.  Indeed, Union's loss is more than ***880 times greater*** than Mr. Ross's loss, making it a more adequate plaintiff under the PSLRA during the Amended Complaint Class Period.  *See Leapfrog*, 2005 WL 5327775, at *3 (ordering lead plaintiff process reopened after finding that the investor seeking to reopen the process was an institutional investor with a $10 million loss, which "reinforces the conclusion that [the institutional investor] may be better-suited to represent the class under the amended . . . complaint").

However, during the frivolously overbroad class period used in the *Cheng* Complaint and notice, Union had a gain of approximately $1.8 million as calculated on a FIFO basis, and a gain of approximately $1.7 million as calculated on a LIFO basis.  As such, the artfully crafted *Cheng* Class Period precluded Union from serving as Lead Plaintiff.  *See* Fischer and Kratzenberger Decl. ¶¶7-8.  A court

applying the *Cheng* Class Period to assess the financial interest of Activision investors would reject Class members with net gains during that period. *See Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (noting "courts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages") (citation omitted).

That the *Cheng* Class Period was baseless is demonstrated by the expert analysis of Dr. Michael L. Hartzmark. His careful review of the price of Activision stock during the *Cheng* Class Period confirms that purchases during the first seven months of that period could not have given rise to securities fraud claims under the Exchange Act. *See* Hartzmark Decl. ¶¶10-14. That the *Cheng* Class Period was not only frivolous but apparently designed to manipulate the Lead Plaintiff process is evidenced by Rosen's filing of the Amended Complaint, in which Rosen promptly moved the start of the Class Period. That change effectively conceded that investors who bought Activision stock from August 4, 2016 to February 27, 2017, did not have claims for securities fraud. There were no legal or factual developments between the filing of the *Cheng* Complaint and the Amended Complaint that warrant dropping those months from the *Cheng* Class Period. The clear inference is that, having secured leadership of this case by boxing out institutional investors, Rosen and Mr. Ross no longer needed to include in their operative complaint a long period during which they knew investors had no claim for relief. Such improper use of an initial complaint class period to manipulate the lead plaintiff process is the epitome of the "lawyer-driven litigation" the PSLRA sought to end.

This is not the first time Rosen has attempted to use a frivolously overbroad class period to manipulate a lead plaintiff process. For example, in 2017, Rosen filed a securities class action against Tesla, Inc. and asserted a class period from May 4, 2016 through October 16, 2017, despite the fact that the 18-month class period included nearly 12 months during which purchases of Tesla stock could not have resulted in damages, and therefore could not give rise to claims for securities fraud.

*See* Uslaner Decl., Ex. E ¶1; Uslaner Decl., Ex. F at 1.  Then, after securing a lead counsel appointment, Rosen filed an amended complaint dramatically shortening the class period to just six months, eliminating the one-year period during which no purchases could have led to recoverable damages and effectively conceding that investors that purchased in that early part of the class period did not have a claim. *See* Uslaner Decl., Ex. G ¶1.   In 2016, Rosen filed a five-year class period in a securities class action against Agria Corp., and immediately cut the class period to just five months after securing its appointment as lead counsel.  *See* Compl. ¶1, *Balon v. Agria Corp.*, No. 16-cv-08376 (D.N.J. Nov. 9, 2016), ECF No. 1 (Uslaner Decl., Ex. L); Am. Compl. ¶2, *Balon v. Agria Corp.*, No. 16-cv-08376 (D.N.J. Mar. 8, 2017), ECF No. 18 (Uslaner Decl., Ex. M).

Just two months ago, Rosen filed a securities class action against Facebook that asserts a nearly five-year class period.  *See* Uslaner Decl., Ex. H ¶1.  Similar to Activision, Rosen's improper Facebook class period includes more than four years during which purchases of Facebook stock could not have resulted in damages, and therefore do not give rises to claims for securities fraud.  *See* Uslaner Decl., Ex. F at 2.   In addition, Rosen's client in Facebook—a retail investor with a loss of approximately $10,000—did not purchase any Facebook shares during that four-year period.  *See Ngian v. Facebook, Inc.*, No. 21-cv-05976 (E.D.N.Y. Oct. 27, 2021), ECF No. 1-1 (Uslaner Decl., Ex. N).  It is simply inescapable that the *Cheng* Class Period was not driven by the plaintiff's interests, but rather Rosen's determination that the overbroad period would minimize leadership competition from institutional investors.

### D.   Class Members Did Not Receive The Required Notice

The law is clear that Class members in a securities class action must receive notice of the claims being asserted, so that they have an opportunity to assess the claims and determine whether to seek appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I).   The law is similarly clear that the filing of an amended

complaint that vastly alters the scope of a securities class action warrants reopening the Lead Plaintiff process, upon publication of notice to class members.  *See, e.g.*, *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *5 (C.D. Cal. May 9, 2013) (requiring republication of notice); *Leapfrog*, 2005 WL 5327775, at *2-3 (same).  The PSLRA notice provision was intended to end "lawyer-driven litigation" by ensuring that sophisticated institutional investors had fair notice of claims, and that courts were given the opportunity to appoint the "most adequate plaintiff."

Here, the Amended Complaint recently filed by Rosen and Mr. Ross materially departs from the initial complaint that Rosen filed for Mr. Cheng.  Most critical is the change to the start of the alleged Class Period, which Rosen moved from August 4, 2016 in the *Cheng* Complaint to February 28, 2017 in the Amended Complaint.  As explained above, that change materially impacts the financial interest of Union and other Class members by removing from the financial interest calculation certain gains on Activision stock.  That change alone required publication of a new PSLRA notice, because investors like Union—which did not have a net loss in the *Cheng* Class Period, but had significant losses during the Amended Complaint Class Period—did not receive adequate notice.

But that was not the only change Rosen and Mr. Ross made in the Amended Complaint.  Here, the Amended Complaint also includes crucial additional information regarding investigations into Activision, including an SEC investigation into sexual harassment and workplace discrimination, the EEOC's investigation, complaint, consent decree, and $18 million settlement relating to Activision's hostile workplace and discrimination, and the Defendants' obstruction of the DFEH investigation, including shredding evidence and soliciting waivers of employee rights. The Amended Complaint also includes new misrepresentations from Activision's Environmental, Social, and Governance ("ESG") report.

The Amended Complaint also includes three subsequent disclosures of

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

Activision's fraud that were not identified in the notice or *Cheng* Complaint:

- The September 20, 2021, disclosure that the SEC had opened an investigation of Activision's disclosures concerning workplace misconduct and discrimination.

- The November 2, 2021, disclosure that the launch dates for Activision's new games would be delayed as a result of changes in leadership related to actions taken by the Company "that resulted in the departure of a number of individuals across the [C]ompany."

- The November 16, 2021, disclosure that Defendant Kotick, Activision's CEO, had known about the sexual misconduct allegations at the Company for years.

Although the inclusion of these new allegations and disclosures, alone, would not necessarily require republication, taken together with the material change to the start of the Class Period, the expansion of the end of the Class Period to incorporate these additional developments further supports the republication of the PSLRA notice. The type of amendments that courts have found "dramatically alter[] the contours of the lawsuit" and warrant republication of notice include, among other things, (1) changing the class period from the class period set forth in the original complaint and notice; and (2) assertion of a different theory of claims. *Leapfrog*, 2005 WL 5327775, at *3 (republication of notice required when amended complaint included new allegations about the fraud and expanded class period by nine months). Courts agree that republication is also required when an amended complaint alleges "entirely new misrepresentations . . . which were nowhere referenced in the Original Complaint." *Keyuan Petrochemicals*, 2013 WL 2247394, at *5; *see also Leapfrog*, 2005 WL 5327775, at *2-3 (requiring the plaintiffs to republish notice when the amended pleading "dramatically alter[ed] the contours of the lawsuit"); *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (finding republication of notice appropriate where "individuals who could now be considered

potential lead plaintiffs would have disregarded the earlier notice") (citation omitted); *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005) (noting "republication is generally appropriate where an amended complaint asserts new theories or legal claims"). Taken together with Rosen's manipulation of the class period, the inclusion of three additional corrective disclosures of the alleged fraud also supports re-opening the Lead Plaintiff process. *See Gen. Elec.*, 2018 WL 1779345, at *2 (reopening lead plaintiff process when "initial complaint alleged only one stock price drop of $1.51 per share [but new complaint] alleges additional stock drops"); *see also Leapfrog*, 2005 WL 5327775, at *3 (republication of notice warranted when amended complaint expanded class period by nine months).

Here, investors that purchased shares during the first seven months of the *Cheng* Class Period, which were then excluded from the Amended Complaint Class Period, were not fairly apprised of the actual time period at issue in this case, and lost the opportunity to assess their "financial interest in relief sought" by the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). This impacted investors' decision to take an active role in the case at that time. *See* Fischer and Kratzenberger Decl. ¶13. These investors, including Union, lacked sufficient information to make a proper determination because Rosen and Mr. Ross failed to apprise them of the relevant class period. *See id*.

By manipulating the class period without providing new notice and an opportunity to move for lead plaintiff, Rosen and Mr. Ross abrogated Union's statutory right to serve as Lead Plaintiff, as well as the rights of Activision's investors to be represented by the "most adequate plaintiff" as defined by the PSLRA. Courts in this District have reopened the lead plaintiff process when the original notice failed to provide adequate notice to the purported class, as not doing so would be "contrary to the letter and intent of the notice requirements" in the

1  PSLRA.  *Keyuan Petrochemicals*, 2013 WL 2247394, at *6.[8]

2  Importantly, judicial efficiency would not be undermined by granting this

3  motion.  This case is at the earliest stages and defendants have not yet responded to

4  the Amended Complaint.  Discovery is also stayed during the pendency of any

5  motion to dismiss.  *See* 15 U.S.C. § 74u-4(b)(3)(B).  A properly appointed Lead

6  Plaintiff can file an amended complaint or proceed on the Amended Complaint

7  already filed, after a fair leadership process is run in accordance with the PSLRA's

8  notice requirements.  Indeed, judicial efficiency is enhanced by having the "most

9  adequate plaintiff" lead this litigation: notwithstanding the additional allegations

10 included in the Amended Complaint, Rosen and Mr. Ross have missed key facts,

11 such as additional misrepresentations related to the Company's purported

12 commitment to ESG principles, as well as assurances made by Defendants that

13 misleadingly indicated that they did not know about inappropriate conduct at issue.

14 A sophisticated institutional investor like Union, with extensive experience

15 prosecuting complex securities actions, can be trusted to thoroughly investigate and

16 prosecute this case without overlooking such critical facts.

17 **V.  CONCLUSION**

18 For the reasons set forth above, Union respectfully requests that the Court

19 allow Union to intervene in this case for purposes of vacating the November 1, 2021,

20

21 [8] *See also Gen. Elec.*, 2018 WL 1779345, at *2 (noting that "individuals who could now be
22 considered potential lead plaintiffs would have disregarded the earlier notice" and
23 "[a]llowing plaintiffs in this case to proceed without publishing a new notice reflecting
   their additional claims would potentially exclude qualified movants form the lead plaintiff
24 selection process); *Signet*, 2017 WL 1379385, at *2 (reopening lead plaintiff process and
   requiring publication of new notice); *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 947 F. Supp.
25 2d 366, 367 (S.D.N.Y. 2013) (ordering republication of notice when amended complaint
26 expanded boundaries of class and expanded the class period such that "individuals who
   could now be considered potential lead plaintiffs would have disregarded the earlier
27 notice"); *Bombardier*, 2005 WL 1322721, at *2 ("adjudication of who should be appointed
   lead plaintiff cannot reliably proceed unless potential lead plaintiffs have had a reasonable
28 opportunity to identify themselves and present themselves for the Court's consideration").

Order appointing Mr. Ross as Lead Plaintiff, republishing notice and establishing a new deadline for investors to seek to serve as Lead Plaintiff, and for any such further relief as the Court may deem just and proper.

Dated: January 3, 2022                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

Gerald H. Silk (*pro hac vice* forthcoming)
jerry@blbglaw.com
Avi Josefson (*pro hac vice* forthcoming)
avi@blbglaw.com
Scott R. Foglietta (*pro hac vice* forthcoming)
scott.foglietta@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Proposed Intervenor Union Investment Privatfonds GmbH*

MOTION TO INTERVENE
2:21-cv-06240-PA-JEM