# EXHIBIT L

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ETIENNE BALON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> AGRIA CORPORATION, GUANGLIN LAI, XIE TAO, JOHN FULTON, PATRICK WAI YIP TSANG, JOHN LAYBURN, and WAH KWONG TSANG, <br><br> Defendants. | Case No.: <br><br> <u>CLASS ACTION</u> <br><br> <u>JURY TRIAL DEMANDED</u> |

<u>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**</u>

Plaintiff Etienne Balon ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and

1

regarding Agria Corporation ("Agria" or the "Company"), advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Agria American Depositary Shares ("ADSs" or "Shares") between December 16, 2011 and November 4, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its officers and/or directors.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

5. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) because significant portion of Defendants' conduct and subsequent damages occurred in this District.

6. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

7.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Agria ADSs at artificially inflated prices during the Class Period and has been damaged thereby.

8.      Defendant Agria is a global agricultural company incorporated in Cayman Islands and headquarted in Hong Kong. Agria has operations and networks servicing New Zealand, Australia, South America, China, and various international markets, including the United States. Its business consists primarily of three principal business segments: Seed and Grain; Crop Protection, Nutrients and Merchandise; and Rural Services. The Seed and Grain segment is engaged in research and development, production and sale of a broad range of seed products and trading of seed and grain products globally. The Crop Protection, Nutrients and Merchandise segment operates an extensive chain of retail stores that supply farm input materials. The Rural Services segment provides livestock trading, wool trading, irrigation and pumping, real estate agency and other agricultural services. Agria ADSs trade on the New York Stock Exchange ("NYSE") under the ticker "GRO."

9.      Defendant Guanglin Lai ("Lai") has served as the Chairman of the Board of Directors of Agria since June 2007 and has been the Company's Executive Chairman since March 2013 and throughout the Class Period.

10.      Defendant Xie Tao ("Tao") has served as the Chief Executive Officer ("CEO") of Agria since September 2009, and became a Director and member of Agria's Corporate Governance and Nominating Committee in March 2010.

11.      Defendant John Fulton ("Fulton") has served as Agria's Chief Financial Officer ("CFO") since January 2015 through the end of the Class Period.

3

12. Defendant Patrick Wai Yip Tsang ("P. Tsang") served as the Company's CFO between February 15, 2013 and November 15, 2014.

13. Defendant John Layburn ("Layburn") served as Agria's Chief Strategy and Compliance Officer from October 2009 to September 2011 and then Agria's CFO from September 2011 to February 2013.

14. Defendant Wah Kwong Tsang ("W. Tsang") has served as an Independent Director of Agria and the Chairman of the Company's Audit Committee since August 2011, the Chairman of the Compensation Committee since November 2013, and member of Nomination Committee since October 2012.

15. Defendants Lai, Tao, Fulton, P. Tsang, Layburn, and W. Tsang are sometimes herein collectively referred to as "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and

        misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities

        laws.

17.    Agria is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

19.    Defendants Agria and Individual Defendants are herein referred to as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    Throughout the Class Period, Agria had struggled to meet the NYSE's listing standards and maintain its continuing listing on NYSE.

21.    In July 2012, June 2016, and August 2016, the NYSE notified Agria that the Company did not comply with the NYSE continued listing standard requiring a listed security to maintain a minimum average closing price and/or the minimum average market capitalization and stockholders' equity continued listing standard. NYSE notified Agria that it had six months from receipt of the first NYSE Non-Compliance Notice to bring its ADS price and average ADS price back above $1.00.

22.    Pursuant to the NYSE Listed Company Manual 802.01C:

A company will be considered to be below compliance standards if the average closing price of a security as reported on the consolidated tape is less than $1.00 over a consecutive 30 trading-day period. Once notified, the company must bring

5

its share price and average share price back above $1.00 by six months following receipt of the notification.

*       *       *

In the event that at the expiration of the six-month cure period, both a $1.00 closing share price on the last trading day of the cure period and a $1.00 average closing share price over the 30 trading-day period ending on the last trading day of the cure period are not attained, the Exchange will commence suspension and delisting procedures.

23.     NYSE Listed Company Manual 802.01B further states "a company… will be considered to be below compliance if its average global market capitalization over a consecutive 30 trading-day period is less than $50,000,000 and, at the same time stockholders' equity is less than $50,000,000."

24.     In order to avoid delisting, Agria repeatedly issued false and misleading financial statements and misrepresentations about the Company's business and prospects during the Class Period to artificially pump its stock price. Agria also intentionally omitted to disclose to the public that it, through its management and other intermediaries, conducted large volume trading of its own stock which makes up 1/8 up to 1/3 of daily volume in order to hype its stock price and maintain the NYSE listing requirements.

25.     Agria has a controlling interest in its New Zealand listed subsidiary, PGG Wrightson Limited ("PGW").

## Defendants' False and Misleading Statements

26.     On December 16, 2011, Agria filed an report on Form 20-F with the SEC announcing the Company's financial and operating results for the 6 months ended June 30, 2011 (the "2011-20F"), which provided its financial results and position and stated that Agria's internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2011. The 2011 20-F was signed by Defendant Tao. The 2011 20-F also contained

signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Tao and Layburn attesting to the accuracy of financial reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

27. On December 21, 2011, Agria filed an amended annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended December 31, 2010 (the "Amended 2010 20-F"), which provided its year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2010. The Amended 2010 20-F was signed by Defendant Tao. The Amended 2010 20-F also contained SOX certifications signed by Defendants Tao and Layburn attesting to the accuracy of financial reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

28. On January 13, 2012, Agria filed an amended report on Form 20-F with the SEC announcing the Company's financial and operating results for the 6 months ended June 30, 2011 (the "Amended 2011 20-F"), which provided its financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2011. The Amended 2011 20-F was signed by Defendant Tao.

29. On October 10, 2012, Agria filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended June 30, 2012 (the "2012 20-F"), which provided its year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2012. The 2012 20-F was signed by Defendant Tao. The 2012 20-F also contained SOX certifications signed by Defendants Tao and Layburn attesting to the accuracy of financial

reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

30. On November 9, 2012, Agria filed an amended report on Form 20-F with the SEC announcing the Company's amended financial and operating results for the year ended June 30, 2012 (the "Amended 2012 20-F"), which provided its financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2012. The Amended 2012 20-F was signed by Defendant W. Tsang.

31. On October 18, 2013, Agria filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended June 30, 2013 (the "2013 20-F"), which provided its year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2013. The 2013 20-F was signed by Defendant Lai. The 2013 20-F also contained SOX certifications signed by Defendants Lai and P. Tsang attesting to the accuracy of financial reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

32. On October 23, 2014, Agria filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended June 30, 2014 (the "2014 20-F"), which provided its year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2014. The 2014 20-F was signed by Defendant Lai. The 2014 20-F also contained signed SOX certifications by Defendants Lai and P. Tsang attesting to the accuracy of financial reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

8

33.     On September 22, 2015, Agria filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended June 30, 2015 (the "2015 20-F"), which provided its year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2015. The 2015 20-F was signed by Defendant Lai. The 2015 20-F also contained signed SOX certifications by Defendants Lai and Fulton attesting to the accuracy of financial reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

34.     On September 20, 2016, Agria filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended June 30, 2016 (the "2016 20-F"), which provided its year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of June 30, 2016. The 2016 20-F was signed by Defendant Lai. The 2016-20F also contained signed SOX certifications by Defendants Lai and Fulton attesting to the accuracy of financial reporting, the disclosure of any material changes to Agria's internal controls over financial reporting, and the disclosure of all fraud.

35.     On October 7, 2016, Agria filed a Form 6-K with the SEC signed by Defendant W. Tsang. Attached to the Form 6-K was a press release dated October 6, 2016 announcing that Agria's Board of Directors approved a Rule 10b5-1 plan that would implement the $10 million share repurchase authorization announced in June 2016. Agria disclosed that a U.S. broker-dealer was acting as the Company's agent to purchase its ADSs on pre-arranged terms pursuant to the Rule 10b5-1 plan during a period beginning on October 1, 2016 and ending on December 31, 2017. In the press release, Defendant Lai commented in relevant part:

9

We are optimistic about the outlook for Agria and our primary subsidiary PGG Wrightson, and believe that our valuation does not mirror this confidence. In fact, **we noted on our fiscal 2016 earnings call that the net fair market value of our assets -- in particular our ownership stake in PGW -- far exceeds our current ADS price**. Taking advantage of this valuation anomaly is one of several very attractive uses of capital for us.

*　　　*　　　*

Our Board adopted the 10b5-1 plan in order for us to safely purchase our ADSs immediately and regularly. In addition, we are able to purchase additional blocks when financially attractive under the 10b-18 rule. Purchases have already been executed.

(Emphasis added).

36. On October 27, 2016, Agria issued an open letter to its stockholders about the

ADS repurchase program. The letter states in the relevant part:

We are writing to report on the initial success of your Company's share repurchase program. As you may recall, on June 8, 2016 the Board authorized the repurchase of up to $10 million worth of our American Depositary Shares ("ADS" or "shares"), which trade on the New York Stock Exchange. The repurchase program was motivated by the Board's assessment that the **ADSs were significantly undervalued** relative to the assets of the firm. In particular, the trading price of an ADS is still today far below the our calculation of net asset value of the company, which reflects our economic interest in PGG Wrightson less debt and other liabilities.

Based on the most recently quoted price of PGG Wrightson and the current NZD/USD exchange rate, **we calculate our net asset value at over $1.35 per ADS, significantly above the most recently quoted trading price of $0.85 per ADS.**

We are taking action to address this valuation discount.

On October 6, 2016, we announced that we had adopted a 10b5-1 trading program, which enables us to buy shares in the open market on a regular and predefined basis, thus avoiding any issues relating to material non-public information. At the time of the announcement, the Board had approved the program, the trading account was opened with a major US-based brokerage firm, and purchases had commenced. We have been active buyers in the open market on every day since announcing the program. **Our volume has varied between 1/8 up to 1/3 of daily volume, depending on the day.** We are also authorized to make larger block purchases once a week, at our discretion.

10

Agria has a number of attractive options for deploying capital, due to the many growth opportunities at our main subsidiary PGG Wrightson. Most of our earnings will be redeployed to drive growth at PGW. Nonetheless, as long as our ADS remain significantly undervalued relative to our net asset value, we consider share repurchases to be a good use of capital, and the repurchase program will continue until the authorization limit is reached. At that point, should the ADS remain undervalued, we anticipate that the Board would extend the authorization amount and term.

(Emphasis added).

37.     The statements referenced in ¶¶26-36 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and compliance policies, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants engaged in trading to artificially inflate Agria's stock price in order to meet NYSE's continuing listing standards and avoid delisting from the NYSE; (2) the Company lacked effective internal controls over financial reporting; and (3) as a result of the foregoing, Defendants' public statements about Agira's business, operations, and prospects were materially false and misleading at all relevant times.

**The Truth Emerges**

38.     On November 4, 2016, Agria issued a press release announcing that it received a letter from NYSE on November 3, 2016 (the "NYSE Letter"), informing the Company that the NYSE decided to commence proceedings to delist Agria ADS from the NYSE. The press release states in relevant part:

According to the NYSE the determination to delist the Company was based on an investigation conducted by NYSE Regulation, which uncovered evidence demonstrating that the Company and its management engaged in operations contrary to the public interest and not in keeping with sound public policy pursuant to Section 802.01D of the Listed Company Manual. NYSE stated that it identified evidence indicating that the Company (i) through a top executive and other intermediaries engaged in trading intended to artificially inflate Agria's

11

stock price, including to improperly avoid having the Company delisted for failing to comply with NYSE's continued listing standards requiring companies to maintain an average stock price of at least $1.000 per share over a consecutive thirty-day trading period; and (ii) provided incomplete, misleading, or false information in connection with investigations related to these issues.

39.     In Agria's announcement on November 4, 2016, Agria for the first time disclosed a subpoena it received from SEC relating to a SEC's non public investigation on December 23, 2015, almost one year ago. Agria has been cooperating with SEC since then. The SEC's subpoena is focused on, among other things, Agria's historic and ongoing business operations in China.

40.     On this news, trading of the Company's ADSs was suspended on November 3, 2016 at $0.85. To date, trading in the Company's ADSs remains halted, making the Company's stock illiquid and virtually worthless.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Agria ADSs traded on NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Agria ADSs were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of

members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Agria or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Agria;

- whether the Individual Defendants caused Agria to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Agria ADSs during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

13

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Agria ADSs are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADSs; and

- Plaintiff and members of the Class purchased and/or sold Agria ADSs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

14

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

50.     At all relevant times, the market for Agria's ADSs was an efficient market for the following reasons, among others:

51.     As a result of the foregoing, the market for Agria's ADSs promptly digested current information regarding Agria from all publicly available sources and reflected such information in Agria's stock price. Under these circumstances, all purchasers of Agria's ADSs during the Class Period suffered similar injury through their purchase of Agria's ADSs at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM
### Violation of Section 10(b) Of
### The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

52.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase Agria's ADSs at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's ADSs in an effort to

15

maintain artificially high market prices for Agria's ADSs in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Agria as specified herein.

56. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Agria value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Agria and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Agria ADSs during the Class Period.

57. Each of the Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents of the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and

16

was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

58. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly.

59. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Agria's ADSs was artificially inflated during the Class Period. In ignorance of the fact that market prices of Agria's publicly-traded ADSs were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the ADSs trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclose in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Agria ADSs during the Class Period at artificially high prices and were or will be damaged thereby.

60. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Agria's financial results, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Agria ADSs, or, if they had acquired such ADSs

17

during the Class Period, they would not have done so at the artificially inflated prices that they paid.

61.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's ADSs during the Class Period.

63.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of ADSs giving rise to the cause of action.

**SECOND CLAIM**
**Violation of Section 20(a) Of**
**The Exchange Act Against Individual Defendants and Agria**

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     Individual Defendants are sued herein as a controlling person of Agria.

66.     By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness and/or intimate knowledge of the misleading statements disseminated to the investing public, these defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the primary violator, including the content and dissemination of the various statements that plaintiff contends are false and misleading. In particular, each defendant had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

18

67.     As set forth above, Agria violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint.

68.     By virtue of their positions as controlling persons, the individual defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's ADSs during the Class Period.

69.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of ADSs giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

19

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 9, 2016          Respectfully submitted,


**THE ROSEN LAW FIRM, P.A.**


/s/Laurence Rosen_____
Laurence Rosen, Esq.
609 W. South Orange Avenue
Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff