Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA, and BRIAN KELLY,<br><br>　　　　Defendants. | Case No. 2:21-cv-06240-PA-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF UNION INVESTMENT PRIVATFONDS GMBH TO INTERVENE, VACATE THE ORDER APPOINTING JEFF ROSS AS LEAD PLAINTIFF, AND REOPEN LEAD PLAINTIFF PROCESS**<br><br>CLASS ACTION<br><br>JUDGE: Percy Anderson<br>HEARING: January 31, 2022<br>TIME: 1:30 p.m.<br>CTRM: 9A |

Memo. P&As in Opp. to Mot. Of Union Investment Privatfonds GMBH to Intervene, Vacate the Order
Appointing Jeff Ross as Lead Plaintiff and Reopen Lead Plaintiff Process
2:21-cv-06240-PA-JEM

# **TABLE OF CONTENTS**

A.  The Initial Complaint Alleges the Broadest Class Period to Preserve Claims............................................................................................................5

B.  There was No Manipulation of the Lead Plaintiff Process; Union Makes the Tactical Decision Not to Participate in the Lead Plaintiff Process........................7

C.  The Amended Complaint Made Routine Changes to the Class Period to Include Related Developments and Partial Corrective Disclosures; None of Union's Authorities Support Re-Opening the Lead Plaintiff Process.................10

D.  Union Has Failed to Show it is Entitled to Intervene ...................................14

  a.  Union is not Entitled to Intervene as Matter of Right ...............................14

   1. Lead Plaintiff is Adequate ........................................................................15

   2. The Disposition of this Action, as a Practical Matter, Will not Impair or Impede Union's Ability to Protect its Interest.................................................16

  b.  Union is not Entitled to Permissive Intervention as it is Untimely and Will Prejudice the Parties .........................................................................................17

Conclusion ......................................................................................................179

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir.2003) ...............................................................................15

*Barry G. Depot v. Meta Platforms, Inc. f/k/a Facebook Inc., et al,*
4:21-cv-9973-JST (N.D. Cal.)...............................................................................8

*Brooks v. Life Care Centers of America, Inc.*,
2015 WL 12290031 (C.D. Cal. Mar. 3, 2015)...............................................16, 17

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects*,
309 F.3d 1113 (9th Cir. 2002) ...........................................................................6, 17

*California Public Employees' Retirement System v. ANZ Securities, Inc.*,
137 S. Ct. 2042 (2017) .............................................................................................1

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011)..................................................................................14

*Deering v. Galena Biopharma, Inc.*,
2014 WL 4954398 (D. Or. Oct. 3, 2014)..............................................................7, 8

*Dube v. Signet Jewelers Ltd.*,
2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017)..........................................................14

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .......................................................7, 8

*Eichenholtz*, 2008 WL 3925289 ..............................................................................10

*Greenberg v. Bear Stearns & Co.*,
80 F.Supp.2d 65 (E.D.N.Y. 2000) .........................................................................18

*Hachem v. Gen. Elec. Inc.*,
2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018),.........................................................13

ii

*Hatamian v. Advanced Micro. Devices*, *Inc.*,
  2017 WL 1075051 (N.D. Cal. Mar. 22, 2017)......................................................17

*In re Allergan plc Securities Litigation,*
  No. 18-cv-12089 (S.D.N .Y.).................................................................................8

*In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*,
  2010 WL 143980 (S.D.N.Y. Apr. 9, 2010)..........................................................10

*In re Boston Scientific Corporation Securities Litigation*,
  No. 20-cv-12225 (D. Mass.) ..................................................................................8

*In re Cloudera, Inc. Sec. Litig.*,
  2020 WL 1288362 (N.D. Cal. Mar. 18, 2020)............................................. *passim*

*In re Countrywide Financial Corp. Securities*,
  273 F.R.D. 586 (C.D. Cal. Dec. 9, 2009)..............................................................16

*In re Equifax Inc. Sec. Litig.*,
  No. 1:17-cv-03463 (N.D. Ga.) ...............................................................................8

*In re Hebron Technology Co., Ltd. Securities Litigation*,
  2020 WL 5548856 (S.D.N.Y. Sep. 16, 2020)......................................................17

*In re Kraft Heinz Securities Litigation,*
  No. 19-cv-1339 (N.D. Ill.) .....................................................................................8

*In re Leapfrog Enters., Inc. Sec. Litig.*,
  2005 WL 5327775 (N.D. Cal. July 5, 2005).........................................................13

*In re Oracle Corporation Securities Litigation,*
  No. 18-cv-4844 (N.D. Cal.) ....................................................................................8

*In re Petrobras Securities Litigation*,
  104 F.Supp.3d 618 (S.D.N.Y. May 17, 2015) .....................................................17

*In re Philip Morris International Inc. Securities Litig.,*
  No. 18-cv-8049 (S.D.N.Y.)......................................................................................8

iii

*In re Thornburg Mortg., Inc. Sec. Litig.*,

629 F.Supp.2d 1233 (D.NM. 2009) ......................................................................12

*In re Valence Technology Securities Litigation*,

1996 WL 119468(N.D. Cal. Mar. 14, 1996).........................................................16

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and*

*Securitization,* LLC,

616 F. Supp. 2d 461 (S.D.N.Y. 2009)...................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,

947 F. Supp.2d 366 (S.D.N.Y. 2013)....................................................................14

*Kaplan v. S.A.C. Capital Advisors, L.P.*,

947 F.Supp.2d 366 (S.D.N.Y. 2013).....................................................................12

*League of United Latin Am. Citizens v. Wilson,*

131 F.3d 1297 (9th Cir. 1997) ..............................................................................15

*Ngian v. Facebook Inc., et al.*,

1:21-cv-05976-MKB-RER (E.D.N.Y.)..............................................................7, 8

*Ohio Public Employees Retirement System v. Meta Platforms, Inc. f/k/a Facebook,*

*Inc., et al.*,

4:21-cv-08812-JST (N.D. Cal.)...............................................................................8

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,

2020 WL 1181366 (D. Conn. Mar. 10, 2020) ......................................................12

*Perry v. Proposition 8 Official Proponents*,

587 F.3d 947 (9th Cir. 2009).........................................................................14, 18

*SEC v. Small Bus. Capital Corp.*,

2014 WL 3749900 (N.D. Cal. June 29, 2014) ......................................................18

*Spangler v. Pasadena City Bd. of Educ.*,

552 F.2d 1326 (9th Cir. 1977) ..............................................................................18

iv

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   2005 WL 1322721 (S.D.N.Y. June 1, 2005) ........................................................13

*Thomas v. Magnachip Semiconductor Corp.*,
   2015 WL 3749784 (N.D. Cal. June 15, 2015) .....................................................12

*Torres v. Wells Fargo Bank, N.A.*,
   2019 WL 7169790 (C.D. Cal. Sept. 27, 2019) ....................................................16

*Union Asset Management AG v. Fluor Corp.*,
   No. 20-cv-005188 (N.D. Tex.)..............................................................................8

*Vanleeuwen v. Keyuan Petrochemicals*,
   2013 WL 2247394(S.D.N.Y. May 9, 2013) .........................................................13

*Yanek v. Staar Surgical Co.*,
    2004 WL 5574358 (C.D. Cal. Dec. 15, 2004) ......................................................9

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(i) ......................................................................................8

28 U.S.C. § 1658 (b)(2) .............................................................................................6

**Rules**

Fed. R. Civ. P. 24(a) ..................................................................................................1

Fed. R. Civ. P. 24(a)(2) ............................................................................................14

Fed. R. Civ. P. 24(b) ....................................................................................1, 17, 19

Lead Plaintiff Jeff Ross and named plaintiffs Gary Cheng, Micah Ernst, Michael Noon, Nick Baldwin, Chris Martin, and Alejandro Toiber (collectively "Plaintiffs") submit this memorandum of points and authorities in opposition to the Motion of Union Investment Privatfonds GmbH ("Union") to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff and Reopen Lead Plaintiff Process (Dkt. No. 50).

Union moves to intervene as matter of right under Fed. R. Civ. P. 24(a) or permissively under Rule 24(b) for a do-over of the Lead Plaintiff process. Rather than focusing on the elements required to intervene, which Union fails to satisfy, Union's motion primarily relies on two categories of baseless arguments.

First, Union falsely asserts that Plaintiff Gary Cheng and his counsel, The Rosen Law Firm ("RLF"), pled an overbroad class period in the initial complaint (Dkt. No. 1, the "Initial Complaint") of August 4, 2016 through July 27, 2021 (the "Initial Class Period") — instead of starting the period on February 28, 2017 — in an effort to exclude Union and other institutional investors from the Lead Plaintiff process. Union claims that the "overbroad class period *forced institutional investors like Union*—the paradigmatic investor that Congress wanted to lead cases like this one—to include in their financial interest calculation irrelevant purchases of Activision Blizzard, Inc. ("Activision") stock which did not give rise to claims for securities fraud." (emphasis added) (Dkt. No. 50 at 3:17-21, "Union Mot."). This accusation is false.

The Initial Class Period was almost 60 months to preserve claims. The statute of repose for the securities fraud claims is five years. 28 U.S.C. § 1658 (b)(2). The repose is not tolled. *See California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042, 2055 (2017). Given the repose, Plaintiff Cheng and RLF chose the earliest possible date of August 4, 2016 for the Initial Class Period. This was reasonable given that the sexual harassment and discrimination misconduct predated the repose period and was ongoing until the end of the Initial

Class Period. It was impossible for Plaintiff Cheng to know how many other shoes would drop and how much further Activision's share price would fall as additional news related to the misconduct was publicly disclosed. The nearly 60 month class period was necessary to protect investors' rights against the unforgiving nature of the statute of repose. This is precisely the role of a class representative – to protect the interests of absent class members. Indeed, Mr. Cheng would hardly be justified in filing a class action if he had excluded from the class all investors who had purchased stock prior to his first purchase. The initial plaintiff, Mr. Cheng, acted properly to protect class members' interests.

Remarkably, even if the Initial Class Period started on February 28, 2017 as it does in Lead Plaintiff's Amended Complaint (Dkt. No. 39, the "Amended Complaint"), Union would still not have had any losses. (*See* Declaration of Laurence Rosen, filed herewith "Rosen Decl." Ex. 1). Moreover, ***Union was not forced to include "irrelevant purchases" from August 4, 2016 to February 27, 2017 in its loss calculations—because it did not have any. It first purchased Activision shares on May 22, 2018!*** (Dkt. No. 50-4). Union's trading also contradicts its argument that institutions "are more likely to build and hold positions over time" as it made no purchases in the beginning of the Initial Class Period and Union was actively purchasing and actively selling Activision shares throughout the class period. (Union Mot. at 6:5:11; *see, also* Dkt. No. 50-4). There are thousands of institutional investors in the world that were purchasing and selling Activision stock. It is impossible for RLF or anyone to attempt to guess the trading patterns of all institutions around the world and to guess correctly when they would or would not have purchased and sold shares.

Accordingly, Union's complaint that RLF or Plaintiff Cheng manipulated the beginning of the Class Period is a completely contrived and pretextual attempt to get the Court to reopen the Lead Plaintiff process. Union's real reason for wanting the Lead Plaintiff process reopened is because of stock drops that ***occurred***

*subsequent to the filing of the Initial Complaint*.  But, as Union itself admits, extending the end-date of the Initial Class Period does not require republication of the PSLRA notice.  (Union Mot. at 20:12-13).  Otherwise, in every case in which a subsequent event occurs that may warrant extending the class period, the lead plaintiff order must be vacated and a new lead plaintiff process begun anew.

Furthermore, regardless of the class period that Plaintiff Cheng chose,  Union and other institutional investors were not "forced" to accept it or the allegations in the Initial Complaint.  Neither Union nor its counsel can claim ignorance to the Lead Plaintiff process.  Union is a frequent Lead Plaintiff movant and its longtime counsel, Bernstein Litowitz Berger & Grossman LLP ("BLBG"), is experienced. Union could have filed its own complaint alleging a wholly different class period rather than allegedly being manipulated out of millions in losses.  Union  also could have filed an opposition to Mr. Ross' lead plaintiff motion.  Union chose not to do either.

BLBG, through its long roster of institutional investor clients, who supposedly were also being manipulated out of this case, could have filed a complaint to allege a class period it believed to be more appropriate or otherwise oppose Mr. Ross' lead plaintiff motion.  BLBG did not despite the fact that it has challenged class periods at the lead plaintiff stage in other cases, such as the *Facebook* case mentioned it is motion.  The same is true for the at least seven additional plaintiffs securities class action firms that were investigating this action, but none did.  Far from manipulation, these facts demonstrate that the Initial Class Period was reasonable.

Second, Union claims that the class period in the Amended Complaint, February 28, 2017 through November 16, 2021 (the "Amended Class Period"), dramatically altered the contours of the lawsuit and as such, requires the issuance of a new PSLRA notice and reopening the Lead Plaintiff Process.  (Union Mot. at 16:9-11).  Union's arguments are without merit.

3

Union, as discussed above, admits that the extension of the end-date of the Initial Class Period from July 27, 2021 to November 16, 2021 "alone, would not necessarily require republication." (Union Mot. at 24:12-13). Indeed, in extending the end-date of the Initial Class Period, Lead Plaintiff did not allege any new claims, misstatements, or theories. The claims in both complaints are identical, violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. In extending the Initial Class Period, the Amended Complaint added additional partial corrective disclosures related to the same alleged claims. These are not new claims, these are new factual allegations showing the element of loss causation and entitlement to damages.

As to the shortening of the beginning date of the Initial Class Period from August 4, 2016 to February 28, 2017, this did not change the theory of the case, the misstatements, or any of the claims—let alone dramatically alter the contours of the case. The Amended Class Period simply eliminates the identical misstatement alleged in the August 4, 2016 10-Q and the November 3, 2016 10-Q because, after a very thorough investigation and with the benefit of later public disclosures, Lead Counsel and Lead Plaintiff determined that the case underlying the first two periodic reports was substantially weaker than for the later periodic reports. (Initial Complaint ¶¶16, 18). Lead Plaintiff decided to put the best case forward. These types of changes to the Initial Class Period in the Amended Complaint are routine and are within the authority of Lead Plaintiff and RLF. None of Union's case authorities suggest otherwise.

Union is not entitled intervene. Union has failed to make the requisite "compelling showing" that Lead Plaintiff or RLF is inadequately representing its rights. Union merely relies on one conclusory sentence in its motion that certain unidentified key facts and misstatements were not alleged in the Amended Complaint. (Union Mot. at 22:8:13). This falls well short any kind of showing—let alone a compelling one. Union's motion is nothing but a disingenuous power

and money grab by its counsel.  Union can protect its rights and allege the precise claims it wants through an individual action.  Lastly, Union's motion is untimely and the delay caused by re-opening the Lead Plaintiff process will unduly prejudice the existing parties.  Union and its counsel had the opportunity to address the class period issues at the Lead Plaintiff stage.  They chose not to.

Union's motion should be denied.

## A. The Initial Complaint Alleges the Broadest Class Period to Preserve Claims

Plaintiff Cheng filed the Initial Complaint on August 3, 2021 asserting the Initial Class Period of August 4, 2016 through July 27, 2021.  The Initial Complaint alleges that Defendants misrepresented and/or failed to disclose that: (1) Activision discriminated against women and minority employees; (2) Activision fostered a pervasive "frat boy" workplace culture that continues to thrive; (3) numerous complaints about unlawful harassment, discrimination were made to human resources personnel and executives, but went unaddressed, and often resulted in retaliation; (4) the pervasive culture of harassment, discrimination, and retaliation would result in serious impairments to Activision's operations; (5) as a result of the foregoing, Activision was at greater risk of regulatory and legal scrutiny and enforcement, including that which would have a material adverse effect; (6) Activision failed to inform shareholders that the California Department of Fair Employment and Housing ("DFEH") had been investigating Activision for harassment and discrimination; and (7) as a result, Defendants' statements about Activision's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. (*E.g.,* Initial Complaint ¶31).

On August 3, 2021, RLF issued an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Initial Class Period, and advising class members of their option to seek

Memo. P&As in Opp. to Mot. Of Union Investment Privatfonds GmbH to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff and Reopen Lead Plaintiff Process -2:21-cv-06240-PA-JEM

appointment as Lead Plaintiff by October 4, 2021.  (Dkt. No. 23-1).  Union, a sophisticated institution received notice of the suit, reviewed the Initial Complaint, and was aware of the Lead Plaintiff deadline.  (Dkt. No. 50-3 ¶¶6-7).

Plaintiff Cheng and RLF started the Class Period on August 4, 2016, given Activision's long-running misconduct over many years.  Additionally, the truth about the full extent and nature of the sexual and racial discrimination at Activision was not yet fully known and the precise contours of the claims were subject to adjustment as additional news of the misconduct became available.  Plaintiff Cheng and RLF selected August 4, 2016 as the beginning of the Initial Class Period because it was the earliest date to start the class period given the five year statue of repose for securities fraud claims.  28 U.S.C. § 1658 (b)(2).  The statute of repose is not tolled by the filing of the Initial Complaint. *See, ANZ Securities, Inc.*, 137 S. Ct. at 2055.

The alleged sexual harassment and discrimination misconduct long predated August 4, 2016, and information about that misconduct was and is still developing and materializing.  Indeed, leading up the end of the Initial Class Period, reports of the filing of the DFEH lawsuit were issued on July 21, 2021 (Initial Complaint ¶ 32); and the first employee protests broke out on July 26-27, 2021. (Initial Complaint ¶¶33-34).  By the time Mr. Ross filed his lead plaintiff motion on October 4, 2021, additional details about the alleged wrongdoing had become public,[1] including an announcement on September 20, 2021 of an SEC investigation into Activision's disclosures to investors about workplace discrimination and misconduct. (Amended Complaint ¶28).  The SEC investigation announcement caused an 8% stock price decline to $73.03/share.  (*Id.*, at ¶219).  Thereafter, additional details and partial corrective disclosures relating to the claims in the

---

[1] *See,* Amended Complaint ¶27, on August 23, 2021 DFEH Amended Complaint filing announced; ¶ 29, on September 27, 2021 EEOC Complaint filing announced.

Initial Complaint entered the market with the last corrective disclosure occurring on November 16, 2021.  (*Id*., ¶¶30-31, 33).

## B.  There was No Manipulation of the Lead Plaintiff Process; Union Makes the Tactical Decision Not to Participate in the Lead Plaintiff Process

Union variously argues that the Initial Class Period was overly broad because it began too early; that it should not have started on August 4, 2016, but on February 28, 2017, seven months later.  (Union Mot. at 21:13-15).  Union speculates that "the overbroad class period ***forced institutional investors like Union***—the paradigmatic investor that Congress wanted to lead cases like this one—to include in their financial interest calculation irrelevant purchases of Activision Blizzard, Inc. ('Activision') stock, which did not give rise to claims for securities fraud." (emphasis added) (Union Mot. at 3:17-21).  This argument is false for at least three reasons.

The time for Union or its experienced counsel, BLBG, to air their grievances about the Initial Class Period was during the lead plaintiff stage.  Neither Union nor any other institutional investor was ***forced*** to accept the Initial Class Period if they did not like it.  Class period disputes are routinely resolved at the lead plaintiff stage. *E.g.*, *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (resolving competing class periods at the lead plaintiff stage and citing cases); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (same).  Union relies on the *Facebook* case RLF filed to suggest an improper class period here.[2]  (Union Mot. at 22:12-20).  *Facebook*, however, further evidences that plaintiffs frequently file complaints with competing class periods to

---

[2] Union's claim that the longer class period in Facebook is inappropriate is without merit.  Union's conclusion is based on the selective omission of partial corrective disclosures alleged throughout the class period that caused investor losses.  *Ohio Public Employees Retirement System v. Meta Platforms, Inc. f/k/a Facebook, Inc., et al.*, 4:21-cv-08812-JST (N.D. Cal.), Dkt. No. 22 at 13; *Ngian v. Facebook Inc., et al.*, 1:21-cv-05976-MKB-RER (E.D.N.Y.), Dkt. No. 6-7.

7

be resolved at the lead plaintiff stage. In *Facebook*, RLF filed the first class action complaint. *See, Ngian v. Facebook Inc., et al.*, 1:21-cv-05976-MKB-RER (E.D.N.Y.). Unhappy with that class period, other law firms, prior to the lead plaintiff deadline, filed competing complaints with different class periods, including BLBG who filed a complaint with a shorter class period than the one filed by RLF. *See, Ohio Public Employees Retirement System v. Meta Platforms, Inc. f/k/a Facebook, Inc., et al.*, 4:21-cv-08812-JST (N.D. Cal.) (BLBG filed complaint); *Barry G. Depot v. Meta Platforms, Inc. f/k/a Facebook Inc., et al.*;  4:21-cv-9973-JST (N.D. Cal.).  As in the above cited cases, the *Facebook* court will resolve the class period dispute when it decides the lead plaintiff motion.  *See Deering*, 2014 WL 4954398 at * 10; *Eichenholtz*, 2008 WL 3925289 at * 2; *see also,* 15 U.S.C. §78u-4(a)(3)(B)(i) (consolidation of related cases are decided before the appointment of lead plaintiff). The time for Union and BLBG to assert a shorter class period was at the lead plaintiff stage.

Union cannot claim it was unaware of the available procedures under the PSLRA.  Nor is it plausible since Union frequently seeks lead plaintiff status represented by the same counsel here, BLBG.[3]  It is undisputed that the PSLRA requires prospective lead plaintiffs to take an active role in the litigation and to vigorously prosecute an action. *Yanek v. Staar Surgical Co.*, 2004 WL 5574358, at

---

[3] *Union Asset Management AG v. Fluor Corp*., No. 20-cv-005188 (N.D. Tex.); *In re Boston Scientific Corporation Securities Litigation,* No. 20-cv-12225 (D. Mass.); *In re Oracle Corporation Securities Litigation,* No. 18-cv-4844 (N.D. Cal.); *In re Allergan plc Securities Litigation,* No. 18-cv-12089 (S.D.N .Y.); *In re Kraft Heinz Securities Litigation,* No. 19-cv-1339 (N.D. Ill.); *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463 (N.D. Ga.).  Union is also currently lead or co-lead plaintiff in at least four securities class actions: *In re Oracle Corporation Securities Litigation,* No. 18-cv-4844 (N.D. Cal.); *In re Philip Morris International Inc. Securities Litig.*, No. 18-cv-8049 (S.D.N.Y.); *In re Kraft Heinz Securities Litigation,* No. 19-cv-1339 (N.D. Ill.); *In re Boston Scientific Corporation Securities Litigation,* No. 20-cv-12225 (D. Mass.).

8

*6 (C.D. Cal. Dec. 15, 2004) ("the court must examine [1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of the absentees [.]") (internal quotation omitted).  Contrary to these principles, Union sat on its hands and did nothing, and it is too late now.

Additionally, even if the Initial Class Period had started on February 28, 2017, as it does in the Amended Complaint, Union would still have **_no loss_**.  (*See* Rosen Decl., Ex. 1).  This is because Union did not purchase any shares in the seven month period from August 4, 2016 through February 28, 2017.  (Dkt. No. 50-4).  Therefore, it could not have moved for Lead Plaintiff on October 4, 2021 on its purported "corrected" class period of February 28, 2017 through July 27, 2021.  Thus, the entire premise on which Union rests its motion is false.  The only reason Union has a loss now is because of the expansion of the Initial Class Period from its prior end-date of July 27, 2021 to the new end-date of November 16, 2021, to capture additional corrective disclosures that occurred after the filing of the Initial Complaint—which Union admits "alone, would not necessarily require republication." (Union Mot. at 20:12-13).

While Union has no loss whether the Initial Class Period started on August 4, 2016 or February 28, 2017, Union could have filed a complaint alleging the additional partial corrective disclosures that happened after the filing of the Initial Complaint but before the lead plaintiff deadline of October 4, 2021.  Union could have filed a competing complaint with a class period ending on September 20, 2021, when the SEC Investigation of Activision was reported and caused the price of Activision's stock to decline.  (Amended Complaint ¶28).  Had it done that, Union would have significant losses.  (*See* Rosen Decl., Ex. 2).  Union could have even filed an action with a wholly different class period than those mentioned here prior to the lead plaintiff deadline.  Union took no action.

Memo. P&As in Opp. to Mot. Of Union Investment Privatfonds GmbH to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff and Reopen Lead Plaintiff Process -2:21-cv-06240-PA-JEM

BLBG through its long roster of institutional investor clients, whose portfolios they monitor for potential legal claims[4] could have also filed a complaint to allege a class period it believed to be more appropriate or otherwise oppose Mr. Ross' lead plaintiff motion—given that they were purportedly being manipulated out of the case. The same is true for the seven other plaintiffs' securities class action firms that decided not to take any action.[5]

In short, the Lead Plaintiff process was not manipulated to exclude institutional investors and Union has not presented any evidence of manipulation. Union and its counsel made the strategic decision not to involve itself in the Lead Plaintiff process where these issues are properly resolved.

**C. The Amended Complaint Made Routine Changes to the Class Period to Include Related Developments and Partial Corrective Disclosures; None of Union's Authorities Support Re-Opening the Lead Plaintiff Process**

"The appointed lead plaintiff can decide how to frame their amended complaint to allege an appropriate class period." *Eichenholtz*, 2008 WL 3925289, at* 3; *In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, 2010 WL 143980, at * 2 (S.D.N.Y. Apr. 9, 2010) ("[I]n a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class.").

---

[4] BLBG and other plaintiffs securities class action firms provide free portfolio monitoring services to institutional investors and high net worth individuals to monitor their portfolios for potential legal claims. *See,* https://www.blbglaw.com/client-services/portfolio-monitoring; and https://www.blbglaw.com/client-services/global-monitoring; *see, also Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization,* LLC, 616 F. Supp. 2d 461, 464-467 (S.D.N.Y. 2009) (describing portfolio monitoring programs provided by plaintiffs' securities class action firms).

[5] At least seven plaintiffs securities class action firms were investigating the allegations in this case. (*See,* Rosen Decl., Ex. 3).

10

Exercising this authority, on December 3, 2021, Lead Plaintiff filed the Amended Complaint.  The Initial Class Period was changed from August 4, 2016 through July 27, 2021 to February 28, 2017 through November 16, 2021.

The end-date of the Initial Class Period was extended from July 27, 2021 to November 16, 2021 to capture the additional corrective disclosures and events that materialized after the filing of the Initial Complaint. (Union Mot. at 24:2-11; Amended Complaint at 27-29, 31, and 33).  No new misstatements, claims, theories, or classes of securities were added by the Amended Class Period.  Indeed, Union admits that the extension of the Initial Class Period on the back-end "would not necessarily require republication" of notice.  (Union Mot. at 24:12-13).

The shortening of the front-end of the Initial Class Period from August 4, 2016 to February 28, 2017 also did not change the theory or claims of the case. Lead Plaintiff and RLF, after an extensive investigation that included interviews with dozens of former employees, determined in their judgment that the case for the two identical misstatements in the first two 10-Q filings on August 4 and November 3, 2016 was notably weaker than for the later SEC filings, and so decided not to include the misstatements from those two filings.  Importantly, the misstatements, in those two filings are identical to misstatements in Activision's later periodic reports in both the Initial and Amended Complaints.  (Initial Complaint ¶¶16 and 18; Amended Complaint ¶¶248, 250, 253, and 262).   The nature of the misstatements and the theory of the case remains absolutely the same in the Amended Complaint.

Union bemoans that the Amended Complaint also includes one new misrepresentation from Activision's June 11, 2021, Environmental, Social, and Governance ("ESG") report that Activision "does not tolerate retaliation against any employee who makes a good faith report or assists in good faith in an investigation." (Union Mot. at 19:26-27).   But the Initial Complaint alleged that each of

11

Activision's period SEC filings contained the *identical* misrepresentation.  (Initial Complaint ¶30).

These routine changes to a class period are not grounds to re-open the Lead Plaintiff process.  Courts "'typically disfavor republication when a complaint is amended unless the amended complaint substantially alters the claims or class members.'"  *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015) (quoting *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F.Supp.2d 366, 367 (S.D.N.Y. 2013)); *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F.Supp.2d 1233, 1242 (D.NM. 2009) (denying republication because "[t]he new claims are closely related to the initial claims expressly covered in the notice, and requiring further notice for the amendments here would serve only to delay the progress of this case and would contravene the PSLRA notice provisions' goal of securing lead plaintiffs as soon as practicable.") (internal quotation marks omitted). When the legal claims are the same and the factual allegations substantially similar between the original and amended complaint, no republication is necessary under the PSLRA.  *Ontario Teachers' Pension Plan Bd. V. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *10 (D. Conn. Mar. 10, 2020).

Union itself and/or its counsel, BLBG, routinely amends complaints in this manner without issuing new notice.  As set forth in Exhibit 3 to the Rosen Declaration, there are over 14 recent cases where BLBG has made similar changes to class periods in securities class actions that did not require the publication of a new PSLRA notice or reopening of the lead plaintiff process.

None of Union's cases support reopening the Lead Plaintiff process. In *In re Cloudera, Inc. Sec. Litig.*, 2020 WL 1288362, at *2 (N.D. Cal. Mar. 18, 2020), the Court reopened the lead plaintiff process because the amended complaint added a number of defendants including Intel Corporation, added new claims and theories under Section 11 of the Securities Act that were not previously alleged, and added

class members who acquired their stock not on the open market as previously alleged but in connection with a merger with another company.  *Id.*, at * 3.

In *In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 WL 5327775, at *2-* 3 (N.D. Cal. July 5, 2005), the amended complaint added a new set of misstatements based on a different theory and nearly tripled the length of the class period.  Thus, the court found that the "amended dramatically alter[ed] the contours of the lawsuit." *Id.*, at 3.  Here there are no new theories and the Amended Class Period is 11.5% shorter, not longer, if one ignores the extension of the end-date and only 5.2% shorter if one includes it—an immaterial change in either case.

In *Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018), the initial class period was three months and the alleged misstatements concerned General Electric's Power segment; whereas the competing complaint covered a "class period of almost five *years* and includes, in addition to claims regarding General Electric's Power segment, substantial allegations concerning GE's LTC business."  The court explained that while "republication is disfavored … the inquiry into whether republication is warranted is qualitative, 'turning on a comparison of the two complaints and an assessment of whether, in light of the amendments, 'entire classes of potential lead plaintiffs [were] left out of the notice procedure.'"  *Id.*, at *1.  Here, the Initial Class Period was shortened not extended. Thus, all relevant class members were included in the initial PSLRA notice. Moreover, Union admits that it received the PSLRA notice and decided not to participate in the lead plaintiff process.  (Dkt. No. 50-3 ¶9).

In *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 1322721, at *1 (S.D.N.Y. June 1, 2005), the amended complaint added an entirely new class of securities that were not covered in the initial notice.  Here no new securities were included in the Amended Complaint.  Likewise, in *Vanleeuwen v. Keyuan Petrochemicals*, 2013 WL 2247394, at *5 (S.D.N.Y. May 9, 2013), the amended complaint added a "whole new class of plaintiffs" who purchased

13

company securities in two private securities offerings that were not in the initial complaint and whose claims were based on wholly new allegations. That is not the case here.

In *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at * 1-*2 (S.D.N.Y. Apr. 14, 2017), the amended complaint added more than three years to the class period, and included "two categorically different theories of securities fraud" from the initial complaint. In *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp.2d 366, 367 (S.D.N.Y. 2013), the amended complaint *added two years* to an *8 day* initial class period – a 100 times increase in the original class period's length. In *Kaplan* the lead plaintiff also added insider trading claims. *Signet Jewelers* and *Kaplan* are easily distinguished, as here, Lead Plaintiff has not expanded the Class Period. He has shortened it. Nor has Lead Plaintiff added any new theories or any new claims. Thus, every possible class member has already received a PSLRA notice and had the opportunity to move for lead plaintiff. None of the case law supports reopening the lead plaintiff process here.

### D. Union Has Failed to Show it is Entitled to Intervene

#### a. Union is not Entitled to Intervene as Matter of Right

Where, as here, Union seeks to intervene as a matter right under Rule 24(a)(2), Union must satisfy a four-factor test. This test requires the proposed intervenor to "(1) assert a significant protectable interest relating to the property or transaction that is the subject of the action; (2) be represented inadequately by the parties to the action; (3) be situated such that disposition of the action, as a practical matter, may impair or impede one's ability to protect that interest; and (4) file a timely motion." *Cloudera,* 2021 WL 1238301, at * 2; *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

## 1. Lead Plaintiff is Adequate

The "most important factor" to determine whether a proposed intervenor is adequately represented by a present party to the action is "how the [intervenor's] interest compares with the interests of existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003) (citations omitted). "Adequacy of representation does not turn on whether an existing party will litigate the case 'in the exact manner' that a putative intervenor would if they controlled the litigation." *Cloudera*, 2021 WL 1238301, at * 3. Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Arakaki*, 324 F.3d at 1086 (citing *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1305 (9th Cir. 1997)).

Lead Plaintiff and Union have the same ultimate objective to maximize recovery on the alleged claims. Indeed, Union relies on the Amended Complaint for setting forth its claim to meet the pleading requirement to intervene.[6] Lead Plaintiff and Union's interests are aligned and Lead Plaintiff is presumed to be adequate.

Union has not made the requisite "compelling showing" of inadequacy. Union makes the conclusory assertion that: "notwithstanding the additional allegations included in the Amended Complaint, Rosen and Mr. Ross have missed key facts, such as additional misrepresentations related to the Company's purported commitment to ESG principles, as well as assurances made by Defendants that misleadingly indicated that they did not know about inappropriate conduct at issue." (Union Mot. at 22:9-13). Union fails to identify the "key facts" or "additional misrepresentations" that should have been included and fails to explain why they

---

[6] *See* Motion at 14, fn. 7: "Union adopts as its pleading for the purposes of its motion the Amended Complaint."

should have been included.[7]    This speculation falls well short of making a compelling showing of inadequacy.[8]  *See Brooks v. Life Care Centers of America, Inc.*, 2015 WL 12290031, at * 2 (C.D. Cal. Mar. 3, 2015) (rejecting assertions that plaintiffs "have not sufficiently investigated or advanced certain claims, and fail to raise certain claims" as they were unsupported by evidence, speculative and "at best, merely addresses differences in litigation strategy"); *Cloudera*, 2021 WL 1238301, at * 3 (that lead plaintiff did not include proposed intervenor's preferred misstatements and omissions in the amended complaint, was not grounds to find inadequacy).

### 2. The Disposition of this Action, as a Practical Matter, Will not Impair or Impede Union's Ability to Protect its Interest

Union has not made any showing that without its participation as a Lead Plaintiff,[9] this case would materially impair or impede its rights.  *See,  Hatamian v.*

---

[7] Union makes the contradictory claim that after a new lead plaintiff is appointed, "properly appointed Lead Plaintiff can file an amended complaint ***or proceed on the Amended Complaint already filed***, after a fair leadership process is run in accordance with the PSLRA's notice requirements."   (Union Mot. 26:5-8) (emphasis added).  If Union actually believes the Amended Complaint is missing keys facts or not adequately representing its interest, why are they agreeing that a new Lead Plaintiff may rest on the Amended Complaint?

[8]   Having failed to apprise the Court of these purported additional facts and claims in its opening papers, Union is prohibited from explicating these matters on reply. *See, Torres v. Wells Fargo Bank, N.A.*, 2019 WL 7169790, at * 2 (C.D. Cal. Sept. 27, 2019) ("[T]he well-established rule that courts should not consider new arguments raised for the first time in a reply brief.") (citing cases).

[9] Union is an unsuitable Lead Plaintiff and subject to unique defenses because it purchased 1,203,362 shares of Activision on August 6, 9, 10, and 12 2021, after the fraud was disclosed on July 27, 2021. (Dkt. No. 50-4).   Courts have found that lead plaintiff movants that purchase significant amounts of shares after the fraud is disclosed to be atypical and inadequate. *E.g., In re Valence Technology Securities Litigation*, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996); *In re Countrywide Financial Corp. Securities*, 273 F.R.D. 586, 603 fn.38 (C.D. Cal. Dec. 9, 2009); *In re Hebron Technology Co., Ltd. Securities Litigation*, 2020 WL 5548856, at *7

16

*Advanced Micro. Devices*, *Inc.,* 2017 WL 1075051, at * 2 (N.D. Cal. Mar. 22, 2017) (denying intervention as a matter of right because proposed intervenor failed to explain how his rights were impaired or impeded).

Union has "several means to protect their interests" including "by simply opting out of the class to pursue their claims separately." *See, Brooks*, 2015 WL 13390031, at *2  (denying motion to intervene as a matter of right); *Hatamian*, 2017 WL 1075051, at * 2 (same).

In sum, Union has failed to demonstrate it is entitled to intervene as a matter of right.

### b. Union is not Entitled to Permissive Intervention as it is Untimely and Will Prejudice the Parties

Rule 24(b) provides, in pertinent part, that the Court may permit intervention "on timely motion" by a proposed intervenor who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  Courts should consider three factors to determine whether a motion is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects*, 309 F.3d 1113, 1119 (9th Cir. 2002) (internal quotation marks and citations omitted).

Union's motion is untimely.  As discussed above, Union and its counsel were fully apprised of this action and the PSLRA procedures.  (Dkt. 50-3, ¶¶6-8).  Union and its counsel had the opportunity to participate in the Lead Plaintiff process and chose not to.  *Id*.  Union admits that it reviewed the Initial Complaint and decided not to file a lead plaintiff motion because it had gains in the Initial Class Period.  *Id*. If Union believed that Lead Counsel had manipulated the Class Period than the time for Union to raise the issue was there and then at the Lead Plaintiff stage.  It chose

---

(S.D.N.Y. Sep. 16, 2020); *In re Petrobras Securities Litigation*, 104 F.Supp.3d 618, 623 (S.D.N.Y. May 17, 2015).

to sit on its hands. Plaintiffs and the class will be prejudiced by the delays caused by a renewed lead plaintiff process and potentially new amended pleadings and new motions to dismiss. Defendants' motions to dismiss are set for hearing on February 28, 2022 (Dkt. No. 52). "Moreover, the initiation of discovery is currently stayed pursuant to the PSLRA, and … intervention would further delay the initiation of discovery." *See Cloudera*, 2021 WL 1238301, at * 4 (finding intervention motion untimely because motions to dismiss were already filed and discovery would be delayed).[10] Vacating the lead plaintiff order will mean that the same process that began over five months ago August 3, 2021, will now have to start anew. That means further months of delay. And a new lead plaintiff might decide to amend the complaint to add new allegations or a different class period. That would potentially open up the lead plaintiff process a third time. The Court should not countenance such a needless delay to these proceedings.

Even when all the "requirements are satisfied, the district court has the discretion to deny permissive intervention." *SEC v. Small Bus. Capital Corp.*, 2014 WL 3749900, at * 2 (N.D. Cal. June 29, 2014). The Court "may also consider other factors in the exercise of its discretion, including 'the nature and extent of intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry,* 587 F.3d at 955 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

---

[10] Union claims its motion is timely because it was made "11 days after the deadline for Mr. Ross publish his notice Amended Complaint expired." (Union Mot. at 13:21-22). There is no requirement in the PSLRA for a Lead Plaintiff to issue notice. *See, Greenberg v. Bear Stearns & Co.*, 80 F.Supp.2d 65, 69 (E.D.N.Y. 2000) ("The [PSLRA] does not mandate, nor does it suggest, that a Court approved lead plaintiff must re-publish notice of the purported class after an amended complaint is filed.").

As discussed above, Lead Plaintiff and Union's interests are the same and Lead Plaintiff is presumptively adequate.  Union has failed to make the required "compelling showing" of inadequacy.  Nor has Union established that its interests in this case would be impaired if intervention is not granted.  Therefore, even if the Court finds that the requirements of Rule 24(b) have been satisfied, the Court should deny Union's motion for permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court should deny Union's motion to intervene in its entirety.

Dated:   January 10, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Brian B. Alexander, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: balexander@rosenlegal.com

*Lead Counsel for Plaintiffs*

19

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On January 10, 2022, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF UNION INVESTMENT PRIVATFONDS GMBH TO INTERVENE, VACATE THE ORDER APPOINTING JEFF ROSS AS LEAD PLAINTIFF, AND REOPEN LEAD PLAINTIFF PROCESS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 10, 2022.

/s/ Laurence M. Rosen
Laurence M. Rosen

Memo. P&As in Opp. to Mot. Of Union Investment Privatfonds GmbH to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff and Reopen Lead Plaintiff Process -2:21-cv-06240-PA-JEM