KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

RYAN CORRIVEAU (SBN 328096)
ryan.corriveau@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendants*
*Activision Blizzard, Inc., Robert A. Kotick,*
*Dennis Durkin, Armin Zerza and Brian Kelly*

[*Additional Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated, | No. 2:21-cv-06240-PA-JEM |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA and BRIAN KELLY, | Date:  February 28, 2022 |
| Defendants. | Time:  1:30 p.m. |
| | Place:  Courtroom 9A, First Street Courthouse |
| | Judge:  The Honorable Percy Anderson |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

      A.    Activision and the Individual Defendants ............................... 2

      B.    The EEOC and DFEH Investigations and Subsequent
            Proceedings ............................................................................. 3

      C.    Procedural Background and Plaintiffs' Claims ....................... 5

III.  GOVERNING LEGAL STANDARDS ................................................ 6

IV.   THE AC DOES NOT ALLEGE AN ACTIONABLE
      MISSTATEMENT ............................................................................... 6

      A.    Plaintiffs Do Not Plead Falsity with Respect to the
            Investigations ......................................................................... 7

            1.    The Legal Proceedings Statement Cannot Support a
                  Claim ............................................................................. 7

            2.    There Was No Duty to Disclose the Investigations ................. 10

      B.    Plaintiffs' Code of Conduct Allegations Do Not Support a Claim .... 10

            1.    The Statements Are Not Actionable as a Matter of Law ........ 10

            2.    Plaintiffs Do Not Plead Falsity in Any Event ......................... 13

      C.    Plaintiffs Do Not Plead that the ESG Report Is Actionable .............. 15

V.    THE AC FAILS TO PLEAD A STRONG INFERENCE OF
      SCIENTER ........................................................................................ 16

      A.    The AC Does Not Plead Contemporaneous Knowledge of Facts
            Inconsistent with Any of the Challenged Statements ......................... 17

      B.    The Motive and Opportunity Allegations Are Unavailing ................. 21

      C.    The Remaining Scienter Arguments Are Also Meritless ................... 23

VI.    THE CONTROL PERSON CLAIM MUST BE DISMISSED ................... 25

VII.   CONCLUSION ............................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3 **Cases**

4
*Abbate v. Wells Fargo Bank, N.A.*,
5     2011 WL 9698215 (C.D. Cal. Nov. 17, 2011) ............................................. 25

6 *Ashcroft v. Iqbal*,
7     556 U.S. 662 (2009) ..................................................................................... 6

8 *Bondali v. Yum! Brands, Inc.*,
      620 F. App'x 483 (6th Cir. 2015) ........................................................... 13, 16
9
10 *Brody v. Transitional Hosps. Corp.*,
      280 F.3d 997 (9th Cir. 2002) ........................................................................ 7
11
12 *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
      Tech., Inc.*,
13     856 F.3d 605 (9th Cir. 2017) .................................................................... 9, 19

14 *Diaz v. Northern Dynasty Minerals Ltd.*,
15     2018 WL 5099749 (C.D. Cal. Apr. 30, 2018) ............................................. 17

16 *Falat v. Sacks*,
17     2021 WL 1558940 (C.D. Cal. April 8, 2021) ............................................. 16

18 *Ferreira v. Funko Inc.*,
19     2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ...................................... 6, 7, 23

20 *Ferris v. Wynn Resorts, Ltd.*,
      462 F. Supp. 3d 1101 (D. Nev. 2020) .................................................... 11, 12
21
22 *Francisco v. Abengoa, S.A.*,
      481 F. Supp. 3d 179 (S.D.N.Y. 2020) .......................................................... 25
23
24 *Glazer Cap. Mgmt., LP v. Magistri*,
      549 F.3d 736 (9th Cir. 2008) ........................................................................ 17

25 *Hurst v. Enphase Energy, Inc.*,
26     2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ............................................. 23

27 *In re Alteryx, Inc. Sec. Litig.*,
28     2021 WL 4551201 (C.D. Cal. June 17, 2021) ............................................. 22

*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F. Supp. 2d 1043 (C.D. Cal. 2012)..................................................20

*In re Cisco Sys., Inc. Sec. Litig.*,
    2013 WL 1402788 (N.D. Cal. Mar. 29, 2013)..............................................23

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) .....................................................14

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
    934 F. Supp. 2d 1219 (C.D. Cal. 2013)....................................................14

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010).................................................................8

*In re Facebook, Inc. Sec. Litig.*,
    2021 WL 6000058 (N.D. Cal. Dec. 20, 2021) ................................18, 19, 24

*In re Facebook, Inc. Sec. Litig.*,
    405 F. Supp. 3d 809 (N.D. Cal. 2019) ..................................................9, 10

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015)........................................................13

*In re Int'l Rectifier Corp. Sec. Litig.*,
    2008 WL 4555794 (C.D. Cal. May 23, 2008) ...........................................19

*In re JDS Uniphase Corp. Sec. Litig.*,
    2003 WL 26615705 (N.D. Cal. Nov. 3, 2003)......................................14, 15

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016).........................................................10

*In re Mindbody, Inc. Sec. Litig.*,
    489 F. Supp. 3d 188 (S.D.N.Y. 2020).....................................................25

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014).................................................................19

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012).............................................................7, 21

*In re Sunrun, Inc. Sec. Litig.*,
    2018 WL 10323335 (N.D. Cal. July 19, 2018)..........................................20

*In re Zillow Grp., Inc. Sec. Litig.*,
  2018 WL 4735711 (W.D. Wash. Oct. 2, 2018) ............................................ 10

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011) ................................................................................ 6, 9, 16

*Jun Shi v. Ampio Pharms., Inc.*,
  2020 WL 5092910 (C.D. Cal. June 19, 2020) ............................................ 22

*Lopes v. Fitbit, Inc.*,
  2020 WL 1465932 (N.D. Cal. Mar. 23, 2020)*, aff'd,*
  848 F. App'x 278 (9th Cir. 2021) ................................................................ 23

*M&M Hart Living Tr. v. Global Eagle Entm't, Inc.*,
  2018 WL 1230570 (C.D. Cal. Jan. 8, 2018) ................................................ 9

*Magro v. Freeport-McMoran Inc.*,
  2018 WL 3725781 (D. Ariz. Aug. 3, 2018) ............................................ 12, 13

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2011 WL 4389689 (C.D. Cal. May 5, 2011) ................................................ 14

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................ 6, 10, 19, 22

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...................................................................... 6

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ...................................................................... 21

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) .................................................... 16, 22

*Or. Pub. Emps. Ret. Fund v. Apollo Group. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................. 6, 17

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................................... 7

*Prodanova v. H.C. Wainwright & Co.*,
  2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ............................................ 24

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021)........................................................................ 21

*Retail Wholesale & Dept. Store Union Local 338 v.*
    *Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017)...............................................................*passim*

*Richman v. Goldman Sachs Grp., Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012)......................................................... 10

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)................................................................... 6, 23

*Rosi v. Aclaris Therapeutics, Inc.*,
    2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ............................................ 18

*Tarapara v. K12 Inc.*,
    2017 WL 3727112 (N.D. Cal. Aug. 30, 2017)............................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................. 17, 25

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ....................................................*passim*

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018)...................................................... 18

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018)............................................................ 17, 22, 25

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)...................................................................... 8

*Zee v. Green Dot Corp.*,
    2013 WL 12133841 (C.D. Cal. May 2, 2013) ............................................. 8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).......................................................15, 19, 22, 25

**Statutes, Rules and Regulations**

Federal Rules of Civil Procedure
        Rule 9(b)...........................................................................................6
        Rule 11.................................................................................14, 24
        Rule 12(b)(6) ...................................................................................6

SEC Regulation S-K
        Item 103, 17 C.F.R. § 229.103 ...................................................10
        Item 406, 17 C.F.R. § 229.406 ...........................................11, 12

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 .....................................5, 6, 25

Securities Exchange Act of 1934
        Section 10(b), 15 U.S.C. § 78j(b)............................................*passim*
        Section 20(a), 15 U.S.C. § 78t(a) .............................................5, 25
        Section 21D(b)(2)(A), 15 U.S.C. § 78u-4(b)(2)(A) .......................16
        Section 21E(c)(1), 15 U.S.C. § 78u-5(c)(1) .................................7, 8

## I.      INTRODUCTION

On July 20, 2021, the California Department of Fair Employment and Housing ("DFEH") filed an action in state court against Activision Blizzard, Inc. ("Activision" or the "Company"), alleging sexual harassment, discrimination, and retaliation.  In the wake of that filing, a number of current and former employees have come forward stating that they experienced instances of workplace misconduct, most of which relate to one of the Company's subsidiaries, Blizzard Entertainment, Inc. ("Blizzard").  Activision takes employees' reports seriously, particularly when they relate to misconduct in the workplace.  Indeed, the Company has implemented numerous steps to address the matters raised and has entered into a proposed settlement with the U.S. Equal Employment Opportunity Commission ("EEOC") designed to further strengthen the Company's policies and procedures and compensate eligible employees.

These employment and workplace claims have nothing to do with securities fraud.  Yet Plaintiffs nonetheless try to convert them into a claim under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act").  That effort fails at the most basic level: Plaintiffs are unable to plead that a materially false or misleading statement was made to investors, let alone support that claim with the detailed facts required by the Private Securities Litigation Reform Act ("PSLRA").

While the Amended Class Action Complaint ("AC") is lengthy, the alleged misstatements are narrow and fall into three categories.  *First*, Plaintiffs claim that the description of legal proceedings in Activision's SEC filings, and in particular the "opinion of management" that pending investigations and litigation were routine and not expected to have a material adverse effect, was misleading for failure to disclose the DFEH and EEOC investigations.  That statement is insulated by the PSRLA's safe harbor for forward-looking statements.  Apart from the safe harbor, Plaintiffs fail to allege (as they must) facts demonstrating that the stated opinion was subjectively and objectively false when made.  *Second*, Plaintiffs

1  contend that certain portions of Activision's Code of Conduct (cited in certain SEC

2  filings) were misleading because they failed to disclose allegedly "pervasive"

3  misconduct. But the Ninth Circuit has held that statements in such corporate codes

4  of conduct are not actionable under Section 10(b) as a matter of law. *Third*, the AC

5  assails Activision's 2020 report on Environment, Social, and Governance practices

6  (the "ESG Report") for not disclosing what Plaintiffs call "rampant and tolerated"

7  retaliation. Once more, though, that claim is precluded by controlling Ninth Circuit

8  authority. And even if any of these statements were somehow actionable, the result

9  would still be the same, as the AC fails to plead contemporaneous facts showing

10  that the statements were materially false or misleading.

11  The Section 10(b) claim fails for another reason: Plaintiffs do not allege facts

12  raising an inference of scienter (*i.e.*, fraudulent intent) on the part of any Defendant,

13  let alone the strong inference required by the PSLRA. Unable to plead Defendants'

14  knowledge of specific facts contradicting the challenged statements, Plaintiffs rely

15  on bare conclusions, speculation, hindsight and legally insufficient "motive and

16  opportunity" allegations – which not only fail as a matter of law but, notably, end

17  up *undermining* any inference of scienter.

18  In sum, Plaintiffs' opportunistic attempt to transform employment allegations

19  into a securities fraud claim fails. The AC should be dismissed in its entirety.

20  **II.   FACTUAL BACKGROUND**

21  **A.   Activision and the Individual Defendants**

22  Activision, a Delaware corporation, is a leading global developer and

23  publisher of interactive entertainment content and services. It develops and

24  distributes content and services on video game consoles, personal computers, and

25  mobile devices, and it operates esports leagues. ¶¶ 42, 54.[1] The Company conducts

26  its business through three reportable segments: (1) Activision Publishing, Inc.

27
_____
[1] Unless otherwise specified, all paragraph references are to the AC. The five exhibits to
28  the AC are referred to as "AC Ex. 1," "AC Ex. 2," *etc.*

("AP"), which delivers content through premium and free-to-play offerings and is home to the Call of Duty franchise; (2) Blizzard, which delivers content through premium and free-to-play offerings, maintains a proprietary online gaming service, is home to an array of franchises (including World of Warcraft, Hearthstone, Diablo and Overwatch), and includes the Overwatch League (a global professional esports league); and (3) King Digital Entertainment ("King"), which delivers content primarily through free-to-play offerings, including its Candy Crush franchise.  ¶¶ 57-61.  Blizzard became part of the Company in a July 2008 merger, and the Company acquired King in February 2016.  ¶¶ 55-56.

For fiscal year 2020 (ending December 31, 2020), Activision reported revenues of approximately $8.1 billion and net income of $2.2 billion.  *See* Ex. D at 111-113.[2]  Of those total revenues, AP accounted for about 49%, King 27%, and Blizzard 24%.  *Id.*; *see also* ¶ 62.  The Company has approximately 9,500 employees worldwide.  ¶ 245.  Its common stock is publicly traded on Nasdaq.  ¶ 1.

The Individual Defendants are: Robert A. Kotick, Chief Executive Officer (CEO) and a director since 1991 (¶ 43); Brian Kelly, Chairman of the Board since 2013 and co-Chairman from 1998 to 2013 (¶ 47); Dennis Durkin, Chief Financial Officer (CFO) from March 2012 – May 2017 and January 2019 – April 2021, and Chief Corporate Officer in between (¶ 44); Spencer Neumann, CFO from May 2017 – January 2019 (¶ 45); and Armin Zerza, CFO since April 2021, formerly Chief Commercial Officer, and before that an executive at Blizzard (¶ 46).

**B.     The EEOC and DFEH Investigations and Subsequent Proceedings**

On September 26, 2018, the EEOC initiated an investigation regarding the possibility of sexual harassment and gender-based employment discrimination at the Company.  ¶ 3.  The DFEH began an investigation on October 12, 2018.  *Id.*

---

[2] Defendants' Exhibits (referred to as Exs. A-R) are attached to the Declaration of Kevin P. Muck and, as set forth in the Request for Judicial Notice, are judicially noticeable and/or incorporated by reference in the AC.  Exhibits A-R are paginated consecutively (1-290), and page citations for the Exhibits refer to that consecutive pagination.

1    On June 15, 2021, the EEOC issued a "Letter of Determination," providing

2 notice that it had concluded there was "reasonable cause" on claims of alleged

3 sexual harassment, pregnancy discrimination and/or related retaliation.  ¶¶ 91, 223.

4 The DFEH issued its own notice of cause nine days later.  ¶ 92.

5    The DFEH then filed suit in Los Angeles County Superior Court on July 20,

6 2021, asserting claims for sex-based discrimination, harassment and retaliation,

7 based primarily on alleged instances of misconduct at Blizzard.  ¶ 21; *see also* AC

8 Ex. 1.  When the suit became public, Activision's stock price barely moved, going

9 from a closing price of $91.51 on July 20 to $91.50 on July 23.  *See* Ex. R at 288.

10    On the day after the state court action was filed, the Company noted that the

11 DFEH complaint included inaccuracies (¶ 22) but made clear that it took the

12 allegations seriously.  On July 27, Mr. Kotick sent a letter to all employees (¶ 24)

13 emphasizing, among other things, appreciation for those who had come forward

14 with issues or complaints, concern for anyone who had been mistreated, reassurance

15 that the Company was committed to ensuring a safe and inclusive work

16 environment, and concrete steps being implemented.  *See* Ex. M.

17    The DFEH filed an amended complaint in August 2021.  ¶ 27.  On

18 September 27, 2021, the EEOC filed a complaint and lodged a proposed consent

19 decree in this Court.  ¶ 29.  The proposed consent decree reflected an agreement

20 between the Company and the EEOC to resolve claims of sexual harassment,

21 discrimination based on pregnancy and related retaliation, as alleged in the EEOC's

22 complaint.  *See* AC Exs. 3, 4.  The EEOC noted that, during its investigation,

23 Activision "cooperated" by "providing information, documents, and testimony …

24 necessary for the investigation."  AC Ex. 3 at 4.  The proposed consent decree

25 provides for establishment of an $18-million fund for eligible claimants (with

26 remaining amounts going to non-profit organizations and/or diversity efforts) and

27 agreed-upon measures to prevent harassment and discrimination in the workplace.

28 *See, e.g.*, AC Ex. 4 at 2-3, 7-9, 17.  Significantly, the consent decree specifies that:

(1) Activision, AP, Blizzard, and King expressly deny the EEOC's allegations, any liability, the existence of group or systemic discrimination or harassment, or that any of their policies or procedures were inadequate; and (2) the parties entered into the consent decree to avoid the expense and distraction of litigation. *Id.* at 2, 5.

### C.   Procedural Background and Plaintiffs' Claims

In the meantime, this action was commenced by plaintiff Gary Cheng on August 3, 2021. The original complaint alleged that, as a result of the filing of the DFEH action and events in the ensuing days, the supposed "truth" about matters allegedly concealed by Activision was revealed by July 27, 2021, when the Company's stock price closed at $84.05 per share. ECF No. 1 ¶¶ 32-37.

The PSLRA requires the Court to appoint lead plaintiff and counsel in cases such as this, and only one shareholder sought appointment: Jeff Ross, who bought Activision stock in February 2021 and sold his shares on July 27, 2021. ECF No. 23-2. The Court appointed Ross as lead plaintiff on November 1. ECF No. 34.

The AC was filed on December 3, with not only Ross but also five other shareholders as plaintiffs. ¶ 41. The new shareholders apparently were added to extend the putative Class Period from the original end date of July 27 (when Ross sold his shares) to November 16 (when the stock closed at $66.14). ¶ 247. The AC also adds two new defendants, Messrs. Kelly and Zerza.

Plaintiffs assert that Defendants violated Section 10(b) of the 1934 Act (and SEC Rule 10b-5) in three respects: (1) making statements in SEC filings regarding litigation and regulatory proceedings that Plaintiffs allege were false in light of the EEOC and DFEH investigations (¶¶ 248-266); (2) quoting or referencing Activision's Code of Conduct in SEC filings without disclosing harassment, discrimination and other alleged misconduct (¶¶ 267-286); and (3) not disclosing in the 2020 ESG Report that retaliation was purportedly "rampant and tolerated" (¶¶ 287-289). Plaintiffs also allege that each Individual Defendant is a control person of Activision and liable for its alleged misstatements under Section 20(a).

### III.   GOVERNING LEGAL STANDARDS

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Although the Court must credit well-pleaded facts, it need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court may consider matters subject to judicial notice or incorporated by reference in the complaint. *Metzler Inv. GmBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The elements of a claim under Section 10(b) (and Rule 10b-5) include: (1) falsity, which requires a misrepresentation of material fact or an omission that renders a statement materially misleading when made; and (2) scienter, the mental state encompassing intent to defraud or deliberate recklessness tantamount to intent. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014). Only a defendant who "makes" a statement can be liable. *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 141-42 (2011).  The "maker" of a statement is the person or entity "with ultimate authority" over its content and communication, and is generally restricted to "the party to whom it is attributed." *Id*. at 142-43.

To survive a motion to dismiss, a claim under Section 10(b) and Rule 10b-5 must be supported by particularized facts satisfying Fed. R. Civ. P. 9(b) and the "formidable" pleading standards of the PSLRA. *Metzler*, 540 F.3d at 1055. Consequently, "[i]n few other areas are motions to dismiss for failure to state a claim … so powerful." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001).

### IV.   THE AC DOES NOT ALLEGE AN ACTIONABLE MISSTATEMENT

To plead falsity, Plaintiffs must allege particularized facts showing that a statement was materially false or misleading *at the time* it was made. *See, e.g., Ferreira v. Funko Inc.*, 2021 WL 880400, at *11 (C.D. Cal. Feb. 25, 2021).  For affirmative misrepresentations, this requires contemporaneous facts contradicting a statement. *See, e.g., Ronconi*, 253 F.3d at 431.  For alleged omissions, Plaintiffs

must show that a challenged statement created "an impression of a state of affairs that differ[ed] in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). It is not sufficient to claim a statement was incomplete or more information could have been provided, *id.*, even if an investor would view additional information as "significant." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012). As discussed below, the AC does not plead that any statement was materially false or misleading.

### A.      Plaintiffs Do Not Plead Falsity with Respect to the Investigations

#### 1.      The Legal Proceedings Statement Cannot Support a Claim

Plaintiffs' primary claim is that each 10-K and 10-Q filed between November 2018 and May 2021 (Exs. A-L) was false for making the following statement:

> [W]e are party to routine claims, suits, investigations, audits
> and other proceedings arising in the ordinary course…. In the
> opinion of management, after consultation with legal counsel,
> such routine claims or lawsuits are not significant and we do
> not expect them to have a material adverse effect….

¶¶ 249, 251, 253, 262. The AC asserts the DFEH and EEOC investigations were not routine and there was "no reasonable basis to believe" they "would not have a 'material adverse effect.'" ¶ 263. That claim fails for multiple reasons.

*First*, the claim is precluded by the PSLRA's safe harbor for forward-looking statements. *See* 15 U.S.C. § 78u-5(c)(1)(A) & (B). Under the PSLRA, a stated *expectation* of what may occur is "forward-looking." *See, e.g.*, *Ferreira*, 2021 WL 880400, at *11. And if it is identified as forward-looking and accompanied by meaningful cautionary language, then the statement is insulated from liability. *See* 15 U.S.C. § 78u-5(c)(1)(A)(i); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). Those requirements are satisfied here.

The statement is forward-looking on its face. Indeed, it is hard to imagine a more clearly forward-looking statement than "we do not expect them to have a

material adverse effect." ¶ 249.  It was identified as predictive and accompanied by meaningful cautionary language.  Each 10-K and 10-Q: (1) specified that statements of expectation are forward-looking (*see, e.g.*, Ex. D at 95); (2) warned that risks and uncertainties could cause actual results to differ from expectations (*id.* at 95, 96); and (3) detailed relevant risks (*id.* at 96-109), among them the uncertainty of litigation and investigations (including those related to "labor and employment" matters), the possibility that such proceedings could have adverse outcomes and affect Activision's business and reputation (*id.* at 104-105), and the impact of loss of employees (*id.* at 98).[3]  Those disclosures doom Plaintiffs' claim because the AC does not plead facts to "vitiate an element" of the safe harbor by showing the statement was not properly identified or that the cautionary language was insufficient.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1190 (9th Cir. 2021).  Any claim based on the statement must therefore be dismissed.  *See, e.g.*, *id.* at 1190-97; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).

Even in the absence of proper identification or cautionary language, the safe harbor would still preclude any claim because Plaintiffs do not plead facts showing that the statement was made with "actual knowledge" of falsity.  *See* 15 U.S.C. § 78u-5(c)(1)(B).  To be sure, the AC avers that "Defendants knew or recklessly disregarded" that the investigations were "likely to result in material reputational and other damage" (¶ 263), but the law requires far more: *facts* demonstrating that, each time the statement was made, the speaker was *actually aware* (not merely that he should have known) the investigations were not "routine" and *would have* a "material adverse effect."  *See Cutera*, 610 F.3d at 1112-13; *Zee v. Green Dot Corp.*, 2013 WL 12133841, at *6 (C.D. Cal. May 2, 2013); *see also Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) (existence of FTC

---

[3] The other 10-Ks likewise identify the forward-looking statements and contain cautionary language (Ex. A at 4-26; Ex. B at 37-59; Ex. C at 68-86), as do the 10-Qs (which also refer to the 10-Ks).  *See* Ex. E at 123-125; Ex. F at 133-134; Ex. G at 142-144; Ex. H at 152-153; Ex. I at 161-162; Ex. J at 170-172; Ex. K at 180-181; Ex. L at 189-190.

investigation "does not mean that Defendants were aware of the conduct eventually alleged in the FTC Action nearly two years later").  The AC does not plead facts that could even arguably support an inference of actual knowledge, particularly in light of Plaintiffs' admission that the DFEH and EEOC did not communicate a finding of cause until June 2021.  ¶¶ 91, 92.  Plaintiffs highlight their pleading failure by indiscriminately lumping all Defendants together, without regard to each person's role or tenure at the Company – and without purporting to specify what each person knew at the time a statement attributable to him was made.[4]

      *Second*, and irrespective of the safe harbor, the statement is a non-actionable expression of the "opinion of management."  ¶ 249.  Where a plaintiff claims an opinion is false, it "must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue."  *M&M Hart Living Tr. v. Global Eagle Entm't, Inc.*, 2018 WL 1230570, at *3 (C.D. Cal. Jan. 8, 2018) (quoting *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017)).  The AC identifies no facts to show that the opinion was not genuinely believed (*i.e.*, that Defendants secretly thought the investigations would "have a material adverse effect") or that it was objectively false at the time.  At most, Plaintiffs point to what the agencies *eventually* alleged, in July 2021 and thereafter, to assail an opinion expressed over the prior two-and-a-half years.  *See, e.g.*, ¶¶ 17, 24-30.  As this Court held in *M&M Hart*, that sort of "post hoc assessment … is insufficient to allege falsity under the Ninth Circuit's standard."  2018 WL 1230570, at *4; *see also In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 837 (N.D. Cal. 2019) ("The fact that a 'prediction proves to be wrong in hindsight does not render [it] untrue when made.'" (citation omitted)).

---

[4] Only certain filings are attributed to Mr. Durkin (¶¶ 248, 250, 252, 255-260) and the AC does not show what he knew at the time of each.  Nor does it plead such facts for Mr. Neumann, who signed just one 10-Q in November 2018, shortly after the investigations began and shortly before he left Activision (¶ 254), or Mr. Zerza, who signed one 10-Q in May 2021 (¶ 261).  And an "opinion of management" cannot be attributed to Mr. Kelly, who is not alleged to have been part of management.  *See Janus*, 564 U.S. at 141-44.

## 2.    There Was No Duty to Disclose the Investigations

Plaintiffs' alternative theory, that Item 103 of SEC Regulation S-K required disclosure of the investigations (¶ 265), is contrary to law.  Item 103 requires disclosure of a "material pending legal proceeding" in certain filings and does *not* apply to investigations until an "agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges."  *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012) (citation and quotation omitted).  Not only do Plaintiffs fail to show that the matters were believed to be material, but there was no finding of "reasonable cause" until June 2021 (¶¶ 91-92) and no suit until July 2021 (¶ 21) – *after* all the 10-Ks and 10-Qs at issue were filed.  Thus, Item 103 did not require further disclosure.  *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 18-19 (S.D.N.Y. 2016).

Nor is there a disclosure duty independent of Item 103.  *See Lions Gate,* 165 F. Supp. 3d at 12 ("[A] government investigation, without more, does not trigger a generalized duty to disclose.").  Courts routinely reject claims based on alleged nondisclosure of investigations, especially where (as here) the company made no statement suggesting "it was *not* under regulatory scrutiny."  *Metzler*, 540 F.3d at 1071 (emphasis in original); *see also In re Zillow Grp., Inc. Sec. Litig.*, 2018 WL 4735711, at *10 (W.D. Wash. Oct. 2, 2018).  Equally fruitless is Plaintiffs' claim that the investigations were not "routine" because they related to serious allegations of harassment, discrimination and retaliation.  ¶ 263.  Companies "are not required to engage in 'self-flagellation' by disclosing unproven allegations," even if an investigation is ongoing.  *Facebook,* 405 F. Supp. 3d at 836.

### B.    Plaintiffs' Code of Conduct Allegations Do Not Support a Claim
### 1.    The Statements Are Not Actionable as a Matter of Law

Plaintiffs challenge statements in Activision's Code of Conduct (referred to in 10-Ks and Proxy Statements and published on its website) that: (1) the Company "does not tolerate" "unlawful bias, harassment, intimidation, [or] discrimination";

(2) it does not tolerate retaliation; (3) the Code applies to all employees; (4) Activision does not tolerate discrimination or make employment decisions on the basis of legally protected characteristics; and (5) the Company does not permit possession or use of illegal drugs at work or the abuse of alcohol.  ¶¶ 276, 278, 281, 283, 285.  As a matter of law, these statements are not actionable.

The Ninth Circuit made clear that a corporate code of conduct such as Activision's cannot form the basis of a Section 10(b) claim in *Retail Wholesale & Dep't Store Union Local 338 v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017).  The plaintiffs in *Retail Wholesale* challenged statements in a company's Standards of Business Conduct ("SBC") substantially similar to those at issue here: *e.g.*, the company did not discriminate or tolerate harassment, it demanded treating others with respect, and it encouraged employees to cooperate with investigators, report misconduct, and use good judgment.  *Id.* at 1273.  The Ninth Circuit affirmed dismissal of all claims and held that such codes of conduct are not actionable under Section 10(b) *as a matter of law*.  *Id.* at 1276.  As the court explained, "[s]uch a code expresses opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations" – and thus is "inherently aspirational" and not "objectively verifiable."  *Id.*

After noting there was "nothing unusual about [the defendant company's] promotion of business ethics," the Ninth Circuit held that statements in a code of conduct must be shielded from securities fraud liability given that the "substance and online publication … [a]re mandated by the SEC."  *Retail Wholesale*, 845 F.3d at 1277 (Item 406 of Regulation S-K, 17 C.F.R. § 229.406, requires publicly traded companies to disclose whether they have a code of ethics and, if so, to publish it).[5] A contrary rule permitting shareholders to sue on such statements in codes of conduct would be "simply untenable, as it could turn all corporate wrongdoing into

---

[5] NASDAQ rules also require adoption of a code of conduct and that it be made publicly available.  *Ferris v. Wynn Resorts, Ltd.*, 462 F. Supp. 3d 1101, 1121-22 (D. Nev. 2020).

1    securities fraud" – and "[i]t simply cannot be the case that a reasonable investor's

2    decision would conceivably have been affected by … compliance with SEC

3    regulations requiring publication of ethics standards." *Id.* at 1276-77.

4          That rationale applies equally here, and it equally dooms Plaintiffs' claim: as

5    the AC alleges, the Code of Conduct contains standard terms and is published on

6    Activision's website (¶¶ 18, 188), and is specifically identified "as [the Company's]

7    'code of ethics' within the meaning of Item 406(b) of Regulation S-K."  Ex. N at

8    199.  Those statements (and the Code of Conduct in which they appear) are

9    materially indistinguishable from the challenged statements in *Retail Wholesale*.

10   Nor can Plaintiffs repackage their claim around the theory that the Company was

11   obligated to disclose violations of the Code of Conduct, as *Retail Wholesale* clearly

12   held that no such duty exists.  845 F.3d at 1278-79.  The claim here should thus

13   meet the same fate as the claims in *Retail Wholesale*: dismissal.

14         Numerous decisions have applied, or are in accord with, *Retail Wholesale*

15   and rejected similar claims.  *Ferris v. Wynn Resorts, Ltd.*, 462 F. Supp. 3d 1101 (D.

16   Nev. 2020), is illustrative.  The court there relied on *Retail Wholesale* and held that

17   statements in a company code of conduct – including that the code applied to all

18   employees, that "all reported violations … will be taken seriously and promptly

19   investigated," and that "harassment . . . of any sort will not be tolerated" – were not

20   actionable under Section 10(b).  *Id.* at 1121.  Indeed, the court specifically rejected

21   the argument that such statements were "factual assertions which could be

22   established or disproved through discovery and capable of objective verification,"

23   explaining that they are "precisely the type of statements which [*Retail Wholesale*]

24   deemed aspirational."  *Id.*  Plaintiffs here advance an identical argument.  *See* ¶¶ 18,

25   188, 276-285.  As in *Ferris*, "it simply cannot be" that every time a code violation

26   occurs, a company is liable for having adopted the code – particularly given its

27   "effectively mandatory" nature.  *Ferris*, 462 F. Supp. 3d at 1121.

28         Other courts have reached the same result.  *See, e.g.*, *Magro v. Freeport-*

*McMoran Inc.*, 2018 WL 3725781, at *5 (D. Ariz. Aug. 3, 2018) (applying *Retail Wholesale* and holding that statements in company's Anti-Corruption Policy and Principles of Business Conduct Policy "are not actionable as a matter of law"); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1182 (D. Or. 2015) (holding that a statement in code of conduct that the company "will not sanction or tolerate conduct that risks a violation of federal law" was not actionable); *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 490 (6th Cir. 2015) (explaining that a code of conduct is "a declaration of corporate aspirations," and treating it "as a statement of what a corporation will do … would turn the purpose of a code of conduct on its head"). In short, the holding and analysis in *Retail Wholesale* and similar cases mandate dismissal of any claim based on Activision's Code of Conduct.

## 2.    Plaintiffs Do Not Plead Falsity in Any Event

Putting aside that statements in the Code of Conduct are not actionable as a matter of law, the AC does not adequately plead falsity. Plaintiffs complain that the Code was misleading absent description of "pervasive" or "rampant" harassment, discrimination, retaliation and excessive drinking (¶¶ 277, 280, 282, 284, 286), but that is a red herring. As the excerpts cited in the AC confirm (¶¶ 275, 276, 278, 279, 281, 283, 285), the Code set forth Activision's internal policies and goals; it did *not* represent or guarantee that violations would not occur. Thus, allegations of behavior at odds with the Code of Conduct do not plead falsity for purposes of Section 10(b). *See Retail Wholesale*, 845 F.3d at 1278 (because statements in code were not representations "that there would be no violations," noncompliance did not give rise to a Section 10(b) claim); *Bondali*, 620 F. App'x at 490 ("A code of conduct is not a guarantee that a corporation will adhere to everything set forth."); *Magro*, 2018 WL 3725781, at *5 ("[T]he promotion of ethical conduct cannot reasonably suggest that a company's internal policies will not be violated.").

Even assuming that (as Plaintiffs suggest) "pervasive" violations could be deemed to render the Code of Conduct false, the AC would still not satisfy the

PSLRA.  Plaintiffs rely on assertions lifted from the DFEH and EEOC complaints to claim that harassment and discrimination were "endemic."  ¶ 4; *see also* ¶¶ 3, 5, 6, 9, 11, 14, 27, 29, 87, 89-92, 96-101, 139-140, 149, 165-173, 178-180, 193, 263.  However, repeating unproven allegations from other actions does *not* satisfy Plaintiffs' burden under the PSLRA or Fed. R. Civ. P. 11.  *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *19-20 (C.D. Cal. May 5, 2011) (striking allegations taken from other complaints); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (allegations "that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial"); *Veal*, 423 F. Supp. 3d at 811 ("Plaintiffs may not allege 'facts' simply because they appear in [the] FTC's Complaint."); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008) (disregarding allegations based on SEC complaint and explaining that Fed. R. Civ. P. 11(b) imposes on plaintiffs a "nondelegable" obligation to have conducted a "reasonable factual investigation").  Put another way, "[b]eing accused of wrongdoing [by regulators] is not [a] basis for securities fraud."  *Veal*, 423 F. Supp. 3d at 811.

Nor do the AC's other allegations suffice to show "pervasive" harassment, discrimination, or retaliation at Activision.  To be clear, any case of such conduct is unacceptable, and claims by individual employees are serious and must be treated as such.  But the AC's patchwork of allegations does not satisfy the PSLRA.  Plaintiffs rely on confidential witness accounts and media reports (many of them conclusory and based on hearsay) claiming *instances* of misconduct by individual employees, mostly at Blizzard.  Those reports and statements (*e.g.*, ¶¶ 108, 124-127, 129-135, 141, 143-145, 147, 151-164, 168, 174-177) do not come close to pleading falsity under the PSLRA by demonstrating the existence of a "pervasive" problem in a global company with more than 9,500 employees dispersed over multiple businesses and geographies.  *See, e.g., In re JDS Uniphase Corp. Sec.*

1    *Litig.*, 2003 WL 26615705, at *5 (N.D. Cal. Nov. 3, 2003) (accounts from nine

2    former employees of "instances of order cancellations and refusals to take delivery"

3    did not show that issues were "sufficiently widespread" to establish falsity);

4    *Tarapara v. K12 Inc.*, 2017 WL 3727112, at *21 (N.D. Cal. Aug. 30, 2017)

5    (multiple customer complaints did not show that defendants' statements were false);

6    *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 997-98 (9th Cir.

7    2009) (rejecting confidential witness allegations that were conclusory, lacking

8    detail, and based on hearsay).

9          **C.    Plaintiffs Do Not Plead that the ESG Report Is Actionable**

10         Plaintiffs also assail Activision's ESG Report, published on its website on

11   June 11, 2021.  ¶¶ 287-289.  But their allegations again fall short.  Significantly,

12   Plaintiffs do not dispute the accuracy of any representation of historical fact in the

13   report – *e.g.*, identifying specific investments made and initiatives undertaken to

14   promote diversity in recruiting and hiring, statistical presentation of the increasing

15   number of women in leadership roles, data regarding promotion rates, employee

16   engagement, information on charitable giving, efforts to reduce Activision's

17   environmental footprint, awards and recognition received.  *See, e.g.*, Ex. O at 220-

18   238.  Instead, the AC challenges just a single statement: that Activision does not

19   tolerate retaliation against anyone who makes a good-faith report or assists in good

20   faith with an investigation.  ¶ 288.  That statement, functionally identical to one in

21   the Code of Conduct (¶ 279), is not actionable for the reasons discussed above.

22         Once more, the Ninth Circuit's decision in *Retail Wholesale* is controlling.

23   In addition to placing statements in company codes of conduct outside the reach of

24   Section 10(b), the court went out of its way to hold that the defendant's statements

25   regarding, *inter alia*, "refusing to tolerate harassment" and promoting "cooperation

26   with investigators," were not actionable as a matter of law because they are not

27   verifiable factual statements and cannot reasonably be understood as such.  *Retail*

28   *Wholesale*, 845 F.3d at 1273-76.  Numerous other cases are in accord.  *See, e.g.*,

*Falat v. Sacks*, 2021 WL 1558940, at *6 (C.D. Cal. April 8, 2021) (holding that directors could not be liable for the statement that the company "does not tolerate" harassment or discrimination on the ground that that is not an "objectively verifiable statement[] of fact"); *see also* Sec. IV.B.1, *supra*.

Even if Plaintiffs could overcome that legal obstacle (and they cannot), alleging that some employees may have been subject to retaliation does not plead falsity. As with the Code of Conduct, the statement in the ESG Report that "we do not tolerate retaliation" is not a representation that such activity has never occurred – and thus not objectively verifiable. *See, e.g.*, *Retail Wholesale*, 845 F.3d at 1278; *Bondali*, 620 F. App'x at 490; *see also* Sec. IV.B.2, *supra*. In any event, Plaintiffs fail to establish the foundation for their theory of falsity: that retaliation was "rampant" and "tolerated" throughout Activision. ¶ 289. That too is fatal. For the reasons discussed above, untested allegations in the DFEH and EEOC complaints, or anecdotal and conclusory averments pulled from media reports and confidential witness accounts, do not pass muster under the PSLRA. *See* Sec. IV.B.2, *supra*.

Finally, the AC does not allege any Individual Defendant was the "maker" of the statement. The averment that Mr. Kotick "signed" a "letter" introducing the ESG Report (¶ 287; *see also* Ex. O at 217-219) is insufficient to show that a statement in the body of the Report (Ex. O at 241) was "made" by him. *See Janus*, 564 U.S. at 142 ("One who prepares or publishes a statement on behalf of another is not its maker."). And because the AC pleads no facts linking the statement to the other Individual Defendants (indeed, Mr. Neumann and Mr. Durkin were not even at the Company at the time), it is not attributable to them. *See Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1355-56 (C.D. Cal. 2014).

## V.    THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

In addition to falsity, Plaintiffs must also establish a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). Pleading scienter requires providing, "in great detail, facts that constitute strong circumstantial evidence of deliberately

1    reckless or conscious misconduct." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d

2    736, 745 (9th Cir. 2008).  Scienter must be demonstrated for each defendant.  *Or.*

3    *Pub. Emps. Ret. Fund*, 774 F.3d at 603.  To allege a *corporation's* scienter,

4    Plaintiffs must plead the requisite facts for the individuals who made the statements

5    at issue.  *Id*. at 607; *Glazer*, 549 F.3d at 745.

6         A strong inference of scienter "must be more than merely plausible or

7    reasonable – it must be cogent and at least as compelling as any opposing inference

8    of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

9    308, 309 (2007).  Courts considering whether a plaintiff has made the necessary

10   showing must therefore consider "plausible, nonculpable explanations for the

11   defendant's conduct."  *Id*. at 324.  "The bar set by *Tellabs* is not easy to satisfy."

12   *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).

13              **A.      The AC Does Not Plead Contemporaneous Knowledge of Facts**

14                       **Inconsistent with Any of the Challenged Statements**

15        The most direct way to plead scienter is to identify contemporaneous facts

16   known to a defendant contradicting his or her statements.  *Diaz v. Northern Dynasty*

17   *Minerals Ltd.*, 2018 WL 5099749, at \*7 (C.D. Cal. Apr. 30, 2018).  Plaintiffs fail to

18   plead such facts with respect to any of the Defendants or any challenged statement.

19        With respect to the legal proceedings statement, the AC does not demonstrate

20   that, at the time the relevant 10-Ks or 10-Qs were filed, any of the Individual

21   Defendants: (1) was aware of facts establishing that the investigations were not

22   routine; (2) knew the investigations would have a material adverse effect on

23   Activision; or (3) otherwise believed further disclosure with respect to those matters

24   was necessary to prevent investors from being misled.  To the contrary, and as

25   discussed above, the DFEH and EEOC did not provide notice that they determined

26   there was "cause" to support filing a complaint until June 2021 (¶¶ 91, 92), and no

27   suit was filed until July 2021 (¶ 21), *after* the challenged statements were made.

28   *See* Sec. IV.A.1, *supra*.  The AC cites no internal documents, sources or other facts

to suggest the Individual Defendants were aware before June 2021 that non-routine action by the regulators was likely, knew that any proceedings would impact Activision in a material way, or knew that further disclosure of the investigations was required.  That is fatal to Plaintiffs' claims.  *See, e.g.*, *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1152 (C.D. Cal. 2018) (PSLRA requires particularized facts showing "defendant intended to mislead the plaintiff through its omission or knew that the plaintiff would be misled by the omission").

Plaintiffs similarly fail to show that averments of "pervasive" harassment, discrimination or retaliation plead scienter for any challenged statement.  The AC contains no facts to show that any Defendant had *contemporaneous knowledge* of "pervasive" misconduct, let alone that he therefore *knew* that (1) the regulatory investigations would have a material adverse impact, or (2) statements in the Code of Conduct or ESG Report were false and would mislead investors.  That, too, is fatal to Plaintiffs' claims.  *See Veal*, 423 F. Supp. 3d at 813-14 (existence of customer complaints did not plead scienter; plaintiffs failed to show any that any defendant was aware of the complaints or knew that they contradicted a public statement); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at *14 (S.D.N.Y. Mar. 29, 2021) (anecdotal reports of product issues and complaints did not establish management knowledge of broader problem inconsistent with statements).

Nor is the PSLRA satisfied by conclusory averments that the Individual Defendants "would . . . have known or recklessly disregarded … pervasive misconduct" by virtue of their positions, because some alleged perpetrators were "prominent employees," or because the "#MeToo Movement" affected other companies.  ¶¶ 299-301, 304-306.  None of that is particularized as to any specific Defendant, and it does not come close to satisfying Plaintiffs' pleading obligation. *See, e.g., In re Facebook, Inc. Sec. Litig.*, 2021 WL 6000058, at *4 (N.D. Cal. Dec. 20, 2021) (rejecting allegations that misuse of data "would have" been reported by employees or "would have" been known by individual defendants).  What the

PSLRA requires – but what the AC lacks – are facts demonstrating when and how specific information was actually conveyed to the Individual Defendants and why knowledge of that information means that they knew particular statements were false. *City of Dearborn Heights*, 856 F.3d at 620; *Veal*, 423 F. Supp. 3d at 814.[6]

Likewise, generalized assertions that Blizzard management "reported directly to the top officers of the Company" (¶ 299) and Blizzard's Human Resources Department began reporting to "the corporate office in 2019" (¶ 300) are fruitless. Plaintiffs do not plead facts establishing *what* information was actually provided to the Individual Defendants, *when* it was reported, or *why* it contradicted specific statements. *See Metzler*, 540 F.3d at 1069; *see also Facebook,* 2021 WL 6000058, at *6 (no facts to "connect" individual defendants to other employees' awareness of "serious, continuing policy violations and wrongdoing"); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *17-18 (C.D. Cal. May 23, 2008) (rejecting claim that CEO and CFO knew or should have known about misconduct at subsidiary).

The confidential witnesses do nothing to satisfy Plaintiffs' burden. Such sources do not support scienter unless (1) they are "described with sufficient particularity to establish their reliability and personal knowledge," and (2) their statements are "themselves … indicative of scienter." *Zucco*, 552 F.3d at 995. Significantly, none of the witnesses claims to have had communications or dealings with Mr. Kotick, Mr. Durkin, Mr. Kelly, Mr. Neumann or Mr. Zerza. As a result, the witnesses lack personal knowledge of any Individual Defendant's state of mind, and their accounts are not indicative of scienter. *See, e.g., In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014); *Veal*, 423 F. Supp. 3d at 814.

Finally, while Plaintiffs purport to provide additional allegations as to Mr. Kotick, they do not come close to pleading his awareness of facts contradicting any

---

[6] In fact, speculation regarding what Mr. Neumann "would have" been aware of are the AC's *only* references to him, aside from identifying him as a Defendant or observing that as CFO he signed Sarbanes-Oxley certifications. ¶¶ 295, 297, 299-302. The dearth of allegations is unsurprising given his departure from Activision by January 2019. ¶ 45.

1    statement.  At the outset, the AC relies on media stories citing unidentified sources

2    and hearsay (*e.g.*, ¶¶ 130-135) rather than particularized facts.  *See In re Sunrun,*

3    *Inc. Sec. Litig.*, 2018 WL 10323335, at *1 (N.D. Cal. July 19, 2018) (rejecting

4    reliance on information from a *Wall Street Journal* reporter who did "not appear to

5    have had the personal knowledge … to make [the] information sufficiently reliable"

6    and "was unable to identify the source whose personal knowledge she was allegedly

7    reporting").  Even if the Court were to credit Plaintiffs' assertion that Mr. Kotick

8    "knew about allegations of employee misconduct in many parts of the Company" (¶

9    298; *see also* ¶¶ 10, 33, 130-138), the AC still fails, as it offers no facts to show his

10   awareness of the asserted pervasive harassment, discrimination or retaliation –

11   much less knowledge that, as a result, the challenged statements were false.  *See In*

12   *re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1078-79 (C.D. Cal.

13   2012) (no facts to show CEO was aware of the extent of immigration law violations

14   or that he knew statements regarding company's compliance efforts were false).

15        Plaintiffs likewise fail to show that Mr. Kotick knew that misconduct was

16   "tolerated."  Indeed, the AC rebuts that claim by alleging multiple instances in

17   which claims of misconduct were investigated and corrective measures taken.  *See*

18   ¶ 131 (referring to departures of employees accused of misconduct); ¶ 132 (alleging

19   Mr. Kotick "personally approved the 2018 firing" of Blizzard's Chief Technology

20   Officer); ¶ 134 (alleging investigation of an employee of Sledgehammer Games, a

21   studio owned by Activision, and the firing of another studio employee); ¶ 135

22   (alleging the Company investigated and took disciplinary action against an

23   executive at another studio, Treyarch); *see also* ¶¶ 108-113.  While Plaintiffs may

24   dispute whether those efforts sufficed, such second-guessing does not plead Mr.

25   Kotick's knowledge of facts contradicting the challenged statements.[7]

26   _____

27   [7] Plaintiffs underscore their inability to plead Mr. Kotick's scienter by referring to
     allegations of wholly unrelated incidents from 2006 and 2007 (¶¶ 137, 138) – more than a
     decade before the start of the Class Period – that have no bearing on whether he had
28   "contemporaneous knowledge" of facts contradicting the challenged statements.

### B.    The Motive and Opportunity Allegations Are Unavailing

Alleging that Defendants had motive and opportunity to commit fraud is not sufficient under the PSLRA.  *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021).  By nonetheless resorting to that approach as to certain Defendants (¶¶ 308-320), Plaintiffs further highlight their inability to plead scienter.

Plaintiffs speculate that Mr. Kotick's 2016 employment agreement provided a motive to artificially inflate the stock price throughout the nearly five-year Class Period because (1) the agreement provided for accelerated vesting of equity awards if Activision's stock price stayed above $79.96 for 90 consecutive trading days, and (2) that threshold was achieved on March 1, 2021.  ¶¶ 309-311.  Courts, however, cannot infer "fraudulent intent merely because a defendant's compensation was based in part" on "achieving key corporate goals."  *Rigel*, 697 F.3d at 884.

Plaintiffs' speculation fails for other reasons as well.  Not only is it devoid of supporting facts, but Plaintiffs' entire premise is belied by their admission that the stock price remained well above the $79.96 threshold *after* the DFEH lawsuit was filed, *after* its allegations were disclosed, and *after* it was the subject of numerous press reports and employee reaction.  ¶ 200 (closing stock price of $84.05 on July 27, 2021).[8]  Beyond that, Plaintiffs ask the Court to accept the implausible notion that Defendants engineered a scheme to inflate the stock price in February 2017 (nineteen months before the regulatory investigations began, at a time when the price was about $45 per share) so that *someday*, years later, the share price *might eventually increase nearly 80%* and stay there for 90 consecutive trading days – all to accelerate vesting of Mr. Kotick's awards at a higher level.  As the Ninth Circuit has stressed, "[a]llegations that are implausible do not create a strong inference of scienter."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020).

---

[8] Notably, when this suit was filed, Plaintiffs' counsel contended that the stock price inflation ended on July 27, 2021.  *See* ECF No. 1, ¶ 36.  That claim was reiterated in October 2021 when Ross asked to be appointed lead plaintiff.  *See* ECF No. 22 at 2.

1    Further confirming the irrationality of Plaintiffs' theory, the AC does *not*
2  allege that Mr. Kotick *sold a single share* of stock at supposedly "inflated" prices
3  during a Class Period lasting nearly five years – despite beneficially holding more
4  than 3.5 million shares as of April 2021.  *See* Ex. P at 256-257.  That fact is
5  inconsistent with Plaintiffs' suggestion that Mr. Kotick was motivated to profit
6  from purported inflation in the stock price.  *See, e.g.*, *Webb*, 884 F.3d at 856.

7    The AC identifies stock sales by Messrs. Durkin, Kelly and Zerza during the
8  Class Period (¶¶ 312-320) but they do nothing to satisfy Plaintiffs' pleading burden.
9  Stock sales do not support scienter unless they are "dramatically out of line with
10  prior trading practices at times calculated to maximize the personal benefit from
11  undisclosed inside information." *Zucco,* 552 F.3d at 1005.  Plaintiffs "must provide
12  a 'meaningful trading history' for purposes of comparison to the stock sales within
13  the class period." *Id*.  Because the AC offers *no* information regarding the trading
14  histories of Mr. Durkin, Mr. Kelly or Mr. Zerza, and makes *no* showing that their
15  Class Period trades were inconsistent with prior practices, the stock sale allegations
16  are unavailing.  *See, e.g.*, *Jun Shi v. Ampio Pharms., Inc.*, 2020 WL 5092910, at *5
17  (C.D. Cal. June 19, 2020); *IXIA*, 50 F. Supp. 3d at 1366-67.

18    Plaintiffs ignore this requirement because they know that "neither the amount
19  nor timing" of the sales is "suspicious." *In re Alteryx, Inc. Sec. Litig.*, 2021 WL
20  4551201, at *6 (C.D. Cal. June 17, 2021).  The transactions reflected only a modest
21  percentage of each person's stock and vested options,[9] which is inconsistent with
22  scienter.  *See, e.g.*, *Metzler*, 540 F.3d at 1067 (selling 37% of total holdings not
23  sufficient to support scienter); *Alteryx*, 2021 WL 4551201, at *4 (to be suspicious,
24  "a more eye-popping percentage is usually required, like when executives sell all or
25  almost all their holdings in the class period").  And Mr. Kelly's challenged sales

26  _____
[9] *See* Ex. P at 256-257 (after the sales at issue, Mr. Kelly still beneficially held more than
27  1.44 million shares, and Mr. Durkin's stock and vested holdings totaled more than
234,000 shares); Ex. Q at 260-261 (after Mr. Zerza's sale, his holdings totaled more than
28  49,000 shares, with large additional holdings set to vest thereafter).

were at $72-78 per share (¶¶ 312-313) while Mr. Durkin's challenged sale was at $83 per share (¶ 315) – far below the prices (as high as $103) at which the stock later traded.  *See* Ex. R at 285.  "When insiders miss the boat this dramatically, their sales do not support an inference" of scienter.  *Ronconi*, 253 F.3d at 435.

Furthermore, the *absence* of allegedly improper sales by Mr. Kotick and Mr. Neumann refutes an inference that the other Defendants' sales were suspicious.  *See, e.g.*, *Ferreira*, 2021 WL 880400, at *30; *In re Cisco Sys., Inc. Sec. Litig.*, 2013 WL 1402788, at *8-9 (N.D. Cal. Mar. 29, 2013).[10]  And the cursory reference to stock sales by *non-defendants* (¶¶ 317-319) is both unaccompanied by facts showing those transactions were suspicious and "irrelevant to scienter."  *Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *5 (N.D. Cal. Aug. 17, 2021).

### C.  The Remaining Scienter Arguments Are Also Meritless

*There was no "admission."*  Plaintiffs contend that Activision's August 3, 2021 disclosure that the recently-filed DFEH action could have an adverse impact on the Company "admitted" that the earlier investigation was material and not routine.  ¶ 307.  That contention is frivolous.  "An after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states, 'I knew it all along.'"  *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (citation omitted), *aff'd*, 848 F. App'x 278 (9th Cir. 2021).  In no way is the August 3 disclosure inconsistent with prior statements, much less the equivalent of saying "I knew it all along."  To the contrary, Activision previously expressed the "opinion of management" that pending investigations were not likely to have a material impact (*see* Sec. IV.A.1, *supra*), and nothing said on August 3 remotely suggests the earlier statements were inaccurate.  Indeed, the prior statements warned that investigations or litigation *could* "have a negative impact … due to reputational harm, legal costs, diversion of

---

[10] In fact, not only do Plaintiffs make no attempt to plead that Mr. Neumann sold stock improperly, the AC does not suggest that he had any motive to engage in fraud.

management resources, and other factors" (*see, e.g.*, Ex. D at 105; *see also* Sec. IV.A.1, *supra*), which is consistent with the later disclosure providing a *new assessment* based on a *subsequent event* (the filing of the DFEH action).

*Plaintiffs allege no "obstruction."*  The suggestion that Activision obstructed the DFEH investigation (¶ 303) is unsupported by facts and yet another instance of Plaintiffs parroting allegations from another complaint in contravention of the PSLRA and Fed. R. Civ. P. 11.  *See, e.g.*, *Veal*, 423 F. Supp. 3d at 811-12; *see also* Sec. IV.B.,2, *supra*.  And Plaintiffs ignore that, according to their own pleading, the EEOC claims just the opposite: Activision "cooperated" by "providing information, documents, and testimony … necessary for the investigation."  AC Ex. 3 at 4.

*Plaintiffs allege no "false exculpatory statement."*  Contrary to the cursory claim that Activision made a "false exculpatory statement" regarding the inaccuracy of certain allegations in the DFEH complaint (¶¶ 322, 323), the AC does not: (1) plead any facts to show the Company's statement was "false"; or (2) explain how disputing some of DFEH's characterizations (including the erroneous claim that Activision had not cooperated with DFEH) is in any way indicative of scienter.

*No imputation of non-defendants' alleged knowledge*.  Effectively acknowledging that the AC does not plead scienter as to Messrs. Kotick, Durkin, Kelly, Neumann or Zerza, Plaintiffs argue that the purported knowledge of two *non-defendant* Blizzard executives may be "imputed to the Company."  ¶ 326. Putting aside that the AC again improperly asks the Court to assume "pervasive misconduct" (*id.*), Plaintiffs' argument is both legally unavailing and unsupported by facts.  *See, e.g., Prodanova v. H.C. Wainwright & Co.*, 2018 WL 8017791, at *14 (C.D. Cal. Dec. 11, 2018) (noting that the theory of "collective scienter" has not been adopted by the Ninth Circuit, and in any event requires knowledge of egregious and obvious falsity, exemplified by an auto maker's claim to have "sold one million SUVs …, and the actual number was zero" (citation and quotation omitted)); *Facebook,* 2021 WL 6000058, at *5-6 (non-defendant employees'

alleged knowledge of "serious, continuing policy violations and wrongdoing" did not plead scienter).  The futility of Plaintiffs' argument is further underscored by the fact that the non-defendants worked at a subsidiary rather than Activision itself. *See Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 215 (S.D.N.Y. 2020).

*     *     *

In sum, whether Plaintiffs' allegations are considered individually or in a "holistic" manner, they do not support a cogent and compelling inference of scienter as to any of the Defendants.  *See Zucco*, 552 F.3d at 1006.[11]

## VI.   THE CONTROL PERSON CLAIM MUST BE DISMISSED

Because Plaintiffs do not allege a violation of Section 10(b), the control person claim under Section 20(a) must be dismissed.  *Webb*, 884 F.3d at 858.

## VII.   CONCLUSION

For the foregoing reasons, the AC should be dismissed in its entirety.

Dated:  January 11, 2022                    WILMER CUTLER PICKERING
                                            HALE AND DORR LLP

                                            By    */s/ Kevin P. Muck*
                                                    Kevin P. Muck

                                            *Attorneys for Defendants Activision Blizzard, Inc., Robert A. Kotick, Dennis Durkin, Armin Zerza and Brian Kelly*

Dated:  January 11, 2022                    GIBSON, DUNN & CRUTCHER LLP

                                            By    */s/ Craig Varnen*
                                                    Craig Varnen

                                            *Attorneys for Defendant Spencer Neumann*

---

[11] Because the claim under Section 10(b) (and Rule 10b-5) is based entirely on alleged misstatements (¶¶ 248-289, 338, 340), perfunctory reference to a "scheme" (*e.g.*, ¶ 339) is ineffectual.  *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 200 (S.D.N.Y. 2020) (a "scheme" requires "deceptive conduct apart from misrepresentations or omissions"); *see also Abbate v. Wells Fargo Bank, N.A.*, 2011 WL 9698215, at *3 (C.D. Cal. Nov. 17, 2011).  In any event, Plaintiffs' inability to plead falsity or scienter in accordance with the PSLRA would be fatal to such a claim.  *See Tellabs*, 551 U.S. at 318-19.

1

## **ATTESTATION (L.R. 5-4.3.4(a)(2)(i))**

2    Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other

3 signatories listed, and on whose behalf the filing is submitted, concur in the filing's

4 content and have authorized the filing.

5

6 Dated:  January 11, 2022            _____*/s/ Kevin P. Muck*_____
                                                Kevin P. Muck
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28