**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 819-3470

Gerald H. Silk (*pro hac vice forthcoming*)
jerry@blbglaw.com
Avi Josefson (*pro hac vice forthcoming*)
avi@blbglaw.com
Scott R. Foglietta (*pro hac vice forthcoming*)
scott.foglietta@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Attorneys for Intervenor*
*Union Investment Privatfonds GmbH*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA, and BRIAN KELLY,<br><br>Defendants. | Case No. 2:21-cv-06240-PA-JEM<br><br>**REPLY BRIEF IN SUPPORT OF THE MOTION OF UNION INVESTMENT PRIVATFONDS GMBH TO INTERVENE, VACATE THE ORDER APPOINTING JEFF ROSS AS LEAD PLAINTIFF, AND REOPEN LEAD PLAINTIFF PROCESS**<br><br>Judge: Hon. Percy Anderson<br>Courtroom: 9A, 9th Floor<br>Date: January 31, 2022<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I. PRELIMINARY STATEMENT ................................................................... 1

II. ARGUMENT .................................................................................................. 3

    A. The Lead Plaintiff Process Must Be Reopened ................................... 3

    B. Ross' Counsel Manipulated The Lead Plaintiff Process ...................... 3

        1. The *Cheng* Class Period Was Overbroad And Frivolous ........... 3

    C. Union Has No Recourse To Correct The *Cheng* Class Period ............ 6

        1. Courts Utilize The Longest Class Period At Lead Plaintiff Stage ................................................................................ 6

        2. Filing A New Complaint With A Different Class Period Would Not Have Impacted The Lead Plaintiff Process .............. 7

    D. Union Has A Significant Financial Interest In The Amended Complaint Class Period ......................................................................... 8

    E. Class Members Did Not Receive The Required Notice ....................... 9

    F. Union Is Entitled To Intervene ............................................................ 10

        1. Union's Motion To Intervene Is Timely ................................... 10

        2. Union Is Entitled To Intervene As A Matter Of Right ............. 11

        3. Union Is Entitled To Permissive Intervention .......................... 11

III. CONCLUSION ............................................................................................. 12

# **TABLE OF AUTHORITIES**

**CASES**  **PAGE(S)**

*Brooks v. Life Care Ctrs. of Am., Inc.*,
 2015 WL 13390031 (C.D. Cal. Mar. 3, 2015)..................................................12

*In re Cloudera, Inc. Sec. Litig.*,
 2020 WL 1288362 (N.D. Cal. Mar. 18, 2020) .............................................9, 12

*In re Cloudera, Inc. Sec. Litig.*,
 2021 WL 1238301 (N.D. Cal. Apr. 2, 2021)...................................................11

*Crawford v. Honig*,
 37 F.3d 485 (9th Cir. 1994),
 *as amended on denial of reh'g* (Jan. 6, 1995) ...................................................3

*Deering v. Galena Biopharma, Inc.*,
 2014 WL 4954398 (D. Or. Oct. 3, 2014).....................................................2, 6

*Eichenholtz v. Verifone Holdings, Inc.*,
 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .................................................6

*Hachem v. Gen. Elec. Inc.*,
 2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018) ................................................12

*Knox v. Yingli Green Energy Holding Co.*,
 136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................6

*In re Leapfrog Enters., Inc. Sec. Litig.*,
 2005 WL 5327775 (N.D. Cal. July 5, 2005) ....................................................3

*Nguyen v. Radient Pharms. Corp.*,
 287 F.R.D. 563 (C.D. Cal. 2012)....................................................................12

*Smith v. SEECO, Inc.*,
 865 F.3d 1021 (8th Cir. 2017) ........................................................................12

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
 2005 WL 1322721 (S.D.N.Y. June 1, 2005) ..................................................10

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(i) ..................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a) ........................................................................................... 11

3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th ed. 2014 &
    Supp. 2017) ..................................................................................................... 12

iii

REPLY ISO MOTION TO INTERVENE
2:21-cv-06240-PA-JEM

## I. PRELIMINARY STATEMENT

Union moved to intervene in this action to vacate the appointment of Jeff Ross as Lead Plaintiff.[1] Union argued that Lead Counsel manipulated the Lead Plaintiff process in this case by filing the initial *Cheng* Complaint that asserted a facially overbroad class period. Even a casual review of Activision's stock chart made clear that purchases during the opening months of the *Cheng* Class Period could not result in compensable damages, necessitating the exclusion of those months from the class period. Indeed, the Amended Complaint filed by Ross and Rosen conceded that the *Cheng* Class Period was overbroad by dropping the first seven months of that period (while expanding the end of the Amended Complaint Class Period by four months).

In opposing Union's motion, Ross and Rosen now admit that the *Cheng* Class Period was frivolous when filed because it included months during which no claims arose. Specifically, they acknowledge that they asserted claims on behalf of investors that could not have incurred any damages, just in case another "shoe" were to drop at some future point and lower the price of Activision stock. This admission concedes that the class period that governed the Lead Plaintiff process was intentionally overbroad. The purported objective of "preserving" claims appears laudable, until one considers that Rosen, and Ross and Cheng dropped those claims as soon as they secured the leadership of this case. Scant months after filing the overbroad *Cheng* Class Period, they somehow knew that no more "shoes" would be dropping, and the frivolous claims they had included could be abandoned.

The real impact of including in the *Cheng* Class Period more than seven months when purchases of Activision stock resulted in gains rather than losses was to limit the opportunity for institutions to secure appointment as Lead Plaintiff. The gains Union realized from purchases during the overbroad *Cheng* Class Period (when no viable claims for fraud existed) offset its multi-million dollar subsequent

---

[1] Capitalized terms are defined in Union's initial brief, unless indicated. *See* ECF No. 50.

loss caused by the alleged fraud. Under the *Cheng* Class Period, Union could not seek appointment as Lead Plaintiff yet, during the Amended Complaint Class Period, Union's loss of nearly $11 million is 880 times greater than Ross' loss of just $12,000. AMF Tjänstepension AB ("AMF"), another prominent institution, has now filed a notice supporting Union's motion, indicating that it lost millions of dollars more in the Amended Complaint Class Period than in *Cheng*. *See* ECF No. 57.

The material differences between the *Cheng* Complaint and the Amended Complaint (a total shift of 11 months, abandoning the seven frivolous months alleged in the *Cheng* Class Period and adding four additional months to the end of that period) require the issuance of a new PSLRA notice. Investors like Union and AMF only received notice of the frivolous *Cheng* Class Period, and therefore could not properly assess whether to seek a leadership role in this case. When viewed in light of the obvious effort to manipulate the Lead Plaintiff process, class members did not receive fair notice of the claims asserted in the Amended Complaint.

Ross and Rosen have no credible explanation for that manipulation. Instead, they blame Union for not contesting the *Cheng* Class Period at the Lead Plaintiff stage. But, as Rosen well knows, there is no mechanism to contest an overbroad class period at that stage. Courts typically apply the longest pleaded class period rather than weighing the merits of competing class periods. *See Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014). Accordingly, Rosen's suggestion that Union should have filed its own case asserting its preferred class period is specious: the weight of authority holds that any class period shorter than what the *Cheng* Complaint asserted would have been disregarded. Neither could Union have filed a Lead Plaintiff motion and argued against application of the *Cheng* Class Period because the same case law limits that argument; moreover, a Lead Plaintiff movant must be able to argue that it has the largest financial interest in the litigation, and Union had gains in the overbroad *Cheng* Class Period.

Rosen has repeatedly exploited this loophole in the PSLRA, which subjects

the Lead Plaintiff process to the untested allegations of the complaint asserting the longest class period. This approach worked for Rosen in *Tesla*, and it will have succeeded in this case unless the Lead Plaintiff process is reopened. Doing so not only gives sophisticated institutions like Union an opportunity to lead this important case: an equitable Lead Plaintiff process predicated on fair notice to the Class is essential to protect the due process rights of all Class members. *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995) (due process is served only if the class representative is capable of protecting the class members' interests). Vacating the appointment of Ross and permitting Union to issue a new notice to the Class is the equitable and efficient path forward.

## II.     ARGUMENT

### A.     The Lead Plaintiff Process Must Be Reopened

The determination as to whether to reopen the Lead Plaintiff process turns on a question of equity: whether the Class received fair notice of the case asserted in the operative pleading. *See In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) ("[w]here membership of a class is substantially expanded . . . fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights"). Here, the answer to that question is informed by both the material differences between the *Cheng* Complaint and the Amended Complaint and by the manipulation of the Lead Plaintiff process through the filing of the frivolously overbroad *Cheng* Class Period.

### B.     Ross' Counsel Manipulated The Lead Plaintiff Process

#### 1.     The *Cheng* Class Period Was Overbroad And Frivolous

Ross and Rosen concede that there was no factual or legal basis for the *Cheng* Class Period when it was filed. This striking admission—that they filed a complaint asserting claims they knew to be baseless—is damning and effectively concedes the manipulation of the Lead Plaintiff process. Ross and Rosen explain that "[i]t was impossible for Plaintiff Cheng to know how many other shoes would drop and how

much further Activision's share price would fall as additional news related to the misconduct was publicly disclosed." ECF No. 53 at 2. This excuse does not justify the filing of a facially overbroad complaint or the impact on investors.[2] To the contrary, Rosen admits that the facts known at the time it filed the *Cheng* Complaint did not support the class period alleged therein. Basic legal ethics should have precluded that filing. But Rosen's excuse is belied by its subsequent conduct: just five months after "preserving" these claims, Rosen abandoned them. How do Ross and Rosen now know that no "additional news related to the misconduct" may be disclosed, when Cheng and Rosen lacked that knowledge? If, as Rosen claims, it would have been improper for Cheng to "exclude[] from the class all investors who had purchased stock prior to his first purchase" why is it now proper to exclude such purchasers in the Amended Complaint? The excuse is farcical because the only thing that has changed is that Ross and Rosen secured leadership of this class action and had no further use for their frivolous class period.[3]

      Ross and Rosen claim "it is impossible . . . to attempt to guess the trading patterns of all institutions. . . ." *Id*. at 2. It is, however, possible to analyze the

---

[2] The claim that the *Cheng* Class Period began on "the earliest date" possible in order to "preserve claims" (*id*. at 5-6), is incorrect. The "earliest date to start the class period" is the first day that a purchase of Activision stock could give rise to a claim for relief, meaning that the purchase had to be at a higher price than the price to which Activision stock fell once the truth was disclosed. At the time *Cheng* was first filed, the class period could not start until July 12, 2018, because until then the price of Activision stock was lower than the price of Activision stock after the disclosure of the alleged fraud. As a result, purchases of Activision stock before July 12, 2018 could not result in damages.

[3] Rosen claims that "Lead Counsel and Lead Plaintiff determined that the case underlying the first two periodic reports was substantially weaker than for the later periodic reports" and that "Lead Plaintiff decided to put the best case forward." *Id*. at 4. There is no way to square this purported "investigation" with the admission that Cheng and Rosen started the *Cheng* Class Period on the "earliest date" permitted by the statute of repose, in the hopes that "another shoe" might drop. The central issue proving the frivolity of the *Cheng* Class Period is the price of Activision stock during the opening months of that period, which meant that no stock purchases could result in compensable losses. No purported investigation by Ross and Rosen could impact the price of Activision stock.

historical prices of Activision stock. Ross and Rosen offer no response to the findings of Dr. Hartzmark, who determined that during at least the first seven months of the *Cheng* Class Period, purchases of Activision stock could not result in damages. *See* ECF No. 50-2 ¶ 14.

Ross and Rosen further contend that "seven additional plaintiffs securities class action firms . . . were investigating this action" which "demonstrate[s] that the [*Cheng*] Class Period was reasonable." ECF No. 53 at 3. No such inference can be made. Whether the *Cheng* Class Period was reasonable turns on the allegations in the *Cheng* Complaint and the undisputed facts about the price of Activision stock— not the actions of other law firms. What can be reasonably inferred is that the overbroad *Cheng* Class Period prevented institutional investors from seeking appointment as Lead Plaintiff, given that no institutional investor moved for lead even though approximately 85% of Activision stock is held by institutions. *See* ECF No. 50 at 7; *see also* ECF No 50-5.

It is telling that Rosen fails to explain its efforts to manipulate the lead plaintiff process in other cases. Rosen entirely ignores the *Tesla* case, a precursor to *Activision* in which Rosen filed a frivolously overbroad class period in an initial complaint, which it truncated once it secured appointment as lead counsel. Neither does Rosen mention *DocuSign*, in which it asserted a class period including months when purchases could not give rise to claims of securities fraud. *See* ECF No. 50 at 9. And while Rosen points to *Facebook* to explain how a class member filed a complaint with a proper class period to challenge Rosen's overbroad five-year period, Rosen offers no explanation for its filing (and prompt abandonment) of that frivolous class period. Rosen's history of gamesmanship in the lead plaintiff process can neither be ignored nor countenanced by this Court in determining whether Activision investors received fair notice of the claims at issue.

### C. Union Has No Recourse To Correct The *Cheng* Class Period

#### 1. Courts Utilize Longest Class Period At Lead Plaintiff Stage

Ross and Rosen claim that Union had the opportunity "to air their grievances about the Initial Class Period . . . during the lead plaintiff stage" because "[c]lass period disputes are routinely resolved" at that stage. ECF No. 53 at 7. This characterization is incorrect, and Ross and Rosen fail to identify a viable mechanism by which Union could have contested the *Cheng* Class Period during the Lead Plaintiff process. Courts "have almost universally held that the longest, most inclusive class period should be used" to assess "the largest financial interest." *Galena Biopharma*, 2014 WL 4954398, at *10. In fact, all the authority Ross cites supports using the longest period. *See id.*; *see also Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (explaining the court was "wary of arguments advocating a shorter class period instead of the longest potential class period"). The consistent reasoning in these cases is that courts should not engage in a merits analysis of the proper class period at the lead plaintiff stage. *See id.* at *3. Had Union asserted a shorter class period at that stage, the overwhelming precedent called for the Court to nonetheless apply the longer *Cheng* Class Period. By filing an overbroad class period in the *Cheng* Complaint, Rosen effectively dictated the period Class members would use in assessing their own financial interest in the case, and that the Court would apply when selecting a Lead Plaintiff.

Rosen is wrong to assert that "Union [] could have filed an opposition to Ross' lead plaintiff motion." ECF No. 53 at 3. In order to file such an opposition, Union would need to have filed a Lead Plaintiff motion, requiring it to argue that it had the "largest financial interest" in the claims asserted in the *Cheng* Complaint. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the overbroad *Cheng* Class Period, Union had a gain of nearly $2 million. ECF No. 50 at 7, 16. Those gains precluded Union from filing a motion claiming to have the largest financial interest in the claims asserted in the *Cheng* Complaint, or opposing Ross' motion. *See Knox v. Yingli Green Energy*

*Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (equating "largest financial interest" with "largest financial *loss*") (emphasis added).

### 2. Filing A New Complaint With A Different Class Period Would Not Have Impacted The Lead Plaintiff Process

Rosen points to another recent litigation, against Facebook, to suggest that Union could have challenged the *Cheng* Class Period by filing a complaint asserting its own, shorter class period. *See* ECF No. 53 at 3. But *Facebook*, filed by Rosen on October 27, 2021, did not provide a roadmap for Activision Class members assessing the *Cheng* Complaint, filed nearly three months earlier. In *Facebook*, Rosen filed a complaint that asserted a class period of five years, during the first four years of which no purchases of Facebook stock gave rise to claims of securities fraud. In response to this attempt to manipulate the *Facebook* lead plaintiff process, the Public Employees Retirement System of Ohio ("Ohio PERS"), acting through the Ohio Attorney General, filed a new lawsuit asserting the correct class period.[4]

Contrary to Rosen's assertions here, the filing of that complaint by Ohio PERS did not resolve the issue of the proper class period to be applied in *Facebook*. The briefing of lead plaintiff motions in *Facebook* is in progress and the court has not indicated which class period will apply. Significantly, in *Facebook*, the filing of a correct class period by Ohio PERS prompted several other institutional investors to move for appointment as lead plaintiff, each of which argued that the short Ohio PERS class period was correct and that the overbroad class period asserted by Rosen should be disregarded. In response, Rosen withdrew the lead plaintiff motion it filed. Accordingly, if the *Facebook* court applies the class period asserted by Ohio PERS, it may be because Rosen simply folded and abandoned its attempt to manipulate the lead plaintiff process. But Rosen cites no case law supporting the application of the

---

[4] Union's counsel in this case, Bernstein Litowitz Berger & Grossmann LLP, represents Ohio PERS and the Ohio Attorney General in *Facebook*. Union has no involvement in the *Facebook* litigation.

shorter class period in *Facebook*, and never conceded in that case that the short class period should govern. Accordingly, there is no basis to conclude that Union could have challenged the *Cheng* Class Period by filing a new complaint.

### D. Union Has A Significant Financial Interest In The Amended Complaint Class Period

Union provided its transactions in Activision stock during the Amended Complaint Class Period, which demonstrate that it incurred a loss of nearly $11 million during that period. *See* ECF No. 50-4. That loss is **880 times greater** than the $12,000 loss incurred by Ross. Plainly, the Lead Plaintiff process here—controlled as it was by Rosen's filing of the overbroad *Cheng* Class Period—did not achieve the PSLRA's objective of having the "most adequate plaintiff" lead this important case. Another Activision investor, AMF, also incurred a significant loss during the Amended Complaint Class Period and supports Union's motion to vacate the appointment of Ross and Rosen. *See* ECF No. 57 at 4.

Ross and Rosen try to confuse this issue, pointing to an alternative, unpleaded class period in which they claim Union has not incurred a loss. Specifically, Rosen cites a hypothetical class period of "February 28, 2017 through July 27, 2021" as Union's "purported 'corrected' class period." ECF No. 53 at 9. But Union never proffered or endorsed that class period—or any other time period—as the "correct" class period. Rosen concocted this "corrected" period by taking the start date of its Amended Complaint Class Period and the end of the *Cheng* Class Period. But the Amended Complaint Class Period still begins with a three-month period during which no purchases of Activision stock could give rise to claims for securities fraud.[5] For that reason, Union has never said that the Amended Complaint Class Period was correct, and Rosen's hypothetical class period (which also includes months with no

---

[5] *See* ECF No. 50 at 5. Activision's stock price did not exceed the mean trading price until June 5, 2017, three months after the start of the Amended Complaint Class Period. *See* ECF No. 50-2 at 5.

viable claims) has no relevance.

Irrespective of its deficiencies, the Amended Complaint Class Period is now the operative class period in this litigation. And that period differs significantly from the *Cheng* Class Period, which is the only period of which the Class received notice. The differences between those two periods are evidenced not merely by the months they cover but the massive losses that investors like Union and AMF incurred in the Amended Complaint Class Period, compared to their relative lack of financial interest in the *Cheng* Class Period. That the change in class periods appears driven by intentional manipulation—by a law firm with a practice of filing such overbroad complaints to game the lead plaintiff process—warrants a swift remedy to ensure that this important litigation is led by the "most adequate plaintiff."

### E. Class Members Did Not Receive The Required Notice

The law is clear that Class members in a securities class action must receive notice of the claims being asserted. 15 U.S.C. § 78u-4(a)(3)(A)(i). A Lead Plaintiff process can be reopened if the Lead Plaintiff fails to publish such notice after filing an operative complaint that materially alters the claims at issue. *In re Cloudera, Inc. Sec. Litig.*, 2020 WL 1288362, at *2 (N.D. Cal. Mar. 18, 2020) (reopening lead plaintiff appointment process when it is "likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice").

The determination of whether Class members received the required notice must take into account the differences between the *Cheng* Complaint and the Amended Complaint, as well as the apparent effort to manipulate the Lead Plaintiff process. The differences between the two complaints are stark: the Amended Complaint eliminated seven months from the beginning of the class period and added four months to the end, for a total change of eleven months. There is a vastly different group of investors who have interests in the claims asserted in the Amended Complaint than those who had interest in the *Cheng* Complaint. As such, the Amended Complaint did not just assert a "somewhat different class period" where

"most potential lead plaintiffs [were] probably eligible under either class period." *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005). Rather, most institutions investors with significant stakes in the Amended Complaint Class Period either did not have losses or had far smaller losses during the *Cheng* Class Period. Activision investors are therefore entitled to notice of the new, operative class period.

That is particularly true here because Rosen did not simply change the class period: it gamed the process from the outset through the overbroad *Cheng* Class Period. As a result, investors, including Union, that had gains during the overbroad *Cheng* Class Period were excluded from the Lead Plaintiff process. This exclusion was the direct result of Rosen's manipulation of the PSLRA process.

### F.  Union Is Entitled To Intervene

#### 1.  Union's Motion To Intervene Is Timely

Ross and Rosen contend that this motion is untimely because the proper time to raise the issue of class period manipulation was during the Lead Plaintiff stage. *See* ECF No. 53 at 17. This is incorrect for two reasons. First, as discussed above, it was not possible for Union to correct the class period at the Lead Plaintiff stage once Rosen filed the frivolously overbroad *Cheng* Class Period.

Second, the question courts consider when determining to vacate a lead plaintiff appointment is whether the class (including the intervenor) had notice of the operative class period. The deadline for Ross to publish notice of the Amended Complaint was December 23, 2021. *See* ECF No. 50 at 10 n.5. Union's motion was promptly filed 11 days after Ross and Rosen failed to publish that notice, and only because Rosen requested that Union wait until after the holidays to file its motion. *See id*.

Allowing Union to intervene to seek the limited relief at issue here will not unduly delay or prejudice other parties in light of the early stage of the litigation. Union has proposed that a new Lead Plaintiff deadline be set for 30 days after

republication of notice in the case. *See* ECF No. 50-11. Further, this case remains at the pleading stage. There has been no discovery, which remains stayed pursuant to the PSLRA.[6] Lastly, Rosen's concerns about potential delay are self-inflicted, as it should have published a new notice immediately after filing the Amended Complaint so that all Class members had the opportunity to seek to be appointed Lead Plaintiff. Indeed, had Rosen not gamed the Lead Plaintiff process when it filed the *Cheng* Complaint, the instant motion would not have been necessary.

### 2. Union Is Entitled To Intervene As A Matter Of Right

Union is entitled to intervene because it has met its burden with respect to all four elements of intervention as of right. *See* ECF No. 50-12 at 3 (granting investor's motion to intervene for purposes of republishing notice). First, its claims arise from its ownership of Activision stock—a "significant protectable interest" that forms the "subject of the action." Second, Ross and Rosen cannot adequately represent Union's interest in this action. Rosen's blatant manipulation of the class period to prevent institutional investors such as Union from being appointed as Lead Plaintiff is a "compelling showing" to the contrary. Third, permitting Ross to serve as Lead Plaintiff without complying with the PSLRA's notice requirements, particularly after his counsel manipulated the Lead Plaintiff process, would "impair or impede" Union's "ability to protect its interest" in its claims against Activision. Ross is plainly not the "most adequate plaintiff" under the PSLRA and secured his appointment through his counsel's manipulative conduct. Fourth and finally, as discussed above, Union has filed a timely motion. Fed. R. Civ. P. 24(a).

### 3. Union Is Entitled To Permissive Intervention

Courts "interpret the requirements of Rule 24 broadly in favor of

---

[6] Rosen's authority is distinguishable. In *In re Cloudera, Inc. Sec. Litig.*, 2021 WL 1238301 (N.D. Cal. Apr. 2, 2021), the original complaint in the case had been filed nearly two years prior to the motion to intervene. *See id.* at *4. Here, only five months have passed since the original complaint was filed in this case.

intervention." *Cloudera*, 2020 WL 1288362, at *2. Union is entitled to intervene because it has a claim or defense that shares a common question of law and fact, and without Union's participation the case would materially impair or impede its rights. Union's claims are precisely those asserted in the Amended Complaint. By subverting the PSLRA process, Rosen impeded Union's right to be represented by the "most adequate plaintiff."[7]

Ross and Rosen further contend that because it could opt out of the class, Union will not suffer any impairment. *See* ECF No. 53 at 17. "[T]his reading of the 'impairment' is surely wrong: it would mean a class member could never intervene in a (b)(3) class action (since she can always opt out), yet both Rule 23 and the history of Rule 24 explicitly envision intervention as a means of securing adequacy of representation." 3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 9:34 (5th ed. 2014 & Supp. 2017); *see also Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024 (8th Cir. 2017) ("Although some district courts . . . have ruled that class members are not entitled to intervene because they can protect their interests by opting out of the class, we think this reasoning is flawed"). In addition, "due process requires" adequate representation. *Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 570 (C.D. Cal. 2012). Courts routinely grant motions to intervene precisely where, as here, a class member seeks to rectify a flawed lead plaintiff appointment process. *See Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *3 (S.D.N.Y. Apr. 12, 2018) (granting investor's motion to reopen lead plaintiff process).

### III. CONCLUSION

For the reasons set forth above, Union respectfully requests that the Court allow Union to intervene and otherwise grant its Motion.

---

[7] *Brooks v. Life Care Centers of America, Inc.*, 2015 WL 13390031 (C.D. Cal. Mar. 3, 2015), is distinguishable. That case has nothing to do with securities class actions or the adequacy of notice to investors, and involved a motion to intervene after the parties had reached a settlement based on concerns about the mediation process. *See id.* at *1.

Dated: January 14, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

Gerald H. Silk (*pro hac vice* forthcoming)
jerry@blbglaw.com
Avi Josefson (*pro hac vice* forthcoming)
avi@blbglaw.com
Scott R. Foglietta (*pro hac vice* forthcoming)
scott.foglietta@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Union Investment Privatfonds GmbH*