1  Laurence M. Rosen (SBN 219683)
2  **THE ROSEN LAW FIRM, P.A.**
   355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
4  Telephone: (213) 785-2610
   Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com
6
7  *Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA, and BRIAN KELLY,<br><br>Defendants. | Case No. 2:21-cv-06240-PA-JEM<br><br>**PLAINTIFFS' RESPONSE TO AMF TJÄNSTEPENSION AB'S JOINDER NOTICE IN SUPPORT, DKT. NO. 57**<br><br><u>CLASS ACTION</u><br><br>JUDGE: Percy Anderson<br>HEARING: January 31, 2022<br>TIME: 1:30 p.m.<br>CTRM: 9A |

Lead Plaintiff Jeff Ross and named plaintiffs Gary Cheng, Micah Ernst, Michael Noon, Nick Baldwin, Chris Martin, and Alejandro Toiber (collectively "Plaintiffs") submit response to AMF Tjänstepension AB's ("AMF") Joinder Notice in Support of the Motion of Union Investment Privatfonds GmbH to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff, and Reopen Lead Plaintiff Process ("Joinder Notice") (Dkt. No. 57).

AMF does not dispute that it reviewed the Private Securities Litigation Reform Act of 1995 ("PSLRA") early notice and the Initial Complaint,[1] and that it was aware of the October 4, 2021 deadline to seek Lead Plaintiff status. Nor does AMF dispute that it was, at all relevant times, aware of the procedures available to it under the PSLRA, including the filing of its own complaint and otherwise opposing Mr. Ross's motion. Indeed, AMF is a sophisticated investor that has "substantial experience serving as a lead plaintiff in federal securities class actions." (Joinder Notice at 2:8-9). AMF's counsel here, Kessler Topaz Meltzer & Check LLP ("KTMC"), is also experienced in securities class actions.

AMF adopts Union's argument that the filing of the Initial Complaint was frivolous because there were no recoverable losses for those who purchased Activision shares between August 4, 2016 through February 27, 2017. (Joinder Notice, 3:1:2). This hindsight argument is without merit. Contrary to AMF, at the time of the filing of the Initial Complaint, those who purchased Activision stock from August 4, 2016 through February 27, 2017 had out-of-pocket damages equal to their purchase price less the true value of the shares on the date of purchase. *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999). That out-of-pocket damages amount is typically calculated as the inflation in the

---

[1] Unless otherwise defined, all capitalized terms shall have the same meanings as set forth in Plaintiffs' Opposition to the Motion of Union Investment Privatfonds Gmbh to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff, and Reopen Lead Plaintiff Process (Dkt. No. 53).

share price caused by the fraud. *Mulderrig v. Amyris, Inc.*, 2021 WL 5832786, at *8 (N.D. Cal. Dec. 8, 2021); *see, also, Acticon AG. V. China North East Petroleum Holdings Limited*, 692 F.3d 34, 41 (2d Cir. 2002) (same and explaining damages exist even where the lookback price rises above purchase price). Class members purchasing in that seven month period were not foreclosed from asserting damages by the PSLRA 90-day lookback price because the PSLRA 90-day lookback price was not yet established at the time the Initial Complaint was filed on August 3, 2021.[2]  Thus, the fact that the PSLRA lookback price ultimately settled above the price of Activision's stock price between August 4, 2016 through February 27, 2017 is not proof of any manipulation or bad faith.  The PSLRA 90-day lookback price could have just as easily ended being below Activision's share price during the seven month period from August 4, 2016 to February 28, 2017 and then every class member in that seven month period would not have their damages foreclosed by the PSLRA's 90-day lookback provision, but would have active claims.  That the 90-day lookback price would ultimately settle higher and foreclose damages for purchasers in that seven month period could not possibly be known at the time the Initial Complaint was filed.  In short, one cannot adjust the class period to take into account the PSLRA's 90-day lookback provision until 90 days after the date of the last corrective disclosure and that date was almost 90 days in the future at the time Plaintiff Cheng and his counsel filed the Initial Complaint.

AMF speculates that the Initial Class Period "intentionally undermined the ability of many sophisticated institutional investors to serve as lead plaintiff in this litigation." (Joinder Notice, at 4:17-18).  Yet AMF provides no facts in support.  AMF itself ***does not*** state that the Initial Complaint undermined ***its*** ability to seek

---

[2] The PSLRA lookback price on the Initial Complaint was established on October 25, 2021—which is the end of the Initial Class Period—July 27, 2021 plus 90 days.  *See* 15 U.S.C. § 78u-4(e)(1).

Lead Plaintiff status. AMF allegedly lost $5 million[3] during the Initial Class Period. Like Union, its time to act was at the Lead Plaintiff stage. AMF has sought lead plaintiff status in other matters for much smaller losses.[4] Here, however, AMF chose not to act on its purported $5 million loss.

AMF is not an independent voice supporting Union's motion. AMF's filing is a coordinated effort to improperly take control of this litigation. AMF, like Union, is a client of BLBG. Both BLBG and AMF's counsel here, KTMC, made the informed and deliberate decision not to file a complaint with a different class period or participate in the Lead Plaintiff process.

Rather, one week *before* the filing of the Initial Complaint, on July 28, 2021, BLBG made a demand for books and records on Activision's board of directors on behalf of an institutional investor pursuant to 8 Del. C. § 220. (*See* Request for Judicial Notice Filed herewith, Declaration of Laurence M. Rosen ("Rosen Decl."), Ex.1, at 2 the "220 Demand"). The purpose of the 220 Demand is to investigate potential shareholder derivative claims.[5] (*Id.*). This shows that BLBG and its institutional investor clients decided not to pursue a potential class action. Three weeks after the Initial Complaint was filed, on August 24, 2021, KTMC made a similar 220 Demand on Activision's board of directors on behalf of an institutional

---

[3] AMF asserts that the Amended Class Period increased its losses by 400% to "more than $20 million" from the Initial Class Period. (Joinder Notice at 4:6). Thus, AMF purportedly has $5 million in losses in the Initial Class Period.

[4] AMF was previously known as AMF Pensionsförsäkring AB. *See Murphy v. Precision Castparts Corp.*, No. 3:16-cv-521 (D. Or.) (Dkt. No. 8-2) (AMF Pensionsförsäkring AB seeking lead plaintiff status with $2.6 million in loss); *Ironworker Local Union No. 405 Annuity Fund v. Dollar General Corp.*, No. 3:17-cv-63 (M.D. Tenn.)(Dkt. No. 29-5)($6.8 million loss).

[5] "Delaware Supreme Court has repeatedly exhorted, shareholders plaintiffs should use the 'tools at hand,' most prominently § 220 books and records actions, to obtain information necessary to sue derivatively." *Ash v. McCall*, 2000 WL 1370341, at *15 fn. 56 (Del. Ch. Sept. 15, 2000) (citing cases).

investor. (Rosen Decl., Ex. 1, at 26). Rather than oppose or otherwise respond to Mr. Ross's lead plaintiff motion by the October 11, 2021 deadline, on November 12, 2021, BLBG and KTMC filed a complaint in Delaware Chancery Court seeking to compel production of documents pursuant to their demands for books and records. (Rosen Decl., Ex. 2).

On December 8, 2021—four days after the filing of the Amended Complaint—BLBG and KTMC filed a stipulation with the Delaware Chancery Court coordinating BLBG's and KTMC's complaint with seven other related complaints and designating both BLBG and KTMC as lead counsel for the coordinated actions.  (Rosen Decl., Ex. 3). The stipulation was approved by the Chancery Court on December 9, 2021. (*Id.*).  This action is ongoing.

KTMC's and BLBG's ongoing pursuit of potential derivative claims on behalf of other institutional investors is significant.  This is the only evidence in the record that demonstrates what institutional investors actually did in response to potential claims concerning Activision.  KTMC's and BLBG's institutional investor clients chose to seek shareholder derivative remedies for corporate mismanagement and breach of fiduciary duties by Activision's board of directors in connection with the harassment and discrimination misconduct—rather than participate in the Lead Plaintiff process here.  In fact, neither KTMC nor BLBG have provided any evidence demonstrating that any of its institutional clients, or anyone else, was prohibited from participating in the Lead Plaintiff process by the Initial Class Period.[6]  Their claims of "manipulation" by Plaintiff Cheng and his counsel are a

---

[6] KTMC's and BLBG's simultaneous representation of plaintiffs in this case, and plaintiffs in the derivative matters (*i.e.,* the 220 Demands) regarding Activision's discrimination misconduct is a serious potential conflict of interest. Here, the securities fraud claims are brought *against Activision* and its management. Any recovery obtained here is sought for the benefit of Activision investors, not Activision. In a derivative action, a shareholder seeks to *represent Activision,* to direct Activision to bring claims against its management and board of directors for

4

baseless smokescreen to take control of this securities class action now that they already control the shareholder derivative actions in Delaware Chancery Court.

Lastly, KTMC (like Union and BLBG) make the same type of routine adjustments to class periods, as done here, in other amended complaints that did not require the reopening of the Lead Plaintiff process. (Rosen Decl., Ex. 4). Other than baseless speculation, there are no facts or evidence that show that the Lead Plaintiff process was manipulated to exclude institutional investors. The Court should deny the motion and joinder to intervene.

Dated: January 18, 2022               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Brian B. Alexander (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: balexander@rosenlegal.com

*Lead Counsel for Plaintiffs*

---

causing harm to Activision. Any recovery from the derivative action is to the benefit of Activision, not investors. Moreover, any recovery for investors here could reduce the recovery to Activision in a shareholder derivative action. *See Tatintsian v. Vorotyntsev*, 2018 WL 2324998, at * 3 (S.D.N.Y. May 22, 2018) (finding conflict of interest between direct and derivative claims where recovery on direct claim might reduce recovery for the company and its shareholders on derivative claims).

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows: I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On January 18, 2022, I electronically filed the following **PLAINTIFFS' RESPONSE TO AMF TJÄNSTEPENSION AB'S NOTICE IN SUPPORT, DKT. NO. 57** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 18, 2022.

/s/ Laurence M. Rosen
Laurence M. Rosen