**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 819-3470

Gerald H. Silk (*pro hac vice forthcoming*)
jerry@blbglaw.com
Avi Josefson (*pro hac vice forthcoming*)
avi@blbglaw.com
Scott R. Foglietta (*pro hac vice forthcoming*)
scott.foglietta@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Attorneys for Intervenor
Union Investment Privatfonds GmbH*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA, and BRIAN KELLY,<br><br>Defendants. | Case No. 2:21-cv-06240-PA-JEM<br><br>**UNION INVESTMENT PRIVATFONDS GMBH'S RESPONSE TO JEFF ROSS' PURPORTED RESPONSE TO AMF TJÄNSTEPENSION AB'S JOINDER NOTICE IN SUPPORT**<br><br>Judge: Hon. Percy Anderson<br>Courtroom: 9A, 9th Floor<br>Date: January 31, 2022<br>Time: 1:30 p.m. |

Union respectfully submits this response to Jeff Ross' Response To AMF Tjänstepension AB's Joinder Notice In Support for the limited purpose of addressing facts and argument improperly first raised against Union and its counsel in that response.[1] *See* ECF Nos. 61-62.

## ARGUMENT

In purporting to respond to AMF, Ross and Rosen make baseless attacks against Union's counsel for its representation of other investors in an unrelated Delaware proceeding, and raise arguments inconsistent with their own prior positions when opposing Union's motion.[2] Ross' and Rosen's shifting and diversionary arguments fail to cure the baseless nature of the initial *Cheng* Complaint that Rosen filed to manipulate the Lead Plaintiff process in this case.

Ross and Rosen use their opposition to AMF's Joinder Notice as cover to attack Union's counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), for its representation of different investors seeking to inspect certain Activision corporate records pursuant to Delaware's corporate law statute. To be clear, Union is not involved in any Delaware litigation involving Activision. Moreover, no conceivable conflict arises from BLB&G's representation of other investors seeking to inspect corporate records.

Additionally, abandoning the argument in their own opposition brief, where Ross and Rosen admitted to asserting claims for investors with no damages, they now contend that purchases of Activision shares during the first seven months of the *Cheng* Class Period could have resulted in recoverable "out-of-pocket" damages. ECF No. 61 at 1-2. This argument ignores the PSLRA's express limitation on

---

[1] Capitalized terms are defined in Union's initial brief, unless indicated. *See* ECF No. 50.

[2] As Ross and Rosen themselves point out, raising new arguments for the first time in a reply brief is improper. *See* ECF No. 53 at 16 n.8 (citing *Torres v. Wells Fargo Bank, N.A.*, 2019 WL 7169790, at *2 (C.D. Cal. Sept. 27, 2019) ("[T]he well-established rule that courts should not consider new arguments raised for the first time in a reply brief.") (citations omitted).

damages and the analysis of Dr. Hartzmark who found that, as a result of the PSLRA's limitation, purchases of Activision stock during the first seven months of the *Cheng* Class Period could not conceivably result in recoverable damages. *See* ECF No. 50-2 ¶¶10-14.

Accordingly, Ross' and Rosen's contentions, while new and improperly raised in the response to AMF's Joinder Notice rather than in response to Union's own motion, are without merit and should be rejected out of hand.

### A. BLB&G's Representation Of Other Investors That Filed A 220 Demand is Irrelevant

Ross and Rosen improperly contend that BLB&G is conflicted from simultaneously representing investors that are trying to "take control of this litigation" and are "plaintiffs in the derivative matters." ECF No. 61 at 3-5 & n.6. Rosen mischaracterizes BLB&G's role in both cases.

Neither BLB&G nor any of its clients filed a shareholder derivative action involving Activision. BLB&G is representing other investors (not Union) that are exercising their statutory rights under Delaware law to inspect Activision's books and records (the "220 Demand"). *See* ECF No. 62-2. As Rosen knows, the 220 Demand is not a stockholder derivative action. Nor is it fair to equate the 220 Demand with an imminent shareholder derivative action. *See, e.g.*, *Lavin v. W. Corp.*, 2017 WL 6728702, at *9 & n.70 (Del. Ch. Dec. 29, 2017) (proper purpose of Section 220 not limited to derivative claim). For its part, Union—which is not in any way involved in the 220 Demand—is properly seeking to ensure adequate supervision of this Action by vacating the appointments that Rosen and Ross secured improperly. Union has been unequivocal in its desire to seek a fair and open Lead Plaintiff process predicated on proper notice to the Class.[3]

---

[3] Accordingly, Rosen's authority discussing a potential conflict of interest between direct and derivative claims is inapposite.

Rosen further contends that the decision by other institutional investors to pursue the 220 Demand "rather than participate in the Lead Plaintiff process here" establishes that Rosen's conduct was proper. ECF No. 61 at 4-5. That other institutional investors decided to investigate potential wrongdoing by Activision through the 220 Demand in no way excuses Rosen from depriving Class members from the fair notice and representation by the "most adequate plaintiff" that the PSLRA requires. It was Rosen's manipulation of the *Cheng* Class Period in this Action that prevented most institutions from seeking Lead Plaintiff appointment in the first place.[4] *See* ECF Nos. 50 at 7; 50-2 ¶¶10-14; 60 at 3-5. The 220 Demand is a *non-sequitur*.

### B. Investors Who Purchased Activision Stock During the First Seven Months Of The *Cheng* Class Period Cannot Have Damages

Shifting from their prior argument, Ross and Rosen now contend that "those who purchased Activision stock from August 4, 2016 through February 27, 2017 had out-of-pocket damages equal to their purchase price less the true value of the shares on the date of purchase." ECF No. 61 at 1. The PSLRA expressly limits damages to the difference between the purchase price and "the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1). As set forth in Dr. Hartzmark's report—which Ross and Rosen never address—under the PSLRA's limitation on damages, purchases during the first seven months of the *Cheng* Class Period could not possibly give rise to a claim for relief. *See* ECF No. 50-2 ¶¶10-14.

---

[4] Rosen's contention that BLB&G did not "provide[] any evidence demonstrating that any of its institutional clients, or anyone else, was prohibited from participating in the Lead Plaintiff process by the Initial Class Period" (ECF No. 61 at 4), is belied by the facts on the record. *See* ECF Nos. 50 at 16-17; 60 at 6-7 (explaining that Union had a gain in the frivolously overbroad *Cheng* Class Period and was foreclosed from seeking appointment as Lead Plaintiff).

That is because the highest price at which any investor could have purchased Activision stock during the seven-month period ($47.64) is far below the lowest value of the rolling "mean trading price" ($60.19). *Id*. In other words, even an Activision investor that purchased shares at the highest value during the seven-month period and sold them during the lookback period when Activision shares were at their lowest value could not have incurred damages, and instead would have had a gain of more than $12 per share. *See id*. Ross' and Rosen's own authority is in accord. *See Acticon AG v. China Ne., Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012) (finding that "if the mean trading price of a security during the 90-day period following the correction is greater than the price at which the plaintiff purchased his stock then that plaintiff would recover nothing under the PSLRA's limitation on damages") (citation omitted).[5] As such, application of the "out-of-pocket" measure of damages does not change the fact that the *Cheng* Class Period was frivolously overbroad.

Despite stating conclusively that investors that bought shares during the first seven months of the *Cheng* Class Period "had out-of-pocket damages," Ross and Rosen make the remarkable claim that they could disregard the PSLRA's limitation on damages because the *Cheng* Complaint was filed prior to the expiration of the 90-day lookback period following the end of the *Cheng* Class Period. *See* ECF No. 61 at 1-2. The fact that the mean trading price had not been finally established provides no basis for filing claims for investors that, at the time of the filing, could not possibly have incurred damages. *See Chambers v. Am. Trans Air, Inc.*, 17 F.3d

---

[5] Ross and Rosen mischaracterize the holding in *China North East Petroleum*. *See* ECF No. 61 at 2. In that case, the Second Circuit Court of Appeals held that a lead plaintiff could plead damages even though it did not mitigate its damages by selling shares on a few days during the 90-day lookback period when the shares traded above the price at which he purchased them. Contrary to Rosen's insinuation, at no time during the 90-day lookback period did the mean trading price ever exceed the price at which the lead plaintiff had purchased his shares.

998, 1006 (7th Cir. 1994) (affirming imposition of Rule 11 sanctions for filing a claim seeking damages that were barred by statute).

As Rosen well knows, established practice under the PSLRA when calculating damages before the 90-day lookback period ends is to use the average trading price for whatever part of the 90-day period has transpired. Indeed, when Rosen filed Ross' Lead Plaintiff motion in this case, only 68 of the 90 days had passed. In presenting Ross' loss in that motion, Rosen noted the PSLRA damage limitation by citing a "Lookback Price" of $80.35 per share. *See* ECF No. 23-3. Because the 90-day period for calculating the "Lookback Price" needed to apply the damage limitation had not expired, Rosen simply used the average price for the 68 days from July 28, 2021 (the first day after the end of the *Cheng* Class Period) through October 4, 2021, the day when the Lead Plaintiff motion was due. If Rosen knew to use an average price for a period shorter than 90 days when calculating Ross' loss for the purpose of his Lead Plaintiff motion, it also knew enough to use an average price for a period shorter than 90 days when determining the proper Class Period for the *Cheng* Complaint—the Class Period that would assert claims only for investors with actual damages.

Neither the PSLRA nor basic legal ethics permit asserting a claim before the claim has arisen. Rosen's options were to assert claims for those investors who had actually incurred damages as of the filing of the *Cheng* Complaint, or simply wait until the 90-day period had expired to file that complaint. But neither of those options would have suited the objective of being the first to file this lawsuit, and using a facially overlong class period to limit the ability of qualified investors to lead this important action. Ross' and Rosen's excuse rings particularly hollow given that they were confident enough to drop seven months from the class period when filing their Amended Complaint, despite the fact that the 90-day period running from the end of the new Amended Complaint Class Period would not expire for 73 days after that filing.

## CONCLUSION

For the reasons discussed above, Union respectfully requests that the Court allow Union to intervene and otherwise grant its Motion.

Dated: January 24, 2022                Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER  & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

Gerald H. Silk (*pro hac vice* forthcoming)
jerry@blbglaw.com
Avi Josefson (*pro hac vice* forthcoming)
avi@blbglaw.com
Scott R. Foglietta (*pro hac vice* forthcoming)
scott.foglietta@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Union Investment Privatfonds GmbH*