Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Rick Richmond (SBN 194962)
*rrichmond@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Local Counsel for AMF Tjänstepension
AB

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated, | Case No. 2:21-cv-06240 PA (JEMx) |
| Plaintiff, | **CLASS ACTION** |
| v. | **AMF TJÄNSTEPENSION AB'S REPLY TO JEFF ROSS, ET AL.'S RESPONSE TO JOINDER NOTICE AND REQUEST FOR JUDICIAL NOTICE** |
| ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA, and BRIAN KELLY, | |
| Defendants. | Date:      January 31, 2022<br>Time:      1:30 p.m.<br>Crtrm.:   9A |
| | Judge:   Hon. Percy Anderson |
| | Trial Date:          None Set |

Putative class member AMF respectfully submits this reply to Jeff Ross's response [ECF No. 61, the "Response"] and request for judicial notice [ECF No. 62].[1]

AMF does not have a pending lead plaintiff motion before the Court, nor is it attempting to "take control of this securities class action."  Rather, AMF's Notice and Joinder [ECF No. 57, the "Notice"] supports Union's Motion to Intervene, Vacate the Order Appointing Jeff Ross as Lead Plaintiff, and Reopen the Lead Plaintiff Process [ECF No. 50].  The Notice outlines AMF's commitment to ensuring that *any* lead plaintiff appointed under the PSLRA is selected through a fair process that is free of lawyer-driven manipulation.  AMF's position is consistent with core principles underlying the PSLRA's enactment: to curtail lawyer-driven litigation countenanced by figurehead plaintiffs.  *See* S. Rep. No. 104-98, at 4 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 683 (stating one of the PSLRA's intended purposes is "to empower investors so that they–not their lawyers–exercise primary control over private securities litigation"); *Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840-CAS (MRWx), 2020 WL 1032420, at *4 n.3 (C.D. Cal. Mar. 2, 2020) ("The Court appreciates that Congress enacted the PSLRA to 'curb the use of . . . figurehead plaintiffs who would serve the interests of plaintiffs' lawyers, not the class.") (alteration in original; citation omitted).  Granting Union's request would not appoint Union (or AMF) as lead plaintiff.  Instead, it would provide all Activision investors the opportunity to fairly evaluate their financial interest during a properly pled class period and on that basis, assess who should be appointed as lead plaintiff.

---

[1]    Unless otherwise indicated, all references to "ECF No. [___]" are to docket entries in *Cheng v. Activision Blizzard, Inc., et al.*, No. 2:21-cv-06240 PA (JEMx) (C.D. Cal.), and all capitalized terms are defined in AMF's Notice [ECF No. 57]. Mr. Ross's filings were also filed on behalf of named plaintiffs Gary Cheng, Micah Ernst, Michael Noon, Nick Baldwin, Chris Martin, and Alejandro Toiber.

AMF supports a transparent selection process that is in sharp contrast to the manipulative tactics employed by Mr. Ross and Rosen Law.  Indeed, Mr. Ross and Rosen Law's own filings lay bare their effort to manipulate the PSLRA's lead plaintiff process to provide Rosen Law—not investors—the best opportunity to control this litigation.  *See* Notice at 2-3 (explaining Rosen Law's manipulation of class periods).  Rather than provide any substantive arguments responding to the Notice's concerns, the Response veers off into a series of baseless attacks predicated on misleading statements—none of which address the central issue here.

## I.   Mr. Ross Provides Shifting Explanations For Rosen Law's Overly Broad Class Period.

Mr. Ross and Rosen Law give shifting explanations why Rosen Law's initial complaint included a seven-month period when no investor had recoverable losses, which they conveniently abandoned only after being appointed as lead plaintiff and lead counsel.  Mr. Ross and Rosen Law initially claimed in their opposition to Union's Motion [ECF No. 53, the "Opposition"] that they "chose the earliest possible date of August 4, 2016 for the Initial Class Period" because of the "unforgiving nature of the statute of repose."  Opposition at 1-2.  But Mr. Ross now claims Rosen Law's filing was appropriate because it had no way of knowing "[t]hat the 90-day lookback price[2] would ultimately settle higher and foreclose damages for

---

[2]   The PSLRA imposes a limitation on traditional damages based on the 90-day mean trading price of a security following the dissemination of corrective information.  *See* 15 U.S.C. § 78u-4(e).  The limitation (referred to as the "90-day lookback" or "bounce back") states:

> [I]n any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by

purchasers in that seven month period" when the initial complaint was filed. Response at 2. Both explanations are nonsensical. If their explanations were true, initial complaints filed under federal securities laws would frequently default to a five-year class period to protect against repose risk and corrective events that may never materialize. In many situations (as is the case here), these overly broad complaints would include thousands of investors with no recoverable claims while simultaneously preventing qualified investors from serving as lead plaintiffs when their trading during that manipulated period resulted in irrelevant gains[3] that negate otherwise compensable losses.[4]

    Mr. Ross's own cited law establishes that Rosen Law filed the initial class period fully knowing that investors in the now-discarded seven-month period could not recover under the PSLRA. As explained in *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, "if the mean trading price of a security during the 90–day

---

the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

*Id.* at §78u-4(e)(1).

[3]    Ordinarily, gains and losses from shares purchased before the class period are not included in a lead plaintiff movant's financial interest calculation. *See Glavan v. Revolution Lighting Techs., Inc.*, Nos. 19-CV-980 (JPO), *et al.*, 2019 WL 3406582, at *4 n.7 (S.D.N.Y. July 29, 2019) ("[the movant] has excluded all gains and losses from [stock acquired before the class period] in arriving at his [loss] figure . . . and he was right to do so") (citation omitted).

[4]    Mr. Ross falsely states that AMF "provides no facts" to support its claim that the initial complaint "undermined the ability of many sophisticated institutional investors to serve as lead plaintiff in this litigation." Response at 2. AMF specifically notes the material changes to both its and Union's financial interest between the initial and amended class periods. *See* Notice at 3. The fact that Union's loss was converted into a gain and AMF's financial interest was reduced by millions of dollars provides ample evidence illustrating the consequences of Rosen Law's class period manipulation.

1  period following the correction is greater than the price at which the plaintiff
2  purchased his stock then that plaintiff **would recover nothing under the PSLRA's**
3  **limitation** on damages." 692 F.3d 34, 39 (2d Cir. 2012) (quoting *In re Mego Fin.*
4  *Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000)) (emphasis added); *see also*
5  Response at 2 (citing *Acticon*). *Acticon* is directly on point. Union's expert has
6  established that "limiting recoverable damages per share under the PSLRA
7  provisions using the mean trading prices through December 31, 2021, would
8  preclude any recoverable damages for shares of Activision common stock purchased
9  *prior* to February 28, 2017." ECF No. 50-2, ¶ 12 (emphasis in original); *id.*, ¶ 8
10 ("The mean trading price through December 31, 2021 is at its lowest value on
11 December 14, 2021 at $60.19"). Mr. Ross does not contest this expert analysis.[5]
12 Despite knowing this, Rosen Law ignored the PSLRA's limitation and filed the
13 initial class period anyway.[6]

14       Mr. Ross's explanation is also inconsistent with Rosen Law's post-
15 appointment behavior. Here, the amended complaint was filed on December 3,
16 2021, asserting claims between February 28, 2017, and November 16, 2021. *See*
17 ECF No. 39, ¶ 1. The final corrective event pled in the amended complaint occurred
18 on November 16, 2021. *Id.*, ¶ 293 ("[T]he *Wall Street Journal* published an article
19 detailing how Defendant CEO Robert Kotick had not only known of the endemic
20 sexual harassment, retaliation and discrimination problems at Activision Blizzard
21 for years, but that Kotick was also one of the culprits guilty of such misconduct.
22 Within minutes of the *The Wall Street Journal* article's publication, Activision's
23 share price began dropping from the day's high of $72.13/share."). Accordingly, the
24

25 [5]   *See* ECF No. 60 (the "Reply") at 5 (noting absence of response to Union's
26 expert analysis).

27 [6]   Mr. Ross has offered other explanations for shortening the initial class period
   including, "eliminat[ing] identical misstatements" and "put[ing] the best case
28 forward" following a "thorough investigation." Opposition at 4.

AMF TJÄNSTEPENSION AB'S REPLY TO JEFF ROSS, ET AL.'S RESPONSE TO JOINDER NOTICE AND
REQUEST FOR JUDICIAL NOTICE

1   90-day period from the final corrective event pled in the amended complaint does

2   not expire until February 14, 2022.  But it is unclear how Mr. Ross and Rosen Law

3   have determined that the 90-day lookback price will not decline further and support

4   a broader class period.[7]  Mr. Ross and Rosen Law have changed course as, unlike

5   the initial complaint, they are now required to defend the amended complaint before

6   the Court.[8]

7   **II.    Neither AMF Nor Kessler Topaz Are Pursuing a Derivative Action**

8       **Against Activision's Board.**

9       Mr. Ross next argues that Kessler Topaz Meltzer & Check, LLP ("Kessler

10  Topaz")'s representation of an unrelated client in a books and records case under 8

11  Del. C. § 220 ("Section 220")[9] in the Delaware Court of Chancery somehow

12  immunizes Rosen Law's misconduct here because the books and records case

13  evidences an "ongoing pursuit of potential derivative claims."  Response at 4.  The

14  insinuation is that Kessler Topaz's (not AMF's) involvement in the Section 220

15  matter creates a conflict.  *See id.* at 4 n.6.  This is a red herring.

16      AMF has no involvement in any books and records case involving Activision

17  and Kessler Topaz does not represent ***any*** client pursuing derivative claims against

18  Activision's board.  As Mr. Ross's counsel knows, Section 220 cases ***are not***

19  derivative actions.  Rather they are statutory investigative tools that "may be

20  employed by a stockholder investigating a direct claim just as readily as when the

21

22  _____

    [7]    *See* Response at 2 (claiming that "the PSLRA 90-day lookback price was not

23  yet established at the time the Initial Complaint was filed on August 3, 2021").

    [8]    *See* Reply at 2 (citing case law applying longest pled class period to assess

24  movants' financial interest).

25  [9]    "A stockholder of a Delaware corporation may inspect the corporation's

26  books and records for any 'proper purpose' reasonably related to the stockholder's

    'interest as a stockholder.'"  *Lavin v. W. Corp.*, No. 2017-0547-JRS, 2017 WL

27  6728702, at *7 (Del. Ch. Dec. 29, 2017) (citations omitted), judgment entered, 2018

28  WL 565492 (Del. Ch. Jan. 25, 2018).

1   stockholder is investigating a derivative claim." *Lavin*, 2017 WL 6728702, at *9
2   n.70 (citation omitted).  Conflation of an inquiry under Section 220 with an active
3   derivative case is another attempt at manipulation.  This is especially true given that
4   neither AMF nor Kessler Topaz are litigating securities fraud claims against
5   Activision.
6        Additionally, the fact that some investors (not before the Court) made a
7   Section 220 demand in no way establishes that Rosen Law's conduct was proper.
8   Rosen Law never informed investors that its initial class period was based on the
9   ***possibility*** of future events rather than an actual theory of liability supported by the
10  law.  *See* Opposition at 2 (claiming "[i]t was impossible for [Rosen Law] to know
11  how many other shoes would drop").  Indeed, Rosen Law's PSLRA notice is
12  entirely silent on the speculative nature of the initial class period.  *See* ECF No. 23-
13  1.  Unfortunately, investors had to rely on the manipulated noticed class period
14  when they initially contemplated whether to seek appointment as lead plaintiff.
15  Given the absence of competition to Mr. Ross's lead plaintiff motion, investors with
16  a significant financial interest, like Union, clearly believed they could not be
17  appointed as lead plaintiff under the PSLRA.  *See* Reply at 6 (noting that Union had
18  a gain during the Initial Class Period).  Others, like AMF, had a materially lower
19  financial interest.  It was only after Mr. Ross and Rosen Law filed the amended
20  complaint that the scope of Rosen Law's manipulation came to light.  The Section
21  220 inquiry has no relevance to Union's Motion or AMF's support thereof.

22  **III.   AMF Is Not Represented By BLBG.**

23       Rosen Law's claim that AMF "is a client of [Bernstein Litowitz Berger &
24  Grossmann LLP ("BLBG")]," Response at 3, is misleading.  AMF is not represented
25  by BLBG in this matter.  In fact, BLBG has never represented AMF in any
26  litigation.  AMF noted its support for Union after reviewing the Motion and Mr.
27  Ross's inconsistent explanation for Rosen Law's manipulative conduct during the
28  PSLRA's lead plaintiff process.  *See* Opposition at 2.  AMF's views are as a

putative class member whose financial interests are directly impacted by the quality of, and decisions made by, the lead plaintiff and lead counsel in this litigation.  Mr. Ross's suggestion that BLBG is directing AMF's conduct here is fabricated.

Moreover, AMF is a highly sophisticated institutional investor that oversees $88 billion in assets on behalf of approximately 4 million customers.  Suggesting that AMF is a figurehead who would blindly follow counsel speaks volumes about how Mr. Ross and Rosen Law view the role of a lead plaintiff under the PSLRA.  AMF is directing its counsel, Kessler Topaz, not vice versa.

## IV.   Kessler Topaz's Adjustments to Class Period Did Not Manipulate the Lead Plaintiff Process.

Unable to justify Rosen Law's actions, Mr. Ross falsely—and without any evidence of an improper purpose—states that Kessler Topaz "make[s] the same type of routine adjustments to class periods, as done here, in other amended complaints that did not require the reopening of the Lead Plaintiff process."  Response at 5.  As an initial matter, of the fifteen cases included in Mr. Ross's request for judicial notice (*see* ECF No. 62-5), only two cases involved Kessler Topaz narrowing the start of the initial class period (like Rosen Law did in the amended complaint here) and neither of the initial complaints in those cases were filed by Kessler Topaz (unlike Rosen Law who filed the initial complaint here).  *See* Stephen G. Larson Decl., Ex. A (*OSI Systems* and *StoneMor*), submitted herewith.[10]  As such, one cannot credibly claim that Kessler Topaz has—like Rosen Law here—manipulated the lead plaintiff process by filing an intentionally overbroad initial class period in order to be appointed lead plaintiff, only to later narrow the initial class period to conform to the law and facts.

If anything, Mr. Ross's examples demonstrate that Kessler Topaz takes its duty to protect the interests of absent class members seriously.  In nine of the fifteen

---

[10]     Kessler Topaz served as local counsel in *StoneMor*.

AMF TJÄNSTEPENSION AB'S REPLY TO JEFF ROSS, ET AL.'S RESPONSE TO JOINDER NOTICE AND REQUEST FOR JUDICIAL NOTICE

cases, Kessler Topaz expanded the start of the class period to include investors that were originally **left out** of the classes pled by **other** law firms that filed the initial complaints in those actions. *See id.* (*AdaptHealth*, *Ideanomics*, *Carnival*, *Kraft*, *NVIDIA*, *Lion*, *United Technologies*, *Babcock & Wilcox*, and *Allergan*).[11] Likewise, in four cases, Kessler Topaz expanded the end of the class period to include corrective events that occurred **after** the initial complaints were filed. *See id.* (*CytoDyn*, *Kraft*, *Babcock & Wilcox*, and *Adeptus Health*). Furthermore, Mr. Ross incorrectly claims that Kessler Topaz expanded the class period in *Acuity Brands*— this is not true given that the initial class period had already been expanded **before** the lead plaintiff deadline. *See id.* Finally, *Qualcomm/Broadcom* was expanded by just two days. *See id.*

While lead plaintiffs are generally entitled to adjust class periods to account for their investigation or the occurrence of subsequent events, that is not what happened here. Rather, Rosen Law filed a factually and legally unsupportable initial complaint and then adjusted the class period after it secured Mr. Ross's appointment. Rosen Law's manipulative filings are entirely distinct from the good faith adjustments made by Kessler Topaz in the actions cited by Mr. Ross.

In summary, AMF is simply supporting a fair selection process open to all Activision investors without relying on Rosen Law's manipulative conduct. Mr. Ross cannot defend Rosen Law's conduct under the law, and thus, resorts to misdirection. For the reasons set forth in the Notice and herein, AMF again respectfully requests that the Court grant Union's Motion and reopen the lead plaintiff selection process.

---

[11] Kessler Topaz served as additional counsel in *Babcock & Wilcox*, and currently serves as local counsel in *AdaptHealth*.

1  Dated:  January 24, 2022          LARSON LLP

2

3

4                                    By:    /s/ *Stephen G. Larson*

5                                          Stephen G. Larson
                                           Rick Richmond
6                                          Paul A. Rigali
                                     Local Counsel for AMF Tjänstepension AB
7

8

9                                    KESSLER TOPAZ MELTZER & CHECK,
                                     LLP
10                                         Naumon A. Amjed
                                           Darren J. Check
11                                         Ryan T. Degan
12                                   Counsel for AMF Tjänstepension AB

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28