KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

RYAN CORRIVEAU (SBN 328096)
ryan.corriveau@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendants*
*Activision Blizzard, Inc., Robert A. Kotick,*
*Dennis Durkin, Armin Zerza and Brian Kelly*

[*Additional Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA and BRIAN KELLY,<br><br>Defendants. | No. 2:21-cv-06240-PA-JEM<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   February 28, 2022<br>Time:   1:30 p.m.<br>Place:  Courtroom 9A, First Street Courthouse<br>Judge:  The Honorable Percy Anderson |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................... 1

II. THE CHALLENGED STATEMENTS ARE NOT ACTIONABLE ............. 1

    A. The Legal Proceedings Statement ................................................... 1

        1. Plaintiffs Cannot Circumvent the Safe Harbor .......................... 2

        2. Regardless of the Safe Harbor, the Statement Is Not Actionable ................................................................................... 3

        3. The Opposition Fails to Show That Item 103 Is Applicable .................................................................................. 6

    B. The Code of Conduct and ESG Report ........................................... 6

III. THE OPPOSITION CONFIRMS THE ABSENCE OF SCIENTER ............. 8

    A. Plaintiffs Fail to Show That Any Defendant Had Knowledge of Facts Contradicting a Statement or Knew a Statement Was Misleading ....................................................................................... 8

    B. Plaintiffs' Other Theories Do Not Raise a Strong Inference of Fraud ............................................................................................... 11

IV. CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ansell v. Laikin*,
    2011 WL 3274019 (C.D. Cal. Aug. 1, 2011) ...................................................... 8

*Constr. Laborers Pens. Tr. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020) ............................................................ 7

*Ferris v. Wynn Resorts, Ltd.*,
    462 F. Supp. 3d 1101 (D. Nev. 2020) ............................................................ 7

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) .................................................................. 10, 12

*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F. Supp. 2d 1043 (C.D. Cal. 2012) ........................................................ 10

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015) ............................................................ 10

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ........................................................... 2

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) ....................................................................... 3

*In re Facebook, Inc. Sec. Litig.*,
    405 F. Supp. 3d 809 (N.D. Cal. 2019) ......................................................... 10

*In re Facebook, Inc. Sec. Litig.*,
    2021 WL 6000058 (N.D. Cal. Dec. 20, 2021) ............................................. 10

*In re Grupo Televisa Sec. Litig.*,
    368 F. Supp. 3d 711 (S.D.N.Y. 2019) ........................................................... 7

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ....................................................... 5, 6, 9

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ....................................................................... 3

*In re Quantumscape Sec. Litig.*,
    2022 WL 137729 (N.D. Cal. Jan. 14, 2022) ...................................................... 3

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .................................................. 7

*In re Signet Jewelers Ltd. Sec. Litig.*,
    389 F. Supp. 3d 221 (S.D.N.Y. 2019) .............................................................. 7

*In re SolarCity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) .............................................................. 3

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ................................................................... 8, 10

*M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*,
    2018 WL 1230570 (C.D. Cal. Jan. 8, 2018) ...................................................... 4

*Magro v. Freeport-McMoran Inc.*,
    2018 WL 3725781 (D. Ariz. Aug. 3, 2018) ...................................................... 8

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016) .............................................................. 4

*No. 84 Emp'r-Teamster Joint Council Pens. Tr. Fund v. Am. W.*
    *Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ............................................................................ 3

*Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
    517 F. Supp. 3d. 196 (S.D.N.Y. 2021) .............................................................. 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*,
    575 U.S. 175 (2015) ........................................................................................ 5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ......................................................................... 2

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ................................................................. 10, 11

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v.*
    *Hewlett-Packard Co.*,
    52 F. Supp. 3d 961 (N.D. Cal. 2014) ................................................................ 6

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v.*
    *Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017)...................................................................... 6, 7, 8

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) .................................................................................. 2

*Veal v. LendingClub Corp.*,
    2020 WL 3128909 (N.D. Cal. June 12, 2020), *aff'd*, 2021 WL
    4281301 (9th Cir. Sept. 21, 2021)...................................................................... 9

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ..................................................... 5, 9, 10

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018)............................................................................ 11

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)...................................................................... 2, 3

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999)............................................................................ 4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).......................................................... 6, 9, 10, 11

**Statutes and Rules**

Federal Rules of Civil Procedure
    Rule 11............................................................................................................ 8

Securities Exchange Act of 1934
    Section 10(b), 15 U.S.C. § 78j(b)................................................................ 3, 12
    Section 20(a), 15 U.S.C. § 78t(a) ................................................................ 12
    Section 21E(i)(1)(D), 15 U.S.C. § 78u-5(i)(1)(D) ......................................... 3

SEC Regulation S-K
    Item 103, 17 C.F.R. § 229.103 ....................................................................... 6

## I.   INTRODUCTION

In their motion to dismiss ("Motion" or "Mot." [ECF No. 55-1]), Defendants[1] challenged Plaintiffs to identify particularized facts to state a claim for securities fraud in accordance with the PSLRA.  Far from meeting that challenge, Plaintiffs' opposition ("Opposition" or "Opp." [ECF No. 69]) confirms their inability to plead that any statement was false when made, or that any Defendant acted with scienter.

*First*, as to the legal proceedings statement in certain of Activision's 10-Ks and 10-Qs, the Opposition is unable to circumvent the PSLRA's safe harbor.  Apart from that, Plaintiffs point to no facts showing that the statement was false when made, and instead rely on conclusions, speculation and hindsight – *i.e.*, that litigation was *eventually* filed by DFEH and EEOC, *after* all of the challenged statements were made.  *Second*, Plaintiffs have no cogent response to controlling Ninth Circuit authority precluding a claim based on Activision's Code of Conduct or ESG Report – and, in any event, again fail to cite facts showing falsity.

Scienter is also absent.  The Opposition is unable to identify facts, specific to *each* Defendant, showing contemporaneous knowledge of information contradicting a challenged statement or otherwise demonstrating awareness that it was misleading when made.  Nor do Plaintiffs cite facts to plead scienter under any other theory.

The Opposition thus makes clear that, as discussed in the Motion, the AC is an improper and unavailing attempt to transform allegations of workplace misconduct into a claim of securities fraud.  The AC should therefore be dismissed.

## II.   THE CHALLENGED STATEMENTS ARE NOT ACTIONABLE

### A.   The Legal Proceedings Statement

Plaintiffs cite no facts or authority to salvage their primary claim: that a legal proceedings statement in specific 10-Ks and 10-Qs (filed between November 2018 and May 2021) was rendered false by virtue of the DFEH and EEOC investigations.

[1] Unless otherwise specified, all defined terms have the same meaning as in the Motion, and all paragraph cites are to the Amended Complaint ("AC" [ECF No. 39]).

REPLY MEM. IN SUPPORT OF MOTION TO DISMISS — - 1 - — No. 2:21-cv-06240-PA-JEM

### 1.   Plaintiffs Cannot Circumvent the Safe Harbor

Plaintiffs argue that the PSLRA's safe harbor does not apply to "financial statement[s] prepared in accordance with [GAAP]" (Opp. at 13), but that is a red herring.  In assailing the legal proceedings statement, Plaintiffs *only* challenge its inclusion in Item 3 of each 10-K (¶¶ 249, 251, 253) and Item 1 of each 10-Q (¶ 262) – which are *separate from*, and *not part of*, the financial statements.[2]  As the AC does not assert any claim based on the financial statements, the effort to sidestep the safe harbor fails.  *See Slayton v. Am. Express Co.*, 604 F.3d 758, 767 (2d Cir. 2010) (safe harbor's exclusion of financial statements prepared in accordance with GAAP does not apply to statements in other portions of a 10-K).  Notably, Plaintiffs cite no authority for the theory that a statement loses safe harbor protection merely because it is "repeated" in notes to financial statements (Opp. at 13) – particularly where, as here, the AC makes no allegation of falsity in those financial statements.[3]

Plaintiffs fare no better with the argument that the statement is not forward-looking.  Opp. at 13.  Tellingly, they ignore the Ninth Circuit's recent decision in *Wochos*, which emphasized that a statement is forward-looking if, when read in its entirety and in context, it expresses an expectation of future results – even if it also refers to existing circumstances underlying that expectation.  985 F.3d at 1191-92; *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014).  That is the case here: the statement is an "opinion of management" that pending matters are "not expect[ed] … to have a material adverse effect."  An underlying assessment that pending matters were "routine" or arose in the "ordinary course" does not alter that conclusion; any forward-looking statement "*necessarily*

---

[2] *See* Ex. S (SEC General Instructions for Form 10-K) at 8 (Item 3); Ex. T (SEC General Instructions for Form 10-Q) at 19 (Item 1).  Those exhibits are subject to judicial notice and are attached to the Supplemental Declaration of Kevin P. Muck, filed herewith.

[3] The only case Plaintiffs cite is *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996 (N.D. Cal. 2008), which did not even address the issue; rather, it erroneously held that the safe harbor does not apply to *any SEC filing* with financial statements.  *Id*. at 1007.  That is contrary to the PSLRA and Ninth Circuit law.  *See, e.g.*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192-93, 1195-96 (9th Cir. 2021) (safe harbor applied to, *inter alia*, 10-Qs).

reflects an implicit assertion" that it is consistent with "current circumstances," and such "assumptions underlying" a forward-looking statement are *statutorily* protected by the safe harbor. *Wochos*, 985 F.3d at 1192 (quoting 15 U.S.C. § 78u-5(i)(1)(D)). Opining that pending matters are "routine" or "ordinary course" is thus "merely [an] alternative way[] of declaring or reaffirming" that they are not expected to have a material adverse effect. *See Wochos*, 985 F.3d at 1192.[4]

Nor do Plaintiffs satisfy their burden to show, with specific *facts*, that the cautionary language (*see* Mot. at 8) was not meaningful. *Wochos*, 985 F.3d at 1190. Instead, Plaintiffs merely offer conclusory assertions that the cited risk factors were "general" and "hypothetical." Opp. at 14-15. There is no analysis of the *actual* disclosures, which are more particularized than those found to be sufficient in other cases. *See, e.g., In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 993 (N.D. Cal. 2017). And bare conclusions that unspecified risks "had already transpired" (Opp. at 15) do nothing to "vitiate" the safe harbor. *See Wochos*, 985 F.3d at 1190, 1194.

Because the statement was forward-looking and accompanied by meaningful cautionary language, the claim that "Defendants had actual knowledge" of falsity (Opp. at 15) is irrelevant as a matter of law. *See Cutera*, 610 F.3d at 1112-13. In any event, as discussed below, the Opposition identifies no facts to show that the statement was false, much less known to be false, when made.

### 2. Regardless of the Safe Harbor, the Statement Is Not Actionable

Even if Plaintiffs' efforts to avoid the safe harbor had merit (and they do not), the Opposition still fails to identify contemporaneous facts showing that the legal proceedings statement can support a claim under Section 10(b).

---

[4] As such, the legal proceedings statement is entirely different from statements in cases cited by Plaintiffs (Opp. at 13-14) which focused on *existing* or *historical facts*. *See No. 84 Emp'r-Teamster Joint Council Pens. Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936-37 (9th Cir. 2003) (existing impact of settlement previously entered into); *In re Quantumscape Sec. Litig.*, 2022 WL 137729, at *14 (N.D. Cal. Jan. 14, 2022) (present advantages of existing technology compared to alternative)*; In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) (state of existing sales pipeline).

Plaintiffs concede that the legal proceedings statement expresses an opinion: specifically, the "opinion of management" that at the time of each challenged 10-K and 10-Q, any pending investigations or proceedings were not "expect[ed] … to have a material adverse effect" on the Company. *See* Opp. at 10. And Plaintiffs do not dispute that, as this Court has explained, such an opinion is not actionable unless it is both subjectively and objectively false. *See, e.g., M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, 2018 WL 1230570, at *3 (C.D. Cal. Jan. 8, 2018).

In arguing that Plaintiffs have met this standard, the Opposition relies almost entirely on Activision's August 3, 2021 10-Q, in which the Company stated that the consequences of the newly-filed DFEH action could adversely affect its business. Opp. at 11-12. Plaintiffs suggest that this disclosure "admitted" that the opinion in the prior 10-Ks and 10-Qs had been false. *Id*. at 11. That argument is baseless. On its face, the August 3 disclosure reflected an assessment of the *new DFEH lawsuit* and the potential impact of *that new proceeding* (¶ 307); as discussed in the moving papers (*see* Mot. at 23), it was not inconsistent with anything said previously, let alone an "admission" that the earlier opinion was not genuinely believed. *See, e.g., Yourish v. Cal. Amplifier*, 191 F.3d 983, 996-97 (9th Cir. 1999).

For this reason, Plaintiffs' lengthy discussion (Opp. at 11-12) of *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568 (S.D.N.Y. 2016), gets them nowhere. In *Menaldi*, the company initially stated it was not subject to a pending proceeding expected to have an adverse impact, but then changed course and said a *previously existing* SEC-DOJ investigation "could have a material effect." *Id*. at 583-84. Thus, there were arguably inconsistent statements about the *same ongoing investigation* without a new development (such as the filing of a new action) to explain the change – a stark contrast to the August 3 disclosure, which expressly related to the DFEH lawsuit filed just two weeks earlier. ¶ 307. Thus, Plaintiffs' argument is nothing more than the sort of "post hoc assessment" this Court has held to be insufficient to plead falsity. *See M&M Hart*, 2018 WL 1230570, at *4.

Plaintiffs' remaining efforts to assail the "opinion of management" consist of empty conclusions and speculation. Generic references to the "serious" nature of the matters being investigated by DFEH and EEOC (Opp. at 11), the #MeToo movement and its effect on other companies (*id.* at 12), the value of a diverse and inclusive workplace (*id.*), or the importance of retaining employees (*id.*) do nothing to establish that, at *specific times* and based on *specific facts*, *specific members* of Activision's management concluded that the investigations would have a material adverse effect on the Company. *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15-16 (S.D.N.Y. 2016) (dismissing claim based on opinions in legal proceedings statement where plaintiffs were unable to "plead how the defendants' opinions were not supported by the facts known to them at the time").

Recognizing their inability to plead that the "opinion of management" was false, Plaintiffs try to deconstruct the statement and argue that snippets considered in isolation – *e.g.*, "routine" and "ordinary course" – were not opinions. Opp. at 9-10. But an opinion statement may not be parsed in this manner; rather, the entirety of the statement must be considered "fairly and in context." *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*, 575 U.S. 175, 194 (2015); *see also Lions Gate*, 165 F. Supp. 3d at 15-16 (holding that a largely identical legal proceedings statement, read in its entirety, was a statement of opinion that "the Company did not believe that the outcome [of pending matters] would have a material adverse effect"). Thus, an assessment of matters as "routine" or arising in the "ordinary course" is part and parcel of the "opinion of management" as to which Plaintiffs fail to plead subjective or objective falsity.

Finally, even if Plaintiffs could attack these terms in a vacuum (Opp. at 10), all they offer are *ipse dixits* (*e.g.*, parallel investigations are "not 'commonplace'") and hindsight (reaction after the DFEH action was filed). *Id.* at 9-11. Such averments do not plead falsity. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806-07 (N.D. Cal. 2019). Furthermore, as discussed in Sec. III.A, *infra*, the

REPLY MEM. IN SUPPORT
OF MOTION TO DISMISS
- 5 -
No. 2:21-cv-06240-PA-JEM

AC does not plead facts to show that any Defendant knew or believed further disclosure was necessary to prevent investors from being misled.  *See, e.g., Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

### 3.   The Opposition Fails to Show that Item 103 Is Applicable

Plaintiffs' perfunctory attempt to save their claim by invoking Item 103 (Opp. at 15) fails.  They are unable to show that the investigations were "material pending legal proceedings" at the time any of the challenged statements were made, cite a single authority to support their argument, or address the cases making clear that Item 103 did not require disclosure of such investigations.  *See* Mot. at 10; *see also Lions Gate*, 165 F. Supp. 3d at 18-19 (SEC investigation was not a "pending legal proceeding" until an action was filed).  And reference to "extensive injunctive relief" sought by DFEH and EEOC when they *eventually filed suit* in July 2021 and September 2021, respectively (Opp. at 15, citing ¶¶ 193, 224), merely underscores that Plaintiffs have *no basis* to argue that Item 103 required a disclosure *earlier*.

### B.   The Code of Conduct and ESG Report

Plaintiffs simply declare, without supporting analysis, that the statements in Activision's Code of Conduct are "specific, concrete, and objectively verifiable – not aspirational."  Opp. at 16; *see also id.* at 19 (similar assertion for ESG Report).  But Plaintiffs fail to explain how the statements in Activision's Code of Conduct and ESG Report differ materially from those held to be "inherently aspirational" in *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017).  In fact, there is no meaningful difference between the statements at issue in *Retail Wholesale* and those challenged here.[5]

---

[5] As the district court explained, Hewlett-Packard Co. ("HP") instructed all employees to "cooperate with all internal investigations and audits," not to "discriminate on the basis of race, color, religion, gender, sexual orientation, gender identity or expression," not to "behave in a disrespectful, hostile, violent, intimidating, threatening, or harassing manner," and to "[r]efuse to accept or tolerate sexual harassment."  *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 52 F. Supp. 3d 961, 965-66 (N.D. Cal. 2014).  HP also said "[a]ny violations of our standards are unacceptable … and we will take appropriate action."  *Retail Wholesale*, 845 F.3d at 1273.

Significantly, Plaintiffs ignore the decisions applying *Retail Wholesale* and finding functionally identical statements to be aspirational and not actionable. *See, e.g.*, *Ferris v. Wynn Resorts, Ltd.*, 462 F. Supp. 3d 1101, 1121 (D. Nev. 2020) ("[a]ll reported violations … will be taken seriously and promptly investigated," and "[h]arassment . . . of any sort will not be tolerated"); *Constr. Laborers Pens. Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 533 (S.D.N.Y. 2020) ("CBS has a 'zero tolerance' policy for sexual harassment"; "[CBS] will not tolerate retaliation against any person who makes a good faith report of misconduct"); *see also* Mot. at 12-13 (citing cases). Plaintiffs instead attempt to distinguish *Retail Wholesale* based on "context," arguing that it involved a single harassment claim against the CEO. Opp. at 17. But the Ninth Circuit specifically rejected the argument that "context" could "transform[] what would otherwise be aspirational into statements capable of objective verification." *Retail Wholesale*, 845 F.3d at 1276.

Unable to square their claim with controlling Ninth Circuit law, Plaintiffs rely on *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018). However, as Plaintiffs characterize the decision (Opp. at 17), it plainly conflicts with (and does not mention) *Retail Wholesale*. And later decisions in the same district have departed from *Signet* and, in accord with *Retail Wholesale*, dismissed such claims. *CBS*, 433 F. Supp. 3d at 533 (citing *Retail Wholesale*, 845 F.3d at 1278); *Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 517 F. Supp. 3d. 196, 208 (S.D.N.Y. 2021) (code of conduct statements ensuring a "working environment free of harassment or other intimidating, hostile or offensive behavior based on race and gender" were "vague, broad, and merely aspirational").[6]

---

[6] Moreover, a subsequent decision in *Signet* makes clear that the court relied on the fact that defendants made the statements at issue specifically to refute charges of a "toxic" workplace. *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019). Nothing comparable is (or could be) alleged here. *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 721-22 (S.D.N.Y. 2019), is inapposite because it involved statements proclaiming concrete steps the defendant was taking to ensure that executives and employees did not violate its prohibition on bribery; once again, the AC here contains no such allegations.

In any event, alleged examples of misconduct (Opp. at 17-18) do not render the statements false.  As the Ninth Circuit has made clear, such statements are not guarantees that there will be no violations, but instead describe the Company's goals.  *Retail Wholesale*, 845 F.3d at 1276; *see also Magro v. Freeport-McMoran Inc.*, 2018 WL 3725781, at *5 (D. Ariz. Aug. 3, 2018); Mot. at 13.  The Opposition has no response to this point.  Moreover, there is no claim that Activision did not possess the stated goals; at most, the AC alleges there were instances in which some employees (none of them the Individual Defendants) fell short of those goals.  And despite offering a few platitudes regarding the supposed nature of their allegations (Opp. at 18), Plaintiffs cannot seriously dispute that, far from showing systemic workplace misconduct, the AC's allegations are anecdotal, often conclusory, and largely based on unsourced hearsay.  *See* Mot. at 14-15.  Nor do Plaintiffs make any effort to address the cases (cited in the Motion) holding that such allegations are insufficient to plead falsity under the PSLRA.  *See id.*[7]

## III.   THE OPPOSITION CONFIRMS THE ABSENCE OF SCIENTER

### A.   Plaintiffs Fail to Show That Any Defendant Had Knowledge of Facts Contradicting a Statement or Knew a Statement Was Misleading

The assertion that "each Individual Defendant knew contemporaneous facts contradicting his statements" (Opp. at 20) is nothing more than wishful thinking.

As to the legal proceedings statement, Plaintiffs' primary argument is that Defendants knew the investigations were ongoing.  Opp. at 20-22.  But knowing of an investigation's *existence* does not establish knowledge of what it entailed.  The AC is deficient because it does not plead "facts to establish *what* each Defendant

---

[7] Plaintiffs also fail to address the analyses that have led courts (including in this district) to hold that that reliance on unproven allegations in other complaints does not satisfy the PSLRA or Fed. R. Civ. P. 11.  *See* Mot. at 14 (citing cases).  And while some courts have considered allegations in regulatory complaints, they have generally done so where defendants apparently did not object, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 n.5 (9th Cir. 2012), or objected on other grounds, *Ansell v. Laikin*, 2011 WL 3274019, at *3-4 (C.D. Cal. Aug. 1, 2011) (defendant argued use of complaint constituted "puzzle pleading").

knew about the … Investigation[s], the specific issues the [DFEH and EEOC were] investigating, and *when* each Defendant became aware of those details." *Veal v. LendingClub Corp.*, 2020 WL 3128909, at *14 (N.D. Cal. June 12, 2020) (emphasis in original), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021).[8]  Thus, the AC does not establish any Defendant's *contemporaneous knowledge* that the investigations would have a material adverse effect, that they were not "routine," or – critically – that investors would be misled absent additional facts.  *See Zucco*, 552 F.3d at 991.

Moreover, Plaintiffs never come to grips with the fact that the AC refutes any such knowledge by *admitting* that the DFEH and EEOC did not communicate any finding of "cause" until June 2021.  *See* Mot. at 17-18; ¶¶ 91-92.  The Opposition identifies no facts to suggest any Defendant knew action was likely before that date, or what any such action would entail.  *See Lions Gate*, 165 F. Supp. 3d at 18-19.  The absence of such facts underscores that Plaintiffs' argument is based on nothing more than impermissible hindsight.  *See Veal*, 423 F. Supp. 3d at 806.

Similarly unavailing are conclusory references to "pervasive" harassment or discrimination.  Opp. at 21-23.  Plaintiffs cite no documents, witnesses,[9] or other contemporaneous facts to show any Defendant's awareness of "pervasive" misconduct.  And even if such awareness had been alleged, that would not show any Defendant's knowledge of the substance of the *investigations*, their likely outcome, or that any statement was false as a result.  *Veal*, 2020 WL 3128909 at *7-8 (no scienter for claim that defendants failed to disclose investigation; "Plaintiffs conflate knowledge of the underlying … practices targeted by the … Investigation

---

[8] For example, the investigations began mere weeks before the only challenged legal proceedings statement that Mr. Neumann signed (Mot. at 9 n.4), and Plaintiffs identify no facts he purportedly learned before he left.  *Id.* at 19 & n.6.  For his part, Mr. Zerza signed just one such statement, more than two years later.  ¶ 261.  Mr. Durkin left the Company before any finding of "cause" was made.  *See* ¶¶ 91-92.  And Mr. Kelly was not even part of the "management" whose opinion was included in the statement.  Mot. at 9 n.4.  Yet all of these individuals are lumped into the same undifferentiated group of "Defendants."

[9] Significantly, Plaintiffs do not dispute that the confidential witnesses cited in the AC are ineffective to plead scienter as to the Individual Defendants.  *See* Mot. at 19.

with knowledge of the subject of the … Investigation").

Messrs. Kotick and Zerza are the only Defendants as to whom Plaintiffs make any semblance of an argument (Opp. at 22-23), and those efforts fail. The gravamen of the claim as to Mr. Kotick is that he was told of unspecified instances of workplace misconduct (based on unidentified sources) at unstated times. *Id*. at 23. Not only are those averments insufficiently particularized to satisfy the PSLRA (*Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1109 (9th Cir. 2021)), they do not establish his knowledge of pervasive misconduct or other facts contradicting any statement. *See* Mot. at 19-20; *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1078-79 (C.D. Cal. 2012).[10] As to Mr. Zerza, the boilerplate assertion that he "would … have been aware" of misconduct at Blizzard by virtue of his prior work there (Opp. at 23) is insufficient to plead scienter. *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 2021 WL 6000058, at *4 (N.D. Cal. Dec. 20, 2021).

Plaintiffs also argue that, even if Defendants were unaware of misconduct, the investigations "put them on notice." Opp. at 21. No authority is cited, because the argument is contrary to law. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 849 (N.D. Cal. 2019) (FTC consent decree did not put defendants "on notice"). And couching the argument in terms of Sarbanes-Oxley certifications (Opp. at 21) is unavailing. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008). At most, Plaintiffs suggest some sort of negligence – a far cry from the knowing or deliberate conduct necessary for scienter. *See Zucco*, 552 F.3d at 991.[11]

---

[10] Nor do allegations that Mr. Kotick "approves high-profile hiring decisions" and is "typically aware of major problems" (Opp. at 23) establish scienter. *Veal,* 423 F. Supp. 3d at 814. And the claim that he personally approved the firing of a Blizzard executive (Opp. at 23) actually *refutes* the theory that misconduct was tolerated. *See* Mot. at 20.

[11] By contrast, the cases Plaintiffs cite (Opp. at 22) involve instances where (unlike here) plaintiffs pleaded defendants' knowledge or possession of specific facts contradicting the statements at issue. *See, e.g.*, *Verifone*, 704 F.3d at 708-09 (defendants received specific reports for three consecutive quarters showing company had not met its financial targets); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 733 (S.D.N.Y. 2015) (company falsely suggested it had not received subpoenas or been requested to produce documents in pending investigations when, in fact, it was served with a civil investigative demand).

**B.   Plaintiffs' Other Theories Do Not Raise a Strong Inference of Fraud**

Having failed to allege facts showing any Defendant's contemporaneous knowledge of facts contradicting a challenged statement, Plaintiffs are unable to overcome that pleading failure with their remaining assortment of scienter theories.

Plaintiffs concede, albeit obliquely (Opp. at 24), that motive and opportunity allegations are themselves insufficient to plead scienter. *See Prodanova*, 993 F.3d at 1108. The Opposition also concedes that the motive allegations are ineffectual as to *four* of the Individual Defendants: (1) Plaintiffs' discussion (Opp. at 24-25) does not even mention Mr. Neumann;[12] and (2) for Messrs. Durkin, Kelly and Zerza, the Opposition merely recites the gross proceeds of their stock sales (*id*. at 25) but *does not dispute* that the AC fails to allege the sales were suspicious in timing or amount, as required by Ninth Circuit law. Mot. at 22-23; *see also Zucco*, 552 F.3d at 1005.

While Plaintiffs at least try to justify their allegations regarding Mr. Kotick (Opp. at 24-25), that effort fares no better. As an initial matter, they do not dispute that the absence of stock sales by Mr. Kotick is inconsistent with the theory that he was motivated to profit from alleged inflation in the stock price and cuts against an inference of scienter. *See* Mot. at 22; *see also Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018). The best Plaintiffs can do is argue that it is possible, in some cases, to find scienter despite the absence of such sales. *See* Opp. at 25. But they cite no facts demonstrating that this is one of those unusual cases. Instead, they merely reiterate the AC's speculation that Mr. Kotick may have engineered a 57-month scheme to accelerate the vesting of certain equity awards (Opp. at 24-25), without identifying a single fact to support that conjecture. Nor do Plaintiffs offer any real answer to the myriad reasons why their theory is implausible, including: (1) the "scheme" supposedly began in February 2017 (¶ 1), about 19 months before

---

[12] Indeed, the *entire* Opposition mentions Mr. Neumann solely to refer to him as a defendant; it says nothing about what he knew at the time of the two challenged SEC filings he is alleged to have signed (both of which were filed in 2018).

any investigation, when the stock price was far below the threshold for triggering accelerated vesting; and (2) even *after* the DFEH suit was public and (according to the AC) the risks to Activision "had materialized" (¶ 290), the share price was *still* $84.05 (*id.*) – well above the threshold for accelerated vesting. *See* Mot. at 21-22. Given Plaintiffs' inability to address these devastating facts, the meek assertion that their "motive allegations … are not illogical" (Opp. at 24) rings especially hollow.

Plaintiffs' other arguments are similarly meritless. In repeating the conclusory averment that Activision "obstructed" the investigations (Opp. at 24), Plaintiffs ignore that – *according to the AC* – the EEOC said *just the opposite* and cited the Company's cooperation. AC, Ex. 3 at 4. And Plaintiffs still offer no facts to show that anything Activision said on July 21, 2021 was an "egregious falsehood," much less one suggesting that a prior statement was made with scienter. *See* Opp. at 24. Finally, the cursory claim that the purported knowledge of two non-defendant employees of the Blizzard subsidiary can be imputed to Activision under *respondeat superior* (Opp. at 25) is both unsupported by particularized facts and flatly contrary to Ninth Circuit law holding that the PSLRA "requires [plaintiff] to plead scienter with respect to those individuals who actually made the [allegedly] false statements." *Glazer*, 549 F.3d at 745.

## IV.    CONCLUSION

Because Plaintiffs fail to state a claim under Section 10(b) (and, as a result, Section 20(a)), and their request for leave to amend (Opp. at 25) is unaccompanied by additional facts they could allege, the AC should be dismissed with prejudice.

Dated:  February 14, 2022

WILMER CUTLER PICKERING HALE AND DORR LLP

By  */s/ Kevin P. Muck*
       Kevin P. Muck

*Attorneys for Defendants Activision Blizzard, Inc., Robert A. Kotick, Dennis Durkin, Armin Zerza and Brian Kelly*

Dated:  February 14, 2022

GIBSON, DUNN & CRUTCHER LLP

By   */s/ Craig Varnen*
Craig Varnen

*Attorneys for Defendant Spencer Neumann*


## ATTESTATION (L.R. 5-4.3.4(a)(2)(i))

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated:  February 14, 2022

*/s/ Kevin P. Muck*
Kevin P. Muck