UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| N/A | | N/A | |

**Proceedings:**     **IN CHAMBERS - ORDER**

Before the Court is a Motion to Dismiss ("Motion") filed by defendants Activision Blizzard, Inc., Dennis Durkin, Brian Kelly, Robert A. Kotick, Spencer Neumann, Armin Zerza (collectively, "Defendants"). (Docket No. 55.) Defendants challenge the sufficiency of the First Amended Complaint ("FAC"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing scheduled for February 28, 2022 is vacated, and the matter taken off calendar.

### I.    FACTUAL BACKGROUND

Plaintiffs Gary Cheng ("Gary Cheng"), Micah Ernst ("Ernst"), Michael Noon ("Noon"), Nick Baldwin ("Baldwin"), Chris Martin ("Martin"), and Alejandro Toiber ("Toiber") brought this putative securities fraud class action.[1] Pursuant to the procedures established by the Private Securities Litigation Reform Act ("PSLRA"), the Court eventually appointed Jeff Ross ("Ross") as lead plaintiff. Ross and the other named plaintiffs (collectively, "Plaintiffs") filed the FAC on behalf of persons or entities who purchased publicly-traded Activision Blizzard ("Activision" or the "Company") common stock on the NASDAQ between February 28, 2017 and November 16, 2021 (the "Class Period").

Activision is one of the world's largest's developers and publishers of interactive entertainment content and services. (FAC ¶ 54.) The Company distributes video games for video game consoles, personal computers, and mobile devices, and operates Esport leagues. (Id.) Activision's common stock is publicly traded on the NASDAQ under the ticker symbol "ATVI." (Id. ¶ 42.) Activision conducts its business through three reportable segments:

---

[1]     The original Complaint in this action asserted securities fraud claims against only against Activision Blizzard, Inc., Dennis Durkin, Robert A. Kotick, and Spencer Neumann.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

Blizzard Entertainment, Activision Publishing, Inc. ("Activision Publishing"), and King Digital Entertainment ("King Digital"). (Id. ¶ 57.) Blizzard Entertainment's key product franchises include World of Warcraft, a multi-player online role-playing franchise; Diablo, an action role-playing franchise; and Overwatch, a team-based first-person action franchise. (Id. ¶ 58.) Activision Publishing's key product franchise is Call of Duty, a first-person action franchise, and King Digital's key product franchise is Candy Crush. (Id. ¶¶ 60-61.)

The five individual defendants include officers and directors of Activision during the Class Period. Robert A. Kotick ("Kotick") has served as the Chief Executive Officer and director since 1991. (Id. ¶ 43.) Dennis Durkin ("Durkin") served as the Chief Financial Officer ("CFO") from March 2012 until May 2017, then became the Company's Chief Corporate Officer until January 2019, and then CFO from that time until April 2021. (Id. ¶ 44.) Spencer Neumann ("Neumann") served as the Company's CFO from May 2017 to January 2019. (Id. ¶ 45.) Armin Zerza ("Zerza") served as Blizzard Entertainment's CFO and Chief Operating Officer between August 2015 and April 2021, then as Activision's Chief Commercial Officer from February 2019 until April 2021, and since then is the Company's CFO. (Id. ¶ 46.) Brian Kelly has served as Chairman of the Board since 2013. (Id. ¶ 47.) Kotick, Durkin, Neumann, and Zerza signed Activision's Sarbanes-Oxley (SOX) certifications during the Class Period. (Id. ¶ 50.)

The FAC alleges that sexual harassment and gender-based discrimination were endemic at Activision, especially at Blizzard Entertainment, and that Defendants failed to disclose employee misconduct despite two regulatory investigations that posed material business risks to the Company. (Id. ¶¶ 1-30.) Plaintiffs allege that senior leadership of the Company were aware that female employees were mistreated, but repeatedly touted that Activision was a good place to work. (Id. ¶¶ 64-85.) According to the FAC, Defendants misled the investing public by its false and misleading statements and omissions about its culture, and investigations by California's Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 35.)

On September 26, 2018, the EEOC initiated an investigation based on allegations that the Company subjects female employees to sex-based discrimination, retaliates against female employees for complaining about it, and pays female employees less than male employees. (Id. ¶ 87.) The following month, on October 12, 2018, the DFEH filed and served a "Systematic Investigation and Director's Complaint for Group/ Class Relief" ("Director's Complaint") against Blizzard Entertainment. (Id. ¶ 89.) The DFEH later amended it to add other segments of the Company and Activision itself. (Id.) The Director's Complaint alleged that Defendants discriminated against employees on the basis of sex. (Id. ¶ 90.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

### A. Activision's "Endemic" Culture of Sexual Harassment and Employment Discrimination

The allegations in the 104-page FAC quotes extensively from allegations contained in the lawsuits filed publicly by both the DFEH and the EEOC in 2021. Seven confidential witnesses, interviewed by Plaintiffs' investigator, all worked at Blizzard Entertainment during the Class Period and detailed the severity of workplace misconduct and the awareness of senior Activision leaders.

### B. Public Disclosure and Reaction to Regulatory Investigations

On June 24, 2021, the DFEH issued a finding of cause based on evidence: (1) of discrimination against female employees in employment terms and conditions, (2) that female employees were subjected to sexual harassment; (3) that Defendants failed to take all reasonable steps to prevent unlawful discrimination, harassment, or retaliation; and (4) that Defendants had committed violations of California Labor Code section 1197.5 in paying female employees. (Id. ¶¶ 91-92.) On July 20, 2021, the DFEH filed a public complaint against Activision in the Superior Court of the State of California. (Id. ¶¶ 7, 21 (citing Department of Fair Employment and Housing v. Activision Blizzard, Inc., Blizzard Entertainment, Inc, and Activision, Inc. and Does One through Ten, inclusive, 21 ST CV 26571 ("DFEH Action").)

According to the DFEH Action (attached as an exhibit and incorporated by reference in the FAC), Defendants "fostered a pervasive 'frat boy' workplace culture" where female employees "hav[e] to continually fend off unwanted sexual comments and advances by their male co-workers and supervisors." (Id. ¶¶ 96-97.) Among other allegations, the DFEH Action asserted that female employees were "criticized for leaving to pick up children from daycare while their male counterparts were playing video games;" "steered into the lower levels of Defendant's hierarchy;" and "denied equal pay and further delayed or passed over for promotions in favor of male counterparts who lacked the same experience or qualifications." (FAC, Exh. 1, DFEH Action ¶¶ 30-52.)

On July 20, 2021, a Bloomberg Law article reported that Activision issued a response after public knowledge of the DFEH Action:

> "We value diversity and strive to foster a workplace that offers inclusivity for everyone. There is no place in our company or industry, or any industry, for sexual misconduct or harassment of any kind," a spokesperson for Activision Blizzard said in a statement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

> "We take every allegation seriously and investigate all claims. In claims related to misconduct, action was taken to address the issue."
>
> "The DFEH includes distorted, and in many cases false, descriptions of Blizzard's past. We have been extremely cooperative with the DFEH throughout their investigation, including providing them with extensive data and ample documentation, but they refused to inform us what issues they perceived," the statement continued. "The picture the DFEH paints is not the Blizzard workplace of today," the company said.

(Id. ¶ 194.)

A few days latter on July 26, 2021, more than 2,000 of Activision's current and former employees signed and released an open letter to Activision leaders that read in part:

> We, the undersigned, agree that the statements from Activision Blizzard, Inc. and their legal counsel regarding the DFEH lawsuit, as well as the subsequent internal statement from Frances Townsend are abhorrent and insulting to all that we believe our company should stand for. . .
>
> We believe these statements have damaged our ongoing quest for equality inside and outside of our industry. Categorizing the claims that have been made as "distorted, and in many cases false" creates a company atmosphere that disbelieves victims. It also casts doubt on our organization's ability to hold abusers accountable for their actions and foster a safe environment for victims to come forward in the future. . . .

(Id. ¶ 197.)

The next day, analysts from Bloomberg Intelligence reported that: "The increasing threat of an exodus of key talent from Activision Blizzard in the wake of a sexual discrimination lawsuit . . . could inhibit the company's ability to deliver on a promising pipeline of new games . . . including Diablo IV, Overwatch 2 and several mobile games, hurting their sales potential." (Id. ¶ 199.) Activision's shares declined 6.75% to close at $84.05 on July 27, 2021. (Id. ¶ 200.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

CEO Kotick responded to these developments in a letter published on July 27, 2021 which read in part:

> Our initial responses to the issues we face together, and to your concern, were, quite frankly, tone deaf. . . . We are taking swift action to be the compassionate, caring company you came to work for and to ensure a safe environment. There is no place anywhere at our Company for discrimination, harassment, or unequal treatment of any kind.
>
> I have asked the law firm of Wilmer Hale to conduct a review of our policies and procedures to ensure that we have and maintain best practices to promote a respectful and inclusive workplace. . . .
>
> We encourage anyone with an experience you believe violates our policies or in any way made you uncomfortable in the workplace to use any of our many existing channels for reporting . . .Of course, NO retaliation will be tolerated.

(Id. ¶ 201.)

High-profile departures began in early August 2021 including with Blizzard Entertainment President J. Allen Brack and Senior Vice President of HR Jesse Meschuk. (Id. ¶ 205.) At the same time, the DFEH amended its complaint on August 23, 2021, to add allegations of obstruction including by Defendants retaining a law firm to enable withholding of information, shredding documents, and soliciting waivers of employee rights without proper notice. (Id. ¶¶ 210-216.)

About a month later, on September 20, 2021, the Wall Street Journal reported that the United States Securities and Exchange Commission ("SEC") launched a wide-ranging investigation into Activision's disclosures about workplace misconduct and discrimination. (Id. ¶ 217.) The Wall Street Journal also reported that the SEC subpoenaed Activision and several of its senior officers, including Kotick who is being asked to share his communications with senior executives about complaints of sexual harassment. (Id.)

Following this news, Activision's stock price declined more than 8 % from $79.56 to $73.03 per share between September 20 and September 21, 2022. (Id. ¶ 219.) Blizzard Entertainment's Chief Legal Officer announced her departure a few days prior. (Id. ¶ 220.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

After Defendants announced delays for Overwatch 2 and Diablo IV, its stock price declined by $10.92 or more than 14% to $66.75 per share. (Id.¶ 243.) Various analyst reports forecasted risks to the Company's performance, liquidity, and workforce. (Id. ¶¶ 241-247.)

On November 16, 2021, the Wall Street Journal published a report detailing allegations that Kotick had both knowledge of Activision's culture of workplace misconduct and faced accusations himself over the years by several women of mistreatment, and in some instances settled their complaints. (Id. ¶¶ 130-138, 244-247 (citing Kirsten Grind, Ben Fritz, and Sarah E. Needleman, Activision CEO Bobby Kotick Knew for Years About Sexual-Misconduct Allegations at Videogame Giant, Wall Street J. (Nov. 16, 2021)).) According to the Wall Street Journal, Kotick "approves of high-profile hiring decisions" and "is typically aware of any major problems in each of Activision's 12 development studios and three major business units." (Id. ¶ 132.) Plaintiffs further quote this Wall Street Journal article which reported that various documents show that Kotick "knew about allegations of employee misconduct in many parts of the Company" and "didn't inform the board of directors about everything he knew." (Id. ¶ 131.) The Wall Street Journal also reported that: "[S]ince the DFEH filed suit on July 20, 2021, Activision Blizzard had received more than 500 reports from current and former employees alleging harassment, sexual assault, bullying, pay disparities and other issues." (Id. ¶ 245.) In response to these developments, the Company's stock declined by 8.3% from $72.13 to $66.14 per share on November 16, 2021. (Id. ¶ 247.)

**C.     Defendants' Public Statements**

The FAC pleads several materially false and misleading statements made by Defendants during the Class Period in their SEC filings (accompanied by SOX certifications), Code of Conduct ("Code') and Environmental, Social, and Governance Report ("ESG Report"). Specifically, Plaintiffs allege that between 2018 and 2021, the line-item disclosure for "Legal Proceedings" included in Defendants' Form 10-K and Form 10-Q filings misstate that the Company was only "party to routine . . . investigations." (Id. ¶¶ 248-262.) Because the relevant portion of the Legal Proceedings statement is consistent for the 2018 10-K, 2019 10-K, and 2020 10-K, only a sample of the 2018 Form 10-K is quoted below:

> In addition, we are party to routine claims, suits, investigations, audits, and other proceedings arising in the ordinary course of business, including with respect to intellectual property, competition and antitrust maters, regulatory matters, tax matters, privacy matters, labor and employment matters, compliance matters, unclaimed property matters, liability and personal injury claims, product

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

> damage claims, collection matters, and or/ commercial claims. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.

(Id. ¶ 249.)

The Form 10-Q filings, 3Q 2018 10-Q, 1Q 2019 10-Q, 2Q 2019 10-Q, 3Q 2019 10-Q, 1Q 2020 10-Q, 2Q 2020 10-Q, 3Q 2020 10-Q, and 1Q 2021 10-Q, all contain the same challenged Legal Proceedings statement:

> We are party to routine claims, suits, investigation, audits, and other proceedings arising from the ordinary course of business, including with respect to intellectual property rights, contractual claims, labor and employment matters, regulatory matters, tax matters, unclaimed property matters, compliance matters, and collection matters. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.

(Id. ¶ 262)

Plaintiffs further allege that Defendants' annual and quarterly reports failed to disclose the existence of the regulatory investigations by the DFEH and the EEOC. (Id. ¶¶ 264-265.)

Plaintiffs identify several Code of Conduct provisions addressing no toleration of harassment, retaliation, discrimination, and other topics including accountability and substance abuse as materially false and misleading. (Id. ¶¶ 275-286.) According to Plaintiffs, Activision's Form 10-K filings between 2016 to 2020 each incorporate by reference the publicly available Code. Plaintiffs further allege that Activision's proxy statements between 2017 and 2021, signed by Kotick and other defendants, "all stressed the importance of and referred the Company's shareholders" to the Code. (Id. ¶¶ 267-275.) In its Code, Activision states it "applies to all our directors and employees worldwide, including our chair, chief executive officer, president, chief operating officer, chief administrative officer. . . ." (Id. ¶ 275.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

Finally, Plaintiffs challenge statements published in Activision's 2020 Environmental, Social, and Governance ("ESG Report") including that it "do[es] not tolerate retaliation against any employee who makes a good faith report or assists in good faith in an investigation." (Id. ¶ 288.) The ESG Report was the first of its kind for the Company and after its publication was posted on the Company's website and Twitter account. (Id. ¶ 287.)

### D. Procedural Background

Plaintiffs filed this lawsuit on August 3, 2021. (Docket No. 1.) This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. On November 1, 2021, the Court granted Movant Ross's motion to be appointed lead plaintiff and for Rosen Law as lead counsel under the PSLRA. (Docket. No. 34.) Plaintiffs filed their FAC on December 3, 2021. (Docket No. 39.) The FAC asserts claims for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act") and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b–5, against Defendants and control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the five individual defendants. Defendants filed their Motion to Dismiss on January 11, 2022 for failure to satisfy the PSLRA's heightened pleading requirements.

## II. JUDICIAL NOTICE

Defendants request that the Court take judicial notice of excerpts from Activision's SEC filings, press releases, a copy of the 2020 ESG Report, excerpts from proxies, a list of the Company's historic stock prices, and other SEC documents. (See Docket No. 55-21 (Defs.' RJN); Docket No. 71-4 (Defs.' Supp. RJN).) In ruling on a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of matters referred to in the complaint, but not attached, where the document's authenticity is not contested and the complaint necessarily relies on them. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001.) A court may also judicially notice matters of public record. Id. at 789. Courts routinely find SEC filings, as well as press releases, earnings calls, and other information made available to the market to be matters of public record, regardless of whether it was referenced in the complaint. See Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006); Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); In re Hansen Nat. Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1149 (C.D. Cal. 2007). Plaintiffs do not oppose the Court taking judicial notice of the Form 10-K and Form 10-Q filings requested by Defendants but are otherwise silent on the other documents. (See Opposition ("Opp'n") to Defs.' Mot.; Pls.' Mem. P. & A. at 13 n.6.) The Court grants the requested judicial notice of documents, but not as to the truth of the matters asserted therein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

## III.  LEGAL STANDARD

Generally, plaintiffs in federal court are required to give only a "short statement and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 664 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

      In a private action for securities fraud under Section 10(b), a complaint must satisfy heightened pleading requirements. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). First, the complaint must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). In addition, the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4, requires "the complaint [to] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "To adequately plead scienter, the complaint must . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" 15 U.S.C. § 78u-4(b)(2). "The pleadings must state precisely the time, place, and nature of the misleading statement, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). "Congress enacted the PSLRA to deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 973 (9th Cir. 1999) (citing H.R. REP. CONF. NO. 104-369, at 32–41 (1995); 15 U.S.C. § 78u-4(b)(1)–(2) (1997)). A court must dismiss a private securities fraud action seeking money damages if the complaint fails to meet the pleading requirements. See 15 U.S.C. § 78u-4(b)(3)(A).

**IV.    ANALYSIS**

    **A.    Section 10(b) and Rule 10b-5**

      Section 10(b) of the Securities Exchange Act makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" Rule 10b-5, 17 C.F.R. § 240.10b-5, defines three categories of manipulative or deceptive devices that constitute a violation of Section 10(b):

        (a)    To employ any device, scheme, or artifice to defraud,

        (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

      (c)      To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In a typical Section 10(b) private action based on material misrepresentations or omissions, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008).

Defendants argue that the FAC fails to allege the first and second elements with the requisite particularity. Specifically, Defendants contend that: (1) the Legal Proceedings Statements are insulated by the PSLRA's safe harbor rule or, alternatively, represent an "opinion of management"; (2) the Code and the ESG Report are not actionable as a matter of law; (3) the FAC does not plead contemporaneous knowledge of facts inconsistent with the challenged statements to establish a strong inference of scienter; and (4) the motive and opportunity allegations are speculative and thus fail to support scienter.

      **1.**      **Falsity**

For a statement to be actionable, the allegations must support both falsity and materiality of the statement at the time the statement was made. See Basic Inc. v. Levinson, 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009), as amended (Feb. 10, 2009). A plaintiff must specify each statement alleged to be misleading and why the statement was false or misleading. See 15 U.S.C. § 78u-4(b)(1); In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548–49 (9th Cir. 1994) (en banc), superseded by statute on other grounds ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). "[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." In re Read-Rite Corp. Sec. Litig., 335 F.3d 843, 846 (9th Cir. 2003) (internal quotation marks and citations omitted). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

      The Ninth Circuit applies the "objective standard of a 'reasonable investor' to determine whether a statement is misleading." In re Alphabet Inc. Sec. Litig., 1 F.4th 687, 699 (9th Cir. 2021). Furthermore, "it bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011) (internal quotation marks and ellipses omitted); 17 C.F.R. § 240.10b-5 (An omission is actionable only where disclosure of a "material fact [is] necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."). "A misleading omission is material if 'there is 'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available' for the purpose of decision making by stockholders concerning their investments.''" In re Alphabet, 1 F.4th at 699-700 (quoting Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1274 (9th Cir. 2017)).

      The FAC alleges that Defendants, in their SEC filings, Code of Conduct, and ESG Report, misled investors about Activision's pervasive misconduct and the existence of and material risks from the regulatory investigations by the DFEH and the EEOC. To support these allegations, Defendants rely on the allegations supplied by the confidential witnesses, media reports, and the extensive allegations taken from the civil lawsuits filed by both the DFEH and the EEOC.

      Plaintiffs argue that the Legal Proceeding Statements in the Company's SEC filings contain fraudulent misstatements and omissions. Specifically, Plaintiffs assert that (1) Activision's "modus operandi" of pervasive workplace misconduct was not "routine" but instead "significant" and (2) Defendants "had no reasonable basis to believe" that the regulatory investigations would not have a "material adverse effect" on Activision because they were at least aware of widespread illegal conduct. The Court concludes that Plaintiffs have failed to plead sufficient facts to establish falsity.

      As an initial matter, the parties disagree on whether the Legal Proceedings Statements are statutorily excluded from the PSLRA's safe harbor for forward-looking statements. At this stage of the litigation, the Court declines to determine whether the Defendants are entitled to safe harbor protection. The FAC fails to adequately plead sufficient facts to establish, whether, for example, the cautionary language was deficient or meaningful, what the condition of Activision's workplace was at the relevant period, and other context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

The Ninth Circuit has "held that the PSLRA's safe harbor does not apply in an all-or-nothing fashion, because some statements about the future may combine non-actionable forward-looking statements with separable—and actionable—non-forward-looking statements." Wochos v. Tesla, Inc., 985 F.3d 1180, 1190 (9th Cir. 2021); see also In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130, 1141 (9th Cir. 2017) (referring to these as "mixed statements"). Assuming, arguendo, the provision applies, the Legal Proceedings Statement is properly considered a "mixed statement" because the first sentence represents a statement of present fact. (See FAC ¶ 253 ("We are party to routine claims, suits, investigations, audits, and other proceedings arising from the ordinary course of business, including with respect to intellectual property rights, contractual claims, labor and employment matters, regulatory matters, tax matters, unclaimed property matters, compliance matters, and collection matters.").)

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)). Although Plaintiffs paint a picture of Activision's toxic workplace and toleration of reprehensible conduct, mostly confined to Blizzard Entertainment, these "allegations are not particular enough to satisfy Rule 9(b)." Vess, 317 F.3d at 1107. Some of the confidential witnesses present indicia of reliability, including job descriptions and employment dates, but the showing here does not provide the specificity and particularity demanded by the PSLRA and Ninth Circuit precedent. Plaintiffs' FAC is "wieldy in the extreme" and "rambles through long stretches of material" quoted from external lawsuits. See In re GlenFed, 42 F.3d at 1548 (requiring that the complaint state "what is false or misleading about a statement, and why it is false"), superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(1), as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

Plaintiffs' other arguments based on post-hoc assessments and the background of the #MeToo movement are also deficient. Plaintiffs contend that the media's reaction to news of the regulatory investigations and Defendants' statement in response to the DFEH Action "belies any notion" that the regulatory investigations were ordinary or routine. But such allegations constitute "fraud-by-hindsight" and absent particularized, temporal facts, are insufficient to support a claim of securities fraud. See In re Read-Rite Corp. Sec. Litig., 335 F.3d at 846.

In addition, none of Plaintiffs' omission-based theories of liability pass muster. Plaintiffs allege that Defendants violated Item 103 of Regulation S-K, 17. C.F.R. §229.103 ("Item 103") by not disclosing the commencement of investigations by the EEOC and the DFEH. Under Regulation S-K Item 103, a company is required to "[d]escribe briefly any material pending legal proceedings . . . known to be contemplated by governmental authorities." 17 C.F.R. § 229.103.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

See In re Lions Gate Ent. Corp. Sec. Litig., 165 F. Supp. 3d 1, 18 (S.D.N.Y. 2016) (concluding that an SEC investigation "alone is not a 'pending legal proceeding' or a 'proceeding[ ] known to be contemplated by governmental authorities' under Item 103"). Item 103 requires that the issuer "[i]nclude the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities." 17 C.F.R. § 229.103. Plaintiffs point to no authority for the claim that a Director's Complaint issued by the DFEH marks the beginning of a legal proceeding. Based on the record, Plaintiffs cannot show that Defendants had a duty to disclose under Item 103 either the state or federal investigations. See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc., 928 F.Supp.2d 705, 711, 718 (S.D.N.Y. 2013) (concluding a state investigation is not a "pending legal proceeding").

Finally, Plaintiffs argue that once Defendants "spoke about Activision's ongoing investigations" their later statements in the Form 10-K and Form 10-Q filings between November 2018 and May 2021 misled investors. The mere mention of "investigations" does not, alone, trigger an introduction of the topic. Cf. Matrixx Initiatives, 563 U.S. at 45, 131 S. Ct. at 1322, 179 L. Ed. 2d 398 (explaining that "[e]ven with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market"); Veal v. LendingClub Corp., 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) ("Defendants were not required to 'confess' to the uncharged allegation."); In re UBS AG Sec. Litig., No. 07–cv–11225 (RJS), 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012), aff'd sub nom., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173 (2d Cir. 2014) ("Indeed, absent an express prior disclosure, a corporation has no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoings or mismanagement, illegal internal policies, or violations of a company's internal codes of conduct and legal policies." (internal citations and quotation marks omitted)).

According to Plaintiffs, certain Code provisions were materially false and misleading because, during the Class Period: "[w]omen who brought sexual harassment complaints were frequently ignored or retaliated against and men who were known harassers were allowed to continue to harass women;" "retaliation against female employees . . .was rampant and tolerated by the Company;" "employees frequently did not face any consequences for their harassment due to their seniority, importance and/or position;" and "the Company discriminated against female employees based on their sex, including by giving them lower pay and fewer opportunities for promotion." (See FAC ¶¶ 277-284.) Plaintiffs attempt to factually distinguish this case from Retail Wholesale. The Court is unpersuaded that the principles animating the Ninth Circuit decision can be ignored here.

Case 2:21-cv-06240-PA-JEM Document 75 Filed 04/18/22 Page 15 of 20 Page ID #:1718

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

As the Ninth Circuit explained, there is nothing unusual about an issuer's "promotion of business ethics" especially given the substance and online publication of an issuer's business ethics are mandated by the SEC. See Retail Wholesale, 845 F.3d at1277. Plaintiffs claim that the Code contains "objectively verifiable" statements because there is overwhelming evidence of Activision's misconduct from the DFEH and EEOC Actions, news articles, and the seven confidential witnesses. To justify a departure from Retail Wholesale's clear conclusions, Plaintiffs would, at minimum, have to establish that Activision "took no action at all in the face of blatant and pervasive violations of its" Code. See Constr. Laborers Pension Tr. for S. California v. CBS Corp., 433 F. Supp. 3d 515, 533 (S.D.N.Y. 2020). Based on this record, that does not appear to be the case.

With respect to Activision's 2020 ESG Report, Plaintiffs allege that its provisions regarding no toleration of retaliation "were materially false and misleading because during the Class Period retaliation against female employees of the Company who made sexual harassment and discrimination claims was rampant and tolerated by the Company." (Id. ¶ 289.) However, the Court concludes that Plaintiffs' bare bone assertions that the ESG Report is actionable fails to satisfy the PSLRA's heightened pleading requirements.

For these reasons, Plaintiffs have failed to adequately allege any actionable misrepresentation or omission.

### 2. Scienter

Defendants additionally argue that Plaintiffs fail to bear their burden of adequately pleading scienter. To survive a motion to dismiss, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). Specifically, scienter requires an intent to deceive, manipulate, or defraud. Tellabs, 551 U.S. at 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179. The standard is not whether a reasonable person can draw an inference that the defendant acted with scienter. Id. at 317, 127 S. Ct. 2499, 168 L. Ed. 2d 179. "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness." Zucco, 552 F.3d at 991 (internal citation omitted). "[F]acts showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of deliberate recklessness." Silicon Graphics, 183 F.3d at 974.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

"[T]he plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Zucco, 552 F.3d at 991 (internal quotation marks and citation omitted). The Supreme Court has elaborated that to qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 313, 127 S. Ct. 2499, 168 L. Ed. 2d 179. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco, 552 F.3d at 991. Courts may initially assess allegations individually, and then consider whether the allegations collectively meet the standard for pleading scienter. See Police Ret. Sys. v. Intuitive Surgical, Inc., 759 F.3d 1051, 1058 (9th Cir. 2014); see, e.g., id. at 1062-64.

Under the Ninth Circuit approach, courts first determine whether plaintiff's allegations, standing alone, are "sufficient to create a strong inference of scienter" and then "[i]f none is sufficient alone," courts "then consider the allegations holistically to determine whether they create a strong inference of scienter taken together." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1056 (9th Cir. 2014). Here, Plaintiffs' allegations of scienter correspond to their allegations of falsity and arise from largely the same facts. The court addresses each allegation in turn, before reading the whole of the complaint to determine whether it supports the required "strong inference" of scienter. The FAC alleges that scienter is principally established by three main factors: (1) the condition of regulatory investigations and wrongdoing; (2) developments surrounding public knowledge of Activision's culture; and (3) individual defendants' stock sales.

"The key to pleading intentional or reckless conduct is pleading facts that show that when defendants made the allegedly false statements, they knew they were false, or knew facts 'so obvious that they must have been aware' that they were misleading the public." In re Am. Apparel, Inc. S'holder Litig., 855 F. Supp. 2d 1043, 1077 (C.D. Cal. 2012) (quoting Zucco, 552 F.3d at 991). Plaintiffs first rely on the November 16, 2021, Wall Street Journal article which stated that the Company's Board of Directors had been "informed at all times with respect to the status of regulatory matters." (FAC ¶ 295.) Because of their contact with the Board, Plaintiffs argue individual defendants Durkin, Neumann, and Zerza, would have been aware of the investigations. The Court finds that Plaintiffs' allegations suffer from a lack of particularity. Plaintiffs seem to treat the two investigations as if they were static and interchangeable. In fact,

Case 2:21-cv-06240-PA-JEM Document 75 Filed 04/18/22 Page 17 of 20 Page ID #:1720

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

there is a gap of about two years between when governmental authorities launched their investigations and when they filed the civil actions.

Plaintiffs also argue that the allegation in the DFEH Action that Defendants obstructed the state's investigation establishes a strong inference of scienter. According to Plaintiffs, these accusations "show[] that they were aware that it was a serious threat to Activision Blizzard." (FAC ¶ 303.) The Court finds that Plaintiffs offer a speculative conclusion without sufficient details about Defendants' conduct to raise a strong inference of scienter. That Defendants may have considered adverse government action as a "serious threat" does not necessarily mean they lied in prior statements. Plaintiffs further argue that in light of the #MeToo movement, Defendants "were reckless in failing to realize that the EEOC and DFEH Investigations and the ongoing misconduct were likely to seriously harm the Company's reputation." (FAC ¶ 306.) The backdrop of the #MeToo movement and national media coverage of accused industry titans is too vague a concept to raise a strong inference of scienter.

Finally, Plaintiffs allege that Defendants' disclosure in the 2Q 2021 10-Q filed on August 3, 2021, was a corrective disclosure because Defendants admitted the business risk posed by the DFEH Action. As Defendants argue, the DFEH Action was filed during the previous month in July – and thus Defendants' explicit reference to the DFEH Action could be inferred as assessing risks based on a new event. (See FAC ¶ 307 (If we experience prolonged periods of adverse publicity, significantly reduced productivity or other negative consequences relating to this matter, our business likely would be adversely impacted.").) The word choices here, particularly "if" and "likely" indicate a conditional assessment and thus a malicious inference is not as compelling as any opposing innocent inference. Without more, that Defendants acknowledged a recent lawsuit and its potential risks does not raise a strong inference of scienter. See Lopes v. Fitbit, Inc., No. 18-CV-06665-JST, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020), aff'd, 848 F. App'x 278 (9th Cir. 2021) ("An after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'"). Plaintiffs do not explain what prior statements made by Defendants creates the clear impression that this particular risk disclosure constitutes an admission.

To the extent Plaintiffs allege that Defendants must have known sexual harassment and discrimination were "endemic" by virtue of their respective positions at the Company, the FAC does not establish the requisite facts to support such a conclusion. See Veal, 423 F. Supp. 3d at 816 (finding certain allegations suffer from "who/when/what deficiencies" and thus "cannot establish scienter"). Without particularized facts, the Court cannot draw the necessary strong inference of scienter regarding any individual defendant's knowledge.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | | Date | April 18, 2022 |
|---|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | | |

For the same reasons, Plaintiffs' allegation that Defendants' July 2021 press release responding to public disclosure of the DFEH Action does not create a strong inference of scienter. According to Plaintiffs, Defendants' statements that the DFEH includes distorted facts and that Activision cooperated with the DFEH throughout the investigation are "false and exculpatory." Again, the FAC fails to plead specific facts going to the accuracy or truthfulness of Defendants' response and fails the PSLRA's heightened pleading requirements. Cf. Ronconi, 253 F.3d at 431 (finding that a particular "press statement d[id] not, however, raise a strong inference that defendants intentionally or with deliberate recklessness misled investors" in part because "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness").

For a securities fraud lawsuit, "if the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter." Prodanova v. H.C. Wainwright & Co., LLC, 993 F.3d 1097, 1103 (9th Cir. 2021). Generally, courts "expect that a financial motive for securities fraud will be clear; for example, someone inside a company stands to gain a substantial profit by engaging in deceptive behavior, such as selling shares before the company discloses negative information." Id. at 1107. The Court finds that Plaintiffs' asserted factors underlying its theory to be deficient. First, the FAC alleges that boilerplate SOX certifications signed by the individual defendants are strongly indicative of scienter. Specifically, the FAC alleges that each individual defendant was reckless in signing or otherwise authorizing the SEC filings, Code, and ESG Report. However, as the Ninth Circuit noted, "[b]oilerplate language in a corporation's 10–K form, or required certifications under Sarbanes–Oxley section 302(a) . . . add nothing substantial to the scienter calculus." Zucco, 552 F.3d at 1003–04.

The FAC alleges that Kotick was motivated to make misstatements due to shareholder value creation incentives in his employment agreement. Plaintiffs identify the following provision in Kotick's agreement: "if the [Company's] stock price closes at or above $79.96 for at least 90 consecutive trading days, all outstanding equity awards granted under the agreement from October 2016 all the way through December 2021 would accelerate vesting at the maximum payout level." (FAC ¶ 309.) Thanks to this provision, Plaintiffs allege, Kotick received a "massive bonus" in 2021 when the stock price condition was met. Without pleading particularized facts, this is only a conclusory assertion.

To be sure, "[a] strong correlation between financial results and stock options or cash bonuses for individual defendants may occasionally be compelling enough to support an inference of scienter." Zucco, 552 F.3d at 1004. The FAC alleges no facts to connect any clear financial incentive from the contract to alleged misstatements by Kotick. Cf. In re Rigel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

Pharms., Inc. Sec. Litig., 697 F.3d 869, 884 (9th Cir. 2012) (finding it "common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals" and explaining that courts "will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes"). The FAC's generalized assertions are inadequate to meet the PSLRA's heightened pleading requirements.

Finally, Plaintiffs allege that individual defendants sold millions of dollars of stock in 2020 and 2021, prior to the filing of the civil actions by the DFEH and EEOC. "Among three factors that must be considered to determine whether stock sales raise a strong inference of deliberate recklessness are: (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." Zucco, 552 F.3d at 1005 (internal citation and quotations omitted).

And the Ninth Circuit has "articulated, [a]lthough unusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter, insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." Id. (internal quotations and citations omitted). Here, the FAC notes the total value of stock sales during the Class Period and the dates on which Kelly, Durkin, Zerza, and other senior leaders such as Activision's chief legal officer sold them. (See FAC ¶¶ 315-319.) The FAC fails to provide any information on the trading history of the individual defendants for purposes of comparison of the stock sales at issue. See Zucco, 552 F.3d at 1005. The FAC fails to allege meaningful trading history, thus no inference of scienter can be gleaned from Plaintiffs' stock sale assertions.

### B. Section 20(a)

To state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000). Because Plaintiffs have failed to state a claim for a primary violation of the securities law, the FAC's Section 20(a) claim also fails.

### Conclusion

For all the foregoing reasons, the Court grants Defendants' Motion to Dismiss the FAC with leave to amend. Plaintiffs' Second Amended Complaint, if any, shall by filed within 30 days of the date of this order. Failure to file the Second Amended Complaint by that date may,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | April 18, 2022 |
|---|---|---|---|
| Title | Gary Cheng v. Activision Blizzard, Inc. et al. | | |

without further warning, result in the dismissal of this action with prejudice. The Court strikes the Notice of Supplemental Authority filed by Plaintiffs, and a separate one filed by Defendants (Dkt. Nos. 73 and 74) for failure to comply with the Local Rules.

    IT IS SO ORDERED.