KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

*Attorneys for Defendants Activision Blizzard, Inc.,
Robert A. Kotick, Dennis Durkin, Armin Zerza and
Brian Kelly*

[*Additional Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, SPENCER NEUMANN, ARMIN ZERZA and BRIAN KELLY,<br><br>Defendants. | No. 2:21-cv-06240-PA-JEM<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:　August 15, 2022<br>Time:　1:30 p.m.<br>Place:　Courtroom 9A, First Street Courthouse<br>Judge:　The Honorable Percy Anderson |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   THE SAC FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT ................................................................................ 1

    A.    The Opposition Does Not Show that the Opinion Was False .............. 1

    B.    Plaintiffs' Effort to Rewrite the Legal Proceedings Statement Is Unavailing Because They Still Cannot Plead Falsity .......................... 4

III.  THE OPPOSITION IDENTIFIES NO FACTS TO SHOW SCIENTER ...... 6

    A.    Plaintiffs Are Unable to Cite Facts Showing Any Defendant's Contemporaneous Awareness of Falsity ................................................ 6

    B.    Plaintiffs' Remaining Scienter Arguments Also Fail .......................... 9

IV.   THE OPPOSITION CONFIRMS THE LACK OF LOSS CAUSATION .................................................................................... 11

V.    CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bond v. Clover Health Invs., Corp.*,
    2022 WL 602432 (M.D. Tenn. Feb. 28, 2022) ............................................ 5, 6

*Camp v. Qualcomm Inc.*,
    2020 WL 1157192 (S.D. Cal. Mar. 10, 2020)................................................. 6

*Christian v. BT Grp., PLC*,
    2018 WL 3647213 (D.N.J. Aug. 1, 2018)...................................................... 10

*Erickson v. Corinthian Colls., Inc.*,
    2015 WL 12732435 (C.D. Cal. Apr. 22, 2015)............................................. 10

*Ferreira v. Funko Inc.*,
    2021 WL 880400 (C.D. Cal. Feb. 25, 2021).................................................. 8

*Garcia v. J2 Global, Inc.*,
    2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) .............................................. 2, 3

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008)............................................................... 8, 9, 10

*Grigsby v. BofI Holdings, Inc.*,
    979 F.3d 1198 (9th Cir. 2020).................................................................... 11

*Habelt v. iRhythm Techs., Inc.*,
    2022 WL 971580 (N.D. Cal. Mar. 31, 2022)................................................. 6

*Hashem v. NMC Health PLC*,
    2021 WL 5926133 (C.D. Cal. Nov. 1, 2021)............................................... 12

*Hollinger v. Titan Cap. Corp.*,
    914 F.2d 1564 (9th Cir. 1990)...................................................................... 9

*Hunt v. Bloom Energy Corp.*,
    2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) .............................................. 9

*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F. Supp. 2d 1043 (C.D. Cal. 2013)........................................................ 7

*In re Apple Computer, Inc., Sec. Lit.*,
   243 F. Supp. 2d 1012 (N.D. Cal. 2002) ........................................................ 10

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ................................................. 12

*In re Facebook, Inc. Sec. Litig.*,
   2021 WL 6000058 (N.D. Cal. Dec. 20, 2021) ................................................. 8

*In re Finisar Corp. Sec. Litig.*,
   2017 WL 1549485 (N.D. Cal. May 1, 2017) ................................................... 8

*In re Gilead Sciences Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................... 12

*In re Lions Gate Entm't Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ............................................................ 4, 6

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) ........................................................................ 11

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ...................................................................... 10

*In re Rigel Pharms., Inc.*,
   697 F.3d 869 (9th Cir. 2012) .......................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and*
   *Prod. Liab. Litig.*,
   2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ..................................................... 10

*Kain v. ACM Research, Inc.*,
   2021 WL 5998396 (N.D. Cal. Dec. 20, 2021) ................................................. 3

*M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*,
   2017 WL 5635425 (C.D. Cal. Oct. 30, 2017) ................................................. 3

*Markette v. XOMA Corp.*,
   2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ............................................... 4

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016) ......................................................... 3, 8

*Metzler Inv. GmbH v. Corinthian Colls, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ...................................................................... 11

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................. 8

*Nguyen v. Endologix Corp.*,
    962 F.3d 405 (9th Cir. 2020)............................................................................. 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*,
    575 U.S. 175 (2015) ......................................................................................2, 4

*Prodanova v. H.C. Wainwright & Co., LLC*,
    2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ............................................... 10

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021)........................................................................... 8

*Roberts v. Zuora, Inc.*,
    2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .................................................. 7

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016)............................................................................. 7

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016)................................................... 6

*Veal v. LendingClub Corp.*,
    2020 WL 3128909 (N.D. Cal. June 12, 2020),
    *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021)...............................6, 7, 10

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018).............................................................................. 9

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)...................................................................11, 12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)..........................................................................7, 8


**Statutes, Rules, and Regulations**

Federal Rule of Civil Procedure 9(b) ...................................................................... 11

Private Securities Litigation Reform Act of 1995 .......................................1, 2, 3, 9

## I.     INTRODUCTION

Defendants' motion to dismiss ("Motion" or "Mot." [ECF No. 79-1])[1] demonstrated that the SAC (like its predecessor) fails to plead securities fraud in accordance with the PSLRA.  Plaintiffs' Opposition ("Opposition" or "Opp." [ECF No. 81]) provides no basis to reach a different conclusion.

Recognizing their inability to plead that the "opinion of management" in the Legal Proceedings Statement was objectively or subjectively false, Plaintiffs insist that selected snippets should be considered in a vacuum.  Not only is that argument incompatible with governing law and the statement itself, but it ultimately gets Plaintiffs nowhere.  The Opposition identifies no facts showing that any portions of the Legal Proceedings Statement – including references to "routine" matters in the "ordinary course" – were rendered materially false or misleading by not mentioning the existence of the DFEH and EEOC investigations.

The Opposition also confirms that scienter is absent.  As before, Plaintiffs can cite no facts to show any Defendant's knowledge of facts inconsistent with the challenged statement.  Moreover, they all but concede that the SAC's "motive and opportunity" allegations are ineffectual, and their last-ditch effort to invoke the "collective scienter" and "corporate scienter" doctrines is contrary to law.

Nor can Plaintiffs overcome their admission that disclosure of the very fact that purportedly rendered the Legal Proceedings Statement misleading resulted in no decline in the price of Activision stock – which means loss causation is absent. For all these reasons, the SAC should be dismissed with prejudice.

## II.    THE SAC FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT

### A.     The Opposition Does Not Show that the Opinion Was False

Plaintiffs concede that they premise their claim at least in part on the "opinion of management" that pending investigations were "not significant" and

---

[1] Unless otherwise specified, all defined terms have the same meaning as in the Motion, and all paragraph references are to Second Amended Complaint ("SAC" [ECF No. 78]).

not "expect[ed] to have a material adverse effect" (Opp. at 18-19), and do not dispute that such a challenge requires contemporaneous facts showing the opinion was objectively *and* subjectively false. *See* Mot. at 8; *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*, 575 U.S. 175, 185-86 (2015). Plaintiffs' cursory argument that they have complied with that standard, purportedly based on a handful of alleged "facts" (Opp. at 19), cannot withstand scrutiny.

*First*, Plaintiffs continue to aver that DFEH and EEOC used "unusual" and "rare" procedural devices to initiate the investigations (Opp. at 13, 19), but they *do not dispute* that the SAC is devoid of facts showing that: (1) the procedural devices rendered the investigations more "significant" or more likely to have a "material adverse effect"; or (2) any Defendant knew of the devices used or any resulting impact. *See* Mot. at 9-10. Without such facts, Plaintiffs do not plead that use of a "Commissioner's Charge" or "Director's Complaint" had any impact on the challenged opinion, let alone Defendants' belief that it was false. *See Garcia v. J2 Global, Inc.*, 2021 WL 1558331, at *16 (C.D. Cal. Mar. 5, 2021). That result is not changed by the fact that the "Board was informed" of the investigations. Opp. at 19; *see also id*. at 15. Alleging that only "a small percentage" of legal matters is elevated to the Board is mere conjecture (*see* Mot. at 10-11), and the Opposition has no response. Nor do Plaintiffs cite facts to support the *further* logical leap that, by reporting the matters to the Board, management knew they were "significant" or "likely to have a material [adverse] effect" (¶ 133). *See* Mot. at 10-11.

*Second*, the Opposition cites the termination of three Blizzard employees and purported changes to HR procedures. Opp. at 19; *see also id*. at 14. However, Plaintiffs concede that the termination allegations are based on two sources (CW2 and CW3) with no knowledge of those employment decisions. *Id.* at 14. The law is clear that, under these circumstances, the supposed "strong belief" of two CWs who admittedly lack personal knowledge is nothing more than speculation and is inadequate under the PSLRA. Mot. at 12; *see also Garcia*, 2021 WL 1558331, at

*15; *M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, 2017 WL 5635425, at *9 (C.D. Cal. Oct. 30, 2017).  Plaintiffs do not address these cases or cite contrary authority.  As for the HR procedures, all Plaintiffs do (Opp. at 13-14) is offer more guesswork: (1) they posit (based on CW2) that unnamed "executives" told HR to document complaints "because the EEOC was investigating the Company"; and (2) from that, go on to hypothesize that other changes allegedly made in 2019 were a "logical next step" and "part and parcel" of the same process – even though their source (CW2) *says no such thing*.  ¶ 112.  Such "pure speculation" runs afoul of the PSLRA.  *See, e.g., Kain v. ACM Research, Inc.*, 2021 WL 5998396, *2 (N.D. Cal. Dec. 20, 2021).  In any event, Plaintiffs fail to plead that the three terminations or revised HR procedures establish that any Defendant *knew* the challenged statement was false.  *See* Mot. at 11-12.  Put differently, the Opposition cites no facts to show that such actions would only be taken in response to a "significant" matter expected to have a "material adverse effect."  *See Garcia*, 2021 WL 1558331, at *16-17.

*Third*, Plaintiffs cite "the scope of the Investigations" – in particular, DFEH's issuance of a broad subpoena in April 2021 (*after* all but one challenged statement was made).  Opp. at 19; *see also id*. at 15.  Yet they identify *no facts* to show that this development led any Defendant to conclude (even when the last challenged statement was made in May 2021) that the opinion was false.  Instead, Plaintiffs argue this "escalation" signaled that settlement discussions "had broken down and that DFEH was likely to file suit."  Opp. at 15.  But the document they cite *refutes* their argument: it reveals that DFEH had *not* completed its investigation, had *not* made any determination of cause, and was anticipating that – *if* there was ultimately a "cause" finding – there would be a December 2021 mediation.  Rosen Decl. Ex. A (ECF No. 81-2), ¶¶ 178-181.  Even in the days leading up to the June 24 "notice of cause," DFEH was *still* collecting information for its investigation.  *Id*. ¶ 179.[2]

_____

[2] Thus, *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568 (S.D.N.Y. 2016), provides Plaintiffs no support. In *Menaldi*, the company stated it was not subject to any proceeding expected to have an adverse impact, but then contradicted itself and admitted

*Fourth*, while Plaintiffs refer to "pervasive" or "endemic" misconduct (Opp. at 19; *see also id*. at 15-16), they do not – and cannot – plead its existence. Indeed, the Opposition confirms that the claim rests on hindsight (*e.g.*, what DFEH *eventually* alleged) and anecdotal reports unrelated to the Individual Defendants (*id*. at 15-16); as before, those averments do not begin to show the challenged statement was objectively or subjectively false. *See* Mot. at 12-14. And while Plaintiffs try to shore up their argument by alluding to the "#MeToo Movement" and Activision's stated commitment to diversity and inclusion (Opp. at 19), they elsewhere concede that those allegations are insufficient to plead falsity. *See id*. at 16-17.

### B. Plaintiffs' Effort to Rewrite the Legal Proceedings Statement Is Unavailing Because They Still Cannot Plead Falsity

Plaintiffs argue that the Legal Proceedings Statement's reference to "routine" claims in the "ordinary course" is not an opinion because it was not expressly designated as such. Opp. at 11. But that is not the law. An opinion conveys a "belief," "view," or "sentiment," and lack of certainty, *Omnicare,* 575 U.S. at 183, and terms such as "routine" or "ordinary course" qualify "since they inherently reflect [an] assessment of and judgment about the underlying circumstances." *See Markette v. XOMA Corp.*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017). That conclusion is confirmed when the statement is read "fairly and in context" and "in light of all its surrounding text" (*Omnicare,* 575 U.S. at 190, 194) – an exercise Plaintiffs avoid. The "opinion of management" references the prior sentence and makes clear that "routine" and "ordinary course" proceedings are ones not expected to be "significant" or have a "material adverse effect." Mot. at 14-15; *see also In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15-16 (S.D.N.Y. 2016).[3]

But even if Plaintiffs could attack the first sentence in a vacuum and treat it

(without changed circumstances) that it "could have a material effect." *Id*. at 583-84.

[3] Contrary to Plaintiffs' argument (Opp. at 11), the Court's finding that the first sentence is not forward-looking (Order at 13) is in no way inconsistent with it being an opinion. As *Omnicare* itself recognizes, statements regarding present-day matters – *e.g.*, views on a company's existing compliance with law – may be opinions. 575 U.S. at 181.

as something other than an opinion, they still fall far short of pleading that it was materially misleading. It is uncontroverted that the statement was *not* affirmatively false (*see* Mot. at 15); Plaintiffs claim it was actionable because it *omitted* reference to allegedly "non-routine" investigations. ¶¶ 6-7, 347. Yet the Opposition does not identify particularized facts showing that, *at any time* between November 2018 and May 2021, existence of the investigations rendered that statement *materially misleading*. *See* Mot. at 15. Rather, Plaintiffs rely on the *same* deficient allegations discussed in the preceding section (*see* Opp. at 12-17, 19) – which only highlights the integrated nature of the Legal Proceedings Statement. And just as those averments do not plead that the "opinion of management" was false (*see* Sec. II.A., *supra*), they also fail to plead that the prior sentence was materially misleading.

Further underscoring Plaintiffs' inability to plead a material omission is the absence of any stock price movement upon disclosure of the DFEH lawsuit. *See* Mot. at 15. Plaintiffs' response – that the price eventually fell "to $66.14 … by the end of the Class Period" (Opp. at 17) – is a *non sequitur*, because (as discussed in connection with loss causation) those later price drops were allegedly caused by disclosure of facts other than the investigations. *See* Sec. IV, *infra*.[4]

Plaintiffs' reliance on an out-of-circuit decision, *Bond v. Clover Health Invs., Corp.*, 2022 WL 602432 (M.D. Tenn. Feb. 28, 2022), does nothing to show that they have adequately alleged falsity. Indeed, the Opposition tellingly misstates *Bond*, claiming inaccurately that it held that "the broad scope of an [i]nvestigation indicates that it is not routine" and that an investigation is not routine if it is "likely to uncover wrongdoing." *See* Opp. at 15. In reality, the *Bond* court found that plaintiffs had alleged specific facts showing that, at the time of the challenged statement, the outcome of an ongoing DOJ investigation threatened Clover's

---

[4] Despite Plaintiffs' inaccurate assertion (Opp. at 17), Defendants do not contend that the terms "routine" and "ordinary course" are "immaterial" as a matter of law. Rather, the point is that Plaintiffs fail to plead that the use of those terms was rendered materially misleading by the existence of the regulatory investigations. *See* Mot. at 15.

business model and nearly all of its revenues. *See Bond*, 2022 WL 602432, at \*21-23, 25. In stark contrast to the SAC's reliance on hindsight (*e.g.*, what EEOC and DFEH *later* alleged) and anecdotal instances of alleged misconduct, plaintiffs in *Bond* alleged contemporaneous facts to show that defendants were aware of the likely outcome of the investigation. *Id*. at \*22. Moreover, unlike here, disclosure of the allegedly omitted information resulted in an immediate and substantial drop in the stock price. *Id*. at \*2. In short, *Bond* highlights the myriad ways in which the SAC's speculative and hindsight-based allegations fail to plead that the Legal Proceedings Statement was materially misleading. *See Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at \*16-17 (N.D. Cal. Mar. 31, 2022) (statements not actionable for failure to disclose negative results of regulatory process where, *inter alia*, plaintiffs failed to plead outcome was known at time of statements).[5]

## III. THE OPPOSITION IDENTIFIES NO FACTS TO SHOW SCIENTER

### A. Plaintiffs Are Unable to Cite Facts Showing Any Defendant's Contemporaneous Awareness of Falsity

Despite this Court's admonition that "[t]he key to pleading [scienter]" is to allege each Defendant's knowledge of facts contradicting his statements (Order at 16), Plaintiffs do not begin to show the SAC meets that standard. Their discussion is devoted almost entirely to Mr. Kotick (Opp. at 19-22) and relies on his supposed general awareness of the investigations, which does nothing to show he knew those matters were significant or "would have had a material adverse effect." *Lions Gate*, 165 F. Supp. 3d at 24; *Veal v. LendingClub Corp.*, 2020 WL 3128909, at \*14-15 (N.D. Cal. June 12, 2020), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021); *Camp v. Qualcomm Inc.*, 2020 WL 1157192, at \*6 (S.D. Cal. Mar. 10, 2020).

Also deficient are allegations that Mr. Kotick had regular meetings with the

---

[5] The Opposition's citation to *Todd v. STAAR Surgical Co.*, 2016 WL 6699284 (C.D. Cal. Apr. 12, 2016), also highlights the SAC's deficiencies. Plaintiffs in *Todd* established that as of the date of the challenged opinion regarding FDA compliance, the company knew that the FDA had already found violations of its regulations. *Id*. at \*9-10. Here, however, Plaintiffs plead nothing comparable with respect to either DFEH or EEOC.

head of HR, knew about departmental changes, was aware of or even involved in certain personnel actions, and was told of "allegations of employee misconduct." Opp. at 19-21. As noted in the moving papers, these allegations say nothing about his knowledge of the *nature of the investigations* at *specific times*, much less their likely impact. Mot. at 18-19; *Veal,* 2020 WL 3128909, at *7; *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1078-79 (C.D. Cal. 2013). Unable to respond to this point or the cited authorities, the Opposition simply ignores them.

Likewise, speculation that HR changes and personnel actions may have been reactions to the investigations (Opp. at 20) is insufficient to show Mr. Kotick's awareness of such a connection, or that he knew the Legal Proceedings Statement was false as a result. *See Veal*, 2020 WL 3128909, at *14-15. And Plaintiffs cannot bridge that gap by referring to the CWs. *See* Opp. at 20. The Opposition does not dispute that *none* of the CWs: (1) claims to have *personal knowledge* of Mr. Kotick's (or any other Individual Defendant's) state of mind; or (2) purports to address what *any Individual Defendant knew* or when he knew it, which means their accounts are not "indicative of scienter." *See* Mot. at 20-21; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).[6]

Plaintiffs' alternative argument, that Mr. Kotick was reckless for not learning more about the investigations (Opp. at 21), is baseless. To begin, they do not say *what* information Mr. Kotick could have gleaned to divine the regulators' intent, or *when* he could have learned it – a point that is critical because (as the Court noted previously but Plaintiffs continue to ignore) the investigations were not "static and

---

[6] Not only is the Opposition unable to address the cases discussed in the moving papers, its citation to *Zucco* – where the Ninth Circuit found far more detailed CW allegations to be deficient because they failed to show personal knowledge and were not indicative of scienter (552 F.3d at 996-999) – underscores the SAC's deficiencies. The other cases they cite (Opp. at 20) are inapposite. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707-08 (9th Cir. 2016) (specific facts showed defendants' knowledge of, and decision not to disclose, FDA concerns regarding a drug study that were at odds with statement about the study); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *2-3, 10-11 (N.D. Cal. Apr. 28, 2020) (CWs allegedly had knowledge of defendants' attendance at specific meetings and receipt of information in particular documents purportedly contradicting statements).

interchangeable." Order at 16-17. Putting aside the absence of any supporting facts, Plaintiffs are asking the Court to apply a negligence standard, which is a far cry from the knowing or egregiously deliberate conduct necessary for scienter. *See Zucco*, 552 F.3d at 991; *Ferreira v. Funko Inc.*, 2021 WL 880400, at *26 (C.D. Cal. Feb. 25, 2021).[7] And couching that argument in terms of Sarbanes-Oxley (SOX) certifications (Opp. at 21) is fruitless, as this Court has already held. Order at 18; *see also Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008).

Plaintiffs' half-hearted argument regarding the other Individual Defendants (Opp. at 22) requires little discussion. Notably, the Opposition does not dispute that the SAC's anecdotal allegations of workplace misconduct are insufficient to plead scienter. *See* Mot. at 19-20; *see also Nguyen v. Endologix Corp.*, 962 F.3d 405, 417 (9th Cir. 2020). For Mr. Zerza, the Opposition repeats conjecture that he "would have known about" harassment because he worked at Blizzard (Opp. at 22), but that is inadequate to show his actual knowledge, let alone knowledge that the Legal Proceedings Statement was false. *See, e.g., In re Facebook, Inc. Sec. Litig.*, 2021 WL 6000058, at *4 (N.D. Cal. Dec. 20, 2021). As to the other Defendants, Plaintiffs merely allude to job titles, responsibilities, and access to information (Opp. at 22), which the Court previously found to be inadequate to support "the necessary strong inference of scienter." Order at 17; *see also Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108-09 (9th Cir. 2021).[8]

---

[7] By contrast, the cases Plaintiffs cite (Opp. at 21-22) involve detailed allegations that defendants possessed specific information at particular times. *See Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1026-27 (N.D. Cal. 2020) (CWs established defendants' review of specific information and data showing statements were false); *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485, at *7 (N.D. Cal. May 1, 2017) (alleging specific information conveyed to defendants); *Menaldi*, 164 F. Supp. 3d at 585-86 (facts showed defendants knew potential impact of investigation at the time they made contrary statements about it).

[8] Plaintiffs' attempt to show that the SAC pleads scienter as to Mr. Neumann only proves that it does not. Opp. 22. The Opposition argues the investigations began just before Mr. Neumann's only purported misstatement, *id.*, but ignores that the SAC does not plead that he was even aware of the investigations. And while Plaintiffs' citation to changed HR procedures and personnel actions is inadequate to show *any* Defendant's scienter, the argument does not even have a theoretical application to Mr. Neumann, who left the Company before most or all of those alleged events. *See id.*; *see also* ¶ 115.

REPLY MEM. ISO MTD                     - 8 -                     No. 2:21-cv-06240-PA-JEM

## B.   Plaintiffs' Remaining Scienter Arguments Also Fail

The Opposition abandons any claim that stock sales by Messrs. Durkin, Kelly and Zerza establish a motive to engage in fraud (*see* Mot. at 21-22) and advances no motive theory as to Mr. Neumann.  The only remaining motive argument is that Mr. Kotick had a compensation-related incentive to keep the stock price above $79.96 (Opp. at 22-23), but Plaintiffs do not dispute that this is the *same generalized averment the Court previously rejected*, without a single new fact to augment it. *See* Mot. at 21 (citing Order at 18-19).  Nor do they address cited Ninth Circuit authority rejecting such generic arguments.  *See, e.g., In re Rigel Pharms., Inc.*, 697 F.3d 869, 884-85 (9th Cir. 2012).  And Plaintiffs make no effort to reconcile their illogical theory with the admitted fact that the stock price stayed well above the $79.96 threshold even after the DFEH suit was disclosed.  *See* Mot. at 21 n.15.[9]

Unable to plead scienter under any valid theory, Plaintiffs resort to arguing that the supposed knowledge of a non-defendant (J Allen Brack, former president of Blizzard) may be "imputed to Activision" under a theory of "corporate scienter." Opp. at 23-24.  Plaintiffs made the same argument in unsuccessfully opposing dismissal of the prior complaint (ECF No. 69 at 25), and it fares no better now.

As an initial matter, whether a corporation may in some cases be vicariously liable for the alleged fraud of its agents (*see Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1576-77 (9th Cir. 1990)) has nothing to do with whether Mr. Brack's alleged *scienter* can be imputed to Activision, because the SAC does not claim that he had any role in the challenged statements.  *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *19 (N.D. Cal. Sept. 29, 2021) (*respondeat superior* inapplicable absent scienter on the part of the actual speakers).  As the Ninth Circuit has held, "the PSLRA requires [plaintiffs] to plead scienter with respect to *those individuals who actually made the false statements*." *Glazer*, 549 F.3d at 745 (emphasis

---

[9] Nor can Plaintiffs dispute that the absence of stock sales by Mr. Kotick is inconsistent with an intent to benefit from alleged price inflation and further undermines an inference of scienter.  *See* Mot. at 22; *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

added); *see also In re Apple Computer, Inc., Sec. Lit.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) (same). Thus, "corporate scienter may not be established by imputing the false statements of one agent [] with the alleged scienter of another agent." *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at *13-14 (C.D. Cal. Dec. 11, 2018); *see also Apple*, 243 F. Supp. 2d at 1023.

Moreover, Mr. Brack worked for the Blizzard subsidiary (¶¶ 23-25) rather than Activision; for purposes of scienter, "knowledge and actions of a subsidiary company's agents cannot be imputed to the parent company." *Christian v. BT Grp., PLC*, 2018 WL 3647213, at *8 (D.N.J. Aug. 1, 2018) (citation omitted). Beyond that, Plaintiffs merely offer the conclusory assertion that Mr. Brack was aware of "harassment and discrimination" at Blizzard (Opp. at 23); they cite no facts to show his knowledge of the investigations, let alone knowledge that the Legal Proceedings Statement was false when made. *See Veal*, 2020 WL 3128909, at *7.

Finally, Plaintiffs rely on so-called "collective scienter" (Opp. at 24), despite having disavowed that theory previously. *See* ECF No. 69 at 25. Putting aside that "the Ninth Circuit has not adopted [that] theory," *Prodanova*, 2018 WL 8017791, at *14, Plaintiffs' own cases make clear it is not even theoretically applicable except in rare cases where a statement is "so important and so dramatically false" that corporate officials must have known of the falsity. Opp. at 24; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014). The extraordinarily limited scope is exemplified by an auto maker's claim to have "sold one million SUVs …, [when] the actual number was zero." *Prodanova*, 2018 WL 8017791, at *14 (citation and quotation omitted); *see also Glazer*, 549 F.3d at 743-744.[10]

---

[10] Plaintiffs' cases (Opp. at 24) also illustrate the doctrine's extremely narrow scope. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, 2017 WL 66281, at *14 (N.D. Cal. Jan. 4, 2017) ("Volkswagen was falsely touting the emissions compliance of 11 million vehicles worldwide … when in fact none of the vehicles were in compliance."); *Erickson v. Corinthian Colls., Inc.*, 2015 WL 12732435, at *11 (C.D. Cal. Apr. 22, 2015) (education company's claim of 94% verified job placement rate reflected a "dramatic disparity" from reality given "widespread verification problems – no related guidelines or training, a lack of job placement definition, data collection deficiencies").

Plaintiffs cannot demonstrate that the Legal Proceedings Statement is even remotely comparable.  And Plaintiffs' effort to invoke the doctrine by repeating the baseless claims that Activision "obstruct[ed]" the DFEH investigation and issued a "false denial" (Opp. at 24) ignores that the Court rejected those same conclusory allegations previously.  *See* Order at 17-18; *see also* Mot. at 22-23.

## IV.     THE OPPOSITION CONFIRMS THE LACK OF LOSS CAUSATION

Plaintiffs do not dispute that pleading loss causation requires them to allege Activision's "share price fell significantly after the truth" of the specific matters allegedly misstated "became known."  Mot. at 23-24 (quoting *Metzler Inv. GmbH v. Corinthian Colls, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008)).  Nor do they contest that: (1) their claim is based on the theory that the Legal Proceedings Statement was false because it did not disclose the *existence* of the investigations (¶¶ 328-348; *see also* Opp. at 1); and (2) the price *did not fall* when that *precise* "omitted" fact was disclosed (¶¶ 267, 269, 349; Mot. at 24).  And they tellingly ignore the cases cited in the moving papers finding loss causation to be absent in such circumstances.  *See* Mot. at 24; *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197-98 (9th Cir. 2021) (when a revelation "disclose[s] precisely the fact that Plaintiffs contend had been misrepresented [,] it provides a singularly appropriate context for assessing … loss causation," and the lack of a market reaction "refutes the inference that the alleged concealment of this particular fact caused any material drop in the stock price").

Plaintiffs instead resort to misdirection, suggesting that loss causation is not "typically" decided at the pleading stage.  Opp. at 24.  The Ninth Circuit, however, has held that loss causation must be pleaded in accordance with Fed. R. Civ. P. 9(b), *Grigsby v. BofI Holdings, Inc.*, 979 F.3d 1198, 1206 (9th Cir. 2020), and has repeatedly affirmed dismissal where (as here) the necessary facts are lacking.  *See, e.g., In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838-39 (9th Cir. 2022).

The Opposition next argues that a one-week gap between disclosure of the DFEH suit and a stock drop is not fatal.  Opp. at 24.  But Plaintiffs *ignore* that they

*expressly allege* that the market for Activision stock was efficient and "promptly digested" all public information and incorporated it into the price (¶ 408), thus conceding that revelation of a previously concealed material fact would have had "an immediate response in the stock price." Mot. at 24 (quoting *Hashem v. NMC Health PLC*, 2021 WL 5926133, at *4 (C.D. Cal. Nov. 1, 2021)); *see also Wochos*, 985 F.3d at 1197-98.[11] Plaintiffs have no cogent response, and their conjecture that Activision's "denial" of DFEH's allegations might somehow override the lack of a market reaction (Opp. at 25) is unsupported by any facts or legal authority.

Equally unavailing are references to later price drops purportedly caused by "employee unrest," an SEC inquiry, and product delays. Opp. at 25. Because those are *not* the reasons why the Legal Proceedings Statement was allegedly false, the supposed revelation of those "facts" does nothing to plead loss causation. *See* Mot. at 24-25; *see also Wochos*, 985 F.3d at 1197 (decline must be caused by disclosure of "the very facts about which defendants [allegedly] lied") (citation omitted).[12]

## V.    CONCLUSION

Because Plaintiffs again fail to state a claim, and do not identify additional facts they could allege (Opp. at 25), the SAC should be dismissed with prejudice.

---

[11] As noted in the moving papers (Mot. at 24 n.19), *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1053 (9th Cir. 2008), does *not* sanction the theory that there may be a delay between a corrective disclosure and market reaction in a case such as this, and undermines Plaintiffs' argument. Unlike here (where the claim is based entirely on alleged failure to disclose the *existence* of the investigations), *Gilead* involved failure to disclose the *impact* of an FDA warning letter on sales. *Id.* at 1054. Thus, even though the FDA letter was disclosed in August, it was not until disappointing financial results were reported in October that the "truth" underlying plaintiffs' claim (*i.e.*, the impact) was revealed – and the stock price fell "immediately" upon the corrective disclosure. *Id.* at 1058.

[12] Likewise, because the SAC does not allege a "materialization of risk" theory of fraud, that alternative approach to loss causation (Opp. at 25) is irrelevant. Moreover, the SAC identifies no risk "concealed" by the Legal Proceedings Statement, only the existence of the investigations (¶ 347). *See In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *27 (N.D. Cal. June 2, 2020) (alleged fraud consisted of concealing risk of competition; no loss causation in the absence of facts showing materialization of that risk caused losses).

Dated:  August 1, 2022

WILMER CUTLER PICKERING HALE AND DORR LLP

By  */s/ Kevin P. Muck*
 Kevin P. Muck

*Attorneys for Defendants Activision Blizzard, Inc., Robert A. Kotick, Dennis Durkin, Armin Zerza and Brian Kelly*

Dated:  August 1, 2022

GIBSON, DUNN & CRUTCHER LLP

By  */s/ Craig Varnen*
 Craig Varnen

*Attorneys for Defendant Spencer Neumann*

## ATTESTATION (L.R. 5-4.3.4(a)(2)(i))

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  August 1, 2022

 */s/ Kevin P. Muck*
 Kevin P. Muck