UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng,et al v. Activision Blizzard, Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss Second Amended Class Action Complaint filed by defendants challenging the legal sufficiency of the Second Amended Complaint ("2nd AC") filed by plaintiffs. The Motion to Dismiss is filed on behalf of defendant Activision Blizzard, Inc. ("Activision Blizzard" or "Company"), Robert A. Kotick, Spencer Neumann, Dennis Durkin, Armin Zerza, and Brian Kelly (collectively, the "Defendants") (Docket No. 79). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds these matters appropriate for decision without oral argument. The hearing calendared for August 15, 2022, is vacated, and the matters taken off calendar.

## I. Factual and Procedural Background

### A. Dismissal of First Amended Complaint

Plaintiffs Gary Cheng, Micah Ernst, Michael Noon, Nick Baldwin, Chris Martin, and Alejandro Toiber, commenced this putative securities fraud class action on August 3, 2021, initially against defendants Activision Blizzard, Dennis Durkin, Robert A. Kotick, and Spencer Neumann. Jeff Ross, appointed as lead plaintiff, and the other named plaintiffs (collectively, "Plaintiffs") filed their First Amended Complaint ("1st AC") on December 3, 2021, on behalf of persons or entities who purchased publicly-traded Activision Blizzard common stock on the NASDAQ between February 28, 2017 and November 16, 2021.

Activision Blizzard is one of the world's largest's developers and publishers of interactive entertainment content and services. The Company distributes video games for game consoles, personal computers, and mobile devices, and operates Esport leagues. Its common stock is publicly traded on the NASDAQ under the ticker symbol "ATVI." The Company conducts its business through three reportable segments: Blizzard Entertainment, Activision Publishing, Inc. ("Activision Publishing"), and King Digital Entertainment ("King Digital").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

The 1st AC alleged that sexual harassment and gender-based discrimination were endemic at Activision Blizzard, especially at Blizzard Entertainment, and that Defendants failed to disclose employee misconduct despite two regulatory investigations that posed material business risks to the Company. (1st AC ¶¶ 1-30.) Plaintiffs alleged that various Company leaders were aware that female employees were subjected to unlawful conduct, but repeatedly touted that Activision was a good place to work. (Id. ¶¶ 64-85.) According to the 1st AC, Defendants misled the investing public by its material misstatements and omissions concerning workplace misconduct, and the existence of investigations initiated in 2018 by the California Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 35.)

Specifically, Plaintiffs alleged that Defendants made materially false and misleading statements in their SEC filings, Code of Conduct ("Code'") and Environmental, Social, and Governance Report ("ESG Report"), about Activision Blizzard's toleration of misconduct and the existence of and material risks from the investigations by the DFEH and the EEOC. Plaintiffs assert that between 2018 and 2021, the line-item disclosure for "Legal Proceedings" included in Defendants' Form 10-K and Form 10-Q filings misstated that the Company was only "party to routine . . . investigations."

Defendants filed a Motion to Dismiss the 1st AC, which the Court granted with leave to amend in an April 18, 2022 Minute Order. The Court concluded that Plaintiffs failed to plead sufficient facts to establish falsity and particularized facts from which the Court could draw the necessary strong inference of scienter.

### B. Second Amended Complaint

On May 18, 2022, Plaintiffs filed their 2nd AC (Docket No. 78) which maintains the same securities fraud theory and largely repeats the allegations from the 1st AC. Plaintiffs, however, shortened the class period, seeking to represent "persons and entities who purchased publicly traded Activision Blizzard common stock on the NASDAQ between November 8, 2018 and November 16, 2021, inclusive . . . and who held such shares on July 27, 2021, and/or September 20, 2021, and/or November 3, 2021, and/or November 16, 2021 . . ." (2nd AC ¶ 1.) Much like the 1st AC, the 2nd AC relies on confidential witnesses, reporting from the Wall Street Journal, Washington Post, and Bloomberg, and quotes extensively from the public lawsuits filed by the EEOC and DFEH. (See 2nd AC ¶ 102.) A recitation of some of the 2nd AC's allegations is appropriate here.

On July 20, 2021, the DFEH filed a civil complaint against Activision in state court, asserting that the Company subjected female employees to sexual harassment and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

discrimination, among other allegations. (Id. ¶ 32, (citing Department of Fair Employment and Housing v. Activision Blizzard, Inc., Blizzard Entertainment, Inc, and Activision, Inc. and Does One through Ten, inclusive, 21 ST CV 26571 ("DFEH Action").) On July 21, 2021, Activision Blizzard issued a statement in response to the filing which stated in part: "The DFEH includes distorted, and in many cases false, descriptions of Blizzard's past. We have been extremely cooperative with the DFEH throughout their investigation, including providing them with extensive data and ample documentation . . ." (Id. ¶ 269.)

On August 3, 2021, Activision Blizzard filed its Form 10-Q stating in part: "The [DFEH] complaint was recently filed, and we are taking actions to address the concerns of employees and other key stakeholders and the adverse consequences to our business. If we experience prolonged periods of adverse publicity, significantly reduced productivity or other negative consequences relating to this matter, our business likely would be adversely impacted." (Id. ¶ 374.)

On September 20, 2021, the Wall Street Journal reported that the United States Securities and Exchange Commission ("SEC") launched a wide-ranging investigation into Activision Blizzard's disclosures about workplace misconduct and discrimination. (Id. ¶ 292.) The Wall Street Journal also reported that the SEC subpoenaed the Company and its senior leaders. (Id.) A week later, on September 27, 2021, the EEOC filed a complaint against the Company and also entered into a consent decree that included an $18 million settlement. (Id. ¶¶ 299-304.)

On November 16, 2021, the Wall Street Journal published a report detailing allegations that Kotick had both knowledge of Activision Blizzard's culture of workplace misconduct and that he faced accusations misconduct. (Id. ¶¶ 115-116 (citing Kirsten Grind, Ben Fritz, and Sarah E. Needleman, Activision CEO Bobby Kotick Knew for Years About Sexual-Misconduct Allegations at Videogame Giant, Wall Street J. (Nov. 16, 2021)).) According to the Wall Street Journal, Kotick "approves of high-profile hiring decisions" and "is typically aware of any major problems in each of Activision's 12 development studios and three major business units." (Id. ¶ 128.) Plaintiffs allege that the price of the Company's stock fell on multiple days following disclosure of the investigations.

The 2nd AC alleges that Defendants issued false and materially misleading statements in their Form 10-K and Form 10-Q filings. (See id. ¶¶ 328-348.) Plaintiffs identify the Legal Proceedings statements that Activision Blizzard issued during the class period which statements appear both as line-item disclosures and in the notes section of the Company's consolidated financial statements. (Id.) Plaintiffs dropped allegations related to the Code of Conduct and ESG Report.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng,et al v. Activision Blizzard, Inc., et al. | | |

    Because the relevant portion of the Legal Proceedings statement is generally consistent in the 2018 10-K, 2019 10-K, and 2020 10-K filings, only a sample of the 2018 10-K is quoted:

> In addition, we are party to routine claims, suits, investigations, audits, and other proceedings arising in the ordinary course of business, including with respect to intellectual property, competition and antitrust maters, regulatory matters, tax matters, privacy matters, labor and employment matters, compliance matters, unclaimed property matters, liability and personal injury claims, product damage claims, collection matters, and or/ commercial claims. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.

(Id. ¶ 329.)

    The following Form 10-Q filings, 3Q 2018 10-Q, 1Q 2019 10-Q, 2Q 2019 10-Q, 3Q 2019 10-Q, 1Q 2020 10-Q, 2Q 2020 10-Q, 3Q 2020 10-Q, and 1Q 2021 10-Q, contain generally the same Legal Proceedings statement. Thus, only a sample from the 3Q 2018 10-Q is provided:

> We are party to routine claims, suits, investigation, audits, and other proceedings arising from the ordinary course of business, including with respect to intellectual property rights, contractual claims, labor and employment matters, regulatory matters, tax matters, unclaimed property matters, compliance matters, and collection matters. In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and we do not expect them to have a material adverse effect on our business, financial condition, results of operations, or liquidity.

(Id. ¶ 337.)

    The 2nd AC includes new assertions of why it was misleading for Defendants to say that the investigations were not "routine" and did not arise in the "ordinary course of business" and that in the "opinion of management" the routine claims are "not significant" and are not expected to "have a material adverse effect" on business. Plaintiffs list nine reasons. First, the EEOC and DFEH initiated their investigation with "unusual, non-routine mechanisms." (Id. ¶ 8.) Second, the investigations prompted Activision Blizzard to change its human resources'

Case 2:21-cv-06240-PA-JEM Document 87 Filed 08/30/22 Page 5 of 16 Page ID #:2428

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

practices and reporting structure. (Id.¶ 9.) Third, the "abrupt fir[ing] [of] three Blizzard [Entertainment] senior leaders." (Id.¶ 10.) Fourth, the Company's Board of Directors told the Wall Street Journal that "they were informed about the Investigations at all relevant times." (Id.¶ 13.) Fifth, the investigations were "extensive." (Id.¶¶ 13-14.) Sixth, "pervasive sexual harassment and discrimination at Activision Blizzard and especially Blizzard meant that the Investigations were not routine because they were certain to uncover significant illegal conduct." (Id.¶¶ 16-25.) Seventh, Activision repeatedly stated in proxy statements during the class period that its commitment to diversity and inclusion was "critical to its success." (Id.¶ 27.) Eighth, based on the "#MeToo movement" and Company culture, it was "obvious to Defendants" that the investigations "had the potential to severely damage the Company." (Id.¶ 28.) Ninth, and finally, Plaintiffs allege that Activision "admitted in a 10-Q that its business would likely be adversely impacted by the negative publicity generated by the DFEH's findings" two weeks after the DFEH filed its public lawsuit. (Id.¶ 29.)

The 2nd AC asserts claims for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act") and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b–5, against all Defendants and control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the five individual defendants. Defendants move to dismiss the 2nd AC for failure to state a claim, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act, arguing that Plaintiffs fail to plead falsity, scienter, and loss causation.

## II. Judicial Notice

Both parties seek judicial notice. Defendants request that the Court take judicial notice of eight documents including the Company's press releases, communications with investors, filings with the SEC, list of historic stock prices, matters referenced in the 2nd AC, documents publicly filed by the EEOC and DFEH or maintained on their websites, and filings from pending state and federal actions. (Docket No. 80; (Defs.' RJN; Exhs. A-H)). Plaintiffs seek judicial notice of Defendant's amended Answer in the DFEH Action and historic stock closing prices. (Docket No. 82; Pls.' RJN; Exhs. A & B.) Plaintiffs oppose two of Defendants' requests, specifically Activision's filings in two external lawsuits identified as Exhibits E and F. (Docket No. 83.)

In ruling on a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of matters referred to in the complaint, but not attached, where the document's authenticity is not contested and the complaint necessarily relies on them. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001.) A court may also judicially notice matters of public record. Id. at 789. Moreover, courts routinely find SEC filings, as well as press releases, and other information made available to the market to be matters of public record, regardless of whether it was referenced in the complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

See Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006); Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); In re Hansen Nat. Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1149 (C.D. Cal. 2007). Accordingly, the Court grants the requested judicial notice of all documents, but not as to the truth of the matters asserted therein.

### III.  Legal Standard

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e).

In Twombly, however, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561. Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

In a private action for securities fraud under Section 10(b), a complaint must satisfy heightened pleading requirements. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).  First, the complaint must state with particularity the circumstances constituting fraud or mistake.  Fed. R. Civ. P. 9(b).  In addition, the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4, requires "the complaint [to] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  "To adequately plead scienter, the complaint must . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  15 U.S.C. § 78u-4(b)(2).  "The pleadings must state precisely the time, place, and nature of the misleading statement, misrepresentations, and specific acts of fraud."  Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).  "Congress enacted the PSLRA to deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs."  In re Silicon Graphics Sec. Litig., 183 F.3d 970, 973 (9th Cir. 1999) (citing H.R. REP. CONF. NO. 104-369, at 32–41 (1995); 15 U.S.C. § 78u-4(b)(1)–(2) (1997)).  A court must dismiss a private securities fraud action seeking money damages if the complaint fails to meet the pleading requirements.  See 15 U.S.C. § 78u-4(b)(3)(A).

**IV.     Analysis**

    **A.     Section 10(b) and Rule 10b-5**

Section 10(b) of the Securities Exchange Act makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  Rule 10b-5, 17 C.F.R. § 240.10b-5, defines three categories of manipulative or deceptive devices that constitute a violation of Section 10(b):

        (a)     To employ any device, scheme, or artifice to defraud,

        (b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

        (c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any

Case 2:21-cv-06240-PA-JEM Document 87 Filed 08/30/22 Page 8 of 16 Page ID #:2431

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

person, in connection with the purchase or sale of any
security.

17 C.F.R. § 240.10b-5.

In a typical Section 10(b) private action based on material misrepresentations or omissions, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008).

In their Motion, Defendants focus on three elements. As to the element of falsity, Defendants contend that the Legal Proceedings statement express an "opinion of management" that Plaintiffs do not allege was subjectively or objectively false. Defendants also contend that Plaintiffs fail to allege scienter because they fail to plead Defendants' contemporaneous knowledge of facts inconsistent with the challenged statements. Defendants further contend that Plaintiffs fail to plead loss causation because no supporting facts show that disclosure of the allegedly misstated or omitted information caused any drop in Activision stock's price.

  **1.  Falsity**

For a statement to be actionable, the allegations must support both falsity and materiality of the statement at the time the statement was made. See Basic Inc. v. Levinson, 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009), as amended (Feb. 10, 2009). A plaintiff must specify each statement alleged to be misleading and why the statement was false or misleading. See 15 U.S.C. § 78u-4(b)(1); In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548–49 (9th Cir. 1994) (en banc), superseded by statute on other grounds ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). "[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." In re Read-Rite Corp. Sec. Litig., 335 F.3d 843, 846 (9th Cir. 2003) (internal quotation marks and citations omitted). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

The Ninth Circuit applies the "objective standard of a 'reasonable investor' to determine whether a statement is misleading." In re Alphabet Inc. Sec. Litig., 1 F.4th 687, 699 (9th Cir. 2021). Furthermore, "it bears emphasis that § 10(b) and Rule 10b-5(b) do not create an

Case 2:21-cv-06240-PA-JEM Document 87 Filed 08/30/22 Page 9 of 16 Page ID #:2432

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

affirmative duty to disclose any and all material information. Disclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011) (internal quotation marks and ellipses omitted); 17 C.F.R. § 240.10b-5 (An omission is actionable only where disclosure of a "material fact [is] necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."). "A misleading omission is material if 'there is 'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available' for the purpose of decision making by stockholders concerning their investments.'"" In re Alphabet, 1 F.4th at 699-700 (quoting Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1274 (9th Cir. 2017)).

As noted in the Court's prior dismissal order, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)). A major deficiency underlying the factual allegations in the 2nd AC is the absence of particularized facts supporting how and why the alleged misstatement was false or misleading at each alleged point in time. Although the 2nd AC alleges reasons why the Legal Proceedings statements were misleading, much of the 2nd AC fails to allege specific, contemporaneous facts necessary to explain why each statement would have been misleading when it was made. See In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1084 (9th Cir. 2002), abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).

Under the circumstances, Plaintiffs' pleading strategy – grouping the SEC filings and setting forth the same exact reasons as to why each of the alleged misstatements are false or misleading – is insufficient under the PSLRA. See Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 2001) (plaintiff "must [] alleg[e] specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless . . . or misleading nature of the statements when made"); cf. Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008) ("By requiring specificity, § 78u-4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful.")

Before addressing each reason in turn, the Court notes the parties' dispute whether the challenged Legal Proceedings statement as a whole constitutes an opinion statement. Plaintiffs in their Opposition acknowledge that the second sentence represents a statement of opinion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

Given the deficient factual allegations, as discussed below, the Court need not delve into which standard applies for pleading falsity of an opinion statement.[1/]

Plaintiffs contend that the following reasons why each of the alleged misstatements are false and misleading:

1. Plaintiffs allege that the procedural mechanisms chosen by the EEOC and DFEH to initiate their investigations "are extremely rare and reserved for accusations of serious systemic misconduct." Specifically, the EEOC's filing of a "Commissioner's Charge" against the Company was one of eleven filed in 2018 and the DFEH filed a "Director's Complaint" less than five times in 2019 and in 2020. Without more specific facts, that the Commissioner's Charge and Director's Complaint were seldom used investigatory tools fails to plead falsity. Here, Plaintiffs leap from the rarity of the investigation to the conclusion that all Legal Proceeding statements are "patently false." Such conclusory allegations are insufficient under the PSLRA.

2. Plaintiffs focus on operational changes to the Company's Human Resources. Plaintiffs, relying on a confidential witness, allege that all of Activision's "Human Resources Business Partners began having regular meetings with the Company's legal team where the

---

[1/] An "opinion" statement would be considered under the Ninth Circuit test for determining whether an opinion statement is false for purposes of section 10(b) and Rule 10b-5. See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 615 (9th Cir. 2017). There are three different standards for pleading falsity of opinion statements:

> First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue. Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that "the supporting fact [the speaker] supplied [is] untrue." Third, when a plaintiff relies on a theory of omission, the plaintiff must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

Id. at 615–16 (quoting Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund, 135 S. Ct. 1318, 1327, 1332, 191 L.Ed. 2d 253 (2015)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

Company's executives told them to start documenting all sexual harassment and other internal complaints because the EEOC was investigating the Company." This reason is too generalized and fails to answer the question the PSLRA requires Plaintiffs to answer: how did changes in HR practices for handling internal complaints render each Legal Proceedings statement false or misleading when made. See 15 U.S.C. § 78u-4(b)(1)(B).

      3.      Plaintiffs allege that the firings of three "key senior employees," Ben Kilgore, Alex Afrasiabi, and Tyler Rosen were "shocking" due to these individuals "value" to the Company, and thus indicative of falsity. The firings, without more, are generally an insubstantial basis for the proposition that Defendants, in each SEC filing, lied or misled investors. Missing from the 2nd AC are specific allegations explaining why the firings, two in 2018 and one in 2020, made each challenged statement false or misleading when made. Without contemporaneous facts, the firings are essentially tangential factual allegations which fail to satisfy the PLSRA's pleading standard.

      4.      Plaintiffs rely on a statement by the Company's Board of Directors contained in the Wall Street Journal article. The Board, referring to the investigations, stated "it had been 'informed at all times with respect to the status of regulatory matters.'" Plaintiffs further allege that only "management" could have "informed the board of directors about the EEOC and DFEH Investigations [which] is yet another indication" of falsity. Again, Plaintiffs make a significant, unwarranted leap from an ambiguous comment to the conclusion that the challenged statements are false and misleading. Plaintiffs' reason rests on a string of assumptions about how management operates and what types of matters the Board is apprised of and is devoid of the required contemporaneous facts.

      5.      Plaintiffs focus on the "extensive" nature of the investigations. Plaintiffs allege that the EEOC and DFEH interviewed more than 100 witnesses. Plaintiffs also allege that the DFEH's service of an "extremely broad April 2, 2021 Subpoena Duces Tecum" indicated that a lawsuit was imminent. Absent specific facts, this reason is not compelling, and the Court is thus unable to infer falsity based on the number of employees interviewed and the mere enforcement of a subpoena duces tecum.

      6.      Plaintiffs allege that the "pervasive sexual harassment and discrimination at Activision Blizzard and the inevitable fact that the EEOC and DFEH would discover it rendered the Investigations non-routine and highly significant." Yet again, the 2nd AC fails to contain the factual detail necessary to satisfy the PLSRA's standards. Although Plaintiffs paint a picture of Activision's toxic workplace and toleration of reprehensible conduct, mostly confined to Blizzard Entertainment, these "allegations are not particular enough to satisfy Rule 9(b)." Vess, 317 F.3d at 1107. Rather than allege particularized facts indicating the

Case 2:21-cv-06240-PA-JEM Document 87 Filed 08/30/22 Page 12 of 16 Page ID #:2435

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

inevitability of government discovery of wrongdoing at the time of each alleged misstatement, Plaintiffs rely on a general condition.

7.  Plaintiffs allege that Activision Blizzard in proxy statements gave its "shareholders the impression that management considered diversity and inclusion very important and, accordingly, would not consider investigations into systemic sexual harassment at the Company as routine." Plaintiffs jump from the Company's professed values to the conclusion that the challenged statements were false and misleading when made without alleging particularized facts. Moreover, these comments bear a tenuous connection to the substance of the alleged misstatements and ultimately fail as a compelling enough reason to meet the PLSRA's elevated pleading requirements.

8.  Plaintiffs allege that the condition of the #MeToo Movement made it "entirely predictable" that the investigations "combined with the pervasive sexual harassment and assault at Activision Blizzard . . . would lead to firing, resignations, negative publicity, and reputational damage." As the Court explained in its prior dismissal order, reliance on the backdrop of a national social movement, absent specific contemporaneous facts, is insufficient to support a claim of falsity.

9.  Finally, Plaintiffs allege that Defendants admitted, in their 2Q 2021 10-Q, filed on August 3, 2021, that "reputational damage from the DFEH Complaint would likely impact its business." ( 2nd AC ¶ 187 ("If we experience prolonged periods of adverse publicity, significantly reduced productivity or other negative consequences relating to this matter, our business likely would be adversely impacted.")). As the Court explained in the prior dismissal order, absent particularized facts, Defendants' acknowledgment of a lawsuit is insufficient to plead falsity. See Lopes v. Fitbit, Inc., No. 18-CV-06665-JST, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020), aff'd, 848 F. App'x 278 (9th Cir. 2021) ("An after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'").

In sum, Plaintiffs' 2nd AC's does not present sufficient, cogent reasons, nor contemporaneous facts to explain why the Legal Proceedings statements, in Activision Blizzard's Form 10-Ks and 10-Qs filed between 2018 and 2021, were false or misleading when made. (See 2nd AC ¶¶ 328-348.)

### 2. Scienter

Defendants additionally argue that Plaintiffs fail to bear their burden of adequately pleading scienter. To survive a motion to dismiss, a plaintiff must "state with particularity facts

Case 2:21-cv-06240-PA-JEM Document 87 Filed 08/30/22 Page 13 of 16 Page ID #:2436

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). Specifically, scienter requires an intent to deceive, manipulate, or defraud. Tellabs, 551 U.S. at 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179. The standard is not whether a reasonable person can draw an inference that the defendant acted with scienter. Id. at 317, 127 S. Ct. 2499, 168 L. Ed. 2d 179. "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness." Zucco, 552 F.3d at 991 (internal citation omitted). "[F]acts showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of deliberate recklessness." Silicon Graphics, 183 F.3d at 974.

"[T]he plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Zucco, 552 F.3d at 991 (internal quotation marks and citation omitted). The Supreme Court has elaborated that to qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 313, 127 S. Ct. 2499, 168 L. Ed. 2d 179. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco, 552 F.3d at 991. Courts may initially assess allegations individually, and then consider whether the allegations collectively meet the standard for pleading scienter. See Police Ret. Sys. v. Intuitive Surgical, Inc., 759 F.3d 1051, 1058 (9th Cir. 2014); see, e.g., id. at 1062-64. "The key to pleading intentional or reckless conduct is pleading facts that show that when defendants made the allegedly false statements, they knew they were false, or knew facts 'so obvious that they must have been aware' that they were misleading the public." In re Am. Apparel, Inc. S'holder Litig., 855 F. Supp. 2d 1043, 1077 (C.D. Cal. 2012) (quoting Zucco, 552 F.3d at 991).

Here, Plaintiffs' allegations of scienter mostly repeat, without significant changes, the same allegations the Court previously found insufficient. Plaintiffs also rely on the reasons identified and discussed above. To the extent their allegations of scienter rely on the reasons previously discussed, they are unavailing to allege scienter. Cf. In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005) (citation and internal quotation marks omitted) ("[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a unitary inquiry under the PSLRA.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

Plaintiffs allege that the Individual Defendants were made aware of the investigations through their positions and that such awareness meant their statements, at minimum, were made recklessly. That the Individual Defendants held the highest management positions at one time or another does not necessarily mean that they knew about the investigations or must have known about Activision Blizzard's alleged toleration of misconduct. The fact that Kotick serves as CEO, that Neumann, Spencer, Durkin, served as Chief Financial Officers, or that Kelly served as Chairman is insufficient, alone, to raise a strong inference of fraud. See Alaska Elec. Pension Fund v. Adecco S.A., 371 F. Supp. 2d 1203, 1217 (S.D. Cal. 2005) (noting courts in this circuit have "determined that a defendant's position in the company does not, without more, create a strong inference of scienter").

Moreover, Plaintiffs' reliance on confidential witnesses to support these allegations is insufficient because those witnesses' statements are not themselves indicative of scienter. See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 998 (9th Cir. 2009) ("These generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state."); see id. (where "confidential witnesses report only conclusory assertions," those assertions are inadequate to support a claim of securities fraud); see also In re Apple Computer, Inc., 127 F. App'x 296, 302 (9th Cir. 2005) ("Although plaintiffs attach the witness summaries of several confidential witnesses that demonstrate the engineers at Apple knew there were production problems with the Cube, again these witness statements do not establish exactly what Jobs knew, nor when he knew it, to allege that Jobs knew his predictions were false when he made them.")..

Plaintiffs also allege that Defendants' July 2021 press release in response to the DFEH Action creates a strong inference of scienter. According to Plaintiffs it was false for Defendants to state that Activision cooperated with the DFEH throughout the investigation, and that the DFEH Action includes "distorted facts." Again, Plaintiffs fail to plead specific facts going to the accuracy or truthfulness of Defendants' response which does not satisfy the PSLRA's heightened pleading requirements. Cf. Ronconi, 253 F.3d at 431 (finding a particular "press statement d[id] not, however, raise a strong inference that defendants intentionally or with deliberate recklessness misled investors" in part because "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness").

Additionally, Plaintiffs allege that the accusations of obstruction made by the DFEH in their ongoing lawsuit against the Company support a strong inference of scienter. Any inference of scienter relies on speculation as to whether the Company is liable, and without more, is not as strong or cogent as any opposing inference about Activision's litigation conduct. Cf. In re Sona

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

Nanotech, Inc. Sec. Litig., 562 F. Supp. 3d 715, 727 (C.D. Cal. 2021) ("A plaintiff cannot rely on generalizations devoid of any specific statements of intent or deliberate recklessness.")

Finally, Plaintiffs' motive and opportunity allegations are insufficient to support scienter. See Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1166 (9th Cir. 2009). Plaintiffs allege that Kotick's employment agreement provided incentives to make the alleged misstatements. As the Court explained in its prior order, Plaintiffs fail to include specific factual allegations to connect any clear financial incentive from the contract to alleged misstatements by Kotick. Cf. In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 884 (9th Cir. 2012) (finding it "common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals" and explaining that courts "will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes").

Plaintiffs also allege the same stock sales the Court previously found insufficient under the PSLRA. For a securities fraud lawsuit, "if the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter." Prodanova v. H.C. Wainwright & Co., LLC, 993 F.3d 1097, 1103 (9th Cir. 2021). Generally, courts "expect that a financial motive for securities fraud will be clear; for example, someone inside a company stands to gain a substantial profit by engaging in deceptive behavior, such as selling shares before the company discloses negative information." Id. at 1107. Here, the 2nd AC notes the total value of stock sales during the class period by multiple individuals including non-defendants. These allegations fail to provide any meaningful trading history for purposes of comparison of the stock sales, thus no inference of scienter can be gleaned from these allegations. See Zucco, 552 F.3d at 991; see id. at 1005 ("Among three factors that must be considered to determine whether stock sales raise a strong inference of deliberate recklessness are . . . (3) whether the sales were consistent with the insider's prior trading history.") Finally, Plaintiffs' allegations that the individual defendants acted recklessly by signing the SEC filings pursuant to SOX are unavailing. Zucco, 552 F.3d at 1003–04 (noting that "[b]oilerplate language in a corporation's 10–K form, or required certifications under Sarbanes–Oxley section 302(a) . . . add nothing substantial to the scienter calculus.")

Whether these allegations are taken alone or holistically, the Court concludes that the 2nd AC fails to plead scienter as required under the PSLRA.

**B.     Section 20(a)**

To state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised actual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | August 30, 2022 |
|---|---|---|---|
| Title | Gary Cheng, et al v. Activision Blizzard, Inc., et al. | | |

power or control over the primary violator.  Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  Because Plaintiffs have failed to state a claim for a primary violation of the securities law, the 2nd AC's Section 20(a) claim also fails.

## Conclusion

For all of the foregoing reasons, the Court grants Defendants' Motion to Dismiss the 2nd AC with leave to amend.  Plaintiffs fail to allege misrepresentation and scienter.  Plaintiffs' Third Amended Complaint, if any, shall by filed within 30 days of the date of this order.  Should Plaintiffs amend their pleading, Plaintiffs must connect each challenged statement with specific factual allegations that show how and why that statement was false or misleading at the time made, rather than recite or rely on the same basic background facts and reasons.  Failure to file the Third Amended Complaint by that date may, without further warning, result in the dismissal of this action with prejudice.  The Court warns Plaintiffs that they will not have limitless opportunities to amend their pleadings.

IT IS SO ORDERED.