KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

PETER J. KOLOVOS (*pro hac vice*)
peter.kolovos@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Defendants*
*Activision Blizzard, Inc., Robert A. Kotick,*
*Dennis Durkin, Armin Zerza and Brian Kelly*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHENG, Individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, DENNIS DURKIN, ARMIN ZERZA and BRIAN KELLY,<br><br>　　　　　　Defendants. | No. 2:21-cv-06240-PA-JEM<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date:　　January 9, 2023<br>Time:　　1:30 p.m.<br>Place:　　Courtroom 9A, First Street Courthouse<br>Judge:　　The Honorable Percy Anderson |

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     THE TAC FAILS TO ALLEGE AN ACTIONABLE
        MISSTATEMENT .................................................................................... 2

        A.      The Opposition Fails to Identify Facts Establishing Falsity ................ 2

        B.      The Opposition Fails to Show the Opinions Are Actionable .............. 5

III.    THE OPPOSITION MAKES CLEAR THAT SCIENTER IS ABSENT ...... 7

        A.      The Opposition Cites No Facts Demonstrating Any Defendants'
                Contemporaneous Knowledge of Falsity ............................................ 7

        B.      As Before, the Remaining Scienter Arguments Also Fail ................. 10

IV.     THE OPPOSITION CONFIRMS THE LACK OF LOSS
        CAUSATION ........................................................................................... 11

V.      CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bond v. Clover Health Invs., Corp.*,
  587 F. Supp. 3d 641 (M.D. Tenn. 2022) ........................................................ 6, 7

*Camp v. Qualcomm Inc.*,
  2020 WL 1157192 (S.D. Cal. Mar. 10, 2020)................................................. 8

*Christian v. BT Grp. PLC*,
  2018 WL 3647213 (D.N.J. Aug. 1, 2018)....................................................... 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align*
  *Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017)................................................. 5, 6, 7

*Garcia v. J2 Global, Inc.*,
  2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ................................................. 5

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008)................................................................. 10, 11

*Grigsby v. BofI Holdings, Inc.*,
  979 F.3d 1198 (9th Cir. 2020)..................................................................... 12

*Habelt v. iRhythm Techs., Inc.*,
  2022 WL 971580 (N.D. Cal. Mar. 31, 2022)............................................. 3, 4

*Hashem v. NMC Health PLC*,
  2021 WL 5926133 (C.D. Cal. Nov. 1, 2021)................................................. 12

*Huang v. Higgins*,
  443 F. Supp. 3d 1031 (N.D. Cal. 2020) ....................................................... 4

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ............................................. 10

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021)........................................................................... 9

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ............................................. 2

*In re Finisar Corp. Sec. Litig.*,
 2017 WL 1549485 (N.D. Cal. May 1, 2017) ......................................................... 8

*In re Gilead Sciences Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) ............................................................................. 12

*In re Lions Gate Entm't Corp. Sec. Litig.*,
 165 F. Supp. 3d 1 (S.D.N.Y. 2016) ....................................................................... 6

*In re Nektar Therapeutics Sec. Litig.*,
 34 F.4th 828 (9th Cir. 2022) ......................................................................... 11, 12

*In re NVIDIA Corp. Sec. Litig.*,
 768 F.3d 1046 (9th Cir. 2014) ............................................................................. 11

*In re Rigel Pharms., Inc.*,
 697 F.3d 869 (9th Cir. 2012) ............................................................................... 10

*In re Skechers USA, Inc. Sec. Litig.*,
 444 F. Supp. 3d 498 (S.D.N.Y. 2020) ................................................................... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and
 Prod. Liab. Litig.*,
 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ............................................................ 11

*Kain v. ACM Research, Inc.*,
 2021 WL 5998396 (N.D. Cal. Dec. 20, 2021) ....................................................... 4

*Kang v. PaylPal Holdings, Inc.*,
 2022 WL 3155241 (N.D. Cal. Aug. 8, 2022) ................................................ 2, 4, 5

*Lu v. Align Tech., Inc.*,
 417 F. Supp. 3d 1266 (N.D. Cal. 2019) ................................................................. 5

*M&M Hart Living Tr. v. Global Eagle Entm't, Inc.*,
 2017 WL 5635425 (C.D. Cal. Oct. 30, 2017) ........................................................ 5

*Markette v. XOMA Corp.*,
 2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ...................................................... 6

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
 540 F.3d 1049 (9th Cir. 2008) ........................................................................... 2, 3

*Mulderrig v. Amyris*, *Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................... 9

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020)............................................................................. 7

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021)......................................................................... 10

*Prodanova v. H.C. Wainwright & Co., LLC*,
    2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ............................................... 11

*Roberts v. Zuora, Inc.*,
    2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ................................................. 8

*Sakkal v. Anaplan, Inc.*,
    557 F. Supp. 3d 988 (N.D. Cal. 2021) ............................................................. 8

*Sanders v. RealReal, Inc.*,
    2021 WL 1222625 (N.D. Cal. Mar. 31, 2021)................................................. 9

*Schueneman v. Arena Pharms.*, *Inc.*,
    840 F. 3d 698 (9th Cir. 2016)........................................................................... 9

*Veal v. LendingClub Corp.*,
    2020 WL 3128909 (N.D. Cal. June 12, 2020),
    *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021) .............................. 8, 9, 11

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018).......................................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).................................................................... 2, 8, 9

**Statutes, Rules, and Regulations**

Private Securities Litigation Reform Act of 1995 (PSLRA),
    Pub. L. No. 104-67, 109 Stat. 737.......................................................... *passim*

Federal Rules of Civil Procedure
    Rule 9(b)........................................................................................................ 12

## I. INTRODUCTION

In the motion to dismiss ("Motion" or "Mot." [ECF No. 91-1]), Defendants[1] challenged Plaintiffs to identify new factual allegations in the TAC overcoming the defects that led to dismissal of the prior pleadings. Plaintiffs' opposition ("Opposition" or "Opp." [ECF No. 95]) does not begin to meet that challenge.

The Opposition does not dispute that the TAC alleges seven reasons why the Legal Proceedings Statements were purportedly false, that all those reasons are recycled from the SAC, and that the Court explained in the SAC Order why each of those reasons was insufficient to plead falsity under the PSLRA. If Plaintiffs genuinely believed they had remedied those deficiencies in the TAC, their approach would be obvious: they would address each reason in turn and spell out which new factual allegations supposedly justify a different result now. Yet they do no such thing. Indeed, the Opposition largely *ignores* this Court's prior rulings, blithely repeats allegations that have already been rejected, and fails to show that the few new allegations in the TAC – primarily ineffectual and redundant speculation attributed to five additional CWs – set forth *contemporaneous facts* to establish that Activision's Legal Proceedings Statements were false when made.

Similarly, as to scienter, Plaintiffs cannot dispute that they *again* "mostly repeat, without significant changes, the same allegations the Court previously found insufficient." SAC Order at 13. These repeated allegations include conjecture about what Defendants "would have known," the musings of CWs with no personal knowledge of any Defendant's state of mind, and a generic theory of motive. For the most part, the Opposition does not even acknowledge this Court's prior rulings, much less show that the TAC alleges new facts to address those rulings.

Finally, Plaintiffs cannot overcome their admission that Activision's stock price did not decline upon disclosure of the very fact that purportedly rendered the Legal Proceedings Statements misleading. Loss causation is therefore absent.

---

[1] Unless otherwise specified, all defined terms have the same meaning as in the Motion.

REPLY MEMORANDUM ISO
MOTION TO DISMISS TAC
- 1 -
No. 2:21-cv-06240-PA-JEM

For these reasons, the Opposition confirms that Plaintiffs do not, and cannot, state a claim.  The TAC should accordingly be dismissed with prejudice.

## II. THE TAC FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT

### A. The Opposition Fails to Identify Facts Establishing Falsity

The PSLRA's "exacting requirements" for pleading falsity require facts showing why *each* statement was materially false when made.  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).  Unable to meet these "exacting requirements," Plaintiffs try to obscure their pleading failure by urging (without authority) that their falsity averments be viewed in "totality."  Opp. at 12.  But while a holistic analysis may be used to determine if pleaded facts raise a "strong inference" of *scienter*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009), the PSLRA requires *falsity* to be analyzed "statement-by-statement."  *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *10 n.5 (N.D. Cal. Apr. 28, 2020).  Indeed, Plaintiffs' argument disregards this Court's directive to "specify each statement alleged to be misleading and <u>why</u> the statement was false or misleading."  SAC Order at 8.  It also reflects their recognition that systematic analysis of *each* of the seven reasons why the Legal Proceedings Statements are allegedly false[2] – as undertaken by the Court in assessing the SAC (*id*. at 10-12) and by Defendants in their Motion (Mot. at 9-16) – lays bare the TAC's deficiencies.

In any event, Plaintiffs' approach – a mere chronological reordering of their allegations (Opp. at 12-16) – is fruitless because they identify no "contemporaneous facts" to show falsity.  *See* SAC Order at 12.  Plaintiffs first contend harassment was so "pervasive" at Activision that the outcome of DFEH's investigation was inevitable.  Opp. at 12.  But not only do Plaintiffs fail to identify facts to support that premise (*see Kang v. PaylPal Holdings, Inc.*, 2022 WL 3155241, at *9 (N.D. Cal. Aug. 8, 2022)), they ignore that the Court has already held that even if there

---

[2] The reasons are: (1) procedural mechanisms used by EEOC and DFEH; (2) "extensive" scope of the DFEH investigation; (3) operational changes within Activision; (4) personnel actions; (5) reports to the Board; (6) "pervasive" misconduct; and (7) #MeToo movement.

was a "toxic workplace and toleration of reprehensible conduct," that would not render any Legal Proceedings Statement false. SAC Order at 11. Equally unavailing are matters *external* to Activision – *i.e.*, the #MeToo movement, a PwC study of CEO departures, and a stock price drop at Wynn Resorts (Opp. at 13) – because they do *nothing* to show the expected impact of regulatory investigations *of Activision* at the time any Legal Proceedings Statement was made. *See Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *16-17 (N.D. Cal. Mar. 31, 2022); *see also* SAC Order at 11-12. The Opposition cites no contrary authority.

Plaintiffs also continue to rely (as they did before) on the supposed rarity of the procedural devices employed by the DFEH and EEOC. Opp. at 13. Yet they fail to even mention, much less address, the Court's prior holding that this "conclusory allegation[]" is insufficient to plead falsity under the PSLRA. SAC Order at 10. And the Opposition identifies no new factual allegations to justify Plaintiffs' "leap from the rarity of the investigation" to their claim of falsity. *Id*.

The Opposition next argues that Activision treated the DFEH investigation as non-routine. Opp. at 13-14. This is just a rehash of insufficient allegations about procedural HR changes, an internal investigation, management informing the Board about the investigations, and the firing of three Blizzard executives. Tellingly, Plaintiffs do not dispute that the Court has already found most of these allegations deficient or that the few new averments are cumulative. *See* Mot. at 11-13. They instead complain that the Motion "segregate[s]" the falsity allegations (Opp. at 14), but their real complaint is with the statement-by-statement analysis mandated by the PSLRA. *See Metzler*, 540 F.3d at 1070. And while Plaintiffs claim the challenged statements remained the same while the investigations supposedly "intensified" and Activision's internal response purportedly "grew in significance" (Opp. at 14), they cite no contemporaneous facts or legal authority to support those assertions.

Plaintiffs then move to 2019 and 2020, repeating their conclusory allegations regarding the supposed knowledge of a non-defendant (Mr. Brack) and assertions

from three witnesses (CW10, CW11, and CW16) about HR restructuring.  Opp. at 14-15.  Again, though, the Opposition does not respond to Defendants' showing that these allegations are inadequate to plead falsity.  *See* Mot. at 11-13.  Likewise, Plaintiffs tout new averments about DFEH's intervention in litigation against Riot Games (Opp. at 15) but cite no facts or authority to show that developments in a *separate proceeding* involving *another company* establish that *Activision* knew an investigation of *its practices* was non-routine or likely to have a material effect. *See* SAC Order at 12 (allegations regarding #MeToo Movement and its impact on other companies do not plead the falsity of Activision's statements).

Plaintiffs also hypothesize that an April 2021 request for a pre-mediation meeting – where DFEH could give notice of claims (if any) on which it might ultimately find "cause" – somehow meant that Activision was "so worried" about DFEH's investigation that the Legal Proceedings Statements must have been false. Opp. at 15.  Yet the most Plaintiffs can do is cite one paragraph of the TAC (¶ 320) containing *no facts* to support their conjecture.  Plaintiffs' fanciful argument – which is recycled from their attempt to avoid dismissal of the SAC (*see* ECF No. 81 at 15) and which ignores that conciliation and mediation are *statutorily required* (TAC Ex. 2 at 28, 31) – thus remains "pure speculation unsupported by facts."  *See Kain v. ACM Research, Inc.*, 2021 WL 5998396, at *2 (N.D. Cal. Dec. 20, 2021).

The remainder of Plaintiffs' falsity argument (Opp. at 16) tries – but fails – to sidestep authorities discussed in the Motion.  Relying on a tactic they use elsewhere (*see, e.g.*, Opp. at 18 n.11, 20 n.12, 21 n.13), Plaintiffs urge the Court to disregard *Habelt* and *Kang* based on immaterial factual distinctions having no bearing on the holdings of those cases or their application here.[3]  With regard to *Huang v. Higgins*,

---

[3] The fact that the statement in *Habelt* involved a previously disclosed matter (Opp. at 16) misses the key point: "the uncertainty inherent in the outcome of regulatory proceedings" means that, to plead falsity in a case such as this, facts must show that defendants' stated assessment was inconsistent with a known outcome.  2022 WL 071580, at *16-17; *see also* SAC Order at 11-12 (Plaintiffs must "allege particularized facts indicating the inevitability of government discovery of wrongdoing at the time of each alleged

443 F. Supp. 3d 1031, 1046 (N.D. Cal. 2020) and *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266 (N.D. Cal. 2019), Plaintiffs concede those cases hold that CW accounts must be indicative of falsity, but argue that their CW allegations suffice because they supposedly show "the Investigations caused huge changes to HR." Opp. at 16. That argument, however, is a *non sequitur*: even if the CWs established there were "huge changes" and connected them to the investigations (assertions that are unsupported by well-pleaded facts), that would *not* show the investigations were non-routine or would likely have a material adverse impact – as this Court has held. *See* SAC Order at 11 (Plaintiffs' allegations failed to establish how "changes in HR practices … render[ed] each Legal Proceedings statement false or misleading when made"). The Opposition simply ignores the Court's holding. And with respect to the CWs' speculation about the terminations of three Blizzard executives, Plaintiffs declare that unnamed "cases" cited by Defendants are "distinguishable." Opp. at 16 n.8. That glib assertion reflects Plaintiffs' inability to differentiate their CWs' conjecture from allegations this Court found to be inadequate in *M&M Hart Living Tr. v. Global Eagle Entm't, Inc.*, 2017 WL 5635425, at *9 (C.D. Cal. Oct. 30, 2017), or that Judge Aenlle-Rocha rejected in *Garcia v. J2 Global, Inc.*, 2021 WL 1558331, at *15 (C.D. Cal. Mar. 5, 2021). *See* Mot. at 13-14.[4]

**B.      The Opposition Fails to Show the Opinions Are Actionable**

There is an independent basis for dismissal: Plaintiffs cannot controvert Defendants' showing that the challenged statements are opinions, and are unable to cite facts showing *both* falsity *and* that the speakers did not genuinely hold the beliefs they expressed. *See* Mot. at 18; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 617-18 (9th Cir. 2017).

misstatement"). Similarly, that the challenged statement in *Kang* was not identical to Activision's Legal Proceedings Statements (Opp. at 16) has no relevance to the holding or its rejection of the type of hindsight-based pleading on which Plaintiffs in this case rely.

[4] Furthermore, Plaintiffs do not dispute that their CWs fail to connect the terminations to the investigations (Mot. at 13-14), and that virtually identical allegations in the SAC were found to be "an insubstantial basis" for pleading falsity. SAC Order at 11.

Plaintiffs concede the second sentence of each Legal Proceedings Statement is an opinion but assert that the first sentence's reference to "routine" and "ordinary course" proceedings is a factual statement that must be read in isolation.  Opp. at 10-11.  However, it is the *two sentences read together* that convey the "opinion of management" and Plaintiffs cannot dispute that the second sentence explicitly refers back to the first.  *See* Mot. at 17-18.  In any event, terms such as "routine" or "ordinary course" are opinions "since they inherently reflect [an] assessment of and judgment about the underlying circumstances."  *See Markette v. XOMA Corp.*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017); *see also City of Dearborn Heights*, 856 F.3d at 613-14 (statement reflecting "subjective" assessment was an opinion).

The Opposition's attempt to distinguish *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498 (S.D.N.Y. 2020), is again based on an immaterial factual distinction.  *See* Opp. at 11 n.5.  Notwithstanding the context of that case (whether an oral statement was a guarantee or a prediction), the court's reasoning – that a statement must be considered in its full context, and not in isolation, to determine if it is an opinion – applies here.  *See Skechers*, 444 F. Supp. 3d at 516.  Nor can Plaintiffs distinguish *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15-16 (S.D.N.Y. 2016), where a substantially similar legal proceedings statement was held to be an opinion.  While Plaintiffs suggest that *Lions Gate* only involved the language in the second sentence of Activision's Legal Proceedings Statements (Opp. at 11 n.5), that is inaccurate: the first sentence of the statement in *Lions Gate* read, "[f]rom time to time, the Company is involved in certain claims and legal proceedings arising in the normal course of business."  165 F. Supp. 3d at 15.

As they did in their unsuccessful effort to salvage the SAC, Plaintiffs rely heavily on an out-of-circuit decision, *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641 (M.D. Tenn. 2022), but that case still does not help them.  In *Bond*, plaintiffs alleged specific facts showing that a DOJ investigation threatened the company's entire business model and most of its revenue.  *Id*. at 651, 673, 676-77.

And unlike here, the *Bond* plaintiffs alleged specific facts indicating defendants' awareness of the likely outcome of the investigation. *Id.* at 677-79. Thus, the allegations in *Bond* stand in stark contrast to the speculative and hindsight-based averments in the TAC, which remain devoid of "contemporaneous facts" showing that Activision's Legal Proceedings Statements were false. *See* SAC Order at 12.

Finally, Plaintiffs contend that even if the challenged statements are viewed as opinions, Defendants did not believe them to be true. Plaintiffs do little more than repeat their deficient falsity claims and add conclusory assertions that, given Defendants' alleged knowledge of certain facts, they knew the opinions were false. Opp. at 17-18. As the Court has already found these allegations do not establish that the statements were false when made (*see* SAC Order at 10-12; *see also* Mot. at 9-14, 16-17), it is unsurprising that the TAC also pleads no facts to show they were not genuinely believed. *See* Sec. III.A., *infra*. Thus, *both* objective *and* subjective falsity are lacking. *See, e.g.*, *City of Dearborn Heights*, 856 F.3d at 617-18.

## III.   THE OPPOSITION MAKES CLEAR THAT SCIENTER IS ABSENT

### A.   The Opposition Cites No Facts Demonstrating Any Defendants' Contemporaneous Knowledge of Falsity

The Opposition confirms that the TAC offers no new allegations to show any Defendant's awareness of facts contradicting the Legal Proceedings Statements at the time they were made. *See* Mot. at 18-21; SAC Order at 13. Plaintiffs devote their discussion almost entirely to Mr. Kotick (Opp. at 18-22) and begin by citing his supposed awareness of "pervasive harassment." *Id*. at 18-19. Putting aside Plaintiffs' failure to plead such "pervasive harassment," they *do not contest* that the TAC's anecdotal averments are *virtually identical* to those already found to be insufficient to allege scienter. *See* Mot. at 21; FAC Order at 17; SAC Order at 13-14; *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416-17 (9th Cir. 2020). And while Plaintiffs cite "new" allegations from CW10 and CW11 (Opp. at 19), they cannot dispute that: (1) those CWs merely parrot prior "sources" who allege that

Mr. Kotick "had to approve" certain personnel actions; and (2) the CWs do not claim to have personal knowledge of what facts Mr. Kotick actually knew or when he knew them. *See* Mot. at 20; *see also* SAC Order at 14 (CW allegations not indicative of scienter, especially where they lack knowledge of defendants' mental state); *Sakkal v. Anaplan, Inc.*, 557 F. Supp. 3d 988, 999 (N.D. Cal. 2021) (same).[5]

Likewise, the claim that Mr. Kotick was "informed of the Investigations" (Opp. at 19) has already been found to be inadequate to plead scienter (SAC Order at 14), and the Opposition cites no new facts to warrant a different result. And despite Plaintiffs again speculating that Mr. Kotick "would have been aware of rarely used [DFEH and EEOC] mechanisms" (Opp. at 19), the paragraphs they cite (¶¶ 248-254) say *nothing* about his supposed awareness of these "mechanisms," let alone his knowledge that such "mechanisms" had any significance or rendered any statement false. *See Veal v. LendingClub Corp.*, 2020 WL 3128909, at *14-15 (N.D. Cal. June 12, 2020), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021); *Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *6 (S.D. Cal. Mar. 10, 2020).

Also deficient are recycled allegations regarding Mr. Kotick's "one-on-one meetings" with Activision's Chief People Officer (Ms. Naughton). Opp. at 19-20. As before, Plaintiffs are unable to identify what information Mr. Kotick purportedly learned in these meetings, when he learned it, or how it revealed the investigations were not "routine" or were likely to have a material adverse impact. *See* Mot. at 20; *Veal,* 2020 WL 3128909, at *7-8. Plaintiffs underscore their pleading failure by

---

[5] Conceding that no CW interacted with any Individual Defendant, Plaintiffs argue that "direct contact" is not necessary. Opp. at 21. But CW accounts must be based on *personal knowledge*. SAC Order at 14; *Zucco*, 552 F.3d at 995. Absent such interaction, CWs typically lack knowledge of what defendants knew or when they knew it. *See, e.g., Sakkal*, 557 F. Supp. 3d at 999. Moreover, unlike the cases Plaintiffs cite (Opp. at 21), the CWs here provide *no other facts* to show that they have *personal knowledge* probative of any defendant's state of mind. *Cf. Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *2-3, 10-11 (N.D. Cal. Apr. 28, 2020) (CWs allegedly had knowledge of defendants' attendance at specific meetings and receipt of information contradicting statements); *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485, at *7 (N.D. Cal. May 1, 2017) (CWs had knowledge of how and when specific adverse inventory information was conveyed to defendants).

citing CW10's vague and unexplained "belie[f]" that Ms. Naughton sometimes acted at Mr. Kotick's direction (¶ 310) and CW12's baseless conjecture that Mr. Kotick must have been provided unspecified information at unstated times (¶ 259). Opp. at 21. These nebulous averments are neither "indicative of scienter" nor based on personal knowledge. *Zucco*, 552 F.3d at 995; *see also Sanders v. RealReal, Inc.* 2021 WL 1222625, at *15 (N.D. Cal. Mar. 31, 2021); SAC Order at 14.

As in the SAC, allegations that HR changes and personnel actions were reactions to the investigations (Opp. at 20) do nothing to plead scienter. The Opposition can identify no *facts* (as opposed to unfounded speculation by CWs) to show Mr. Kotick's awareness of a supposed connection or – more crucially – that he knew any Legal Proceedings Statement was false as a result. *See Veal*, 2020 WL 3128909, at *14-15.[6] Similarly, Plaintiffs offer no facts or authority to show that DFEH's suit against *another company* means that Mr. Kotick somehow knew *Activision's* statements were false (*see* Mot. at 23); instead, the Opposition merely reiterates the TAC's throwaway averments. *See* Opp. at 20 (citing ¶ 297).

Recognizing their failure to plead that Mr. Kotick knew any statement was false, Plaintiffs posit that "he could have easily found out more information." Opp. at 22. Not only are they unable to plead *what* information he could have gleaned or *when*, or *why* it would have shown the statements were false, they are asking the Court to apply a mere *negligence* standard – a far cry from the knowing or egregiously deliberate conduct necessary for scienter. *See Zucco*, 552 F.3d at 991.[7]

---

[6] Plaintiffs' citation (Opp. at 20) to *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016), does not help them. In that case, defendants made positive statements about FDA approval of a drug despite evidence showing specific knowledge of, and the decision to conceal, adverse results of an animal study and FDA concerns about the study. *Id.* at 707-08. Those particularized allegations bear no resemblance to the TAC's vague references to HR process improvements. Indeed, Plaintiffs *do not dispute* that the alleged HR changes would, if anything, *undermine* an inference of scienter. *See* Mot. at 20 n.16.

[7] By contrast, the cases Plaintiffs cite (Opp. at 22) involved detailed allegations that defendants knew or possessed specific facts at specific times. *See Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1026-27 (N.D. Cal. 2020) (CWs established defendants' review of information and data showing statements were false); *In re Alphabet, Inc. Sec. Litig.*,

REPLY MEMORANDUM ISO MOTION TO DISMISS TAC

No. 2:21-cv-06240-PA-JEM

Plaintiffs' arguments regarding the other Individual Defendants (Opp. at 22) require little discussion. Alleging that Messrs. Durkin and Zerza signed Sarbanes-Oxley certifications is fruitless, as this Court has twice held (and Plaintiffs tellingly ignore). FAC Order at 18; SAC Order at 14. Also unavailing are references to job titles, responsibilities, signing SEC filings, and alleged access to information (Opp. at 22), which the Court has already held do not support "the necessary strong inference of scienter." FAC Order at 17-18; *see also* SAC Order at 14; *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108-09 (9th Cir. 2021).

## B. As Before, the Remaining Scienter Arguments Also Fail

Plaintiffs abandon most of their other scienter theories, including the claim that stock sales by Messrs. Durkin, Kelly, and Zerza establish a motive for fraud. *See* Mot. at 22. The only motive argument Plaintiffs still advance is that Mr. Kotick had a compensation-related incentive to keep the stock price above $79.96 (Opp. at 23), but do not dispute that the Court has *twice* rejected this generalized assertion. FAC Order at 18-19; SAC Order 15. Nor do Plaintiffs contend that the TAC's allegations differ *in any way* from those the Court already found to be insufficient.[8]

Also fruitless is the argument that the alleged knowledge of a non-defendant (Mr. Brack) may be "imputed to Activision." Opp. at 23-24. The doctrine of *respondeat superior* (*id*. at 23) cannot impute Mr. Brack's purported scienter to Activision because he is not alleged to have had any role in the statements at issue. *See Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *19 (N.D. Cal. Sept. 29, 2021) (*respondeat superior* inapplicable absent the speakers' scienter); *see also Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (scienter

1 F.4th 687, 706 (9th Cir. 2021) (particularized allegations that information in a detailed internal memorandum was conveyed to CEO at a specific point in time).

[8] Plaintiffs also make no effort to reconcile their theory with the fact that the stock price stayed well above $79.96 after the DFEH suit was disclosed. *See* Mot. at 22 n.17. And even if scienter may be alleged in some cases without stock sales (Opp. at 23), Plaintiffs cannot dispute that the *absence of stock sales* by Mr. Kotick is a critical fact undermining an inference of fraudulent intent. *See, e.g.*, *In re Rigel Pharms., Inc.*, 697 F.3d 869, 884 (9th Cir. 2012); *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

must be alleged for "those individuals who actually made the false statements") (citation omitted); *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at \*13-14 (C.D. Cal. Dec. 11, 2018) ("corporate scienter may not be established by imputing the false statements of one agent [] with the alleged scienter of another").[9]

Finally, Plaintiffs invoke "collective scienter" (Opp. at 23-24), even though "the Ninth Circuit has not adopted [that theory]." *Prodanova*, 2018 WL 8017791, at \*14. In any event, the theory is not even arguably applicable except in rare cases where a statement is "so important and so dramatically false" that officers *must* have known of the falsity, *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014), such as an automaker's claim "to have sold one million SUVs, [when] the actual number was zero." *Prodanova*, 2018 WL 8017791, at \*14 (citation and quotation omitted); *see also Glazer*, 549 F.3d at 743-744.[10] Plaintiffs make no attempt to show that the Legal Proceedings Statements are remotely comparable. And while Plaintiffs repeat their baseless claims that Activision "obstruct[ed]" the DFEH investigation and issued a "false denial" (Opp. at 24), they ignore that the Court has *twice* rejected those averments. FAC Order at 17-18; SAC Order at 14.

## IV. THE OPPOSITION CONFIRMS THE LACK OF LOSS CAUSATION

Plaintiffs do not dispute that: (1) they sue *solely* on the theory that the Legal Proceedings Statements were false because they did not disclose existence of the investigations (¶¶ 390-426); and (2) the stock price did *not* fall when that fact was disclosed (¶¶ 327, 427-430, 451). Thus, under Ninth Circuit law, loss causation is absent. Mot. at 24; *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838-39 (9th

---

[9] Moreover, Mr. Brack worked for the Blizzard *subsidiary* (¶¶ 5, 96), which means his knowledge "cannot be imputed to the parent company" for purposes of scienter. *Christian v. BT Grp. PLC*, 2018 WL 3647213, at \*8 (D.N.J. Aug. 1, 2018) (citation omitted). And the bare assertion that he was aware of a "culture of harassment" (Opp. at 23) does not plead his knowledge that any statement was false. *See Veal*, 2020 WL 3128909, at \*7.

[10] Plaintiffs' cases (Opp. at 24) confirm the narrow scope. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, 2017 WL 66281, at \*14 (N.D. Cal. Jan. 4, 2017) (Volkswagen "falsely tout[ed] the emissions compliance of 11 million vehicles … when in fact none of the vehicles were in compliance.").

Cir. 2022).  The argument that loss causation is not "typically" decided at the pleading stage (Opp. at 24) disregards that Plaintiffs must plead that element in accordance with Fed. R. Civ. P. 9(b), *Grigsby v. BofI Holdings, Inc.*, 979 F.3d 1198, 1206 (9th Cir. 2020), and that the Ninth Circuit has repeatedly affirmed dismissal where (as here) those facts are lacking.  *See, e.g., Nektar*, 34 F.4th at 838-39.

Plaintiffs next argue that a one-week gap between disclosure of the DFEH suit and a stock drop is not fatal.  Opp. at 24.  But they *ignore* that the TAC alleges the market for Activision stock was efficient and "promptly digested" all public information and *incorporated it into the price*.  ¶ 485.  Their silence is a concession that revelation of a concealed material fact would have had "an immediate response in the stock price," *Hashem v. NMC Health PLC*, 2021 WL 5926133, at *4 (C.D. Cal. Nov. 1, 2021), and that the lack of a drop means loss causation is absent.[11]

Conjecture that denial of DFEH's allegations might have "delay[ed]" a price reaction (Opp. at 25) is unsupported by facts or authority.  Also unavailing are references to price drops purportedly caused by "employee unrest," an SEC inquiry, and product delays (*id.*), because those are *not* the reasons why Plaintiffs allege the Legal Proceedings Statements were false.  Mot. at 24-25; *Nektar*, 34 F.4th at 839.

## V.    CONCLUSION

Despite multiple pleading opportunities and extensive guidance from the Court, Plaintiffs have made clear that they are simply unable to state a claim.  The TAC should therefore be dismissed with prejudice.

---

[11] Contrary to Plaintiffs' claim (Opp. at 24), *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1053 (9th Cir. 2008), does *not* sanction the theory that there may be a delay between a corrective disclosure and market reaction.  Unlike here (where the claim is based entirely on alleged failure to disclose the investigations), *Gilead* involved a failure to disclose the *impact* of an FDA warning letter on sales.  *Id.* at 1054.  While the FDA letter was disclosed in August, it was not until disappointing financial results were reported in October that the "truth" (*i.e.*, the impact) was revealed – and the stock price fell "immediately" upon the corrective disclosure.  *Id.* at 1057-58.  Thus, *Gilead* confirms loss causation is absent here, because the alleged corrective disclosure caused no such drop.

Dated:  December 23, 2022

WILMER CUTLER PICKERING
HALE AND DORR LLP

By    /s/ Kevin P. Muck
                 Kevin P. Muck

*Attorneys for Defendants Activision Blizzard, Inc., Robert A. Kotick, Dennis Durkin, Armin Zerza, and Brian Kelly*

## CERTIFICATE OF COMPLIANCE (L.R. 11.6-2)

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,611 words, which complies with the word limit of L.R. 11-6.1 and the page limit for reply briefs set forth in the Court's Standing Order (ECF No. 25).

Dated:  December 23, 2022

        /s/ Kevin P. Muck
             Kevin P. Muck

REPLY MEMORANDUM ISO
MOTION TO DISMISS TAC

- 13 -

No. 2:21-cv-06240-PA-JEM