UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss Third Amended Class Action Complaint filed by defendants Activision Blizzard, Inc. ("Activision Blizzard" or "Company"), Robert A. Kotick ("Kotick"), Dennis Durkin ("Durkin"), Armin Zerza ("Zerza"), and Brian Kelly ("Kelly") (collectively, the "Defendants"). (Docket No. 91.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for January 9, 2023, was previously vacated, and the matter taken off calendar. (Docket No. 97.)

**I.   Background**

The facts and procedural history of this case are familiar to the Court and parties and will not be recounted here in full. Any critical facts or procedural history are noted in this section and in the Court's analysis below.

This is a private securities fraud, class action case brought by lead plaintiff Jeff Ross and six other named plaintiffs, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"). (Docket No. 90 ¶ 1.) Plaintiffs allege two causes of action: (1) violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against all Defendants; and (2) control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against defendants Kotick, Durkin, Zerza, and Kelly (collectively, "Individual Defendants"). (Id. ¶¶ 487–501.) The crux of Plaintiffs' claims is that Defendants misled the investing public by making material misstatements and omissions concerning rampant sexual harassment and discrimination at the Company, and the existence of investigations initiated in 2018 by the California Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC") (collectively, the "Investigations"). (See generally id.) Plaintiffs allege that the material misstatements and omissions were made in the Company's 2019 through 2020 Form 10-K SEC filings, and third quarter 2018 through first

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

quarter 2021 Form 10-Q filings (collectively, "SEC filings"). (Id. ¶¶ 390–426.) The SEC filings represented that the Company was only "party to routine claims, suits, investigations . . . arising in[/from] the ordinary course of business" and that "such routine claims and lawsuits are not significant" and "not expect[ed] [] to have a material adverse effect on" the Company's business. (Id.)

The Court previously granted Defendants' motions to dismiss the First and Second Amended Class Action Complaints on the basis that Plaintiffs failed to plead sufficient facts to establish that the SEC filing statements were false or misleading, and failed to plead particularized facts from which the Court could draw the necessary strong inference of scienter. (See Docket Nos. 75, 87.) Plaintiffs then filed a Third Amended Class Action Complaint ("3rd AC"). Notably, the 3rd AC contains references to five new confidential witnesses ("CWs") that worked in various roles in the Company's Human Resources ("HR") departments.[1/] The 3rd AC also contains some new allegations – or expansions upon prior ones – that Plaintiffs use to support their theories of falsity and/or scienter. These include the following allegations.

First, the 3rd AC references two additional news articles – a January 26, 2018 Wall Street Journal article about a pattern of sexual misconduct by the CEO of Wynn Resorts, and a January 21, 2020 Los Angeles Times article about a sexual assault and discrimination lawsuit against Riot Games. (Docket No. 90 ¶¶ 27, 245, 297, 410, 448.) Plaintiffs allege that these articles "show[] the immense danger of public sexual harassment allegations to the value of a company." (Id. ¶ 245.)

Second, Plaintiffs reference the Company's 2018 Proxy statement, which touted that the Company prioritizes and values diversity and inclusion. (Id. ¶ 246.) Plaintiffs allege that this demonstrates how "Activision Blizzard was especially vulnerable to reputational damage from sexual harassment allegations." (Id.)

Third, Plaintiffs allege that CW14 stated that, after the Investigations began, the Company's attorneys told her about the Investigations and "made an 'urgent' request for 'huge' data sets on the Company's employees dating back many years." (Id. ¶ 261.) Plaintiffs also allege that CW14 stated that she was confident that the higher-ups at the Company were worried about the Investigations. (Id.)

---

[1/] The five new CWs referenced in the 3rd AC are CW10, CW11, CW13, CW14, and CW16. (Docket No. 90 ¶¶ 86–87, 89, 90, 92.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

Fourth, in the Company's Answer to the DFEH's Amended Complaint,[2] the Company "admitted it opened an internal investigation of practices and policies of its Human Resources department in 2018." (Id. ¶ 262.) Plaintiffs allege that "[t]he fact that Activision Blizzard spent the time and money conducting this parallel investigation shows the significant and non-routine nature of the DFEH and EEOC Investigations and also put Defendants on notice of the endemic misconduct at the Company." (Id. ¶ 265.) Plaintiffs further allege that the Company had tried to negotiate with the DFEH about mediating any claims the DFEH may bring against the Company. Plaintiffs allege that, "it is clear that Activision Blizzard believed that there was significant risk that the DFEH would find cause for one or more of its claims." (Id. ¶ 321.)

Fifth, Plaintiffs cite to the statements of CW10, CW11, and CW16 to allege that the Company's Human Resources ("HR") underwent significant changes – such as the establishment of an Employee Relations Team – at Kotick's direction, in the years after the Investigations commenced. (See, e.g., id. ¶¶ 294, 307–11.) Plaintiffs allege that "it is clear that this significant restructuring of Human Resources was due [to] the ongoing Investigations." (Id. ¶ 294.)

Sixth, Plaintiffs allege that the firing of higher-ups – such as Blizzard's Chief Technology Officer, Ben Kilgore ("Kilgore"), Senior Manager of Global Business Strategy and Operations, Tyler Rosen ("Rosen"), and Senior Creative Director of World of Warcraft, Alex Afrasaibi ("Afrasaibi") – were "dramatic, non-routine, shift[s] of policy" and "could only have been explained by the Investigations . . . ." (Id. ¶¶ 226, 272, 439.) Plaintiffs further allege that Kotick personally approved of the firings of Rosen and Kilgore because Kotick's approval was needed to terminate anyone at the level of Senior Vice President and up. (Id. ¶¶ 219–22.) Plaintiffs base these allegations on CW statements and a news article. (Id.)

Seventh, Plaintiffs allege that multiple employees, including CW3 and CW6, complained to higher-ups at the Company, such as Kotick and Blizzard President Brack ("Brack"), about sexual harassment and discrimination. (Id. ¶¶ 286, 401.) Plaintiffs also cite to a November 16, 2021 Wall Street Journal article to allege that "Kotick was aware of a 2020 email that 30 female employees working in Activision Blizzard's Esports division wrote to their unit's leaders 'saying that female employees had been subject to unwanted touching, demeaning comments, exclusion from important meetings, and unsolicited comments on their appearance.'" (Id. ¶¶ 14, 317.)

---

[2] The DFEH filed a public complaint against the Company on July 20, 2021. Plaintiffs' "Exhibit 2" to the 3rd AC (Docket No. 90-2) is Activision Blizzard's Answer to the DFEH's First Amended Complaint, filed on May 9, 2022. See DFEH v. Activision Blizzard, Inc., et al., 21 ST CV 26571 (Cal. Supr. Ct.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

In addition to these new allegations, Plaintiffs' 3rd AC recycles allegations from the previous amended complaints to support Plaintiffs' claim that the statements in each SEC filing were allegedly false. (Id. ¶¶ 390–426.)

The 3rd AC also alleges reasons why defendants Kotick, Durkin, Zerza, and Kelly (collectively, "Individual Defendants") acted knowingly or recklessly in signing the SEC filings and/or related Sarbanes-Oxley Act ("SOX") certifications. (Id. ¶¶ 432–45.) Specifically, Plaintiffs allege that Kotick "acted knowingly or recklessly" because he was aware of the pervasive sexual harassment and discrimination at the Company, the Investigations and the details thereof, and the changes to the Company's HR department. (Id. ¶¶ 432–41.) Plaintiffs allege that Durkin and Zerza "acted knowingly or recklessly" because, in their roles as CFO/COO, "a minimal level of due diligence would have informed" them of the Investigations, the firing of employees like Kilgore, Afrasaibi, and Rosen, the changes to the HR department, and the pervasive sexual harassment and discrimination at the Company. (Id. ¶¶ 442–44.) Similarly, Plaintiffs allege that Kelly "acted knowingly or recklessly" because a Wall Street Journal Article stated that the Company's Board of Directors had been "'informed at all times with respect to the status of regulatory matter,' referring to the DFEH and EEOC Investigations.'" (Id. ¶ 445.)

Defendants now move to dismiss Plaintiffs' 3rd AC for failure to state a claim, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act, arguing that Plaintiffs fail to plead falsity, scienter, and loss causation. (See generally Docket Nos. 91, 91-1.)

**II.    Request for Judicial Notice**

Defendants request that the Court take judicial notice of six documents, including a press release, SEC filings, a list of historic stock prices, a letter from the Company's CEO referenced in the 3rd AC, and documents maintained on the DFEH's and EEOC's respective websites. (Docket No. 91-10, Exs. A–F.) Plaintiffs do not oppose Defendants' requests. In ruling on a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of matters referred to in the complaint, but not attached, where the document's authenticity is not contested and the complaint necessarily relies on them. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). A court may also judicially notice matters of public record. Id. at 789. Moreover, courts routinely find SEC filings, as well as press releases, and other information made available to the market to be matters of public record, regardless of whether it was referenced in the complaint. See Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006); Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); In re Hansen Nat. Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1149 (C.D. Cal. 2007). Accordingly, the Court grants the requested judicial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

notice of all documents, but not as to the truth of the matters asserted therein. See Asner v. SAG-AFTRA Health Fund, 557 F. Supp. 3d 1018, 1024 (C.D. Cal. 2021).

**III.    Legal Standard**

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561. Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

In a private action for securities fraud under Section 10(b), a complaint must satisfy heightened pleading requirements. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

308, 321, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). First, the complaint must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires "the complaint [to] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "The pleadings must state precisely the time, place, and nature of the misleading statement, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). "Congress enacted the PSLRA to deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 973 (9th Cir. 1999) (citing H.R. REP. CONF. NO. 104-369, at 32–41 (1995); 15 U.S.C. § 78u-4(b)(1)–(2) (1997)). A court must dismiss a private securities fraud action seeking money damages if the complaint fails to meet the pleading requirements. See 15 U.S.C. § 78u-4(b)(3)(A).

**IV.    Analysis**

The Court previously determined that the facts in Plaintiffs' prior Complaints were insufficient to properly allege the necessary misrepresentation (or "falsity") and scienter elements of Plaintiffs' claims. (See Docket Nos. 75, 87.) The Court therefore does not revisit those facts in detail here. Instead, the Court analyzes the sufficiency of Plaintiffs' newly alleged facts, taken both individually and in the context of all other allegations.

    **A.    Section 10(b) and Rule 10b-5**

Section 10(b) of the Securities Exchange Act ("Section 10(b)") makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" Rule 10b-5, 17 C.F.R. § 240.10b-5, defines three categories of manipulative or deceptive devices that constitute a violation of Section 10(b):

        (a)    To employ any device, scheme, or artifice to defraud,

        (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

            made, in light of the circumstances under which they were made, not misleading, or

    (c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

       In a typical Section 10(b) private action based on material misrepresentations or omissions, a plaintiff must prove:  (1) a material misrepresentation or omission by the defendant ("falsity"); (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008); see also Snellink v. Gulf Res., Inc., 870 F. Supp. 2d 930, 936 (C.D. Cal. 2012).  Additionally, as noted in the Court's prior dismissal orders, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)).

      **1.**    **Falsity**

       For a statement to be actionable under Section 10(b), the allegations must support both falsity and materiality of the statement at the time the statement was made.  See Basic Inc. v. Levinson, 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009), as amended (Feb. 10, 2009).  A plaintiff must specify each statement alleged to be misleading and why the statement was false or misleading.  See 15 U.S.C. § 78u-4(b)(1); In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548–49 (9th Cir. 1994) (en banc), superseded by statute on other grounds ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). "[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." In re Read-Rite Corp. Sec. Litig., 335 F.3d 843, 846 (9th Cir. 2003) (internal quotations omitted).  "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

       The Ninth Circuit applies the "objective standard of a 'reasonable investor' to determine whether a statement is misleading." In re Alphabet Inc. Sec. Litig., 1 F.4th 687, 699 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

2021). Furthermore, Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information; rather, disclosure is required "only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011) (internal quotations omitted); see 17 C.F.R. § 240.10b-5. A misleading omission is material if "there is a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the total mix of information made available for the purpose of decisionmaking by stockholders concerning their investments." Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1274 (9th Cir. 2017) (citations and internal quotations omitted)).

Here, Plaintiffs allege that the following statement in the Company's SEC filings was misleading: the Company is "party to routine . . . investigations . . . arising from the ordinary course of business, including . . . labor and employment matters . . . . In the opinion of management, after consultation with legal counsel, such routine claims and lawsuits are not significant and we do not expect them to have a material adverse effect . . . ." (See, e.g., Docket No. 90 ¶ 276.) According to Plaintiffs, it was misleading to state that these investigations were routine or the ordinary course of business, that the routine matters were not significant, and that management did not expect the routine matters to have a material adverse effect. (Docket No. 95 at 9-10.) Further, Plaintiffs argue that once Defendants spoke of investigations, they were then required to discuss investigations in a non-misleading way. See Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 987 (9th Cir. 2008) ("[O]nce defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of.").

Though the 3rd AC includes new factual allegations, as well as a reorganization of previously alleged facts, the Court continues to find Plaintiffs' allegations deficient to show falsity.[3/] First, Plaintiffs' new references to reporting on sexual misconduct and resulting fallout at Wynn Resorts and Riot Games fail to support falsity. Plaintiffs argue that these articles demonstrate the threat that #MeToo, sexual harassment allegations, and the Investigations posed to the Company. However, Plaintiffs cannot use these articles, that are not about the Company and concern external matters, or the broader backdrop of a national social movement absent specific contemporaneous facts to support a claim that Defendants knew the statements within the SEC filings were false at the time they were made. (See Docket No. 87 at 11-12.)

---

[3/] The parties dispute whether the challenged SEC filing statement constitutes an opinion statement. Given the deficient factual allegations, however, the Court need not delve into the issue. (See Docket No. 87 at 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

    Second, Plaintiffs allege that the language in the Company's April 30, 2018 Proxy statement about prioritizing a culture of diversity and inclusion at the Company demonstrates how Activision Blizzard "was especially vulnerable to reputational damage" from the sexual harassment allegations. (Id. ¶ 246.) As previously explained, the Company's professed values bear a tenuous connection to the substance of the alleged misstatements and fail to meet the PLSRA's elevated pleading requirements. (See Docket No. 87 at 12.)

    Third, Plaintiffs allege that the Company's attorneys' "urgent" request for "huge" data sets on employees, shortly after the Investigations started, illustrate that Defendants knew the Investigations were not routine. (Docket No. 95 at 13-14.) Despite CW14's statement that "she was confident that the higher ups were worried about the Investigations," there are no allegations to substantiate that belief and there is nothing out of the ordinary about the Company's attorneys collecting data relevant to the Investigations. (See Docket No. 90 ¶ 261) CW14's belief about the higher-ups, the Company's attorneys knowledge of the Investigations, and the attorneys' pursuit of relevant data do not establish that the Defendants considered the Investigations to not be routine or the ordinary course of business. See Xiaojiao Lu v. Align Tech., Inc., 417 F. Supp. 3d 1266, 1277–80 (N.D. Cal. 2019) ("[T]hese factual allegations are almost entirely untethered to the actual statements made by Defendants, and require the Court to guess how these factual allegations render the Defendants' representations misleading at the time they were made.").

    Fourth, Plaintiffs allege that the Company's Answer to the DFEH's Amended Complaint illustrates that the Company internally acknowledged the Investigations represented a significant risk. Specifically, that the Company's Answer admitted negotiations with DFEH had broken down, revealing the Company's concern that a cause finding would issue and suit would follow, and that the Company opened an internal investigation of its HR department, revealing that the Company believed a costly internal investigation was necessary. (Id. ¶¶ 31, 262, 265, 321–22.) However, Plaintiffs provide nothing more than conjecture in making the argument that these facts show Defendants' were concerned the Investigations were a significant risk. That the Company was discussing the possibility of mediation with the DFEH, or that the Company conducted an internal investigation, do not demonstrate that the Investigations were not routine or that the SEC filing statements were false when made.

    Fifth, Plaintiffs allege that CW10's, CW11's, and CW16's statements that the Company's HR department, at the direction of Kotick, underwent continuing extensive changes, such as the establishment of the Employee Relations Team in June of 2020, show that by June 2020 at the latest the Investigations were not routine. (Docket No. 95 at 15-16.) However, these CWs' statements at most support that Kotick was involved in changes to the HR department, that some of the Company's employees believed that the HR department changes were a result of the Investigations, and that the Company pivoted to a standardized procedure. The allegations fail

Case 2:21-cv-06240-PA-JEM  Document 98  Filed 01/22/23  Page 10 of 14  Page ID #:2965

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

to show how the Investigations were not routine or that the SEC filing statements were false or misleading when made.

Sixth, Plaintiffs allege that the firing of higher-ups such as Kilgore and Rosen were "dramatic, non-routine, shift[s] of policy" and "could only have been explained by the Investigations." (Docket No. 90 ¶¶ 226, 272.) Plaintiffs further allege that Kotick personally approved of the firings, as Kotick's approval was needed to terminate anyone at or above the level of Senior Vice President. (Id. ¶¶ 219–22.) Plaintiffs' allegations stem from the statements of CWs, as well as a Wall Street Journal article. (Id. ¶¶ 219–226, 272.) However, Plaintiffs fail to connect these firings or the statements surrounding them to any challenged statement's falsity. (See Docket No. 87 at 11.)

Seventh, Plaintiffs allege that multiple employees complained to higher-ups at the Company (such as Kotick and Brack) about sexual harassment and discrimination. (See, e.g., Docket No. 90 ¶¶ 286, 401.) While these facts may demonstrate that higher-ups were aware of instances of sexual harassment and discrimination at the Company, they do not establish that the SEC filing statements were false when made.

In sum, the 3rd AC fails to plead the factual detail necessary to satisfy the PSLRA pleading standard with regard to falsity. Though Plaintiffs plead facts demonstrating the Company's toxic workplace, toleration of reprehensible conduct, and mistreatment of female employees, the "allegations are not particular enough to satisfy Rule 9(b)" with regard to Plaintiffs' claims in this action. Vess, 317 F.3d at 1107. The central deficiency of Plaintiffs' 3rd AC is that there are insufficient facts connecting allegations of the sexual harassment and discrimination at the Company, the effects of the Investigations, and the related knowledge of Defendants to the alleged falsity of the statements in the SEC filings. Therefore, Plaintiffs' 3rd AC does not present sufficient, cogent reasons demonstrating the statements in the SEC filings were false or misleading when made.

### 2. Scienter

Defendants additionally argue that Plaintiffs fail to adequately plead scienter. To survive a motion to dismiss, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). Specifically, scienter requires an intent to deceive, manipulate, or defraud. Tellabs, 551 U.S. at 319, 127 S. Ct. 2499. The standard is not whether a reasonable person can draw an inference that the defendant acted with scienter. Id. at 317, 127 S. Ct. 2499. In the Section 10(b) context, scienter requires proof that the defendant acted knowingly or recklessly. See Hollinger v. Titan Capital Corp., 914 F.2d

Case 2:21-cv-06240-PA-JEM Document 98 Filed 01/22/23 Page 11 of 14 Page ID #:2966

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

1564, 1568–69 (9th Cir.1990) (en banc). "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness." Zucco, 552 F.3d at 991 (internal citation omitted). "[F]acts showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of deliberate recklessness." Silicon Graphics, 183 F.3d at 974.

"[T]he plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Zucco, 552 F.3d at 991 (internal quotations omitted). The Supreme Court has elaborated that to qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 313, 127 S. Ct. 2499. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco, 552 F.3d at 991. Courts may initially assess allegations individually, and then consider whether the allegations collectively meet the standard for pleading scienter. See Police Ret. Sys. v. Intuitive Surgical, Inc., 759 F.3d 1051, 1058 (9th Cir. 2014); see, e.g., id. at 1062–64.

Here, Plaintiffs' allegations of scienter repeat, without significant changes, the same allegations the Court previously found to be insufficient. (See Docket No. 87 at 12-15; Docket No. 75 at 15-19.) To the extent Plaintiffs rely on the new allegations, they are generally unavailing to allege scienter. Cf. In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005) ("[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a unitary inquiry under the PSLRA." (internal quotations omitted)). More specifically, Plaintiffs argue that Kotick acted "knowingly or recklessly" in signing the SEC filings and/or related SOX certifications, based on allegations that Kotick was aware of pervasive sexual harassment at the Company, knew details of the Investigations, and was involved in the firing of senior Company employees and changes to the Company's HR department. (Docket No. 90 ¶¶ 432–41.) Plaintiffs base their allegations that Zerza and Durkin acted "knowingly or recklessly" on their leadership roles at Activision Blizzard and Blizzard. (See id. ¶¶ 442–44.) Similarly, Plaintiffs base their allegation that Kelly acted "knowingly or recklessly" on a November 16, 2021 article reporting the Company's Board of Directors stated that "it had been 'informed at all times with respect to the status of regulatory matters,'" referring to the Investigations. (Docket No. 90 ¶ 445.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

Under the heightened PLSRA pleading standard, none of these allegations establish a strong inference that the Individual Defendants knew the statements in the SEC filings were false when made, or that they acted recklessly. See Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp., 433 F. Supp. 3d 515, 546 (S.D.N.Y. 2020) ("Whether the assertion comes from Plaintiffs or a news article, conclusory statements that defendants were aware of certain information or would have or should have had such knowledge cannot support a strong inference of scienter." (internal quotations omitted)). To the extent Plaintiffs allege that Individual Defendants should have known that the statements in the SEC filings were false, that is also insufficient to plead scienter. See Glazer Cap. Mgmt., LP v. Magistri, 549 F.3d 736, 748 (9th Cir.2008) ("[T]he inference that he should have known of the violations . . . is not sufficient to meet the stringent scienter pleading requirements of the PSLRA."). And, as this Court previously explained, neither the Individual Defendants' management positions nor the statements of CWs raise a strong inference of scienter in this case.[4] (See Docket No. 87 at 14.)

Lastly, Plaintiffs recycle – nearly word-for-word – additional allegations from the previous amended complaints that Plaintiffs argue support a "strong inference of scienter." These include: (1) Defendants' alleged "obstruction" of the Investigations, (2) the #MeToo movement, (3) the Company's "admission" in its 2Q 2021 10-Q that the Investigations could adversely impact the Company's business, (4) the Company's press releases, (5) the Individual Defendants' stock sales, and (6) Kotick's employment agreement that "motivated him to make misstatements." (Docket No. 90 ¶¶ 446–64.) The Court previously addressed each of these

---

[4] See In re Apple Comput., Inc., 127 F. App'x 296, 302 (9th Cir. 2005) ("Although plaintiffs attach the witness summaries of several confidential witnesses that demonstrate the engineers at Apple knew there were production problems with the Cube, again these witness statements do not establish exactly what Jobs knew, nor when he knew it, to allege that Jobs knew his predictions were false when he made them."); Alaska Elec. Pension Fund v. Adecco S.A., 371 F. Supp. 2d 1203, 1217 (S.D. Cal. 2005) ("[A] defendant's position in the company does not, without more, create a strong inference of scienter."); see also Brennan v. Zafgen, Inc., 853 F.3d 606, 614–15 (1st Cir. 2017) (finding news articles insufficient for scienter purposes because they did not "support . . . the complaint's allegation that the defendants knew, or were reckless in not knowing, that they risked misleading investors" and they had no particularized connection to the defendants).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

allegations and deemed them insufficient to create a strong inference of scienter.[5/] (Docket No. 87 at 14–15.)

Accordingly, the Court finds that Plaintiffs failed to sufficiently plead the necessary elements of falsity and scienter for their Section 10(b) and Rule 10b-5 claim. Therefore, the Court need not analyze Defendants' argument about loss causation.

**B.    Section 20(a)**

To state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000). Because Plaintiffs have failed to state a claim for a primary violation of the securities law, the 3rd AC's Section 20(a) claim also fails.

**C.    Leave to Amend**

"The decision of whether to grant leave to amend . . . remains within the discretion of the district court." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008). The district court "may deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Id. (internal quotations omitted). Here, Plaintiffs have had multiple opportunities to amend with the benefit of explanations of inadequacies. Additionally, Plaintiffs fail to identify any meaningful way in which they could amend their pleadings to adequately allege the falsity of statements at the time they were made or scienter. Plaintiffs also fail to argue in their Opposition that, should the Court grant Defendants' motion, Plaintiffs should be given leave to amend the 3rd AC. Therefore, the Court finds that leave to amend would be futile, and dismisses the 3rd AC without leave to amend. See Metzler, 540 F. 3d at 1072 (dismissing with prejudice because "Metzler points to no additional facts that it might allege to cure these deficiencies, which persisted in every prior iteration of the TAC").

---

[5/]    Plaintiffs also argue that the scienter from Brack should be imputed to the Company under the theory of respondeat superior, because he "was aware of the culture of harassment." (Docket No. 95 at 23–24.) However, Brack's purported scienter cannot be imputed to the Company as Plaintiffs do not allege he made the statements at issue. See Glazer Cap. Mgmt., 549 F.3d at 745 (explaining that scienter must be alleged for the "individuals who actually made the false statements" (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6240 PA (JEMx) | Date | January 22, 2023 |
|---|---|---|---|
| Title | Gary Cheng, et al. v. Activision Blizzard, Inc., et al. | | |

## Conclusion

For all of the foregoing reasons, the Court grants Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint. This action is dismissed with prejudice and without leave to amend. The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.